# **EXHIBIT A**

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| In re: AVENGER FLIGHT GROUP, LLC, *et al.*, Debtors.[1] | Chapter 11<br>Case No. 26-10183 ( )<br>(Joint Administration Requested)<br>**Re Docket No. ___** |
|---|---|

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE OPERATING CASH MANAGEMENT SYSTEM, (B) HONOR AND PAY BANK FEES, (C) MAINTAIN EXISTING BUSINESS FORMS, (D) AUTHORIZING MAINTENANCE OF CORPORATE CARD PROGRAMS; (II) SCHEDULING A FINAL HEARING, AND (III) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), for the entry of an interim order (this "Interim Order"), pursuant to sections 105, 345, and 363 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rule 2015-2: (i) authorizing the Debtors to (a) continue operating the Cash Management System, (b) honor and pay the Bank Fees in the normal course, including any prepetition Bank Fees, (c) maintain existing business forms, and (d) authorizing maintenance of corporate card programs; and (ii) granting related relief, all as more fully set forth in the Motion; and upon consideration of the First Day Declaration; and upon the Debtors' representation that the Bank Fees, and Intercompany Transactions with Non-Debtor Foreign Affiliates are consistent with

[1] The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are: Avenger Flight Group, LLC (1216); AFG Dallas III, LLC (5615); AFG Dallas IV, LLC (5558); AFG Dallas, LLC (3418); AFG EU Operations Corp. (9406); AFG FLL, LLC (6470); AFG Latam Holding Corp. (6475); AFG Latam Sim Holdings II, LLC (0473); AFG Latam Sim Holdings III, LLC (2592); AFG Latam Sim Holdings IV, LLC (0093); AFG Latam Sim Holdings, LLC (6475); AFG Latam, LLC (9545); AFG Mexico Corp. (1402); AFG Orlando, LLC (8409); AFG Sanford, LLC (6661); AFG Sim Holding Corp. (3325); Avenger Flight Group Europe, Corp. (5908); Avenger Flight Group Topco, LLC (5643); Avenger Flight Training, LLC (5640); Avenger Flight Group Mexico II, S. de R.L. de C.V, (N/A); and Papi Flight Training, LLC (6206). The location of the Debtors' corporate headquarters and the Debtors' service address is Avenger Flight Group LLC, 1450 Lee Wagener Blvd., Fort Lauderdale, FL 33315.

[2] A capitalized term used but not defined herein have the meaning ascribed to it in the Motion.

the Debtors' debtor in possession financing budget and in compliance with the DIP Credit Agreement; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at an interim hearing before this Court (the "<u>Hearing</u>"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is GRANTED on an interim basis, as set forth in this Interim Order.

2. The final hearing (the "<u>Final Hearing</u>") on the Motion shall be held on _______, 2026, at __:__ __.m. (prevailing Eastern Time). Any objections or responses to entry of a final order on the Motion shall be filed with the Court, and served so as to be received by the following parties, **by no later than 4:00 p.m., prevailing Eastern Time, on _________, 2026**: (i) proposed counsel to the Debtors, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801), Attn: Mary F. Caloway, Esq. (mcaloway@pszjlaw.com) and Gregory V. Demo, Esq. (gdemo@pszjlaw.com); (ii) the Office of The United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801,

Attn: Jon Lipshie, Esq. (jon.lipshie@usdoj.gov); (iii) counsel to the DIP Lenders, (a) Proskauer Rose LLP, Eleven Times Square, New York, New York 10036 (Attn: David M. Hillman (dhillman@proskauer.com) and Matthew R. Koch (mkoch@proskauer.com)), and (b) Landis Rath & Cobb LLP, 919 Market Street, Suite 1800, Wilmington, Delaware 19801 (Attn: Matthew B. McGuire (mcguire@lrclaw.com)); (iv) counsel to the DIP Agent, (a) Alston & Bird LLP, 90 Park Avenue, New York, New York 10016 (Attn: William Hao (william.hao@alston.com) and Dylan S. Cassidy (dylan.cassidy@alston.com); and (v) counsel for any official committee of unsecured creditors appointed in the Chapter 11 Cases. If no objections to entry of a final order on the Motion are timely received, this Court may enter such final order without need for the Final Hearing.

