**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AVENGER FLIGHT GROUP, LLC, *et al.*, | Case No. 26-10183 (MFW) |
| Debtors.[1] | (Joint Administration Requested) |

**MOTION FOR ENTRY OF ORDER (I) AUTHORIZING DEBTORS TO ENTER INTO SETTLEMENT AGREEMENT WITH SIM INTERNATIONAL B.V. AND LENDERS, AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") hereby file this motion (the "Motion") for entry of an order, substantially in the form attached as **Exhibit A** (the "Proposed Order"), pursuant to sections 105, 363, and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtors to enter into that certain *Settlement Agreement and Release* (the "Settlement Agreement")[2] by and among the (i) the Debtors; (ii) the Lenders (as defined in the Settlement Agreement); and (iii) SIM International B.V. and its affiliates set forth on the Settlement Agreement ("SIM"). A copy of the Settlement Agreement is attached to the Proposed Order as Exhibit 1. In support of this Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are: Avenger Flight Group, LLC (1216); AFG Dallas III, LLC (5615); AFG Dallas IV, LLC (5558); AFG Dallas, LLC (3418); AFG EU Operations Corp. (9406); AFG FLL, LLC (6470); AFG Latam Holding Corp. (6475); AFG Latam Sim Holdings II, LLC (0473); AFG Latam Sim Holdings III, LLC (2592); AFG Latam Sim Holdings IV, LLC (0093); AFG Latam Sim Holdings, LLC (6475); AFG Latam, LLC (9545); AFG Mexico Corp. (1402); AFG Orlando, LLC (8409); AFG Sanford, LLC (6661); AFG Sim Holding Corp. (3325); Avenger Flight Group Europe, Corp. (5908); Avenger Flight Group Topco, LLC (5643); Avenger Flight Training, LLC (5640); Avenger Flight Group Mexico II, S. de R.L. de C.V, (N/A); and Papi Flight Training, LLC (6206). The location of the Debtors' corporate headquarters and the Debtors' service address is Avenger Flight Group LLC, 1450 Lee Wagener Blvd., Fort Lauderdale, FL 33315.

[2] Capitalized terms not otherwise defined herein shall have the meanings given them in the Settlement Agreement.

**PRELIMINARY STATEMENT**

1.      The Debtors filed these Chapter 11 cases having faced internal and external challenges, including a high debt load, general industry headwinds, and the bankruptcies of some of its major customers. To help address these challenges, in the months leading up to the chapter 11 filing, the Debtors engaged with many of their major stakeholders—including the Lenders and SIM, a key equipment lessor and manufacturer of flight simulators—regarding a holistic restructuring to be effectuated through a value-maximizing going concern transaction for the benefit of all of the Debtors' stakeholders.

2.      To that end, the Debtors have (i) secured a commitment from the Lenders to fund the DIP Facility, (ii) entered into a stalking horse asset purchase agreement with a designee and affiliate of one of the Lenders (the "Stalking Horse"), and agreed to bid procedures pursuant to which the Stalking Horse or a higher bidder (such party, "NewCo") will acquire all or substantially all of the Debtors' assets, and (iii) entered into the Settlement Agreement with the Lenders and SIM to comprehensively settle the Company's obligations under various equipment leases with SIM, providing a clear path forward for the critical ongoing relationship between SIM, Avenger, and NewCo (and the eventual purchaser of its assets).

3.      Entry into the Settlement Agreement is critical to preserving and actualizing the going-concern value of the Debtors. It secures an ongoing relationship between the Debtors and SIM; provides improved equipment and lease terms to support Avenger's turnaround and growth plan; and fully and finally resolves claims against the Debtors held by SIM. Based on the foregoing, and as set forth more fully below, the Debtors submit that the Court should approve the Settlement Agreement.

**JURISDICTION AND VENUE**

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware,* dated February 29, 2012. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and pursuant to Rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware, the Debtors consent to the entry of a final order by this Court in connection with this Motion to the extent that it is later determined that this Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution.

5.      Venue of the above-captioned case and this Motion are proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

6.      On February 11 and February 12, 2026 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors are managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases, and no committees have been appointed or designated.

7.      Avenger Flight Group, LLC ("AFG LLC") and its affiliates (collectively, "Avenger" or the "Company") is a global leader in the commercial aviation simulation and training business. Avenger provides a full suite of advanced flight simulator training solutions to their customers, which include blue-chip passenger airlines, regional airlines, charter operators, and training operators. As of the Petition Date, the Company owns, operates or services 50 full-flight simulators and 15 flight training devices across 11 training centers in 4 countries.

