# Exhibit 1

## Motion

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AVENGER FLIGHT GROUP, LLC, *et al.*, | Case No. 26-10183 (___) |
| Debtors.[1] | (Joint Administration Requested) |

**MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO MAINTAIN THEIR INSURANCE POLICIES AND PROGRAMS, (B) HONOR ALL INSURANCE OBLIGATIONS, (C) RENEW, AMEND, SUPPLEMENT, EXTEND, OR PURCHASE AND FINANCE INSURANCE POLICIES; (II) AUTHORIZING CONTINUATION OF INSURANCE PREMIUM FINANCING AGREEMENT; AND (III) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors" or "AFG") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") hereby file this motion (the "Motion") for the entry of an interim order on an expedited basis, substantially in the form attached hereto as **Exhibit A** (the "Interim Order") and, following a final hearing to be set by the Court (the "Final Hearing"), the entry of a final order, substantially in the form attached hereto as **Exhibit B** (the "Final Order"), pursuant to sections 105, 363(b)(1), 503(b)(1), 1107(a), and 1112(b)(4)(C) of title 11 of the United State Code (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"): (i) authorizing, but not directing, the Debtors to continue their existing Insurance Policies (as defined below);

---

[1] The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are:  Avenger Flight Group, LLC (1216); AFG Dallas III, LLC (5615); AFG Dallas IV, LLC (5558); AFG Dallas, LLC (3418); AFG EU Operations Corp. (9406); AFG FLL, LLC (6470); AFG Latam Holding Corp. (6475); AFG Latam Sim Holdings II, LLC (0473); AFG Latam Sim Holdings III, LLC (2592); AFG Latam Sim Holdings IV, LLC (0093); AFG Latam Sim Holdings, LLC (6475); AFG Latam, LLC (9545); AFG Mexico Corp. (1402); AFG Orlando, LLC (8409); AFG Sanford, LLC (6661); AFG Sim Holding Corp. (3325); Avenger Flight Group Europe, Corp. (5908); Avenger Flight Group Topco, LLC (5643); Avenger Flight Training, LLC (5640); Avenger Flight Group Mexico II, S. de R.L. de C.V, (N/A); and Papi Flight Training, LLC (6206). The location of the Debtors' corporate headquarters and the Debtors' service address is Avenger Flight Group LLC, 1450 Lee Wagener Blvd., Fort Lauderdale, FL  33315.



(ii) authorizing, but not directing, the Debtors to pay certain (a) prepetition Insurance Obligations (as defined below), and (b) postpetition Insurance Obligations in the ordinary course of business; (iii) authorizing the Debtors to renew, amend, supplement, extend, or purchase and finance insurance policies in the ordinary course; (iv) authorizing the Debtors, in their discretion, to continue the Debtors' insurance premium financing agreement; and (v) granting related relief. In support of this Motion, the Debtors rely upon and refer this Court to the *Declaration of Lawrence Perkins in Support of the Debtors' Chapter 11 Petitions and First Day Relief* (the "First Day Declaration"), incorporated herein by reference.[2] In further support of the Motion, the Debtors respectfully represent as follows:

## Jurisdiction and Venue

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution. The Debtors confirm their consent, within the meaning of Rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2] A capitalized term used but not defined herein shall have the meaning ascribed to it in the First Day Declaration.

3.      The statutory bases for the relief requested herein are sections 105, 363(b)(1), 364(c), 503(b)(1), 1107(a), and 1112(b)(4)(C) of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004 and Local Rule 9013-1.

## Background

4.      On the date hereof (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Cases, and no committees have been appointed or designated.

5.      Avenger Flight Group, LLC ("AFG LLC") and its affiliates (collectively, "Avenger" or the "Company") is a global leader in the commercial aviation simulation and training business.  Avenger provides a full suite of advanced flight simulator training solutions to their customers, which include blue-chip passenger airlines, regional airlines, charter operators, and training operators.  As of the Petition Date, the Company owns, operates or services 50 full-flight simulators and 15 flight training devices across 11 training centers in 4 countries.

6.      A detailed description of the Debtors' business and facts precipitating the filing of the Debtors' chapter 11 proceedings are set forth in the First Day Declaration.

## The Insurance Policies and Related Payment Obligations

7.      In the ordinary course of business, the Debtors are the beneficiaries of certain insurance policies (collectively, the "Insurance Policies," and each individually an "Insurance Policy") that provide coverage for, among other things, property, business automobile, general commercial liability, directors' and officers' liability, and workers' compensation liability. The Debtors obtain the Insurance Policies through various third-party insurance carriers

(collectively, the "Insurance Carriers").  A list of the Insurance Policies is attached hereto as **Exhibit C**.[3]  As part of maintaining their Insurance Policies in the ordinary course of business, the Debtors pay premiums and other obligations related thereto, including any broker or advisor fees, assessments, or other fees (collectively, the "Insurance Obligations").  The Debtors believe that they are current on payment of all prepetition Insurance Obligations.

8.      The Insurance Policies are essential to the ongoing operation of the Debtors' business. The majority of the Insurance Policies are renewed on an annual basis. The annual premiums for the Insurance Policies total approximately $1.4 million in the aggregate (collectively, the "Insurance Policy Premiums"), of which approximately $250,000 is financed through a third-party premium financing company, AFCO Direct (the "Premium Financing Company").  The Debtors estimate that, as of the Petition Date, approximately $150,000 remains outstanding on account of the Insurance Policy financed through the Premium Financing Company. In addition, four (4) policies are paid directly to the carrier or broker on an installment basis, of which approximately $100,000 in installment payments has not yet been billed. While the Debtors are current on their insurance obligations, out of an abundance of caution, the Debtors seek authority to pay any prepetition obligations owing on account of the Insurance Policies in the ordinary course of business as they become due to ensure uninterrupted coverage thereunder.

9.      The Debtors use Willis Towers Watson plc, CAC Group, and Marsh FINPRO (the "Brokers") as their insurance brokers to assist with the procurement and negotiation of certain Insurance Policies, and the Brokers assess certain fees or commissions ("Brokers' Fees") that are

---

[3]    The Debtors believe that **Exhibit C** is a complete list of the Insurance Policies.  However, to the extent that any Insurance Policy has been omitted, or the Debtors obtain new Insurance Policies, the Debtors request that the relief sought herein applies to such Insurance Policies as well.

included and paid as part of the applicable Insurance Policies.  The Debtors are current on payment

of outstanding prepetition Brokers' Fees.

10.      Continuation of the Insurance Policies, and entry into new insurance policies and

related financing agreements, is essential to the preservation of the value of the Debtors' businesses

and operations.  Moreover, in many instances, insurance coverage is required by the regulations,

laws, and contracts that govern the Debtors' commercial activities, including the Office of the

United States Trustee's (the "U.S. Trustee") requirement that a debtor maintain adequate coverage

given the circumstances of its chapter 11 case.  Accordingly, the Debtors request authorization,

but not direction, to continue prepetition practices related to the Insurance Policies, satisfy

prepetition obligations related thereto, and enter into new insurance policies and related financing

arrangements, as applicable, in the ordinary course of business on a postpetition basis, subject to

applicable law.

