IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>AVENGER FLIGHT GROUP LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 26-10183 (MFW)<br>(Jointly Administered)<br><br>Hearing Date: March 6, 2026, at 1:30 p.m.<br>Objection Deadline: February 27, 2026, at 4 p.m.<br><br>Re:  D.I. 13 |

**LIMITED OBJECTION OF THE UNITED STATES TRUSTEE TO DEBTORS'
MOTION FOR AN ORDER (A) APPROVING BID PROCEDURES FOR THE SALE
OF THE DEBTORS' ASSETS; (B) APPROVING CERTAIN BID PROTECTIONS
IN CONNECTION WITH THE DEBTORS' ENTRY INTO STALKING HORSE APA;
(C) SCHEDULING THE AUCTION AND SALE HEARING; (D) APPROVING THE
FORM AND MANNER OF NOTICE THEREOF; AND
<u>(E) GRANTING RELATED RELIEF</u>**

Andrew R. Vara, the United States Trustee for Regions 3 and 9 (the "<u>U.S. Trustee</u>"), through his counsel, files this limited objection (the "<u>Objection</u>") to the *Debtors' Motion for an Order (A) Approving Bid Procedures for the Sale of the Debtors' Assets; (B) Approving Certain Bid Protections in Connection with the Debtors' Entry into Stalking Horse APA; (C) Scheduling the Auction and Sale Hearing; (D) Approving the Form and Manner of Notice Thereof; and (E) Granting Related Relief* (the "<u>Motion</u>") [D.I. 13], and in support of the Objection states:

---

[1] The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are: Avenger Flight Group, LLC (1216); AFG Dallas III, LLC (5615); AFG Dallas IV, LLC (5558); AFG Dallas, LLC (3418); AFG EU Operations Corp. (9406); AFG FLL, LLC (6470); AFG Latam Holding Corp. (6475); AFG Latam Sim Holdings II, LLC (0473); AFG Latam Sim Holdings III, LLC (2592); AFG Latam Sim Holdings IV, LLC (0093); AFG Latam Sim Holdings, LLC (6475); AFG Latam, LLC (9545); AFG Mexico Corp. (1402); AFG Orlando, LLC (8409); AFG Sanford, LLC (6661); AFG Sim Holding Corp. (3325); Avenger Flight Group Europe, Corp. (5908); Avenger Flight Group Topco, LLC (5643); Avenger Flight Training, LLC (5640); Avenger Flight Group Mexico II, S. de R.L. de C.V, (N/A); and Papi Flight Training, LLC (6206). The location of the Debtors' corporate headquarters and the Debtors' service address is Avenger Flight Group LLC, 1450 Lee Wagener Blvd., Fort Lauderdale, FL 33315.

**PRELIMINARY STATEMENT**

1. The Debtors seek approval of an expense reimbursement for the Debtors' proposed stalking horse bidder, AFG Topco LP ("Stalking Horse"), which is an entity owned and controlled by the Debtors' pre-petition and debtor-in-possession ("DIP") lenders (collectively, "DIP Lenders"). The Stalking Horse intends to make a credit bid of $125 million, representing a fraction of the approximately $273 million total pre-petition and post-petition amount allegedly owed.

2. The Stalking Horse, if outbid at auction, should not be entitled to the proposed $2 million expense reimbursement (the "Expense Reimbursement"). Under governing Third Circuit law, an allowable expense reimbursement incentivizes a party which would not have an independent motivation to make a stalking horse bid to invest the time and money in making a stalking horse bid, protecting the bidder from losing its due diligence investment by being outbid at the auction. Here, the Stalking Horse is related to the Debtors' pre-petition lenders which negotiated the terms of the DIP financing agreement prior to bankruptcy and had been providing credit to the Debtors since at least 2021. Accordingly, the Stalking Horse (i) did not need to undertake any additional due diligence to make a bid, (ii) did not need an incentive to make a bid, and (iii) will not need to be reimbursed if it is not the winning bidder at the auction. The Stalking Horse is independently motivated to participate at the auction in order to protect its asserted secured position in the Debtors' assets.

3. Because the Stalking Horse does not need an allowed administrative claim to be incentivized to protect its secured position, the Expense Reimbursement is not "actually necessary to preserve the value of the estate," as required by Third Circuit law. *See In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 535 (3d Cir. 1999).

4.	Second, the amount of the proposed Expense Reimbursement is excessive.  Under the DIP financing order(s) entered by and/or proposed to this Court, the Stalking Horse's owners -- the DIP Lenders -- will advance up to $14.5 million in new money to the Debtors.  Thus, at the $2 million cap, the proposed Expense Reimbursement effectively constitutes a 13.8% lending fee when calculated against the $14.5 million figure, imposed on any successful bidder other than the Stalking Horse.

5.	If the Court allows an expense reimbursement, such reimbursement should be capped at a reasonable amount which is significantly less than the amount proposed, and the Stalking Horse should be required to provide support for its claimed expenses to the Debtors, the Official Committee of Unsecured Creditors, and the U.S. Trustee.

