# Exhibit 1

## Bid Procedures

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>AVENGER FLIGHT GROUP, LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-10183 (MFW)<br><br>(Jointly Administered) |

**PROCEDURES FOR SALE OF THE DEBTORS' ASSETS
THROUGH ONE OR MORE SALE TRANSACTIONS**

On February 11, 2026 (the "Petition Date"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court"). The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.[2]

On [●], 2026, Court entered an order (the "Bid Procedures Order") authorizing the Debtors to, among other things, solicit offers for one or more Sales (as defined herein) through the process and procedures set forth below (the "Bid Procedures").

The Debtors seek to consummate one or more transactions (each, a "Sale") for the sale of substantially all of the Debtors' assets (the "Assets") under section 363 and, as applicable, section 365, of the Bankruptcy Code to the extent certain criteria are satisfied as set forth in greater detail below; *provided*, that unless otherwise agreed to by the official committee of unsecured creditors appointed in these chapter 11 cases (the "Committee"), the Debtors, the Required Lenders, and the

---

[1] The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are: Avenger Flight Group, LLC (1216); AFG Dallas III, LLC (5615); AFG Dallas IV, LLC (5558); AFG Dallas, LLC (3418); AFG EU Operations Corp. (9406); AFG FLL, LLC (6470); AFG Latam Holding Corp. (6475); AFG Latam Sim Holdings II, LLC (0473); AFG Latam Sim Holdings III, LLC (2592); AFG Latam Sim Holdings IV, LLC (0093); AFG Latam Sim Holdings, LLC (6475); AFG Latam, LLC (9545); AFG Mexico Corp. (1402); AFG Orlando, LLC (8409); AFG Sanford, LLC (6661); AFG Sim Holding Corp. (3325); Avenger Flight Group Europe, Corp. (5908); Avenger Flight Group Topco, LLC (5643); Avenger Flight Training, LLC (5640); Avenger Flight Group Mexico II, S. de R.L. de C.V, (N/A); and Papi Flight Training, LLC (6206). The location of the Debtors' corporate headquarters and the Debtors' service address is Avenger Flight Group LLC, 1450 Lee Wagener Blvd., Fort Lauderdale, FL 33315.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Motion for (I) An Order (A) Approving Bid Procedures for the Sale of the Debtors' Assets; (B) Approving Certain Bid Protections in Connection With the Debtors' Entry Into Stalking Horse APA; (C) Scheduling The Auction and Sale Hearing; (D) Approving the Form and Manner of Notice Thereof; and (E) Granting Related Relief; and (II) An Order or Orders (A) Approving the Sale of the Debtors' Assets Free and Clear of All Encumbrances; and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases* [Docket No. 13] (the "Bid Procedures Motion").

Required DIP Lenders (each as defined in the Committee Resolution[3]), the Assets shall not include any Litigation Trust Assets (as defined in the Committee Resolution).  Any Sale will be subject to the approval of the Court.  ***A hearing by the Court on the approval of any Sale(s) is currently scheduled for [●], 2026 at __:00 _.m. (Eastern Time) (the "Sale Hearing").***

*Summary of Key Dates Established by Bid Procedures*

| Date[4] | Event |
|---|---|
| **March 16, 2026** | Deadline to File and Serve Cure Notice |
| **March 27, 2026 at 5:00 p.m.** | Deadline to Submit Qualified Bids |
| **March 30, 2026 at 5:00 p.m.** | Contract Objection Deadline (including Stalking Horse Adequate Assurance Objection Deadline) |
| **April 1, 2026** | Deadline to Designate Qualified Bids and File Auction Notice |
| **April 2, 2026 at 10:00 a.m.** | Auction (if necessary) |
| **April 3, 2026** | Deadline to File Notice of Successful Bidder(s) and Back-Up Bidder(s) |
| **April 6, 2026 at 12:00 p.m.** | Deadline to Object to Sale(s) |
| **April 6, 2026 at 12:00 p.m.** | Non-Stalking Horse Adequate Assurance Objection Deadline |
| **April 7, 2026** | Sale Hearing |
| **April 12, 2026** | Deadline to Close Sale(s) |

I. **BID PROCEDURES**

   A. **General Sale Transaction Information**

   1. *Assets for Sale*

The Debtors are soliciting interest for the consummation of one or more Sales with respect to all or substantially all of the Debtors' Assets.  All of the Debtors' rights, title, and interest in and to the Assets shall be sold free and clear of any Encumbrances on an "as is, where is" and "with all faults" basis and without representations, warranties, or guarantees, express, implied or statutory, written or oral, of any kind, nature or description, by the Debtors, their affiliates or their

---

[3] "Committee Resolution" has the meaning set forth in the *Final Order (I) Authorizing the Debtors to Obtain Senior Secured Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief.*

[4] All times are prevailing Eastern time.  The Debtors, after consultation with the Consultation Parties, may extend the deadlines set forth herein; *provided* that the Bid Deadline for Assets subject to the Stalking Horse Bid shall not be extended beyond fifty (50) days after the Petition Date without the consent of the Stalking Horse Bidder.

2

respective representatives, except as otherwise provided in the applicable Purchase Agreement, as defined herein, to the maximum extent permitted by sections 363 and 365 of the Bankruptcy Code, with such Encumbrances to attach to the net proceeds of the applicable Sale with the same validity and priority as such Encumbrances applied against the respective Assets purchased pursuant to these Bid Procedures.

The Debtors, in their discretion, exercised in good faith and in consultation with (a) the Committee and (b) in the event that the Stalking Horse Bidder terminates its credit bid, the Required DIP Lenders (as defined in the DIP Order) (collectively, the "Consultation Parties"), will have the right to determine the highest or best value from the potential offers received.

