IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AVENGER FLIGHT GROUP, LLC, *et al.*, | ) | Case No. 26-10183 (MFW) |
| | ) | |
| Debtors.[1] | ) | |
| | ) | |
| | ) | |
| | ) | **Related Docket No. 163** |

**OBJECTION OF STARR INDEMNITY & LIABILITY COMPANY
AND STARR SURPLUS LINES INSURANCE COMPANY
TO DEBTOR'S NOTICE OF POTENTIAL ASSUMPTION
AND ASSIGNMENT OF EXECUTORY CONTRACTS**

Starr Indemnity & Liability Company and Starr Surplus Lines Insurance Company

(together, "Starr Indemnity") file this objection to the Debtor's *Notice of Potential Contract*

*Assumption and Assignment* [Docket No. 163] (the "Notice").  In support of the Objection, Starr

Indemnity states as follows:

**<u>INTRODUCTION</u>**

1. Generally speaking, Starr Indemnity has no objection to the Debtor's contemplated sale of

substantially all of its assets and the Notice. Rather, Starr Indemnity brings this Objection

on a limited basis to the extent the Notice seeks to impermissibly sell, assign, or otherwise

transfer the Debtor's Insurance Policy (as defined below). Insurance policies are unique

contracts which are crafted and tailored to the specific risks and liabilities of any given

---

[1] The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are: Avenger Flight Group, LLC (1216); AFG Dallas III, LLC (5615); AFG Dallas IV, LLC (5558); AFG Dallas, LLC (3418); AFG EU Operations Corp. (9406); AFG FLL, LLC (6470); AFG Latam Holding Corp. (6475); AFG Latam Sim Holdings II, LLC (0473); AFG Latam Sim Holdings III, LLC (2592); AFG Latam Sim Holdings IV, LLC (0093); AFG Latam Sim Holdings, LLC (6475); AFG Latam, LLC (9545); AFG Mexico Corp. (1402); AFG Orlando, LLC (8409); AFG Sanford, LLC (6661); AFG Sim Holding Corp. (3325); Avenger Flight Group Europe, Corp. (5908); Avenger Flight Group Topco, LLC (5643); Avenger Flight Training, LLC (5640); Avenger Flight Group Mexico II, S. de R.L. de C.V, (N/A); and Papi Flight Training, LLC (6206). The location of the Debtors' corporate headquarters and the Debtors' service address is Avenger Flight Group LLC, 1450 Lee Wagener Blvd., Fort Lauderdale, FL 33315.

insured. Because each policy is underwritten based on the needs of the particular insured, state law and public policy prohibit the transfer of an insurance policy from an insured to another entity without the insurer's consent. Here, Starr Indemnity expressly does not consent to the transfer of the insurance policies to the ultimate purchaser of the Debtor's assets. For the following reasons, Starr Indemnity requests that this Court deny the Debtor's assumption and assignment to the extent that it seeks to transfer the Insurance Policies.

## I. BACKGROUND

2. Prior to this bankruptcy proceeding, Starr Indemnity issued an insurance policy to the Debtor ("Insurance Policy"). [2] Specifically, Starr Indemnity issued a workers' compensation policy to the Debtor on January 1, 2026. The policy is set to expire by its own terms on January 1, 2027.

3. On February 11, 2026, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. 11 U.S.C. § 101, *et seq*. The Debtor has continued to operate its business as debtor-in-possession as pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. The Debtor filed the Sale Motion on February 12, 2026 [Docket No. 13], seeking approval to, amongst other things, sell substantially all of its assets under section 363 of the Bankruptcy Code and to assume and assign certain executory contracts and unexpired leases under section 365 of Bankruptcy Code.

5. The Debtor filed the Notice on March 12, 2026 [Docket No. 163].

6. As such, Starr Indemnity now brings this Objection to ensure that its rights are not improperly infringed by the Debtor's actions.

---

[2] "Insurance Policies" should be construed broadly to include both current and past insurance policies issued by Starr Indemnity to the Debtor.

## II. ARGUMENT

7. The Debtor contemplates assigning the Insurance Policy to the ultimate purchaser of the assets, whereby the ultimate purchaser would step into the Debtor's shoes and become the 'insured' under the aforementioned policy without Starr Indemnity's consent. Such a result is antithetical to prevailing state law, bankruptcy law as well as public policy, and must be denied.