3. Subject to the Approved Budget (as defined in the *Interim Order (I) Authorizing the Debtors to Obtain Senior Secured Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* (the "Interim DIP Order") or the Final Order (as defined in the Interim DIP Order), as applicable), the Debtors are authorized, but not directed, on an interim basis, to: (i) continue operating the Cash Management System, substantially as identified on **Exhibit C** to the Motion and as described in the Motion; (ii) honor their prepetition obligations related thereto; (iii) use, in their present form, all preprinted correspondence and Business Forms (including letterhead) without reference to the Debtors' status as debtors-in-possession, *provided* that once the Debtors' existing supply of checks has been exhausted, the Debtors shall, when reordering (or with respect to checks the Debtors or their agents print themselves, within 15 days hereof) require or print, as applicable, the "Debtor in Possession" legend and corresponding bankruptcy case number on all such items; (iv) continue to perform

Intercompany Transactions; (v) continue to use, with the same account numbers, the Bank Accounts in existence as of the Petition Date, including those accounts identified on **Exhibit D** to the Motion; (vi) treat the Debtor Accounts for all purposes as accounts of the Debtors as debtors-in-possession; (vii) deposit funds into and withdraw funds from the Accounts by all usual means, including checks, wire transfers, and other debits; and (viii) pay the Bank Fees, including any prepetition amounts and any ordinary course Bank Fees incurred in connection with the Accounts, and otherwise to perform their obligations under the documents governing the Accounts; *provided* that in the case of each of (i) through (viii), such action is taken in the ordinary course of business and consistent with historical practices.

4. The Debtors are authorized, but not directed, to close the BoA Accounts.

5. The Banks are authorized to continue to maintain, service, and administer the Accounts as accounts of the Debtors as debtors-in-possession, without interruption and in the ordinary course of business consistent with historical practices, and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, credit card payments, and ACH transfers issued and drawn on the Accounts after the Petition Date by the holders or makers thereof, as the case may be, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order; *provided* that the Debtors shall only instruct or request any Bank to pay or honor any check, draft, or other payment item issued on an Account prior to the Petition Date but presented to such Bank for payment after the Petition Date as authorized by an order of the Court.

6. The Debtors are authorized to continue the Corporate Card Programs, in the ordinary course of business and consistent with prepetition practices, and to pay any prepetition or postpetition amounts related thereto.

7. The Banks are authorized to debit the Debtors' accounts in the ordinary course of business, consistent with historical practices, without the need for further order of this Court, for: (i) all checks drawn on the Debtors' accounts which are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (ii) all checks or other items deposited in the Debtors' accounts with such Bank prior to the Petition Date that have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent that the Debtor was responsible for such items prior to the Petition Date; and (iii) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to the Bank as service charges for the maintenance of the Cash Management System.

8. Any existing agreements between or among the Debtors, the Banks, and other parties shall continue to govern the postpetition cash management relationship between the Debtors and the Banks, and all of the provisions of such agreements, including, without limitation, the termination provisions, fee provisions, rights, benefits, offset rights, and remedies afforded under such agreements shall remain in full force and effect unless otherwise ordered by the Court, and the Debtors, upon consultation with the Required DIP Lenders, and the Bank may without further order of the Court, agree to and implement changes to the Cash Management System and cash management procedures in the ordinary course of business, consistent with historical practices, including, without limitation, the opening and closing of bank accounts, subject to the terms and conditions of this Interim Order.

9. The Debtors are hereby granted an extension of time to comply with the requirements of 11 USC § 345(b) for a period of thirty (30) days, without prejudice to the Debtors' rights to seek a further extension.

10. For the Banks at which the Debtors hold Accounts that are party to a Uniform Depository Agreement with the U.S. Trustee, as soon as practicable after entry of this Interim Order, the Debtors shall: (i) contact such Bank; (ii) provide such Bank with each of the Debtors' employer identification numbers; and (iii) identify each of their Accounts held at such Bank as being held by a debtor-in-possession in these Chapter 11 Cases.

11. For any Bank at which the Debtors hold Accounts that are not party to a Uniform Depository Agreement with the U.S. Trustee, the Debtors shall use their good-faith efforts to cause the Bank to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee within thirty (30) days of the date of this Interim Order. The U.S. Trustee's rights to seek further relief from this Court if the Bank is unwilling to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee are fully reserved.

12. All Banks maintaining any of the Accounts that are provided with notice of this Interim Order shall not honor or pay any bank payments drawn on the listed Accounts or otherwise issued before the Petition Date; *provided, however*, that any such bank shall not be found to be in violation of this Interim Order nor liable to the Debtors or their estates should any such bank honor or pay any bank payment: (i) in a good-faith belief that the Court has authorized such payment to be honored; or (ii) as the result of a mistake made despite implementation of customary item handling procedures.

13. The Banks are authorized, without further order of the Court, to deduct any applicable fees from the applicable Accounts in the ordinary course of business consistent with historical practices and pursuant to the applicable agreements governing each Account.