8.      A detailed description of the Debtors' business and facts precipitating the filing of the Debtors' chapter 11 proceedings are set forth in the *Declaration of Lawrence Perkins in Support of the Debtors' Chapter 11 Petitions and First Day Relief* (the "First Day Declaration"). The First Day Declaration is incorporated herein by reference.

**BACKGROUND RELATED TO SETTLEMENT AGREEMENT**

9.      Prior to the Petition Date, certain of the Debtors entered into various agreements with SIM related to the construction (by SIM) and lease (from SIM) (collectively, the "SIM Leases") of full-flight simulators ("FFS") for use in their domestic and foreign operations. Avenger's obligations (including those of Avenger's non-Debtor affiliates) under each of the SIM Leases are guaranteed by AFG LLC and secured by, among other things, each lessee's rights in the applicable FFSs.

10.     Prior to the Petition Date, Avenger defaulted on the SIM Leases, resulting in various breaches asserted by SIM (the "SIM Claims"). For example, when Avenger Germany entered into the applicable SIM Agreements for the purchase of FFSs located in Frankfurt, the Company lacked the liquidity to pay large down payments to SIM for the three new FFSs. To facilitate the transactions, the Company and SIM entered into agreements (the "SIM Germany Agreements") pursuant to which the Company assigned its revenues generated from its Frankfurt operations to SIM to secure the repayment of those down payments, among other things.

11.     Avenger subsequently defaulted under the SIM Germany Agreements, both as a result of a payment default to SIM and due to the Company's failure to pay rent to its third-party landlord (which, under German law, gave such landlord the right to cancel the lease). As a result, in February 2024 and August 2025, SIM exercised its rights under the SIM Germany Agreements to, among other things, take over the Company's German customer agreements and assets,

effectively disposing of the Company's German operations.[3]

12.     SIM's rights under the SIM Leases have left the Company in a vulnerable position and uncertain about its ability to continue revenue-generating operations. In addition, SIM is a key supplier of parts to the FFSs and the Debtors' ability to operate and service its FFSs is contingent in part on its relationship with SIM.

13.     Accordingly, prior to the Petition Date, Avenger began negotiations with SIM and the Lenders to reach a global resolution of the SIM Claims and a path towards restructuring the Company to maximize value for all stakeholders. That resolution culminated in the Term Sheet and, ultimately, the Settlement Agreement, which will fully and finally resolve the SIM Claims.

14.     The principal terms of the Settlement Agreement are as follows:[4]

- The Company shall pay to SIM €626,173.77 (EUR) (the "**Lease Cure Payment**"), which amount represents the aggregate remaining amount of all payments due and owing from the Company to SIM and its affiliates in respect of the SIM Leases through the Petition Date.

- The termination, or assignment to SIM, of the Frankfurt Leases and SIM's entry into a Servicing Agreement with Avenger Germany, Avenger Flight Group España, S.L. and NewCo, pursuant to which Avenger Germany will provide services to SIM in exchange for the consideration set forth therein.

- The assumption of the SIM USA FFS Leases, in the forms attached to the Term Sheet, and assignment of the amended SIM USA FFS Leases to NewCo.

- The Company's transfer of all right, title, and interest in the SIM Industries A320 FFSs to SIM for €1.00 (EUR) per SIM Industries A320 FFS and SIM's upgrade of the SIM Industries A320 FFSs.

- SIM and the Company (and/or NewCo)'s entry into a 10-year operational lease for each of the SIM Industries A320 FFSs, in the form attached to the Term Sheet.

---

[3] Non-Debtor Avenger Germany's continuing obligations, including to its employees, are offset by SIM on a monthly basis against the amounts owed by Avenger Germany to SIM.

[4] The following is by way of summary only, in the event of any inconsistency between the Settlement Agreement and this Motion, the Settlement Agreement will govern.

- SIM's completion of hardware, data, and other upgrades to the SIM USA FFSes and the SIM Industries A320 FFSes.

- The assumption and assignment of the balance of the SIM Leases to NewCo.

- The payment and/or reimbursement of certain of SIM's attorney fees and expenses.

- A designee of SIM, at SIM's election, becoming either a member of the Company's Board or a Board observer.

- Broad mutual releases between the Debtors, SIM, and the Lenders.