### Insurance Premium Financing Agreement

11.      In the ordinary course, the Debtors finance the premium payments for one

Insurance Policy (the "Financed Policy") pursuant to a premium financing agreement (the

"Premium Financing Agreement") with the Premium Financing Company. A copy of the Insurance

Premium Financing Agreement is attached hereto as **Exhibit D**.  The obligations under the

Insurance Premium Financing Agreement (the "Premium Financing Obligations") are secured by

any and all unearned or return premiums and dividends that may become due under the policies

purchased in connection with the Insurance Premium Financing Agreement.  Among the potential

remedies available to AFCO for non-payment is the ability to cancel the Insurance Policies and

seek a refund of the Insurance Premiums it financed.  As of the Petition Date, the Debtors are

current on their Premium Financing Obligations.  Pursuant to the Premium Financing Agreement,

the Debtors are required to pay monthly installments of approximately $24,000 on account of the Financed Policies. The aggregate annual premium for the Financed Policies is approximately $250,000 including applicable taxes and surcharges, with an interest rate of approximately 9.5% percent.

12.     As of the Petition Date, approximately $150,000 remains outstanding under the Premium Financing Agreement, with no amounts in arrears. The Debtors expect that this $150,000 will come due postpetition in the ordinary course. The Debtors seek authority, but not direction, to pay related prepetition obligations under the Premium Financing Agreement and any related postpetition obligations due in the ordinary course and enter into new agreements as needed to finance the premiums under the affected Insurance Policies and to pay any associated Premium Financing Obligations.

## **Relief Requested**

13.     The Debtors seek entry of the proposed Interim Order in substantially the form attached hereto as Exhibit A, and entry of the proposed Final Order in substantially in the form attached hereto as Exhibit B (together, the "Proposed Orders"):  (i) authorizing, but not directing, the Debtors to continue their existing Insurance Policies; (ii) authorizing, but not directing, the Debtors to pay certain (a) prepetition Insurance Obligations, and (b) postpetition Insurance Obligations in the ordinary course of business; (iii) authorizing the Debtors to renew, amend, supplement, extend, or purchase and finance insurance policies in the ordinary course; (iv) authorizing  the  Debtors,  in their discretion, to continue the Debtors' insurance premium financing agreement; and (v) granting related relief.  In addition, the Debtors request that the Court schedule a final hearing within approximately thirty-five (35) calendar days of the commencement of the Chapter 11 Cases to consider approval of this Motion on a final basis.

**Basis for Relief**

**A.**     **Continuation of the Insurance Policies is Required
by the Bankruptcy Code and U.S. Trustee Guidelines**

14.     Section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case.  11 U.S.C. § 1112(b)(4)(C).  In addition, in many instances, the coverage provided under the Insurance Policies is required by the regulations, laws, and contracts that govern the Debtors' commercial activities, including the operating guidelines issued by the Office of the United States Trustee for Region 3 (the "U.S. Trustee Guidelines"). Accordingly, the Debtors believe that it is essential to their estates, and consistent with the Bankruptcy Code and the U.S. Trustee Guidelines, that they continue to satisfy all Insurance Obligations related to the Insurance Policies and related financing agreements and that they have the authority to supplement, amend, extend, renew, or replace their Insurance Policies as needed, in their judgment, without further order of the Court.

**B.**     **Satisfying the Insurance Obligations under the Insurance Policies and
Related Financing Agreements in the Ordinary Course of Business Is Warranted**

15.     Under section 363(b) of the Bankruptcy Code, a debtor-in-possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Section 363(c) of the Bankruptcy Code authorizes a debtor-in-possession to "enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and . . . use property of the estate in the ordinary course of business without notice or a hearing."  11 U.S.C. § 363(c)(1).  Maintenance of the Debtors' Insurance Policies and insurance financing programs, including payment of the prepetition and postpetition Insurance Obligations, renewing the Insurance Policies, and entering into new insurance arrangements, are within the ordinary course of the Debtors' business.

16.     Further, even if the continuation or renewal of the Insurance Policies was not considered to be ordinary course, under applicable case law, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved. *See, e.g.*, *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991); *Stephens Indus. Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtors to show that a sound business purpose justifies such actions."); *In re Del. & Hudson R.R. Co.*, 124 B.R. 169, 175–76 (D. Del. 1991) (stating that courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b) of the Bankruptcy Code).

17.     Moreover, pursuant to section 105(a) of the Bankruptcy Code, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The purpose of section 105(a) is "to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." 2 Collier on Bankruptcy § 105.01 (15th ed., rev. 2008). Section 105(a) of the Bankruptcy Code essentially codifies the bankruptcy courts' equitable powers.

18.     The Insurance Policies provide the Debtors with essential insurance coverage. Any lapse in the coverage to be provided under the Insurance Policies could expose the Debtors to substantial liability, monetary and otherwise, for injuries, damages, and penalties for failing to maintain proper insurance. Therefore, in light of the importance of the Insurance Policies, the Debtors should be permitted to exercise their reasonable business judgment to continue and renew the Insurance Policies as they expire.

19.     Courts in this district have routinely granted relief similar to that requested herein. *See, e.g.*, *In re American Signature, Inc.*, No. 25-12105 (JKS) (Bankr. D. Del. Dec. 31, 2025); *In re Marelli Auto. Lighting USA LLC*, No. 25-11034 (CTG) (Bankr. D. Del. July 22, 2025); *In re Am. Tire Distribs.*, Inc., No. 24-12391 (CTG) (Bankr. D. Del. Nov. 18, 2024); *In re GigaMonster Networks, LLC*, No. 23-10051 (JKS) (Bankr. D. Del. Feb. 9, 2023); *In re Medly Health Inc.*, No. 22-11257 (Bankr. D. Del. Jan. 6, 2023); *In re First Guar. Mortg. Corp.*, No. 22-10584 (CTG) (Bankr. D. Del. July 26, 2022); *In re CarbonLite Holdings LLC*, No. 21-10527 (JTD) (Bankr. D. Del. Apr. 7, 2021); *In re Advantage Holdco, Inc.*, No. 20-11259 (JTD) (Bankr. D. Del. June 30, 2020); *In re Hertz Corp.*, No. 20-11218 (MFW) (Bankr. D. Del. June 25, 2020); *In re Exide Holdings, Inc.*, No. 20-11157 (CSS) (Bankr. D. Del. June 18, 2020); *In re Rentpath Holdings, Inc.*, No. 20-10312 (BLS) (Bankr. D. Del. Mar. 10, 2020); *In re Melinta Therapeutics, Inc.*, No. 19-12748 (LSS) (Bankr. D. Del. Feb. 7, 2020); *In re J & M Sales Inc.*, No. 18-11801 (LSS) (Bankr. D. Del. Aug. 27, 2018); *In re Samuels Jewelers, Inc.*, No. 18-11818 (KJC) (Bankr. D. Del. Aug. 8, 2018).