6.	Third, the U.S. Trustee objects to treating any expense reimbursement allowed by the Court as a super-priority administrative claim because there is no basis in the Bankruptcy Code for such treatment.

## JURISDICTION AND STANDING

7.	Under (i) 28 U.S.C. § 1334, (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. § 157(b)(2), this Court has jurisdiction to hear and determine the Motion and this Objection.

8.	Pursuant to 28 U.S.C. § 586(a)(3), the U.S. Trustee is charged with administrative oversight of the bankruptcy system in this District.  Such oversight is part of the U.S. Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts.  *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that the U. S. Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S.,*

3

*Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U. S. Trustee as a "watchdog").

9. Under 11 U.S.C. § 307, the U. S. Trustee has standing to be heard on the Motion.

## BACKGROUND

10. On February 12, 2026, (the "Petition Date"), the Debtors filed the voluntary petitions for relief which initiated the above-captioned cases. The Debtors continue to operate their business(es) as debtors in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

11. To date, the U.S. Trustee has not appointed an official committee of unsecured creditors in these cases.

12. On February 12, 2026, the Debtors filed the Motion. In the Motion, the Debtors identified the Stalking Horse and proposed that it be entitled to make a credit bid in an amount up to $125 million. Mot. Preamble ¶ (iv); Mot. ¶ 18; Mot. Ex. B (Asset Purchase Agreement ("APA")) [D.I. 13-2] p.1. As of the Petition Date, the total pre-petition amount due to the DIP Lenders was over $273 million. Perkins First Day Decl. [D.I. 33] ¶ 29. In the Motion, the Debtors propose a bid protection for the Stalking Horse (the designee of the DIP Lenders): the Expense Reimbursement of up to $2 million. Mot. Preamble ¶ (v).

13. Under the terms of the DIP financing agreement, the DIP Lenders will loan the Debtors $14.5 million in new money ($6 million under the Interim DIP Order and an additional $8.5 million under the Final DIP Order). DIP Financing Mot. [D.I. 12] ¶ 1(a)(i). The DIP Lenders will also receive a 2% commitment fee and 2% exit fee. DIP Financing Mot. ¶ 20. As a result, if the proposed Expense Reimbursement is approved, the DIP Lenders will receive a combined 17.8% in fees (calculated against the $14.5 million DIP financing facility) if (i) the

maximum Expense Reimbursement of $2 million is sought and (ii) the Stalking Horse is not the successful bidder.

## ARGUMENT

A. **Stalking Horse Is Not Entitled to Bid Protections.**

14. The U.S. Trustee objects to the Motion because the Expense Reimbursement is not justified under governing Third Circuit law. The Stalking Horse is an entity controlled by the Debtors' pre-petition and post-petition secured lender(s). The credit-bidding lender(s) does/do not need to be incentivized to protect the secured claim.

15. To award a break-up fee or expense reimbursement to a potential bidder, the Court must determine that the fee or expense was an actual and necessary cost and expense of preserving the estate. *See O'Brien*, 181 F.3d at 535 ("[T]he allowability of break-up fees, like that of other administrative expenses, depends upon the requesting party's ability to show that the fees were actually necessary to preserve the value of the estate.").

16. The burden is on the moving party to prove that a proposed expense reimbursement may be allowed as an administrative expense. In addition, although "the considerations that underlie the Debtors' judgment may be relevant to the bankruptcy court's determination on a request for break-up fees and expenses," "the business judgment rule should not be applied as such in the bankruptcy context." *Id.*

17. Moreover, as recognized by the Third Circuit in *O'Brien*:

> [E]ven if the purpose for the break-up fee is not impermissible, the break-up fee may not be needed to effectuate that purpose. For example, in some cases a potential purchaser *will bid whether or not break-up fees are offered* . . . . In such cases, the award of a break-up fee cannot be characterized as necessary to preserve the value of the estate.

181 F.3d at 535 (emphasis added); *see In re Reliant Energy Channelview LP*, 594 F.3d 200 (3d Cir. 2010) (affirming disallowance of retroactive grant of break-up fee that was sought after the stalking horse bidder had already bid for the assets).

18. As a secured lender owed more than $273 million, the Stalking Horse will bid to protect its secured claim whether or not the Expense Reimbursement is offered. Because the Stalking Horse did not need an incentive to protect the value of its collateral through the stalking horse bid, the Expense Reimbursement is not "actually necessary to preserve the value of the estate," as required under *O'Brien*.