**Further information on the Assets being offered for sale pursuant to these Bid Procedures is available upon request from the Debtors' investment banker, Seabury Securities LLC, on the terms and conditions set forth below.**

## 2. *Access to Due Diligence Materials*

To participate in the bidding process and receive due diligence information, including full access to the Debtors' electronic data room (the "Data Room") and additional non-public information regarding the Debtors (the "Diligence Materials"), parties interested in receiving due diligence information to participate in the bidding process (each, an "Interested Party") must deliver or have previously delivered to the Debtors the Preliminary Bid Documents (as defined herein) to the following parties (the "Recipient Parties"):

(i) proposed counsel to the Debtors: (a) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801), Attn: Richard Pachulski (rpachulski@pszjlaw.com) and Steven Golden (sgolden@pszjlaw.com); and (b) Pachulski Stang Ziehl & Jones LLP, 1700 Broadway, 36th Floor, New York, NY 10019, Attn: Gregory Demo (gdemo@pszjlaw.com); and

(ii) investment banker to the Debtors: Seabury Securities LLC, Carnegie Hall Tower, 152 W. 57th Street, Suite 5300, New York, NY 10019, Attn: Layne Grindal (lgrindal@seaburysecurities.com) and Michael Cox (mcox@seaburysecurities.com).

The "Preliminary Bid Documents" that must be submitted to the Recipient Parties include: (a) an executed confidentiality agreement using the Debtors' form, as may be amended, on terms reasonably acceptable to the Debtors, to the extent not already executed (a "Confidentiality Agreement"); (b) a statement and/or other factual support demonstrating to the Debtors' satisfaction in the exercise of its reasonable business judgment that the Interested Party has a *bona fide* interest in purchasing all or any portion of the Assets; and (c) a statement detailing whether the person or entity is partnering with or otherwise working with any other interested party in connection with the potential submission of a joint Bid, including the identity of any such party or parties and a concise description of the nature of such partnership or joint Bid. Any Interested Party who, in the Debtors' determination, qualifies for access to the Diligence Materials shall be

deemed a "Potential Bidder." For the avoidance of doubt, the Stalking Horse Bidder (as defined herein) shall be a Potential Bidder and does not need to submit the Preliminary Bid Documents.

The Debtors shall grant the Stalking Horse Bidder and, upon execution of a valid Confidentiality Agreement and up to and including the Bid Deadline, any Potential Bidder, access to the Data Room or additional information allowing such Potential Bidder to conduct due diligence on the potential acquisition of some or all of the Assets. Neither the Debtors nor any of their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Assets: (a) to any person or entity who (i) is not a Potential Bidder, (ii) does not comply with the participation requirements set forth above, or (iii) in the case of competitively sensitive information, is a competitor of the Debtors; and (b) if and to the extent doing so would (1) violate any law to which the Debtors are subject, including any privacy law, (2) result in the disclosure of any trade secrets of third parties in breach of any contract with such third party, (3) violate any legally-binding obligation of any Debtor with respect to confidentiality, non-disclosure, or privacy, or (4) jeopardize protections afforded to any Debtor under the attorney-client privilege or the attorney work product doctrine (provided that, in the case of each of clauses (1) through (4), the Debtors shall use commercially reasonable efforts to (x) provide such access as can be provided (or otherwise convey such information regarding the applicable matter as can be conveyed) without violating such privilege, doctrine, contract, obligation or law and (y) provide such information in a manner without violating such privilege, doctrine, contract, obligation or law). Notwithstanding the foregoing, the Debtors reserve the right, in their discretion, to withhold or limit access to any information that the Debtors determine to be sensitive or otherwise not appropriate to disclose to any Potential Bidder. The Debtors shall provide the Stalking Horse Bidder with any information provided to a Potential Bidder that has not already been provided to the Stalking Horse Bidder.

The Debtors may terminate access to the Data Room and any other non-public information in their reasonable discretion and after consultation with the Consultation Parties at any time, including if (a) a Potential Bidder fails to become a Qualified Bidder (as defined herein) or (b) these Bid Procedures are terminated. The Potential Bidder shall return or destroy any non-public information the Debtors or their advisors provided to the Potential Bidder in accordance with the terms of the confidentiality agreement executed by the Debtors and the Potential Bidder.

3. *__Due Diligence from Potential Bidders__*

Each Interested Party, Potential Bidder, and Qualified Bidder (as defined herein) (each, a "Bidder" and, collectively, the "Bidders") shall comply with all requests for additional information and due diligence access by the Debtors or their advisors regarding such Bidder and its contemplated Sale. Failure by a Potential Bidder (other than the Stalking Horse Bidder) to comply with requests for additional information and due diligence access will be a basis for the Debtors to determine that the Potential Bidder is not a Qualified Bidder. Failure by a Qualified Bidder (other than the Stalking Horse Bidder) to comply with such requests for additional information and due diligence access will be a basis for the Debtors to determine that a bid made by a Qualified Bidder (other than the Stalking Horse Bidder) is not a Qualified Bid.

4901-4593-4470.11 05863.00001

**B. Auction Qualification Process**

*1.   Stalking Horse Bidder*

The Debtors have entered into an asset purchase agreement (the "Stalking Horse APA") with AFG Topco, LP (the "Stalking Horse Bidder") for the purchase of substantially all of the Assets (the "Stalking Horse Bid") pursuant to, in part, a credit bid. The Stalking Horse Bidder is a Qualified Bidder, the Stalking Horse Bid is a Qualified Bid, and the Stalking Horse Bidder shall not be required to provide a Good Faith Deposit.