### A. Prevailing Non-Bankruptcy Law Bars Assignment of Insurance Policy

8. Absent consent by an insurer, state law[3] bars assignment of an insurance policy by the insured to a third-party pre-loss. *See* 3 *Couch of Insurance* § 35:8 ("[T]he great majority of courts adhere to the rule that general stipulation in policies prohibiting assignments of the policy, except with the consent of the insurer, apply only to assignments before loss[.]"; *see also Givaudan Fragrances Corp. v. Aetna Cas. & Sur. Co.*, 227 N.J. 322, 346, 151 A.3d 576, 591 (2017) ("Simply stated, that general rule recognizes that anti-assignment clauses in insurance contracts 'apply only to assignments before loss, and do not prevent an assignment after loss.'"); *Christiana Care Health Servs., Inc. v. PMSLIC Ins. Co.*, No. CV 14-1420-RGA, 2015 WL 6675537, at \*4 (D. Del. Nov. 2, 2015) ("Pre-loss non-

---

[3] The Insurance Policies, like most insurance policies, do not contain a choice of law provision. Rather, "the law of the state that the parties understood to be the "principal location of the insured risk" governs unless some other state has a "more significant relationship" to the case under Restatement § 6. An insured risk—namely an "activity" that is the "subject matter of the insurance"—is "principally located" in a state if it occurs there during a "major portion of the insurance period." *Mega Constr. Corp. v. XL Am. Grp.*, 684 F. App'x 196, 199 (3d Cir. 2017) (citing Restatement (Second) of Conflict of Laws, §§ 193, 6. Starr Indemnity is aware that under this broad view, there are a number of states whose law that might apply; Florida – headquarters of the first named insured Avenger Flight Group, LLC, or Delaware – where this bankruptcy case is pending. While Starr Indemnity does not attempt to resolve the choice of law issue, it also notes that the issue, in this instance, may be moot as most states come to the same conclusion regarding this issue. 3 *Couch of Insurance* § 35:8; *See also Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006) ("According to conflicts of laws principles, where the laws of the two jurisdictions would produce the same result on the particular issue presented, there is a "false conflict," and the Court should avoid the choice-of-law question.").

assignment provisions are nevertheless enforced because the general preference for free alienability is overcome by insurers' legitimate interests in protecting themselves against risks they did not agree to cover.").

9. The pre- and post-loss distinction is crucial as it changes the scope of the contractual relationship between insurer and insured. *Christiana Care*, 2015 WL 6675537 at *4. As the *Christiana Care* court explained, "[p]rior to a covered loss, the insurer bears a risk dependent upon the identity of the insured and has priced the policy commensurate with its assessment of the risk . . . After a covered loss, the insurer bears a fixed obligation to pay and its 'risk cannot be increased by a change in the insured's identity.'" *Id* (citations omitted).

10. Courts are also cognizant of this distinction in the bankruptcy context. For example, in the *Federal-Mogul* bankruptcy case, the debtor sought to transfer its insurance rights to asbestos trust created pursuant to section 524(g) of the Bankruptcy Code. The insurers objected by arguing that such a transfer would alter their risk. The Third Circuit cast doubts on "whether transfer in this instance materially alters Insurers' risk." *In re Fed.-Mogul Glob. Inc.*, 684 F.3d 355, 379 (3d Cir. 2012). Rather, like most post-loss transfers, the Third Circuit merely saw this as a transfer of post-loss liabilities from one entity (the debtor) to another (the trust). The risk to the insurers, however, remained the same. *Id*. Other cases decided under similar circumstances have come to the same conclusion. *See, e.g., In re Global Indus. Technologies, Inc.*, 645 F.3d 201, 212 (3d Cir. 2011) ("Indeed, in *Combustion Engineering*, the pre-petition quantum of asbestos liability was known from four decades of asbestos litigation, and moving the pre-petition asbestos claims out of the tort system and into a trust system did not increase in any meaningful way insurers' pre-petition asbestos liability.") (discussing *In re Combustion Engineering, Inc.*, 391 F.3d 190 (3d Cir. 2004)).