14. The Banks are authorized, without further order of the Court, to charge back to the appropriate accounts of the Debtors any amounts resulting from returned checks or other returned

items, including returned items that result from ACH transactions, wire transfers, or other electronic transfers of any kind, regardless of whether such returned items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers, including, without limitation, on account of checks that have been dishonored or returned as a result of insufficient funds in the Accounts, in each case to the same extent that the Debtors were responsible for such items prior to the Petition Date.

15. Subject to the terms set forth herein, any bank, including the Banks, may rely upon the representations of the Debtors with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to any order of the Court, and no Bank that honors a prepetition check or other item drawn on any account that is the subject of this Interim Order: (i) at the direction of the Debtors; (ii) in a good-faith belief that the Court has authorized such prepetition check or item to be honored; or (iii) as a result of a mistake made despite implementation of reasonable customary handling procedures, shall be deemed to be liable or shall be liable to the Debtors, their estates, or any other party on account of such prepetition check or other item being honored postpetition or otherwise deemed to be in violation of this Interim Order.

16. Any banks, including the Banks, are further authorized to honor the Debtors' directions with respect to the opening and closing of any Account and accept and hold, or invest, the Debtors' funds in accordance with the Debtors' instructions; *provided* that the Bank shall not have any liability to any party for relying on such representations to the extent that such reliance otherwise complies with applicable law.

17. The Debtors are authorized, but not directed to continue engaging in Intercompany Transactions in connection with the Cash Management System in the ordinary course of business.

The Debtors shall maintain accurate and detailed records of all Intercompany Transactions and the payment of Intercompany Claims so that all transactions may be readily traced, ascertained, and recorded properly on applicable intercompany accounts (if any) and distinguished between prepetition and postpetition transactions for the purposes of determining administrative expense status.

18. The Debtors, upon consultation with the Required DIP Lenders, and the Banks may, without further order of this Court, agree to and implement changes to the Cash Management System and procedures related thereto in the ordinary course of business, without limitation, the opening of any new bank accounts, the closing of any existing Accounts, and entrance into ancillary agreements, including new deposit account control agreements related to the foregoing, as the Debtors may deem necessary and appropriate. Any new bank account opened by the Debtors shall be established at an institution that is (a) a party to a UDA with the United States Trustee for the District of Delaware or is willing to immediately execute a UDA, and (b) bound by the terms of this Interim Order. The Debtors shall provide notice within fifteen (15) days to the U.S. Trustee, counsel to the DIP Agent, counsel to the DIP Lenders and the Prepetition Lenders, of the opening of such account or closing of any Account; *provided*, that such opening or closing shall be timely indicated on the Debtors' monthly operating reports.

19. All postpetition payments from a Debtor to another Debtor or non-Debtor under any postpetition Intercompany Transactions authorized hereunder that result in an Intercompany Claim are hereby accorded administrative expense status under section 503(b) of the Bankruptcy Code.

20. Despite use of a consolidated cash management system, the Debtors shall calculate quarterly fees under 28 U.S.C. section 1930(a)(6) based on the disbursements of each debtor, regardless of who pays those disbursements.

21. Nothing contained in the Motion or this Interim Order shall be construed to: (i) create or perfect, in favor of any person or entity, any interest in cash of a Debtor that did not exist as of the Petition Date; or (ii) alter or impair the validity, priority, enforceability, or perfection of any security interest or lien or setoff right, in favor of any person or entity, that existed as of the Petition Date.

22. Nothing contained in the Motion or this Interim Order, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with this Interim Order), is intended as or shall be construed or deemed to be: (i) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (ii) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (iii) a promise or requirement to pay any particular claim; (iv) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in the Motion or this Interim Order; (v) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (vi) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (vii) a waiver or limitation of any claims, causes of action, or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or other applicable nonbankruptcy law.

23. The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these Chapter 11 Cases with respect to prepetition amounts owed in connection with the relief granted herein.

24. Nothing in this Interim Order authorizes the Debtors to accelerate any payments not otherwise due.

25. The Banks maintaining the Debtors' Accounts that are listed on **Exhibit D** to the Motion, and any and all other financial institutions receiving or transferring funds from or to the Debtors, are authorized and directed to cooperate with respect to the Debtors' efforts to maintain and use their Cash Management System and accounts.

26. The Debtors have demonstrated that the requested relief is "necessary to avoid immediate and irreparable harm" as contemplated by Bankruptcy Rule 6003.

27. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion, and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

28. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

29. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

30. This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.