## RELIEF REQUESTED

15.    By this Motion, the Debtors seek entry of the Proposed Order approving the Settlement Agreement and granting related relief pursuant to Bankruptcy Rule 9019 and 11 U.S.C. §§ 105, 363, and 365.

## BASIS FOR RELIEF REQUESTED

A.    **The Court Should Approve the Settlement Agreement Between the Parties**

16.    The Settlement Agreement allows the Debtors and their constituents to effectuate a value-maximizing going-concern transaction for the benefit of all of the Debtors' stakeholders. Absent the Settlement Agreement, the Debtors will not have a viable going-concern business operation.

17.    Settlements in bankruptcy are favored as a means of minimizing litigation, expediting the administration of the bankruptcy estate, and providing for the efficient resolution of bankruptcy cases. *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996). Bankruptcy Rule 9019 provides that on motion by the trustee (or debtor in possession) and after notice and a hearing, the Court may approve a compromise or settlement. In deciding whether to approve a settlement pursuant to Bankruptcy Rule 9019, the Court should determine whether the compromise is fair, reasonable, and in the interests of the estates. *In re Marvel Entertainment Group, Inc.*, 222

B.R. 243, 249 (D. Del. 1998). The decision whether to accept or reject a compromise lies within

the sound discretion of the Court. *In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D.

Pa. 1986).

18.     In making this determination, the United States Court of Appeals for the Third

Circuit has provided four criteria that a bankruptcy court should consider: (a) the probability of

success in litigation; (b) the likely difficulties in collection; (c) the complexity of the litigation

involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount

interest of the creditors. *Martin*, 91 F.3d at 393. Courts generally defer to a debtor's business

judgment when there is a legitimate business justification for the trustee's decision. *Id*. at 395.

19.     When applying the *Martin* factors to a particular motion, "the court is not supposed

to have a 'mini-trial' on the merits, but should canvass the issues to see whether the settlement

falls below the lowest point in the range of reasonableness." *Aetna Casualty & Surety Co. v.*

*Jasmine, Ltd (In re Jasmine, Ltd)*, 258 B.R. 119, 123 (D. N.J. 2000) (internal quotations omitted);

*see also In re TSIC, Inc*., 393 B.R. 71, 79 (Bankr. D. Del. 2008); *In re World Health Alternatives,*

*Inc*., 344 B.R. 291, 296 (Bankr. D. Del. 2006). Although approval of a compromise is within the

"sound discretion" of the bankruptcy court (*World Health*, 344 B.R. at 296), the court should not

substitute its judgment for that of a trustee or debtor in possession. *In re Parkview Hosp.-*

*Osteopathic Med. Ctr*., 211 B.R. 603, 610 (Bankr. N.D. Ohio 1996). The ultimate inquiry is

whether the compromise is "fair, reasonable, and in the interests of the estate." *TSIC*, 393 B.R. at

78. A court need not be convinced that a proposed settlement is the best possible settlement, but

"must conclude that it is within the reasonable range of litigation possibilities." *World Health*, 344

B.R. at 296 (internal citations omitted).

20.     The Debtors believe entry into the Settlement Agreement is fair and reasonable and

is in the best interests of these estates and creditors, and should be approved pursuant to Bankruptcy Rule 9019.  The Settlement Agreement is the product of good-faith discussions and arms' length bargaining among the Parties and the Debtors believe that the Settlement Agreement is in the best interests of the Debtors' estates.

        **1.**      **<u>Probability of Success, Complexity of Litigation of the Disputed Claims and Difficulties in Collection</u>.**

21.      The Settlement Agreement resolves disputes between the Debtors and SIM that would otherwise create significant risk to the Debtors' operations and ability to continue to operate as a going-concern, and which would likely result in SIM exercising its rights to take over the Company's customer agreements and assets.

22.      The Settlement Agreement resolves the SIM Claims against the Debtors such that the Debtors will not lose their operations related to the SIM Agreements, and provides a clear path forward for the critical ongoing relationship between SIM and the Company (and, NewCo, as the presumed acquirer of its assets).

23.      In the absence of the Settlement Agreement, it is likely that SIM would prevail in any litigation, as the Company has been unable to make its required payments under the applicable SIM Agreements, and the SIM Agreements provide various rights and remedies to SIM that would be catastrophic to the going-concern viability of the Debtors.