**C.      The Debtors Should Be Authorized to Honor their Insurance Obligations Under and Renew or Otherwise Obtain Postpetition Premium Financing**

20.     Insurance premium financing traditionally involves an advance by the finance company to the insurance company or its agent of the premium due for the full term of the insurance policy.  "This advance is then repaid by the insured to the finance company in amortized monthly installments which include an additional amount to cover financing charges.  The financing company is secured in making this advance payment by obtaining the right to cancel the policy and to receive the return premium due upon cancellation if timely repayments are not made." *Baker & Co. v. Preferred Mut. Ins. Co.*, 569 F.2d 1347, 1348 (5th Cir. 1978).  The return premium due to the finance company upon cancellation is known as an unearned premium.

21.     Security interests created by premium financing agreements have been recognized as creating secured claims in bankruptcy to the extent of the amount of unearned premiums financed pursuant to such agreements and, by extension, entry into purchase finance agreements constitutes the incurrence of secured credit.  *See TIFCO, Inc. v. U.S. Repeating Arms Co. (In re U.S. Repeating Arms Co.)*, 67 B.R. 990, 994–95 (Bankr. D. Conn. 1986); *Drabkin v. A.I. Credit Corp. (In re Auto-Train Corp.)*, 9 B.R. 159, 164–66 (Bankr. D.D.C. 1981).  If the Debtors fail to honor the Insurance Premium Financing Agreement, the Premium Financing Company could seek to cancel the financed policies for non-payment and may accelerate and declare due and payable the entire unpaid premiums upon the Debtors' failure to honor their obligations under the Insurance Premium Financing Agreement.  Because the Debtors are required to maintain insurance coverage during these Chapter 11 Cases, the cancellation of these policies would be particularly disastrous.  Accordingly, the Debtors submit that payment of the prepetition amounts outstanding and the monthly installment payments under the Insurance Premium Financing Agreement is necessary and appropriate and may be authorized under sections 105(a) and 363(b) of the Bankruptcy Code.

22.     Pursuant to section 364(c) of the Bankruptcy Code, a debtor may, in the exercise of its business judgment, incur secured postpetition debt if the debtor has been unable to obtain unsecured credit and the borrowing is in the best interests of the estate.  *See, e.g.*, *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (stating that with respect to postpetition credit, courts "permit debtors in possession to exercise their basic business judgment consistent with their fiduciary duties"); *In re Simasko Prod. Co.*, 47 B.R. 444, 448–49 (D. Colo. 1985) (authorizing an interim financing agreement where the debtors' business judgment indicated that the financing was necessary and reasonable for the benefit of the debtors' estates).  Given the prevailing practices in the premium financing business, the Debtors believe that it is highly

unlikely they would be able to obtain financing for their premiums under the Insurance Policies absent a secured financing agreement. Accordingly, the Debtors submit that entry into any replacement financing agreement and granting security interests to secure such obligations is appropriate under section 364(c) of the Bankruptcy Code.

23. Courts in this district recognize the importance of a debtor renewing and honoring obligations under premium financing agreements and have granted relief similar to the relief requested herein. *See, e.g.*, *In re American Signature, Inc.*, No. 25-12105 (JKS) (Bankr. D. Del. Nov. 22, 2025); *In re Claire's Holdings LLC*, No. 25-11454 (BLS) (Bankr. D. Del. Sept. 8, 2025) (authorizing the debtors to honor obligations under and renew premium financing agreements); *In re At Home Grp. Inc.*, No. 25-11120 (JKS) (Bankr. D. Del. July 14, 2025) (same); *In re Liberated Brands LLC*, No. 25-10168 (JKS) (Bankr. D. Del. Feb. 28, 2025) (same); *In re Accuride Corp.*, No. 24-12289 (JKS) (Bankr. D. Del. Nov. 13, 2024) (same); *In re SunPower Corp.*, No. 24-11649 (CTG) (Bank. D. Del. Aug. 29, 2024) (same).

**D.** **Cause Exists to Authorize the Debtors'**
**Financial Institutions to Honor Checks and Electronic Funds Transfers**

24. The Debtors have sufficient funds to pay the amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations and access to debtor-in-possession financing. In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the Insurance Policies. Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently. Therefore, the Debtors respectfully request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests with respect to the relief requested in this Motion.

## Satisfaction of Bankruptcy Rule 6003

25.     The Debtors believe that they are entitled to immediate authorization for the relief contemplated by this Motion.  Pursuant to Bankruptcy Rule 6003, "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting the following: . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition, but not a motion under Rule 4001."  Fed. R. Bankr. P. 6003.  As described above, continuing insurance coverage during these Chapter 11 Cases is necessary to the continuation of the Debtors' business operations.  Failure to receive such authorization and other relief during the first 21 days of these Chapter 11 Cases would severely disrupt the Debtors' business operations at this critical juncture and add needless costs to the administration of these cases.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## Waiver of Bankruptcy Rule 6004(h)

26.     To implement the foregoing successfully, the Debtors request that the Court find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances and waive the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).  As explained above and in the First Day Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors.  Accordingly, cause exists to justify a finding that the notice requirements under Bankruptcy Rule 6004(a) have been satisfied, and to support the grant of a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent that such notice requirements and such stay apply.

## **Reservation of Rights**

27.     Nothing contained herein is intended or shall be construed as:  (a) an admission as to the validity of any prepetition claim against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay a prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

## **Notice**

28.     The Debtors will provide notice of this Motion to: (a) the Office of the U.S. Trustee for the District of Delaware, 844 King Street, Suite 2207, Lock Box 35, Wilmington, Delaware, 19801, Attn: Jon Lipshie, Esq. (jon.lipshie@usdoj.gov); (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the Debtors' secured creditors; (d) the United States Attorney's Office for the District of Delaware; (e) the state attorneys general for all states in which the Debtors conduct business; (f) the Securities Exchange Commission; and (g) any party that requests service pursuant to Bankruptcy Rule 2002.  As this Motion is seeking "first day" relief, within two business days of the hearing on the Motion, the Debtors will serve copies of the Motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m).

## **No Prior Request**

29.     No prior request for the relief sought in this Motion has been made to this Court or any other court.

**Conclusion**

WHEREFORE, the Debtors respectfully request entry of the Proposed Orders, substantially in the forms attached hereto as <u>Exhibit A</u> (on an interim basis) and <u>Exhibit B</u> (on a final basis): (i) authorizing, but not directing, the Debtors to continue their existing Insurance Policies; (ii) authorizing, but not directing, the Debtors to pay certain (a) prepetition Insurance Obligations, and (b) postpetition Insurance Obligations in the ordinary course of business; (iii) authorizing the Debtors to renew, amend, supplement, extend, or purchase and finance insurance policies in the ordinary course; (iv) authorizing the Debtors, in their discretion, to continue the Debtors' insurance premium financing agreement; and (v) granting related relief as is just and proper.