19. The Debtors do not demonstrate that the Expense Reimbursement is necessary to preserve the value of the Debtors' estates. In the first day declaration of Lawrence Perkins in support of the proposed bidding procedures [D.I. 33], the Debtors fail to provide any permissible justification for the Expense Reimbursement. Rather, Mr. Perkins merely states that the stalking horse bid protections are "reasonable, appropriate and a sound exercise of the Debtors' business judgment." Perkins First Day Decl. ¶ 64. This conclusory statement does not meet the Debtors' burden. Rather, the instant facts demonstrate that the Expense Reimbursement is not warranted. The Debtors propose to reimburse the Stalking Horse for an additional amount of up to $2 million if another entity outbids the Stalking Horse. Rather than promote robust competition for the Debtors' assets, the Expense Reimbursement is an impermissible blocking device which provides an additional, unwarranted protection for the DIP Lenders' bid. The Expense Reimbursement threatens to chill interest in the Debtors' assets and runs afoul of *O'Brien*.

**B.    The Amount of the Expense Reimbursement Is Excessive.**

20. The proposed Expense Reimbursement in the amount of up to $2 million is excessive, considering that the Stalking Horse had no need to undertake any significant due

diligence to make a bid. The Stalking Horse's owners -- the DIP Lenders -- had undoubtedly performed extensive due diligence when they agreed to provide pre-petition loans and, subsequently, the DIP financing facility to the Debtors. Simply put, all necessary diligence had been completed prior to the bankruptcy. As set forth above, at its $2 million capped amount, the Expense Reimbursement is properly viewed as analogous to a 13.8% additional fee for the post-petition financing, in addition to the commitment and exit fees to be paid to the DIP Lenders. Accordingly, if the Court allows an expense reimbursement, the cost should be capped at a reasonable amount which is significantly less than the amount proposed. Further, the Stalking Horse should be required to provide support for its claimed expenses to the Debtors, the Committee, and the U.S. Trustee.

C. **The Expense Reimbursement Is Not Entitled to Superpriority Treatment Under the Bankruptcy Code.**

21. Finally, to the extent that the Debtors are seeking to have the Expense Reimbursement treated as a superpriority administrative claim, such request should be denied. Even if the Court were to approve some portion of the Expense Reimbursement, there would be no basis under the Bankruptcy Code to have claims for such amounts allowed as a superpriority administrative claim.

22. The Third Circuit has ruled that break-up fees (or reimbursement expenses) must be sought and analyzed under section 503(b) of the Bankruptcy Code. *See Reliant Energy Channelview LP*, 594 F.3d at 206 ("[A] bidder must seek a break-up fee under 11 U.S.C. § 503(b)[.]" (citing *O'Brien*, 181 F.3d 527 (3d Cir. 1999)). The analysis of break-up fees under Section 503(b) "must be made in reference to *general administrative expense jurisprudence*." *O'Brien*, 181 F.3d at 535 (emphasis added). Further, the Court "do[es] not have the authority to 'create a right to recover from [a] bankruptcy estate where no such right exists under the

7

Bankruptcy Code.' As a result, termination fees are subject to the same general standard used for all administrative expenses under 11 U.S.C. § 503[.]" *In re Energy Future Holdings Corp.*, 904 F.3d 298, 313 (3d Cir. 2018) (quoting *O'Brien*, 181 F.3d at 535); *cert. denied sub nom. NextEra Energy, Inc. v. Elliott Assocs., L.P.*, 587 U.S. 970 (2019).

23. Code section 503(b) does not provide for superpriority status. Such status is provided for only in Sections 364(c)(1) and 507(b) of the Code. Those sections are addressed exclusively to claims of (a) entities providing post-petition financing and (b) pre-petition secured lenders for adequate protection for diminution in collateral value during the bankruptcy case. Bid protections in connection with sales do not fall under either of the two aforementioned categories. Therefore, the Expense Reimbursement cannot receive superpriority administrative claim status.

24. "The filing of a petition for bankruptcy protection under Chapter 11 of the Code . . . precludes all efforts to obtain or distribute property of the estate other than as provided by the Bankruptcy Code. This statutory control over the right to recover property from the debtor's estate is integral to the purposes and goals of federal bankruptcy law." *O'Brien*, 181 F.3d at 532 (citations omitted).

25. Permitting the Stalking Horse's bid protection(s) to prime other administrative expense claimants has no basis in the Bankruptcy Code, is inconsistent with Third Circuit precedent, and should not be permitted.

## **RESERVATION OF RIGHTS**

26. The U.S. Trustee leaves the Debtors to their burden and reserves any and all rights to, *inter alia*, (i) amend or supplement this Objection and (ii) conduct discovery.

**CONCLUSION**

**WHEREFORE,** the U.S. Trustee respectfully requests that this Court (i) deny the Debtors' request for allowance and/or approval of the Expense Reimbursement, (ii) deny the Debtors' request to assign the Expense Reimbursement super-priority status, and (iii) award such other relief as this Court deems appropriate under the circumstances.

Dated: February 24, 2026
       Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA
UNITED STATES TRUSTEE
REGIONS 3 & 9**

By: */s/ Jonathan W. Lipshie*
Jonathan W. Lipshie
Trial Attorney
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
Tel: (202) 567-1124
Email: Jon.Lipshie@usdoj.gov