*2.   Form of Asset Purchase Agreement*

A Potential Bidder must submit a proposed asset purchase agreement (a "Purchase Agreement"), similar in form and substance, as modified, to the Stalking Horse APA, accompanied by a comparison of the Purchase Agreement to the Stalking Horse APA.

*3.   Designation as Qualified Bidder*

A "Qualified Bidder" is a Potential Bidder (or combination of Potential Bidders whose bids for one or more Assets constitute a Topping Bid (as defined herein)), that satisfies the Bid Conditions defined and as described below and otherwise satisfies the requirements of the Bid Procedures Order and the Bid Procedures set forth herein, and that the Debtors, after consultation with the Consultation Parties, determine is reasonably likely to submit a bona fide offer for all or any portion of the Assets and to be able to consummate a Sale (or Sales, as applicable) if selected as a Successful Bidder (as defined herein).

The Debtors, after consultation with the Consultation Parties, shall determine and notify any Potential Bidder as to whether such Potential Bidder is a Qualified Bidder no later than **April 1, 2026**.

*4.   Right to Credit Bid*

Subject to any applicable intercreditor agreement, a Qualified Bidder who has a valid and perfected lien[5] on any Assets (a "Secured Party") shall be permitted to submit a credit bid for all or a portion of the assets subject to such lien, up to the amount of such Secured Party's claims (a "Credit Bid"), to the extent permitted under section 363(k) of the Bankruptcy Code.

**C. Bidding Process**

The Debtors and their advisors shall, after consultation with the Consultation Parties: (i) determine whether a Potential Bidder is a Qualified Bidder; (ii) coordinate the efforts of Bidders in conducting their due diligence investigations, as permitted by the provisions hereof; (iii) receive offers from Qualified Bidders; and (iv) negotiate any offers made to purchase all or any portion of the Assets. The Debtors, in consultation with the Consultation Parties, shall have the right to adopt

---

[5]   Any credit bid by the holder of a junior lien must include a cash component sufficient to indefeasibly pay in full, in cash all claims and obligations of the holder of all liens senior to such junior lien.

5

such other rules for the bidding process that are not inconsistent with the Bid Procedures Order or these Bid Procedures that will better promote the goals of such process.

1. *Bid Deadline*

*The Bid Deadline is March 27, 2026 at 5:00 p.m. (prevailing Eastern Time).* On or before the Bid Deadline, a Qualified Bidder (other than the Stalking Horse Bidder) that desires to make a proposal, solicitation, or offer for a Sale (each, a "Bid") shall deliver written and electronic copies of its Bid to the Recipient Parties. The Debtors shall promptly (and in no event later than twenty-four (24) hours after the Debtors' receipt thereof) provide copies of all Bids to counsel for the Consultation Parties.

The Debtors, in their business judgment and in consultation with the Consultation Parties, reserve the right to reject any Bid (other than the Stalking Horse Bid) if such Bid, among other things: (a) is not received by the Bid Deadline; (b) does not comport with the Bid Conditions (as defined below); or (c) requires any indemnification of the Potential Bidder in any Purchase Agreement submitted with the Bid.

2. *Qualified Bids*

To be eligible to participate in the Auction and to be eligible for consideration as a Qualified Bidder, a Potential Bidder (other than the Stalking Horse Bidder) must deliver a Bid, so as to be received by the Recipient Parties on or before the Bid Deadline, that meets the following requirements (collectively, the "Bid Conditions"):

i. Purpose and Identity of Assets to be Purchased. Each Bidder must state that the Bid includes an offer by the Bidder to effectuate a Sale and identify with specificity which Assets are included in the Bid. Each Bidder must specify whether the Bid is conditioned on purchasing all Assets included in the Bid or whether the Bid should be viewed as separate Bids for one or more sets of Assets (in which case, the Bid must specify such sets).

ii. Good Faith Deposit. Each Bid must be accompanied by a cash deposit (the "Good Faith Deposit") in the form of a wire transfer, certified check, or cash payable to the order of counsel pursuant to instructions to be provided by the Debtors equal to 10% of the Bidder's proposed Purchase Price (as defined herein), which will be held in a non-interest bearing escrow or trust account.

iii. Purchase Price. Each Bid must clearly set forth the cash purchase price (the "Cash Consideration") and identify any non-cash consideration included in such Bid (together with the Cash Consideration, the "Purchase Price") including, without limitation, which executory contracts and unexpired leases the Bidder expects the Debtors to assume and assign to the Bidder (the "Transferred Contracts") and which liabilities, if any, of the Debtors the Bidder is agreeing to assume (the "Assumed Liabilities"). The Purchase Price associated with each Bid may include only cash and/or other consideration acceptable to the Debtors after consultation with the Consultation Parties. The Cash Consideration of any Qualified Bid with respect to all or any portion of the Assets must be a Topping Bid with respect to the applicable

6

> Assets. In order for the Bid to qualify as a "<u>Topping Bid</u>," it must provide for consideration at Closing (as defined herein) that is equal to or in excess of the sum of: (i) the Stalking Horse Bid; and (ii) the Minimum Increment (as defined herein).

iv. <u>Binding and Irrevocable</u>. Each Bid must include a signed writing stating that it is binding and irrevocable until the selection of the Successful Bidder, provided that if such Bidder is selected as the Successful Bidder or the Back-Up Bidder, its offer shall remain irrevocable until the closing of the Sale with the Successful Bidder or, as applicable, the Back-Up Bidder (the "<u>Closing</u>").