11. As discussed throughout these cases, the crucial issue is the scope of risk which the insurers decided to undertake when issuing an insurance policy. Where the risk remains the same, e.g. post-loss, then there is no impediment to the transfer. At the same time, courts are aware that a transfer that results in the material increase in the insurers' risk may not be allowed. *See Global Indus. Technologies*, 645 F.3d at 213-14 (holding that insurers have standing to object to a debtor's plan of reorganization which contemplates the transfer of insurance rights to a trust where said trust significantly increases the scope of the insurers' exposure).

12. Here, the Debtor is not seeking to transfer its post-loss insurance rights to another entity. Rather, it is seeking to transfer the *pre-loss* Insurance Policy to another entity who will then become insured under the Insurance Policy. This would materially alter the risk that Starr Indemnity agreed to and would completely undermine the insurance underwriting process. To allow the Debtor to complete its proposed transfer would sanction a scheme whereby low-risk entities can trade their insurance policies to high-risk entities at the expense of insurance companies. Such a result is contrary to prevailing law, public policy, as well as the general equities of the case.

13. Moreover, it is the hallmark of bankruptcy law "that the filing of a bankruptcy petition does not permit a debtor in possession to enjoy greater contract or property rights than it possessed outside of [the] bankruptcy case." *In re PSA, Inc.*, 335 B.R. 580, 588 (Bankr. D. Del. 2005). Because such an assignment is not allowed outside of bankruptcy, the same result must apply within bankruptcy. Therefore, any attempt to transfer of the Insurance Policy should be denied.

**B. Section 365 Prohibits Transfer of the Insurance Policies without Starr Indemnity's Consent**

14. Section 365 of the Bankruptcy Code governs a debtor's use of executory contracts and unexpired leases and provides the basis by which a debtor may assume and assign said contracts.

15. Section 365(f)(1), which allows assignment of a contract or lease despite a prohibition, restriction, or condition in the contract to the contrary, is not without limits. Section 365(f) is subject to and controlled by section 365(c). *See* § 365(f)(1) ("Except as provided in subsection (b) and (c) of this section[.]"); *see also In re Trump Entm't Resorts, Inc.*, 526 B.R. 116, 122 (Bankr. D. Del. 2015) ("Section 365(f)(1), though, is expressly subject to any alternative rule provided in Section 365(c)").

16. Section 365(c), in turn, provides that a debtor may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or

delegation of duties, if –

(1)

> (A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and

> (B) such party does not consent to such assumption or assignment[.]

17. Therefore, under section 365(c)(1) "if non-bankruptcy provides that the [counter-party] would have to consent to an assignment of the [executory] contract to a third party, *i.e.*,

someone "other than the debtor or the debtor in possession," then [the Debtor] . . . cannot assume that contract" and by extension assign it.  *Matter of West Electronics. Inc.*, 852 F.2d 79, 83 (3d Cir. 1988);  *see also Trump Entm't Resorts, Inc.*, 526 B.R.at 122 ("The Section 365(c)(1) limitation on the assumption of executory contracts applies whenever the contract is "subject to a legal prohibition against assignment" to a third party and the non-debtor party to the contract does no consent to assignment.").

18. As mentioned earlier, the case law permits assigning insurance rights *post-loss*, such as in the numerous asbestos bankruptcy cases.  *See, e.g., Fed.-Mogul Glob. Inc.*, 684 F.3d 355; *Global Indus. Technologies, Inc.*, 645 F.3d 201;  *Combustion Engineering, Inc.*, 391 F.3d 190.  Conversely, although Starr Indemnity cannot find a Delaware bankruptcy case on point, there is case law that prevents an assignment of an insurance policy "when an assignment at issue is pre-loss, [finding that] the anti-assignment clause is valid and enforceable, making the assignment invalid and unenforceable.  *Stand Up Multipositional Advantage MRI, P.A. v. Am. Family Ins. Co.*, 878 N.W.2d 21, 27 (Minn. Ct. App. 2016), *aff'd*, 889 N.W.2d 543 (Minn. 2017).  However, an anti-assignment clause may forbid both the assignment of policy and the assignment of proceeds, as long as the anti-assignment clause is sufficiently clear." *In re Archdiocese of Saint Paul and Minneapolis* 579 B.R. 188, 201–202 (Bankr. D. Minn. 2017) (quoting *Life Rehab Services, Inc. v. Allied Prop. & Cas. Ins. Co.,* 616 F.Supp.2d 924, 926 (D. Minn. 2007)).