24.      Accordingly, the Settlement Agreement clearly meets these *Martin* factors and should be approved.

        **2.**      **<u>Best Interests of Creditors</u>.**

25.      Approval of the Settlement Agreement is also in the best interests of the Debtors' creditors and estates. As mentioned, the Settlement Agreement resolves the SIM Claims against the Debtors and allows the Debtors to preserve their going-concern operations. The Debtors'

stakeholders, including their customers and employees are best served through a going-concern sale rather than a liquidation. Further, the Settlement Agreement is the product of good-faith discussions and arms' length bargaining among the Debtors, the Lenders and SIM.

26.    For all the foregoing reasons, the Debtors believe the Settlement Agreement is fair and reasonable and in the best interests of the Debtors' estates and creditors, and should be approved pursuant to Bankruptcy Rule 9019.

### 2.    The Settlement is a Valid Exercise of the Debtors' Business Judgment

27.    The Debtors further submit that the Settlement Agreement is justified by a sound business purpose and constitute a sound exercise of the Debtors' business judgment. As set forth above, the Settlement Agreement resolves significant disputes between the Debtors and one of their largest lessors and suppliers without whom it would be exceedingly difficult for the Debtors to manage or run their businesses. Accordingly, entry into the Settlement Agreement and the sale of certain FFSs contemplated thereby is within the Debtors' business judgment and is necessary to efficiently and effectively administer these cases and approval is appropriate under 11 U.S.C. § 363 and pursuant to this Court's powers under 11 U.S.C. § 105(a).

### B.    Use of Property of the Estate in Connection with Settlement Agreement is Appropriate under Section 363 of the Bankruptcy Code

28.    Aside from the standards under Bankruptcy Rule 9019, settlement payments and a settlement of claims and causes of action by a debtor constitutes a use of property of the estate. *See e.g. Northview Motors, Inc. v. Chrysler Motors Corp.*, 186 F.3d 346, 350-51 (3d Cir. 1999). If a settlement is outside of the ordinary course of business of the debtor, it requires approval of the bankruptcy court pursuant to section 363(b) of the Bankruptcy Code. *See id.*; *see also Martin*, 91 F.3d at 395 n.2 ("Section 363 of the Code is the substantive provision requiring a hearing and court approval; Bankruptcy Rule 9019 sets forth the procedure for approving an agreement to settle

or compromise a controversy."). Courts normally defer to the debtor's business judgment so long as there is a legitimate business justification. *See id.*; *see also Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (Bankr. D. Del. 1999) (trustee need only have a "sound business purpose" to justify use of estate property pursuant to section 363(b)).

29.    Section 363(b)(1) of the Bankruptcy Code provides, in pertinent part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1). Courts interpreting section 363(b) have held that transactions should be approved pursuant to this provision when, as here, a "sound business purpose" exists to justify the transaction. *See, e.g., Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Co. (In re Montgomery Ward Holding Co.*), 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtor to show that a sound business purpose justifies such actions."); *In re Del. & Hudson R.R. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b)); *see also Myers v. Martin (In re Martin*), 91 F.3d 389, 395 (3d Cir. 1996) ("Indeed, under normal circumstances the court would defer to the trustee's judgment so long as there is a legitimate business justification."). "In evaluating whether a sound business purpose justifies the use, sale or lease of property under Section 363(b), courts consider a variety of factors, which essentially represent a 'business judgment test.'" *Montgomery Ward*, 242 B.R. at 153.

30.    Once the Debtors articulate a valid business justification, "[t]he business judgment rule 'is a presumption that in making the business decision the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action was in the best interests of

the company." *In re S.N.A. Nut Co.*, 186 B.R. 98, 102 (Bankr. N.D. Ill 1995) (citations omitted); *In re Filene's Basement, LLC*, 11-13511 (KJC), 2014 WL 1713416, at *12 (Bankr. D. Del. Apr. 29, 2014) ("If a valid business justification exists, then a strong presumption follows that the agreement at issue was negotiated in good faith and is in the best interests of the estate") (citations omitted); *Integrated Res.*, 147 B.R. at 656; *In re Johns-Manville Corp.*, 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to a debtor's management decisions.").

31.    Here, the Debtors submit that approval under section 363(b) of the Bankruptcy Court is within the sound business judgment of the Debtors.  The Settlement Agreement provides for, among other terms, payment of the Lease Cure Payment and transfer of the Company's right, title and interest in the SIM Industries A320 FFSs to SIM, as well as mutual releases and waivers of potential claims.  *See Northview Motors*, 186 F.3d at 350 (settling a claim against a third party constitutes a sale of the claim under section 363 and subject to court approval).  For all the reasons set forth above, the Debtors, in an exercise of their sound business judgment, submits that the Settlement Agreement is fair, reasonable, and appropriate and should be approved by this Court.