Dated:   February 11, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Mary F. Caloway*
Richard M. Pachulski, Esq. (*pro hac vice* forthcoming)
Mary F. Caloway, Esq. (DE Bar No. 3059)
919 North Market Street, 17th Floor
Wilmington, DE 19801
Telephone:   (302) 652-4100
Facsimile:   (302) 652 4400
Email:        rpachulski@pszjlaw.com
                   mcaloway@pszjlaw.com

- and -

Gregory V. Demo, Esq. (*pro hac vice* forthcoming)
Cia H. Mackle, Esq. (*pro hac vice* forthcoming)
1700 Broadway, 36th Floor
New York, NY 10019
Telephone:   (212) 561-7700
Facsimile:   (212) 561-7777
Email:        gdemo@pszjlaw.com
                   cmackle@pszjlaw.com

*Proposed Counsel to the Debtors and Debtors-in-Possession*

**Exhibit A**

**Proposed Interim Order**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AVENGER FLIGHT GROUP, LLC, *et al.*, | Case No. 26-10183 (___) |
| Debtors.[1] | (Joint Administration Requested) |
| | **Related Docket No. [ ]** |

### INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO
### (A) CONTINUE TO MAINTAIN THEIR INSURANCE POLICIES AND PROGRAMS,
### (B) HONOR ALL INSURANCE OBLIGATIONS, (C) RENEW, AMEND,
### SUPPLEMENT, EXTEND, OR PURCHASE AND FINANCE INSURANCE POLICIES;
### (II) AUTHORIZING CONTINUATION OF INSURANCE PREMIUM FINANCING
### AGREEMENT; AND (III) GRANTING RELATED RELIEF

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), for the entry of an interim order (this "Interim Order"): (i) authorizing, but not directing, the Debtors to continue their existing Insurance Policies; (ii) authorizing, but not directing, the Debtors to pay certain (a) prepetition Insurance Obligations, and (b) postpetition Insurance Obligations in the ordinary course of business; (iii) authorizing the Debtors to renew, amend, supplement, extend, or purchase and finance insurance policies in the ordinary course; (iv) authorizing the Debtors, in their discretion, to continue the Debtors' insurance premium financing agreement; and (v) granting related relief, all

---

[1]   The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are:  Avenger Flight Group, LLC (1216); AFG Dallas III, LLC (5615); AFG Dallas IV, LLC (5558); AFG Dallas, LLC (3418); AFG EU Operations Corp. (9406); AFG FLL, LLC (6470); AFG Latam Holding Corp. (6475); AFG Latam Sim Holdings II, LLC (0473); AFG Latam Sim Holdings III, LLC (2592); AFG Latam Sim Holdings IV, LLC (0093); AFG Latam Sim Holdings, LLC (6475); AFG Latam, LLC (9545); AFG Mexico Corp. (1402); AFG Orlando, LLC (8409); AFG Sanford, LLC (6661); AFG Sim Holding Corp. (3325); Avenger Flight Group Europe, Corp. (5908); Avenger Flight Group Topco, LLC (5643); Avenger Flight Training, LLC (5640); Avenger Flight Group Mexico II, S. de R.L. de C.V, (N/A); and Papi Flight Training, LLC (6206). The location of the Debtors' corporate headquarters and the Debtors' service address is Avenger Flight Group LLC, 1450 Lee Wagener Blvd., Fort Lauderdale, FL  33315.

[2]   A capitalized term used but not defined herein have the meaning ascribed to it in the Motion.

as more fully set forth in the Motion; and upon consideration of the First Day Declaration; and the United States District Court for the District of Delaware having jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to this Court under 28 U.S.C. § 157 pursuant to the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at an interim hearing before the Court (the "Hearing"); and upon the Debtors' representation that the amounts authorized to be paid pursuant to this Interim Order are consistent with the Debtors' debtor-in-possession financing budget; and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      The final hearing (the "Final Hearing") on the Motion shall be held on _____, 2026, at__:___.m. (prevailing Eastern Time).  Any objections or responses to entry of a final order on the Motion shall be filed with the Court, and served so as to be received by the following parties, by no later than 4:00 p.m. (prevailing Eastern Time) on _____, 2026:  (i) proposed counsel to

the Debtors, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801), Attn:     Richard M. Pachulski (rpachulski@pszjlaw.com) and Mary F. Caloway (mcaloway@pszjlaw.com); (ii) the Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Jon Lipshie, Esq. (jon.lipshie@usdoj.gov); (iii) counsel to the DIP Lenders, (a) Proskauer Rose LLP, Eleven Times Square, New York, New York 10036 (Attn: David M. Hillman (dhillman@proskauer.com) and Matthew R. Koch (mkoch@proskauer.com)), and (b) Landis Rath & Cobb LLP, 919 Market Street, Suite 1800, Wilmington, Delaware 19801 (Attn: Matthew B. McGuire (mcguire@lrclaw.com)); (iv) counsel to the DIP Agent, (a) Alston & Bird LLP, 90 Park Avenue, New York, New York 10016 (Attn: William Hao (william.hao@alston.com) and Dylan S. Cassidy (dylan.cassidy@alston.com); and (v) counsel for any official committee of unsecured creditors appointed in the Chapter 11 Cases.  In the event that no objections to entry of a final order on the Motion are timely received, this Court may enter such final order without need for the Final Hearing.

3.     Subject to the Approved Budget (as defined in the *Interim Order (I) Authorizing the Debtors to Obtain Senior Secured Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief*) (the "Interim DIP Order") or the Final Order (as defined in the Interim DIP Order), as applicable), the Debtors are authorized to pay and honor any postpetition Insurance Obligations in connection with the Insurance Policies as such obligations come due in the ordinary course of business.

4.      Subject to entry of a final order and only as necessary to avoid immediate and irreparable harm, the Debtors are hereby authorized, but not directed, to:  (a) maintain their Insurance Policies without interruption, on the same basis and in accordance with the same practices and procedures that were in effect prior to the Petition Date and in the ordinary course of their business, in their business judgment and at their sole discretion; and (b) enter into new financing agreements, to the extent consistent with the Debtors' ordinary course prepetition practices, and to continue, in the ordinary course of business, their current Premium Financing Agreement; *provided* that, absent further order of the Court upon notice, during the course of these Chapter 11 Cases, the Debtors shall not renew or enter into any new premium financing agreement upon any terms less favorable than those in the existing Premium Financing Agreement.

5.      Notwithstanding anything to the contrary in the Premium Financing Agreement, in the event the Debtors default under the terms of the Premium Financing Agreement, the Premium Financing Company shall not cancel any insurance policy of the Debtors without first providing notice of such default in writing by overnight mail to the Debtors and their bankruptcy counsel, and counsel to the DIP Lenders, and at least 5 business days to cure.  If the Debtors fail to cure the default within that time, then the Premium Financing Company may, in accordance with the terms of the Premium Financing Agreement, and without further order of this Court, exercise any and all of its rights under the Premium Financing Agreement.

6.      The Debtors are authorized, but not directed, to renew, amend, supplement, extend, or purchase insurance policies, and to enter into, renew, amend, supplement, or extend premium financing agreements as necessary, to the extent that the Debtors determine that such action is in the best interest of their estates; *provided* that the Debtors shall provide prior notice of any changes

to an insurance policy or financing agreement to the U.S. Trustee, counsel to the DIP Agent, counsel to the DIP Lenders, and any official committee appointed in the Chapter 11 Cases.