v. <u>Contemplated Transaction Documents</u>. Each Bid must include an executed Purchase Agreement marked against the Stalking Horse APA pursuant to which the Qualified Bidder proposes to effectuate the contemplated Sale including: (i) a redlined copy of the Purchase Agreement marked to show all changes requested by the Qualified Bidder against the Stalking Horse APA; and (ii) any changes to any exhibits or schedules to the Purchase Agreement (collectively, the "<u>Contemplated Transaction Documents</u>"). The terms and conditions of the Contemplated Transaction Documents must be, in the aggregate, not materially more burdensome to the Debtor than the provisions contained in the Stalking Horse APA. A Bid must identify with particularity each and every condition to Closing and all Transferred Contracts pursuant to the Contemplated Transaction Documents. All Bids must provide that all Cure Amounts will be paid by such Bidder. ***The Contemplated Transaction Documents must include a commitment to close by no later than April 12, 2026.*** A Bid shall contain a detailed description of how the Potential Bidder intends to treat current employees of the Debtors.

vi. <u>Contingencies</u>. A Bid may not be conditioned on obtaining financing, any internal approval, on the outcome or completion of due diligence, or of any other contingency; *provided* that it may be subject to the accuracy in all material respects at Closing of representations and warranties at or before Closing or the satisfaction in all material respects of customary representations and warranties for transactions of similar size and nature at or before Closing or the satisfaction in all material respects of customary conditions for transactions of similar size and nature at or before Closing. A Bid must disclose any regulatory or governmental approval required for the Potential Bidder to consummate the Sale and the time period within which the Potential Bidder expects to receive such regulatory or governmental approval.

vii. <u>No Collusion</u>. Each Bid must include a representation that the Bidder has not engaged in any collusion with respect to its Bid submission (though Potential Bidders are permitted to make joint bids to the extent such joint bid was previously disclosed to the Debtors in accordance with these Bid Procedures) and that the Bidder will not engage in any collusion with respect to any Bids, the Auction, or the Sale Process.

viii. <u>Authorization to Bid and Identity of Bidder</u>. Each Bid must include evidence of authorization and approval from such Potential Bidder's board of directors (or

7

      comparable governing body, or a statement as to why such approval is unnecessary) with respect to the submission, execution, delivery, and closing of the Contemplated Transaction Documents. A Bid must also fully disclose the identity of the entity that is submitting the Bid, including the identity of the ultimate beneficial owners of the Bidder and the identity of any person or entity providing debt or equity financing for the Bid.

  ix.    <u>Financing Sources</u>. Each Bid must include written evidence that demonstrates the Potential Bidder has the necessary financial ability to close the contemplated Sale and provide adequate assurance of future performance under all Transferred Contracts. Such information may include, *inter alia*, the following:

      a.    the Potential Bidder's current financial statements (audited, if they exist);

      b.    contact names, telephone numbers, and e-mail addresses for verification of financing sources;

      c.    evidence of the Potential Bidder's internal resources and proof of any debt or equity funding commitments that are needed to close the contemplated Sale (including confirmation that the funding of such commitments is not subject to any contingency);

      d.    proof by the Potential Bidder of its financial capacity to close its proposed Sale(s), which may include written representations of the Potential Bidder's financial wherewithal or financial statements of, or verified financial commitments obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring all or any portion of the Assets, the party that will bear liability for a breach), the adequacy of which will be assessed by the Debtors (including in consultation with its advisors); and

      e.    any other form of financial disclosure of credit-quality support information acceptable to the Debtors demonstrating that such Potential Bidder has the ability to close the contemplated Sale.

  x.    <u>Adequate Assurance of Future Performance</u>. Each Bid must demonstrate, in the Debtors' reasonable business judgment, after consultation with the Consultation Parties, that the Potential Bidder can provide adequate assurance of future performance to the applicable counterparty under all Transferred Contracts as required by section 365 of the Bankruptcy Code.

  xi.    <u>No Fees Payable to Qualified Bidder</u>. A Bidder may not request any break-up fee, termination fee, expense reimbursement, or any similar type of payment. Moreover, by submitting a Bid, a Bidder shall be deemed to waive the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code relating in any way to the submission of its Bid, compliance with the Bid Procedures, or participation in the Sale Process.

xii. <u>Non-Reliance</u>.  A Bid must include an acknowledgement and representation of the Potential Bidder that it has had an opportunity to conduct any and all due diligence regarding the Assets (as applicable to its Bid) and Assumed Liabilities prior to making its Bid, that it has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid, and that it did not rely upon any written or oral statements, representations, warranties, or guaranties, express, implied, statutory or otherwise, regarding the Assets, the financial performance of the Assets or, as applicable, the physical condition of the Assets, the Assumed Liabilities, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Contemplated Transaction Documents.

xiii. <u>As Is, Where Is</u>.  A Bid must include an acknowledgement and representation of the Potential Bidder that it understands that any Sale Transaction shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors, their agents, or their estates except to the extent set forth in the Purchase Agreement of the Successful Bidder.

A Bid received from a Potential Bidder shall constitute a "<u>Qualified Bid</u>" if the Debtors believe, after consultation with the Consultation Parties, that such Bid would be consummated if selected as the Successful Bid.  The Debtors shall have the right to reject any and all Bids (other than the Stalking Horse Bid) that they believe, after consultation with the Consultation Parties, do not comply with the Bid Procedures.  In the event that any Potential Bidder is determined by the Debtors not to be a Qualified Bidder, the Potential Bidder shall be refunded its Good Faith Deposit.