19. Furthermore, the asbestos cases do offer some guidance on the issue. In each case, the courts questioned whether the proposed transfer would affect the scope of the risk that the insurers agreed to when issuing insurance policies.  *See, e.g., Fed.-Mogul Glob. Inc.*, 684 F.3d at 379 ("We doubt whether transfer in this instance materially alters Insurers' risk.").

In fact, both the bankruptcy court and the district court in *Fed.-Mogul* went to great lengths to demonstrate that the insurers' risk remained the same. *Id* (discussing the bankruptcy and district courts findings regarding the insurers' risk).  As discussed above, this is consistent with the state law principles governing pre-and post-loss assignments.

20. The *Global Indus. Technologies* case, in particular, touched upon the implications of a transfer of insurance policies which alters the risk of the issuing insurers.  There, the issue concerned the insurers' standing to object to the confirmation of a plan that sought to transfer insurance policies to a trust handling silica-related claims where the aforementioned trust "staggeringly increased" the pre-petition liability exposure. *Global Indus. Technologies, Inc.*, 645 F.3d at 212. This change in risk, and the accompanying costs, was sufficient for the Third Circuit to reverse the district court and confer standing on the insurers.[4]

21. Here, the Debtor seeks to assume and assign the Insurance Policy to the purchaser.  Unlike the asbestos cases, the Debtor is not merely directing the payment of insurance proceeds to a different source.  Rather, it is asking that the purchaser become the insured under the Insurance Policy.  This inherently will alter the risk posed under the Insurance Policy[5], which, absent the consent of Starr Indemnity, applicable non-bankruptcy law does not allow.

---

[4] Following remand, the insurers and the debtor ultimately settled their claims against one another and the issue was not explored further. *In re Glob. Indus. Techs., Inc.,* No. BR 02-21626-JKF, 2013 WL 587366, at *41 (Bankr. W.D. Pa. Feb. 13, 2013).

[5] Starr Indemnity acknowledges that it has not performed, nor has it been asked to perform, a risk assessment for any potential purchaser.  The risk, therefore, posed by the hypothetical 'Newco' purchaser is entirely unknown.  At the very least, however, this sale opens Starr Indemnity to the possibility that a party may seek insurance proceeds under the Insurance Policy issued to the Debtor pre-transfer, and another party seeking proceeds under the purchaser's Insurance Policy post transfer, thereby doubling the exposure faced by Starr Indemnity.  Such a result would go beyond the agreed to terms of the Insurance Policy and would greatly increase the risk faced by Starr Indemnity.  At the same time, this would put the Debtor in conflict with the purchaser over which party is entitled to insurance proceeds and payment of its claims.

22. Moreover, the Insurance Policy can be equated to a personal service contract. *See, e.g. Matter of Taylor*, 103 B.R. 511, 516 fn 3 (D.N.J. 1989), *aff'd in part, appeal dismissed in part*, 913 F.2d 102 (3d Cir. 1990) ("Under a personal service contract, the receiving party relies on the personality of a specific individual for the completion of performance. Because the contract is premised on the artistic skill or unique abilities of a specific party, the duty to perform under the contract generally is not assignable. . . . In this case, therefore, the trustee is precluded by non-bankruptcy law from assuming or assigning the debtor's personal service contracts."); *see also In re Pioneer Ford Sales, Inc.*, 729 F.2d 27, 28-29 (1st Cir. 1984) (concluding that the limitations of section 365(c)(1) are not limited to an individual's personal service contracts); *In re Braniff Airways, Inc.*, 700 F.2d 935, 943 (5th Cir. 1983) (same). Such agreements are likewise not assignable as the counter-party can only receive performance by that particular debtor.

23. Starr Indemnity carefully weighed and measured the risks of the Debtor and its business prior to issuing the Insurance Policy. The Insurance Policy contains specific premiums, coverage, limits, etc., all precisely tailored to the Debtor. Thus, the Insurance Policy was issued to the Debtor only, only the Debtor can perform on said policies, and Starr Indemnity, in turn, can only render performance to the Debtor.