**C.    Assumption and Assignment of SIM Leases are Appropriate under Section 365 of the Bankruptcy Code**

32.    Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the court's approval, may . . . assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).  The decision to assume or reject an executory contract or unexpired lease is a matter within the debtor's "business judgment." *See NLRB. v. Bildisco & Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir. 1982), *aff'd* 465 U.S. 513, 104 S. Ct. 1188, 79 L. Ed. 2d 482 (1984) ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test." (citation omitted)); *see also*

*In re Fed. Mogul Global, Inc.*, 293 B.R. 124, 126 (D. Del. 2003) ("As applied in the Third Circuit, a court should approve a debtor's use of assets outside the ordinary course of business if the debtor can demonstrate a sound business justification for the proposed transaction."). Under the business judgment standard, a court should approve a debtor's business decision unless the decision is the product of "bad faith, whim, or caprice." *See In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001) (citations omitted); *Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (noting that, absent extraordinary circumstances, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course").

33.    The Debtors submit that the assumption and assignment to NewCo of the SIM Leases, subject to the Lease Cure Payment or other terms set forth in the Settlement Agreement, as set forth therein, is a component of the settlement memorialized in the Settlement Agreement and represents a sound exercise of their business judgment. Therefore, entry of an order granting this Motion is an integral part of the Settlement Agreement and has been agreed to by the Parties.

34.    The Court may also grant the relief requested herein pursuant to its inherent equitable powers. Bankruptcy Code section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). It is generally recognized that "[s]ection 105(a) authorizes the bankruptcy court, or the district court sitting in bankruptcy, to fashion such orders as are required to further the substantive provisions of the Code." *See In re Morristown & E. R. Co.*, 885 F.2d 98, 100 (3d Cir. 1989) (citing COLLIER ON BANKRUPTCY, ¶ 105.04 at 105-15 & n.5 (15th rev. ed. 1989)).

## NOTICE

35.    The Debtors will provide notice of this Motion to: (i) the Office of the U.S. Trustee

for the District of Delaware, 844 King Street, Suite 2207, Lock Box 35, Wilmington, Delaware,

19801, Attn: Jon Lipshie, Esq. (jon.lipshie@usdoj.gov); (ii) the holders of the 30 largest unsecured

claims against the Debtors (on a consolidated basis); (iii) counsel to the DIP Lenders, (a) Proskauer

Rose LLP, Eleven Times Square, New York, New York 10036 (Attn: David M. Hillman

(dhillman@proskauer.com) and Matthew R. Koch (mkoch@proskauer.com)), and (b) Landis Rath

& Cobb LLP, 919 Market Street, Suite 1800, Wilmington, Delaware 19801 (Attn: Matthew B.

McGuire (mcguire@lrclaw.com)); (iv) counsel to the DIP Agent, (a) Alston & Bird LLP, 90 Park

Avenue, New York, New York 10016 (Attn: William Hao (william.hao@alston.com) and Dylan

S. Cassidy (dylan.cassidy@alston.com); (v) the United States Attorney's Office for the District of

Delaware; (vi) the state attorneys general for all states in which the Debtors conduct business; (vii)

the Securities Exchange Commission; (viii) the Banks; and (ix) any party that requests service

pursuant to Bankruptcy Rule 2002.

## CONCLUSION

WHEREFORE, the Debtors request that this Court enter an order, in substantially the same form as the Proposed Order, approving the Settlement Agreement, and grant such other and further relief as may be just and proper.

Dated:   February 12, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Mary F. Caloway*

Richard M. Pachulski, Esq. (admitted *pro hac vice*)
Mary F. Caloway, Esq. (DE Bar No. 3059)
919 North Market Street, 17th Floor
Wilmington, DE 19801
Telephone:   (302) 652-4100
Facsimile:   (302) 652 4400
Email:        rpachulski@pszjlaw.com
              mcaloway@pszjlaw.com

- and -

Gregory V. Demo, Esq. (admitted *pro hac vice*)
Cia H. Mackle, Esq. (admitted *pro hac vice* forthcoming)
1700 Broadway, 36th Floor
New York, NY 10019
Telephone:   (212) 561-7700
Facsimile:   (212) 561-7777
Email:        gdemo@pszjlaw.com
              cmackle@pszjlaw.com

*Proposed Counsel to the Debtors and Debtors in Possession*