7.    Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed to be: (a) an admission as to the validity of any prepetition claim against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay a prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or any order granting the relief requested by the Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

8.    Each of the banks and financial institutions at which the Debtors maintain their accounts relating to the payment of the Insurance Obligations are authorized to:  (a) receive, process, honor, and pay all checks presented for payment and to honor all funds transfer requests made by the Debtors related thereto, to the extent that sufficient funds are on deposit in those accounts; and (b) accept and rely on all representations made by the Debtors with respect to which checks, drafts, wires, or automated clearing house transfers should be honored or dishonored in accordance with this Interim Order or any other order of the Court, whether such checks, drafts, wires, or transfers are dated before, on, or after the Petition Date, without any duty to inquire otherwise.

9.    The Debtors are authorized, but not directed, to issue new postpetition checks, or effect new electronic funds transfers, on account of the Insurance Obligations, and to replace any

prepetition checks or electronic funds transfer requests that may be lost, dishonored, or rejected as a result of the commencement of these Chapter 11 Cases.

10.      Nothing contained in this Interim Order shall be construed to accelerate payments that are not otherwise due and payable.

11.      Entry of this Interim Order is necessary to avoid immediate and irreparable harm. The requirements of Bankruptcy Rule 6003(b) have been satisfied.

12.      Adequate notice of the Motion has been provided under the circumstances. Such notice satisfies the requirements of Bankruptcy Rule 6004(a). Notwithstanding Bankruptcy Rules 6004(h), 7062, and 9014, the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

13.      The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

14.      This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

**EXHIBIT B**

**Proposed Final Order**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AVENGER FLIGHT GROUP, LLC, *et al.*, | Case No. 26-10183 (___) |
| Debtors.[1] | (Joint Administration Requested) |
| | Related Docket No. [  ] |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO MAINTAIN THEIR INSURANCE POLICIES AND PROGRAMS, (B) HONOR ALL INSURANCE OBLIGATIONS, (C) RENEW, AMEND, SUPPLEMENT, EXTEND, OR PURCHASE AND FINANCE INSURANCE POLICIES; (II) AUTHORIZING CONTINUATION OF INSURANCE PREMIUM FINANCING AGREEMENT; AND (III) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), for the entry of a final order (this "Final Order"): (i) authorizing, but not directing, the Debtors to continue their existing Insurance Policies; (ii) authorizing, but not directing, the Debtors to pay certain (a) prepetition Insurance Obligations, and (b) postpetition Insurance Obligations in the ordinary course of business; (iii) authorizing the Debtors to renew, amend, supplement, extend, or purchase and finance insurance policies in the ordinary course; (iv) authorizing  the  Debtors,  in their discretion, to continue the Debtors' insurance premium financing agreement; and (v) granting related relief, all

---

[1]   The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are:  Avenger Flight Group, LLC (1216); AFG Dallas III, LLC (5615); AFG Dallas IV, LLC (5558); AFG Dallas, LLC (3418); AFG EU Operations Corp. (9406); AFG FLL, LLC (6470); AFG Latam Holding Corp. (6475); AFG Latam Sim Holdings II, LLC (0473); AFG Latam Sim Holdings III, LLC (2592); AFG Latam Sim Holdings IV, LLC (0093); AFG Latam Sim Holdings, LLC (6475); AFG Latam, LLC (9545); AFG Mexico Corp. (1402); AFG Orlando, LLC (8409); AFG Sanford, LLC (6661); AFG Sim Holding Corp. (3325); Avenger Flight Group Europe, Corp. (5908); Avenger Flight Group Topco, LLC (5643); Avenger Flight Training, LLC (5640); Avenger Flight Group Mexico II, S. de R.L. de C.V, (N/A); and Papi Flight Training, LLC (6206). The location of the Debtors' corporate headquarters and the Debtors' service address is Avenger Flight Group LLC, 1450 Lee Wagener Blvd., Fort Lauderdale, FL  33315.

[2]   A capitalized term used but not defined herein have the meaning ascribed to it in the Motion.

as more fully set forth in the Motion; and upon consideration of the First Day Declaration; and the United States District Court for the District of Delaware having jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to this Court under 28 U.S.C. § 157 pursuant to the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at an interim hearing before this Court (the "Hearing"), and the Court having entered an interim order on the Motion [Docket No. ____]; and notice of a final hearing having been provided; and upon the Debtors' representation that the amounts authorized to be paid pursuant to this Final Order are consistent with the Debtors' debtor-in-possession financing budget; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1.  The Motion is GRANTED on a final basis as set forth herein.

2.  Subject to the Approved Budget (as defined in the *Interim Order (I) Authorizing the Debtors to Obtain Senior Secured Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status,*

*(IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief*) (the "<u>Interim DIP Order</u>") or the Final Order (as defined in the Interim DIP Order), as applicable), the Debtors are authorized, but not directed, to pay, in the ordinary course of their business, all premiums, premium finance payments, claims, deductibles, retrospective adjustments, administrative and broker's fees, and all other obligations related to the Insurance Policies on account of such prepetition obligations without further order of the Court, and the Debtors are authorized to pay and honor any postpetition Insurance Obligations in connection with the Insurance Policies as such obligations come due in the ordinary course of business.

3.      The Debtors are hereby authorized, but not directed, to:   (a) maintain their Insurance Policies without interruption, on the same basis and in accordance with the same practices and procedures that were in effect prior to the Petition Date and in the ordinary course of their business, in their business judgment and at their sole discretion; and (b) enter into new financing agreements, to the extent consistent with the Debtors' ordinary course prepetition practices, and to continue, in the ordinary course of business, their current Premium Financing Agreement; *provided* that, absent further order of the Court upon notice, during the course of these Chapter 11 Cases, the Debtors shall not renew or enter into any new premium financing agreement upon any terms less favorable than those in the existing Premium Financing Agreement.

4.      Notwithstanding anything to the contrary in the Premium Financing Agreement, in the event the Debtors default under the terms of the Premium Financing Agreement, the Premium Financing Company shall not cancel any insurance policy of the Debtors without first providing notice of such default in writing by overnight mail to the Debtors and their bankruptcy counsel, and counsel to the DIP Lenders, and at least 5 business days to cure.  If the Debtors fail to cure the

default within that time, then the Premium Financing Company may, in accordance with the terms of the Premium Financing Agreement, and without further order of this Court, exercise any and all of its rights under the Premium Financing Agreement.

5.      The Debtors are authorized, but not directed, to renew, amend, supplement, extend, or purchase insurance policies, and to enter into, renew, amend, supplement, or extend premium financing agreements as necessary, to the extent that the Debtors determine that such action is in the best interest of their estates; *provided* that the Debtors shall provide prior notice of any changes to an insurance policy or financing agreement to the U.S. Trustee, counsel to the DIP Agent, counsel to the DIP Lenders, and any official committee appointed in the Chapter 11 Cases.