### D. **Auction**

Other than as set forth herein, if the Debtors receive more than one Qualified Bid for any particular Asset or portion of Assets by the Bid Deadline, the Debtors shall conduct the Auction to determine the Successful Bidder(s) in their reasonable business judgment, in consultation with the Consultation Parties, with respect to such Assets or portion of the Assets.  If the Debtors do not receive a Qualified Bid for any particular Asset by the Bid Deadline, the Debtors will not conduct the Auction with respect to such Asset.  If one or more Qualified Bids (other than the Stalking Horse Bid) are received by the Bid Deadline with respect to the applicable Assets, then the Debtors shall conduct the Auction with respect to such Assets.  In addition, the Debtors, in consultation with the Consultation Parties, shall determine which Qualified Bid is the highest or other best Qualified Bid for purposes of constituting the opening bid at the Auction for the relevant Assets (the "<u>Baseline Bid(s)</u>").  The determination of which Qualified Bid(s) constitute the Baseline Bid(s) and which Qualified Bid(s) constitute the Successful Bid(s) (as defined herein) shall take into account any factors the Debtor, after consultation with the Consultation Parties, reasonably deems relevant to the value of the Qualified Bid(s) to its estate, including, *inter alia*: (a) the amount and nature of the consideration; (b) the certainty of closing; (c) the net economic effect of any changes to the value to be received by the Debtor's creditors from the proposed Sale Transaction(s); (d) the allocation of the Purchase Price between or among Assets; (e) tax consequences of such Qualified Bid(s); and (f) any other quantitative or qualitative criteria available to assess such Bid (collectively, the "<u>Bid Assessment Criteria</u>").  The Baseline Bid(s)

9

will be provided to the Qualified Bidders (including the Stalking Horse Bidder) prior to the commencement of the Auction.

On or before *April 1, 2026*, the Debtors shall file a notice on the Court's docket (an "Auction Notice") providing (i) notice of the location of the Auction; and (ii) notice of whether the Debtors believe, in the exercise of its business judgment after consultation with the Consultation Parties, that the Auction should be held in two or more parts over multiple days so as to maximize value for the estate. To the extent the Debtors determine, in consultation with the Consultation Parties and in accordance with these Bid Procedures, that no Auction will be held, no Auction Notice will be filed.

Unless otherwise designated by the Debtors, after consultation with the Consultation Parties, the Auction shall commence at *10:00 a.m. (Eastern Time) on April 2, 2026*, at a location to be designated in the Auction Notice. In the Debtors' discretion, the Auction may be held by telephonic or video conference.

The Auction shall be conducted according to the following procedures:

   *1.     Participation at the Auction*

Only the Stalking Horse Bidder and Qualified Bidders that have submitted Qualified Bids are eligible to participate at the Auction. Only the authorized representatives and professional advisors of each of the Qualified Bidders, the Stalking Horse Bidder, the Debtors, the Consultation Parties, and the United States Trustee for the District of Delaware shall be permitted to attend the Auction.

Except as otherwise set forth herein, the Debtors, after consultation with the Consultation Parties, may conduct the Auction in the manner they determine will result in the highest or best offer(s) for the Assets in accordance with the Bid Procedures.

In the event, after the conclusion of the Auction, that certain discrete Assets which are not included in the Successful Bid(s) have not been sold (the "Unsold Assets"), the Debtors may, in the exercise of their business judgment and after consultation with the Consultation Parties, resume an auction for the sale of the Unsold Assets, on such bid procedures as may be implemented by the Debtors after consultation with the Consultation Parties.

   *2.     The Debtors Shall Conduct the Auction*

The Debtors and their professionals shall direct and preside over the Auction. At the start of the Auction, the Debtors shall describe the terms of any Baseline Bid(s). All Bids made thereafter shall be Overbids (as defined herein) and shall be made and received on an open basis, and all material terms of each Bid shall be fully disclosed to all other Qualified Bidders. The Debtors reserve the right to conduct the Auction, after consultation with the Consultation Parties, in the manner designed to maximize value based upon the nature and extent of the Qualified Bids received in accordance with the Bid Procedures, the Bid Procedures Order, the Bankruptcy Code, and any other order of the Court entered in connection herewith and disclosed to each Qualified Bidder. The Debtors may, in consultation with the Consultation Parties, announce at the Auction additional procedural rules (e.g., the amount of time to make Overbids, the amount of the

10

Minimum Increment, or the requirement that parties submit "best and final" Bids) for conducting the Auction or otherwise modify these Bid Procedures; *provided* that such rules are disclosed to each Qualified Bidder during the Auction.

The Debtors shall maintain a transcript of all Bids made and announced at the Auction, including the Baseline Bid(s), all Overbids, and the Successful Bid(s). Pursuant to Local Rule 6004-1, each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the Sale Process, the Bid Procedures, the Auction, or the proposed Sale Transaction(s).

### 3. *Terms of Overbids*

An "Overbid" is any bid made at the Auction by a Qualified Bidder subsequent to the Debtors' announcement of the applicable Baseline Bid(s) that satisfies the following conditions:

**(a)    Minimum Increment**

During the Auction, bidding shall begin with the Baseline Bid. Due to the potential combinations of Assets that may be included in any Bid, the Debtors reserve all rights with respect to the comparison of Qualified Bids to Stalking Horse Bid and the determination of the Baseline Bid(s) subject to the rights of the Consultation Parties as provided for herein. In consultation with the Consultation Parties, the initial Overbid after the Baseline Bid (the "Initial Overbid") shall be $500,000 (the "Minimum Increment"). Any Overbids subsequent to the Initial Overbid shall be made in increments of at least the applicable Minimum Increment; *provided, however*, that any Overbids by the Stalking Horse Bidder(s) shall only be required to be equal to the sum of (a) the Baseline Bid or the then existing highest Bid *plus* (b) the Minimum Increment. After setting the Minimum Increment, such amount may be adjusted in response to bidding activity.

Any Overbid made by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless the Debtors, after consultation with the Consultation Parties, accept a higher Qualified Bid as an Overbid.