24. As a result, applicable law excuses Starr Indemnity from accepting performance from or rendering performance to an entity other than the Debtor. Moreover, Starr Indemnity does not consent to the contemplated assignment. Therefore, under section 365, the Debtor may neither assume nor assign the Insurance Policies.

**C. The Debtor Cannot Sell the Insurance Policy under Section 363**

25. Section 363 of the Bankruptcy Code allows the Debtor to use, sell, or lease property of the estate.  The Sales Motion is predicated on both Sections 363 and 365 of the Bankruptcy Code.  To the extent that the Debtor seeks to avail itself of Section 363 to "sell" the Insurance Policies to a purchaser, then such sale is not authorized by the Bankruptcy Code.

26. Without a doubt, the Insurance Policy is property of the Debtor's bankruptcy estate.  *Estate of Lellock v. Prudential Ins. Co. of Am.*, 811 F.2d 186, 189 (3d Cir. 1987) ("We hold that an insurance policy is property of the estate within 11 U.S.C. § 541(a)(1)").  Whether the Debtor can sell said property free and clear, as contemplated by the Sales Motion, is another matter.

27. Procedurally, the use and sale of property of the estate under section 363(b) is "Subject to the provisions of section 365[.]" § 363(l).  Thus, the aforementioned arguments barring assumption and assignment under section 365 apply equally to a sale under section 363.

28. Practically, it is not clear what a sale of the Insurance Policy would entail.  At its core, the Insurance Policy is a contract which obligates Starr Indemnity to provide defense and indemnity to the Debtor to claims asserted against the Debtor that are determined to be within the scope of coverage as defined by the Insurance Policy.  Absent a valid assignment, the sale of the Insurance Policy would not alter the terms of the Insurance Policy.  They would remain contractual obligations of Starr Indemnity to provide defense and/or indemnity to the *Debtor*, as provided under the terms and conditions of the Insurance Policy.

29. Alternatively, Starr Indemnity has an interest in the Insurance Policy in the form of its right to only provide coverage to the insureds as indicated under the Insurance Policy and as

bargained for at the Insurance Policy's inception. The term "interest in property," as used in section 363, is not defined by the Bankruptcy Code. Rather, courts have taken an expansive view and concluded that the term "encompasses other obligations that may flow from ownership of the property." *In re Trans World Airlines, Inc.*, 322 F.3d 283, 289 (3d Cir. 2003) (citing 3 *Collier on Bankruptcy* ¶ 363.06[1]); *see also In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 582 (4th Cir. 1996) ("Congress did not expressly indicate that . . . it intended to limit the scope of section 363(f) to *in rem* interests, strictly defined, and we decline to adopt such a restricted reading of the statute here.").

30. The Debtor cannot sell the Insurance Policy without providing Starr Indemnity with adequate protection for its interest in the Insurance Policy. § 363(e).

31. Starr Indemnity's inherent interest is that its bargain-for insured remains the Debtor. As such, it would be impossible for the Debtor to both provide adequate protection to Starr Indemnity and sell the Insurance Policy.

32. In sum, for the aforementioned reasons, the sale of the Insurance Policy should be denied.

**D. Reservation of Rights**

33. Starr Indemnity reserves all rights to supplement, modify, or amend this Objection, as well as its rights to reply to any responses that may be filed to this Objection.

**III. CONCLUSION**

Starr Indemnity takes no position on the merits of the Debtor's contemplate section 363 sale, or the Notice, as a whole. Rather, Starr Indemnity submits this Objection solely to the extent that the Debtor seeks to impermissibly transfer the Insurance Policy to a third party without its consent. Thus, for the aforementioned reasons, Starr Indemnity respectfully requests that the Court deny the Debtor's Notice of Assumption and Assignment solely to the extent that it seeks to sell,

assign, and/or otherwise transfer the Insurance Policy to a third party, and for any other relief that

the Court deems just and equitable.

Respectfully Submitted,

Dated:  March 30, 2026                    MARGOLIS EDELSTEIN

/S/ *James E. Huggett, Esq.*
300 Delaware Avenue, 8th Floor
Wilmington, DE 19801
302.313.3609 (direct)
jhuggett@margolisedelstein.com

Counsel to Starr Indemnity & Liability Company
and Starr Surplus Lines Insurance Company