6.      Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed to be:  (a) an admission as to the validity of any prepetition claim against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay a prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

7.      Each of the banks and financial institutions at which the Debtors maintain their accounts relating to the payment of the Insurance Obligations are authorized to:  (a) receive, process, honor, and pay all checks presented for payment and to honor all funds transfer requests made by the Debtors related thereto, to the extent that sufficient funds are on deposit in those accounts; and (b) accept and rely on all representations made by the Debtors with respect to which

checks, drafts, wires, or automated clearing house transfers should be honored or dishonored in accordance with this Final Order or any other order of the Court, whether such checks, drafts, wires, or transfers are dated before, on, or after the Petition Date, without any duty to inquire otherwise.

8.      Nothing contained in this Final Order shall be construed to accelerate payments that are not otherwise due and payable.

9.      The Debtors are authorized, but not directed, to issue new postpetition checks, or effect new electronic funds transfers, on account of the Insurance Obligations, and to replace any prepetition checks or electronic funds transfer requests that may be lost, dishonored, or rejected as a result of the commencement of these Chapter 11 Cases.

10.     Adequate notice of the Motion has been provided under the circumstances.  Such notice satisfies the requirements of Bankruptcy Rule 6004(a).   Notwithstanding Bankruptcy Rules 6004(h), 7062, and 9014, the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

11.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

12.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

# EXHIBIT C

## List of Insurance Policies

| Type of Coverage | Insurer | Debtor | Policy Number | Period | Financed? |
|---|---|---|---|---|---|
| Commercial Property Package | The Travelers Lloyds Insurance Company | Avenger Flight Group LLC | Y-630-B3965899-TLC-25 | 6/6/2025-6/6/2026 | Paid in installments |
| Flood | Wright Flood | Avenger Flight Group LLC | 09 1152247941 03 | 12/10/2025-12/10/2026 | No |
| Business Auto | Fidelity and Guaranty Insurance Company | Avenger Flight Group LLC | BA-B3965709-25-14-G | 6/6/2025-6/6/2026 | Paid in installments |
| Aviation Liability | National Union Fire Insurance Company of Pittsburg, PA | Avenger Flight Group LLC | AP 018100015-05 | 9/5/2025 - 9/5/2026 | Yes |
| Workers' Compensation | Starr Indemnity & Liability Company | Avenger Flight Group LLC | 100 0005687 | 1/1/2026 - 1/1/2027 | Paid quarterly |
| International Package – US Master | Zurich American Insurance Company | Avenger Flight Group LLC | ZE 2513793-01 | 11/6/2025 - 11/6/2026 | Paid in installments |
| International Package - Colombia | Zurich American Insurance Company | Avenger Flight Group LLC | ZE 2513793-01 | 11/6/2025 - 11/6/2026 | No |
| International Package - Germany | Zurich American Insurance Company | Avenger Flight Group LLC | ZE 2513793-01 | 11/6/2025 - 11/6/2026 | No |
| Directors & Officers Liability | Continental Casualty Company | Avenger Flight Group LLC | 7068767453 | 1/9/2026 - 1/9/2027 | No |
| Excess Directors & Officers Liability – Lead Side A | Great American E&S Insurance Company - TANGO | Avenger Flight Group LLC | ASXF243699 | 1/9/2026 - 1/9/2027 | No |

| Type of Coverage | Insurer | Debtor | Policy Number | Period | Financed? |
|---|---|---|---|---|---|
| Cyber Security Liability | Continental Casualty Company | Avenger Flight Group LLC | D38F4E250101 | 1/24/2026 - 1/24/2027 | No |
| Directors and Officers and Excess Liability | Everest National Insurance | Avenger Flight Group LLC | SA00000182-251 | 9/22/2025 - 9/22/2026 | No |
| Directors and Officers and Excess Liability | QBE Insurance Corporation | Avenger Flight Group LLC | 130016303 | 9/22/2025 - 9/22/2026 | No |
| Directors and Officers Difference in Conditions Liability | Endurance American Specialty Insurance Company | Avenger Flight Group LLC | ADL30095923700 | 8/26/2025 - 8/26/2026 | No |

**EXHIBIT D**

**Insurance Premium Financing Agreement**



# AFCODIRECT
A division of AFCO Credit Corporation

## PREMIUM FINANCE AGREEMENT-PROMISSORY NOTE

150 North Field Drive, Suite 190, Lake Forest, Illinois 60045
Phone 877-226-5456  www.afcodirect.com

Quote Number
2836435.1

| Agent/Broker/Producer (Name and Address)  CODE: | Insured (Name and Address as shown on the policy(ies) including all insureds covered by the policies below) |
|---|---|
| Willis Towers Watson Insurance Services West, Inc. - Denver<br>555 17th St, Suite 2050<br>Denver, CO 80202 | Avenger Flight Group LLC<br>1450 Lee Wagner Blvd<br>Building #300<br>Fort Lauderdale, FL 33315 |
| Telephone Number: 303-722-7776   Agency Code: WTW034 | Telephone Number: |

## Creditor: AFCO Credit Corporation

### Federal Truth In Lending Disclosures

| (A) Total Premiums | (B) Down Payment | (C) Amount Financed (The amount of credit provided to you or on your behalf) | (D) FINANCE CHARGE (The dollar amount the credit will cost you) | (E) Doc Stamps | (F) Total of Payments (The amount you will have paid after you have made all payments as scheduled) | (G) ANNUAL PERCENTAGE RATE (The cost of your credit as a yearly rate) |
|---|---|---|---|---|---|---|
| $272,654.55 | $23,718.47 | $248,936.08 | $11,967.12 | $871.50 | $261,774.70 | 9.49% |

| Your PAYMENT SCHEDULE will be: Monthly | *Includes a non-refundable service charge of $20.00 | If the borrower under this Agreement is a consumer, you will receive an Itemization of the Amount Financed. |
|---|---|---|
| **No. of Payments** | **Amount of Payments** | **When Payments are Due** | |
| 11 | $23,797.70 | On the 5th day of the month, beginning 10/5/2025 | |

**Security**: You are giving a security interest in any and all unearned or return premium(s) and dividends which may become due under the policy(ies) being purchased.
**Late Charge**: You will be charged the greater of 5% or $10.00 on any payment received more than 5 days after the due date.  If the Agreement is primarily for personal, family or household purposes, the charge will not exceed $10.00.
**Cancellation Charge**: You will be charged a cancellation charge of $15.00 if AFCO cancels any insurance policy in accordance with the terms of this Agreement.
**Prepayment**: If you voluntarily prepay in full prior to the last installment due date you will not be charged a prepayment fee and you may be entitled to a refund of part of the finance charge.
**See Above** and on the last page of this document for any additional information about non-payment default, any repayment in full before the scheduled date, and prepayment refunds and penalties.