**(b)    Overbid Alterations**

An Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable to the Debtors' estates than any prior Qualified Bid or Overbid, as determined in the Debtors' business judgment, but shall otherwise comply with the terms of these Bid Procedures.

**(c)    No Round-Skipping**

Round-skipping, as described herein, is explicitly prohibited. To remain eligible to participate in the Auction, in each round of bidding, (i) each Qualified Bidder must submit a Bid in such round of bidding that is a higher or otherwise better offer than the immediately preceding Bid submitted by a Qualified Bidder in such round of bidding and (ii) to the extent a Qualified Bidder fails to bid in such round of bidding or to submit a Bid in such round of bidding that is a higher or otherwise better offer than the immediately preceding Bid submitted by a Qualified Bidder in such round of bidding, as determined by the Debtor in its reasonable business judgment,

such Qualified Bidder shall be disqualified from continuing to participate in the Auction for the Assets including, without limitation, submitting further Bids.

### (d)    Consideration of Overbids

The Debtors reserve the right, after consultation with the Consultation Parties, to make one or more adjournments in the Auction to, among other things: facilitate discussions between the Debtors and individual Qualified Bidders; allow individual Qualified Bidders to consider how they wish to proceed; and give Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in the exercise of their business judgment and after consultation with the Consultation Parties, may require, that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed Sale at the prevailing Overbid amount.

### (e)    Evidence of Ability to Close Sale

To the extent not previously provided on or before the Bid Deadline, a Qualified Bidder submitting an Overbid must submit, as part of its Overbid, evidence reasonably acceptable to the Debtors, after consultation with the Consultation Parties, demonstrating such Qualified Bidder's ability to close the Sale proposed by such Overbid.

### 4.    *Additional Procedures*

The Debtors, after consultation with the Consultation Parties, may (a) determine which Qualified Bid or Qualified Bids, if any, is the highest or best offer for all or any portion of the Assets, (b) reject at any time before entry of an order of the Court approving a Sale of all or any portion of the Assets pursuant to a Qualified Bid (other than the Stalking Horse Bid), any Bid that is (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures, or the Bid Procedures Order; or (iii) contrary to the best interest of the Debtors, their estates, and their creditors, (c) modify the Bid Procedures in response to the bidding activity at the Auction.

### 5.    *Consent to Jurisdiction as Condition to Bidding*

All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Court and to have waived any right to a jury trial in connection with any disputes relating to the Sale Process, the Auction, the Bid Procedures, and the construction and enforcement of each Qualified Bidder's Contemplated Transaction Documents, as applicable.

### 6.    *Closing the Auction*

The Auction shall continue until there is only one Qualified Bid for all of the Assets (or multiple non-overlapping Qualified Bids for any subsets of the Assets if there is no single Qualified Bid for all the Assets) that the Debtors determine, in the exercise of their business judgment and after consultation with the Consultation Parties, is the highest or otherwise best Qualified Bid(s) (such Qualified Bid(s), the "Successful Bid(s)", and such Qualified Bidder(s), the "Successful Bidder(s)"), and that further bidding is unlikely to result in a higher or otherwise better Qualified Bid, at which point, the Auction will be closed. The Auction shall not close unless and until all

Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction. In selecting the Successful Bid, the Debtors, after consultation with the Consultation Parties, may consider all factors relevant to the sale of the Assets, including the Bid Assessment Criteria.

Upon the closing of the Auction, the Debtors, after consultation with the Consultation Parties, shall identify the Successful Bidder(s) and the Successful Bid(s) and the Back-Up Bidder(s) and Back-Up Bid(s) as soon as reasonably practicable which highest or best offer will provide the greatest amount of net value to the Debtors, and advise the Qualified Bidders of such determination. Due to the potential combinations of Assets that may be included in any Bid, the Debtors reserve all rights with respect to the comparison of Qualified Bids and the determination of the Successful Bidder(s) and Back-Up Bidder(s) (as defined herein).

The Qualified Bidder with the second highest or otherwise best Bid at the Auction, as determined by the Debtors, after consultation with the Consultation Parties, shall be required to serve as the back-up bidder (the "<u>Back-Up Bidder(s)</u>"). The identity of the Back-Up Bidder(s) and the amount and material terms of the final Bid of the Back-Up Bidder(s) (the "<u>Back-Up Bid(s)</u>") shall be announced by the Debtors at the conclusion of the Auction at the same time the Debtors announce the Successful Bid(s). Any Back-Up Bidder shall keep its Back-Up Bid open and irrevocable until the Closing of the Sale with the Successful Bidder. The Good Faith Deposit of the Back-Up Bidder(s) shall be returned by the Debtors within three (3) days after Closing. Notwithstanding anything to the contrary herein, the Stalking Horse Bidder shall not be required to serve as a Back-Up Bidder, notwithstanding such Stalking Horse Bidder's Stalking Horse Bid being the next highest or best Bid after a Successful Bid for the Assets, without its prior written consent.

Within one (1) business day after the close of the Auction, the Successful Bidder(s) shall supplement the Successful Bidder(s)' Good Faith Deposit(s) such that the Good Faith Deposit(s) shall be equal to an amount that is ten percent (10%) of the Purchase Price of the Successful Bid(s); *provided that* the Stalking Horse Bidder shall not be required to make any Good Faith Deposit(s).

The Debtors shall not consider any Bids or Overbids submitted after the closing of the Auction and any and all such Bids and Overbids shall be deemed untimely.

As stated above, the Successful Bid(s) of the Successful Bidder(s) and the Back-Up Bid(s) of the Back-Up Bidder(s), respectively, must be irrevocable until Closing.