## SCHEDULE OF POLICIES

| Policy Prefix and Numbers | Effective Date of Policy/Inst. | Name of Insurance Company and Address of General or policy Issuing Agent or Intermediary | Type of Coverage | Months Covered | Premium $ |
|---|---|---|---|---|---|
| TBD | 9/5/2025 | National Union Fire Ins Co of Pittsburgh PA<br>1271 Ave of the Americas, FL 37 New York, NY 10020 | LIABILITY | 12 | $269,955.00 |
| Audit= N<br>Min Ernd= 0%<br>AddCxlDays= 0 | | | | Ref. Tax/Fee:<br>Non-Ref. Tax/Fee: | $2,699.55<br>$0.00 |

In consideration of the payment(s) to be made by AFCO CREDIT CORPORATION ("AFCO") to the above insurance company(ies) ("Insurer(s)"), either directly or through your or their agents, representatives, or producer, the above-named insured ("Insured") (jointly and severally if more than one):
1) PROMISE OF PAYMENT: Promises to pay to the order of AFCO at the above address or any address AFCO may designate, the Total of Payments in accordance with the Payment Schedule set forth in the above Truth-in-Lending Disclosures as well as any other sums due pursuant to this Agreement. No additional authority, acts, approvals or licenses are or will be necessary as a prerequisite to the enforceability of this Agreement. AFCO may, at its option, pay loan proceeds to any agent, broker, general agent, managing general agent or insurer set forth herein. Payments to AFCO are deemed made only upon receipt in good funds. Checks are accepted, subject to collection.
(2) SECURITY INTEREST AND POWER OF ATTORNEY: Irrevocably appoints AFCO as Attorney-In-Fact with full authority to affect cancellation of the policies covered hereby or any substitution, rewrite or renewal thereof in accordance with the provisions herein, to receive all sums assigned to AFCO or in which it has granted AFCO a security interest. AFCO may execute and deliver on behalf of the Insured all documents, forms and notices relating to the policies covered hereby in furtherance of this Agreement. The Power of Attorney is coupled with an interest and the powers given herein may be exercised by the Attorney-In-Fact, or its successors and assigns.
(3) RECEIPT OF AGREEMENT AND PRIVACY NOTICE: Acknowledges that it has received a copy of all pages of this Agreement and if the borrower is a consumer, the Insured acknowledges that he has received a copy of AFCO's Privacy Statement.
**NOTICE: 1. DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACE.  2. YOU ARE ENTITLED TO A COMPLETELY FILLED-IN COPY OF THIS AGREEMENT.  3. UNDER THE LAW, YOU HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT AND UNDER CERTAIN CONDITIONS TO OBTAIN A PARTIAL REFUND OF THE SERVICE CHARGE.**

### INSURED AGREES TO THE TERMS SET FORTH ABOVE AND ON ALL PAGES OF THIS AGREEMENT

| Avenger Flight Group LLC | _Marc C. Dulle_ | | Insured | 9/30/25 |
|---|---|---|---|---|
| **INSURED'S NAME** | **SIGNATURE OF THE INSURED OR AUTHORIZED REPRESENTATIVE** | | **TITLE** | **DATE** |

| | | | | |
|---|---|---|---|---|
| **INSURED'S NAME** | **SIGNATURE OF THE INSURED OR AUTHORIZED REPRESENTATIVE** | | **TITLE** | **DATE** |

### AGENT/BROKER/PRODUCER WARRANTIES AND REPRESENTATIONS

The undersigned warrants and agrees:  1. The policies listed in the Schedule of Policies are in full force and effect, and the information and the premiums are correct.  2. The Insured has received a copy of this Agreement, has authorized this transaction and recognizes the security interest assigned herein.  3. To hold in trust for AFCO any payments made or credited to the Insured through or to the undersigned, directly or indirectly, actually or constructively by the insurance companies, their representatives or AFCO and to pay the monies as well as any unearned commissions to AFCO upon demand to satisfy the outstanding indebtedness of the Insured.  4. Any lien the undersigned has or may acquire in the return premiums arising out of the listed insurance policies is subordinate to AFCO's lien or security interest therein.  5. The policies comply with AFCO's eligibility requirements.  6. No audit or reporting form policies, policies subject to retrospective rating or minimum earned premium are included.  7. The deposit or provision premiums are not less than anticipated premiums to be earned for the full term of the policies.  8. The policies can be cancelled by the Insured and the unearned premiums will be computed on the standard short-rate or pro-rata table.  9. A proceeding in bankruptcy, receivership, or insolvency has not been instituted by or against the named Insured borrower.  10. That it has received the down payment and any other sums due as required by the Agreement and is holding same or they are attached to this Agreement.  11. No additional authority, acts, approvals or licenses are or will be necessary as a prerequisite to the enforceability of this Agreement.  12. AFCO will rely upon these representations in determining whether to accept this Agreement.
**THE UNDERSIGNED FURTHER WARRANTS THAT IT HAS RECEIVED THE DOWN PAYMENT AND ANY OTHER SUMS DUE AS REQUIRED BY THE AGREEMENT AND IS HOLDING SAME OR THEY ARE ATTACHED TO THIS AGREEMENT**

| Willis Towers Watson Insurance Servic | | Agent | | |
|---|---|---|---|---|
| **AGENT OR BROKER** | **SIGNATURE OF AGENT OR BROKER** | **TITLE** | **DATE** |

FI AFCODIRECT 2022

1

(4) ASSIGNMENT OF SECURITY INTEREST AND POWER OF ATTORNEY: The Insured assigns and hereby gives a security interest to AFCO as collateral for the total amount payable in this Agreement and any other past, present or future extension of credit: (a) any and all unearned premiums or dividends which may become payable for any reason under all insurance policies financed by AFCO, (b) loss payments which reduce the unearned premiums, subject to any mortgagee or loss payee interests and (c) any interest in any state guarantee fund relating to any financed policy. If any circumstances exist in which all premiums related to any policy could become fully earned in the event of any loss, AFCO shall be named a loss-payee with respect to such policy. AFCO at its option may enforce payment of this debt without recourse to the security given to AFCO. The Insured irrevocably appoints AFCO as its attorney in fact with full authority to (i) cancel all insurance financed by AFCO for the reason set forth in paragraph 12, whether pursuant to this or any other agreement, (ii) receive all sums hereby assigned to AFCO and (iii) execute and deliver on the Insured's behalf all documents, instruments of payment, forms and notices of any kind relating to the insurance in furtherance of this Agreement.

(5) WARRANTY OF ACCURACY: The Insured (i) warrants that all listed insurance policies have been issued to it and are in full force and effect and that it has not and will not assign any interest in the policies except for the interest of mortgagees and loss payees; (ii) authorizes AFCO to insert or correct on this Agreement, if omitted or incorrect, the insurer's name, the policy numbers, and the due date of the first installment and to correct any obvious errors; and (iii) authorizes AFCO to correct or remedy any error or omission in the completion of this Agreement. In the event of any such change, correction or insertion, or of any change in Blocks (A) thru (F), or in the Federal Truth-In-Lending Disclosures or in the Itemization of the Amount Financed Disclosures the Insured will be notified at the address shown hereon.

(6) REPRESENTATION OF SOLVENCY: The Insured represents that it is not insolvent or the subject of any insolvency proceeding.