### E. **Notice of Acceptance of Successful Bid**

Upon determination of the Successful Bid(s) and no later than April 3, 2026, the Debtors will file a notice (the "<u>Notice of Successful Bidder</u>") of the Debtors' intent to effectuate one or more Sale(s) for all or any portion of the Assets with the Successful Bidder(s) upon the approval of the Successful Bid(s) by the Court at the Sale Hearing.[6] The Debtors' presentation of a

---

[6] With respect to any Sale, a filed Notice of Successful Bidder shall include, as exhibits, (a) a copy of the Purchase Agreement; (b) a copy of the proposed Sale Order; and (c) identification of the Transferred Contracts with respect to such Sale; *provided, however*, that a Successful Bidder shall have the right to add or remove Transferred Contracts until the closing of such Sale and any definitive identification of Transferred Contracts with respect to a Sale will be made in connection with a notice of closing of such Sale.

13

particular Successful Bid to the Court for approval does not constitute the Debtors' acceptance of such Successful Bid. The Debtors will be deemed to have accepted a Successful Bid only when such Successful Bid has been approved by the Court at the Sale Hearing. To the extent that the Debtors do not receive any Qualified Bids other than the Stalking Horse Bid, the Debtors may file a Notice of Successful Bidder cancelling the Auction and designating the Stalking Horse Bidder as the Successful Bidder.

F. **Free of Any and All Interests**

Except as otherwise provided in the Purchase Agreement(s) of the Successful Bidder(s) and subject to the approval of the Court, all of the Debtors' rights, title, and interest in and to the Assets subject thereto shall be sold free and clear of any Encumbrances to the maximum extent permitted by section 363 of the Bankruptcy Code, with such Encumbrances to attach to the proceeds of the sale of the applicable Assets with the same validity and priority as such Encumbrances were held against the applicable Assets prior to the sale.

G. **Sale Hearing**

*The Sale Hearing will occur on [●], 2026 at __:00 _.m. (prevailing Eastern Time)* before the Hon. [●], United States Bankruptcy Court for the District of Delaware, 824 North Market Street, [●] Floor, Wilmington, Delaware 19801. Any objections to the Sale(s) requested at the Sale Hearing must be filed and served so as to be received by the Notice Parties or before *April 6, 2026 at 12:00 p.m. (prevailing Eastern Time)*.

At the Sale Hearing, the Debtors will seek entry of an order (the "Sale Approval Order") authorizing and approving one or more Sale(s) to the Successful Bidder(s). The Sale Hearing may be adjourned or rescheduled without notice or with limited and shortened notice to parties other than the Consultation Parties and the DIP Lenders (as defined in the DIP Order), including by (i) an announcement of such adjournment at the Sale Hearing or at the Auction or (ii) the filing of a notice of adjournment with the Court prior to the commencement of the Sale Hearing.

If any Successful Bidder fails to consummate an approved Sale in accordance with its applicable Purchase Agreement or such Purchase Agreement is terminated, the Debtors, after consultation with the Consultation Parties, shall be authorized, but not required, to deem the applicable Back-Up Bid, as disclosed at the Sale Hearing, as the Successful Bid, and the Debtors, after consultation with the Consultation Parties, shall be authorized, but not required, to consummate the sale with the Back-Up Bidder submitting the next highest Bid for any Assets without further order of the Court.

H. **Return of Good Faith Deposit**

The Good Faith Deposit of any Successful Bidder (or any Back-Up Bidder that becomes a Successful Bidder) shall be applied to the Purchase Price of such Sale at Closing. Counsel to the Debtors will hold the Good Faith Deposits of the Successful Bidder(s) and the Back-Up Bidder(s) in escrow until the Closing of the Sale with the Successful Bidder(s). Good Faith Deposits of all other Qualified Bidders shall be held in a segregated account, and thereafter returned to the respective Bidders following the conclusion of the Auction. If a Successful Bidder (including any Back-Up Bidder that has become the Successful Bidder) fails to consummate an approved Sale

because of a breach or failure to perform on the part of such Successful Bidder, the Debtors shall be entitled to retain such Successful Bidder's Good Faith Deposit as part of the Debtors' damages resulting from such Successful Bidder's breach or failure to perform, without prejudice to the Debtors' rights to seek additional damages from the Court as appropriate. The retention of the Good Faith Deposit is not, and is not intended to be, liquidated damages.

### J. Procedures Related to the Assumption and Assignment of Contracts and Leases

As part of a Sale(s), the Debtors may assume and assign certain of their executory contracts and unexpired leases (the "Potential Assumed/Assigned Contracts") to one or more Successful Bidders (*i.e.* the Transferred Contracts). The procedures governing the Debtors' identification of the Potential Assumed/Assigned Contracts and the non-Debtor counterparties' (the "Contract Counterparties") rights and obligations with respect to objecting to such identification, including to the assumability, assignability, or transferability of such Potential Assumed/Assigned Contracts and/or to the amounts the Debtors believe necessary to cure all monetary defaults under such Potential Assumed/Assigned Contracts pursuant to section 365 of the Bankruptcy Code, are governed by the Bid Procedures Order. **All Contract Counterparties should refer to the Bid Procedures Order, which provides for the following relevant dates and deadlines:**

| Date[7] | Event |
|---|---|
| **March 16, 2026** | Deadline to File and Serve Cure Notice |
| **March 30, 2026 at 5:00 p.m.** | Contract Objection Deadline |