(7) ADDITIONAL PREMIUMS: The money paid by AFCO is only for the premium as determined at the time the insurance policy is issued. AFCO's payment shall not be applied by the insurance company to pay for any additional premiums owed by the Insured resulting from any type of misclassification of the risk. The Insured shall pay to the insurer any additional premiums or any other sums that become due for any reason. The Insured agrees that, in the event the total premiums are greater than that shown hereon, or if the Insured requests additional premiums be added or additional premiums financed, this Agreement may be amended to reflect the actual premiums and the Insured will either (i) pay the difference in premium due or (ii) pay any required additional down payment and any additional finance charge permitted by law. In such event AFCO will forward the Insured a revision notice showing all information required by law. If AFCO assigns the same account number to any additional extension or extensions of credit, (i) this Agreement and any agreement or agreements identified by such account number shall be deemed to comprise a single and indivisible loan transaction, (ii) any default with respect to any component of such transaction shall be deemed a default with respect to all components of such transaction and (iii) any unearned premiums relating to any component of such transaction may be collected and applied by AFCO to the totality of such transaction.

(8) SPECIAL INSURANCE POLICIES: If the insurance policy is auditable or is a reporting form policy or is subject to retrospective rating, then the Insured promises to pay to the insurance company the earned premium computed in accordance with the policy provisions which is in excess of the amount of premium advanced by AFCO which the insurance company retains.

(9) FIRST NAMED INSURED: If the insurance policy provides that the first named insured in the policy shall be responsible for payment of premiums and shall act on behalf of all other insureds regarding the policy, then the same shall apply to this Agreement and the Insured represents that it is authorized to sign on behalf of all insureds. If not, then all insureds' names must be shown on this Agreement unless a separate agreement appoints an insured to act for the others.

(10)    FINANCE CHARGE: The finance charge shown in Block D begins to accrue as of the earliest policy effective date, unless otherwise indicated in the Schedule of Policies, and shall continue to accrue until the balance due AFCO is paid in full or until such other date as required by law, notwithstanding any cancellation of coverage. If AFCO issues a Notice of Cancellation, AFCO may recalculate the total finance charge payable pursuant to this Agreement, and the Insured agrees to pay interest, on the Amount Financed set forth herein, from the first effective date of coverage, at the highest lawful rate of interest.

(11)    AGREEMENT BECOMES A CONTRACT: This Agreement becomes a binding contract when AFCO mails the Insured its written acceptance and is not a contract until such time. The Insured agrees that (i) this Agreement may be transmitted by facsimile, E-mail or other electronic means to AFCO, (ii) any such transmitted Agreement shall be deemed a fully enforceable duplicate original document and (iii) such Agreement, when accepted by AFCO, shall constitute a valid and enforceable contract.

(12)    DEFAULT AND DISHONORED CHECK CHARGES: If the Insured is late in making a loan payment to AFCO by more than the number of days specified by law  the Insured will pay to AFCO a delinquency charge equal to the maximum charge permitted by law . If a check is dishonored, AFCO may re-present the check electronically and collect a service fee not to exceed the lesser of $25 or the amount permitted by law.

(13)    CANCELLATION: AFCO may cancel all insurance policies financed by AFCO after giving statutory notice and the full balance due to AFCO shall be immediately payable if the Insured does not pay any installment according to the terms of this or any other Agreement with AFCO. Payment of unearned premiums shall not be deemed to be payment of installments to AFCO, in full or in part.

(14)    CANCELLATION CHARGES: If AFCO cancels any insurance policy in accordance with the terms of this Agreement the Insured will pay AFCO a cancellation charge, if permitted, up to the limit specified by law.

(15)    MONEY RECEIVED AFTER NOTICE OF CANCELLATION: Any payments made to AFCO after mailing of AFCO's Notice of Cancellation may be credited to the Insured's account without affecting the acceleration of this Agreement and without any liability or obligation to request reinstatement of a canceled policy. In the event that AFCO requests, on the Insured's behalf, reinstatement of the policy, such request does not guarantee that coverage will be reinstated. Any money AFCO receives from an insurance company shall be credited to the amount due AFCO with any surplus paid over to whomever itis entitled. No refund of less than $1.00 shall be made. In case of a deficiency, the Insured shall remain liable and pay the same with interest as set forth above.

(16)    ATTORNEY FEES - COLLECTION EXPENSE: If, for collection, this Agreement is referred to an attorney and/or other party who is not a salaried employee of AFCO, the Insured agrees to pay any reasonable attorney fees and costs as well as other reasonable collection expenses, as permitted by law or granted by the court.

(17)    PREPAYMENT AND REFUND CREDITS: The Insured may voluntarily prepay the full amount due and under certain conditions be entitled to receive a partial refund of the FINANCE CHARGE computed in accordance with the method prescribed by law, after deducting any fully earned charge permitted by law.  AFCO may retain an additional non-refundable service charge as indicated on Page 1 of this Agreement. Any minimum or fully earned fees will be deducted as permitted by law.  The Insured agrees that any refunds may be applied against any debts owed AFCO.

(18)    INSURANCE AGENT OR BROKER: The insurance agent or broker named in this Agreement is the Insured's agent, not AFCO's and AFCO is not legally bound by anything the agent or broker represents to the Insured orally or in writing. AFCO has not participated in the choice, placement, acquisition or underwriting of any financed insurance. Any disclosures made by the agent are made in its capacity as the Insured's agent and AFCO makes no representations with respect to the accuracy of any such disclosures.

(19)    NOT A CONDITION OF OBTAINING INSURANCE: This Agreement is not required as a condition of obtaining insurance coverage.

(20)    SUCCESSORS AND ASSIGNS: All legal rights given to AFCO shall benefit AFCO's successors and assigns. The Insured will not assign this Agreement and/or the policies without AFCO's written consent except for the interest of mortgagees and loss payees.

(21)    LIMITATION OF LIABILITY - CLAIMS AGAINST AFCO: The Insured hereby irrevocably waives and releases AFCO from any claims, lawsuits and causes of action which may be related to any prior loans and/or to any act or failure to act prior to the time that this Agreement becomes a binding contract, pursuant to paragraph 10. AFCO's liability for breach of any of the terms of this Agreement or the wrongful exercise of any of its powers shall be limited to the amount of the principal balance outstanding, except in the event of gross negligence or willful misconduct.

(22)    DISCLOSURE: The insurance company or companies and their agents, any intermediaries and the insurance agent or broker named in this Agreement and their successors are authorized and directed to provide AFCO with full and complete information regarding all financed insurance policy or policies, including, without limitation, the status and calculation of unearned premiums.

(23)    ENTIRE DOCUMENT - GOVERNING LAW - ENFORCEMENT VENUE: This document is the entire agreement between AFCO and the Insured and can only be changed in a writing signed by both parties except as stated in paragraph (6). The laws of the state indicated in the Insured's address as set forth herein will govern this Agreement. AFCO may, at its option, prosecute any action to enforce its rights hereunder.

(24)    WAIVER OF SOVEREIGN IMMUNITY: The Insured hereby certifies that it is empowered to enter into this Agreement without any restrictions and that the individual signing it has been fully empowered to do so. To the extent that the Insured either possesses or claims sovereign immunity for any reason, such sovereign immunity is expressly waived and the Insured agrees to be subject to the jurisdiction of the laws and courts set forth in the preceding paragraphs.

FL-AFCODIRECT-2023

2