**For the avoidance of doubt, if no Assignment Objections or Cure Objections are filed or received with respect to any Potential Assumed/Assigned Contracts identified on the Cure Schedule in accordance with the Bid Procedures Order, then the Cure Amounts set forth in the Cure Schedule for such Potential Assumed/Assigned Contract will be binding upon the Contract Counterparty to such Potential Assumed/Assigned Contract for all purposes and will constitute a final determination of the Cure Amounts required to be paid by the Debtors in connection with the assumption and assignment of such Potential Assumed/Assigned Contract.**

Upon determination of the Successful Bid(s), **on or before April 3, 2026**, the Debtors will file a Notice of Successful Bidder with the Court. Any Contract Counterparty to a Transferred Contract seeking additional assurance of future performance than that provided by the Successful Bidder(s) (an "Adequate Assurance Objection") should immediately contact Steven W. Golden (sgolden@pszjlaw.com) and the applicable Successful Bidder to attempt to resolve any Adequate Assurance Objection. **All Adequate Assurance Objections (other than Adequate Assurance Objections related to the Stalking Horse Bid, which must have been filed by March 30, 2026 at 5:00 p.m. (prevailing Eastern Time)) must be filed and served on the Notice Parties and the applicable Successful Bidder no later than April 6, 2026 at 12:00 p.m. (prevailing Eastern Time)**. To the extent the parties are unable to consensually resolve the Adequate Assurance Objection prior to Closing, the Court will set a hearing, which may be at the Sale Hearing, on the Adequate Assurance Objection to determine whether terms of the Successful Bid are compliant with section 365 of the Bankruptcy Code in providing adequate assurance of future performance

---

[7] All times are prevailing Eastern time.

to the Contract Counterparty of the applicable Transferred Contract. The Debtors intend to cooperate with Contract Counterparties to Transferred Contracts to attempt to reconcile any Adequate Assurance Objection.

### K. Reservation of Rights and Modifications

Without prejudice to the rights of the Stalking Horse Bidder under the Stalking Horse APA, the Debtors, in consultation with the Consultation Parties, reserve the right to modify these Bid Procedures at or prior to the Auction, including, without limitation, to extend the deadlines set forth herein (provided that the Bid Deadline for Assets subject to the Stalking Horse Bid shall not be extended beyond fifty (50) days after the Petition Date without the prior written consent of the Stalking Horse Bidder), modify bidding increments, waive terms and conditions set forth herein with respect to any or all Potential Bidders, impose additional terms and conditions with respect to any or all Potential Bidders, adjourn or cancel the Auction at or prior to the Auction, and/or adjourn the Sale Hearing; *provided* that the Debtors may not amend these Bid Procedures to reduce or otherwise modify its obligations to consult with any Consultation Party without the consent of such Consultation Party or further order of the Court; *provided further* that notwithstanding anything to the contrary herein, any such modification (including, for the avoidance of doubt, any extension of the Bid Deadline, postponement of the Auction, cancellation of the Auction, termination of the proposed Sale, or postponement of any other deadline) shall not override any milestones set forth in the DIP Order or the DIP Loan Documents. The Debtors shall consult with the Consultation Parties as provided for in these Bid Procedures; *provided, however*, that the Debtors shall not be required to consult with any Consultation Party (or its advisors) regarding any particular issue, selection, or determination if the Debtors determine in good faith on advice of counsel that such consultation would be inconsistent with the exercise of their fiduciary duties.

Notwithstanding anything to the contrary herein, the Bid Procedures shall not be modified to permit Qualified Bids that propose consideration that does not include sufficient cash specifically designated to pay the Stalking Horse Bidder's credit bid amount, to require the Stalking Horse Bidder to provide a Good Faith Deposit, or extend the Bid Deadline beyond fifty (50) days after the Petition Date without the prior express written consent of the Stalking Horse Bidder.

### L. Fiduciary Out

Notwithstanding anything to the contrary in these Bid Procedures, nothing in these Bid Procedures or the Bid Procedures Order shall require a Debtor or the board of directors, board of managers, or similar governing body of a Debtor to take any action or to refrain from taking any action related to any Sale or with respect to these Bid Procedures, to the extent such Debtor, board of director, board of managers, or such similar governing body reasonably determines in good faith, in consultation with counsel, that taking or failing to take such action, as applicable, would be inconsistent with applicable law or its fiduciary obligations under applicable law.

16

**II.     NOTICE PARTIES**

As used herein, the "Notice Parties" are:

i.   proposed counsel for the Debtors, (a) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801), Attn: Richard Pachulski (rpachulski@pszjlaw.com) and Steven Golden (sgolden@pszjlaw.com); and (b) Pachulski Stang Ziehl & Jones LLP, 1700 Broadway, 36th Floor, New York, NY 10019, Attn: Gregory Demo (gdemo@pszjlaw.com);

ii.  counsel to the DIP Lenders, (a) Proskauer Rose LLP, Eleven Times Square, New York, NY 10036, Attn: David M. Hillman (dhillman@proskauer.com) and Matthew R. Koch (mkoch@proskauer.com) and (b) Landis Rath and Cobb LLP, 919 Market Street, Suite 1800, Wilmington, DE 19899, Attn: Matthew B. McGuire (mcguire@lrclaw.com);

iii. proposed counsel for the Committee, (a) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019-6099, Attn: Brett H. Miller (bmiller@willkie.com), Todd M. Goren (tgoren@willkie.com), James H. Burbage (jburbage@willkie.com), Joseph R. Brandt (jbrandt@willkie.com), and (b) Womble Bond Dickinson (US) LLP, 1313 North Market Street, Suite 1200, Wilmington, Delaware 19801, Attn: Matthew P. Ward (matthew.ward@wbd-us.com) and Todd A. Atkinson (todd.atkinson@wbd-us.com); and

iv.  the Office of The United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Jon Lipshie (jon.lipshie@usdoj.gov).