**Exhibit A**

**Sale Order**

4930-3209-5133.2 05863.00002

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>AVENGER FLIGHT GROUP, LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-10183 (MFW)<br><br>(Jointly Administered)<br><br>**Re: Docket Nos. 13, 15, 161–163, 279** |

**ORDER (I) APPROVING THE SALE OF SUBSTANTIALLY ALL OF
THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS,
INTERESTS, AND ENCUMBRANCES, (II) APPROVING THE DEBTORS'
ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS
AND UNEXPIRED LEASES, AND (III) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors and

debtors in possession (the "Debtors") in the above captioned chapter 11 cases (collectively, the

"Chapter 11 Cases") pursuant to sections 105(a), 363, and 365 of title 11 of the United States Code

(the "Bankruptcy Code"), Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 6004-1, and 9013-1 of the Local Rules of

Bankruptcy Practice and Procedure (the "Local Rules") of the United States Bankruptcy Court for

the District of Delaware (the "Court") for entry of an order (this "Sale Order") (a) authorizing and

---

[1]   The Debtors in these Chapter 11 Cases and the last four digits of their respective federal tax identification numbers are:  Avenger Flight Group, LLC (1216); AFG Dallas III, LLC (5615); AFG Dallas IV, LLC (5558); AFG Dallas, LLC (3418); AFG EU Operations Corp. (9406); AFG FLL, LLC (6470); AFG Latam Holding Corp. (6475); AFG Latam Sim Holdings II, LLC (0473); AFG Latam Sim Holdings III, LLC (2592); AFG Latam Sim Holdings IV, LLC (0093); AFG Latam Sim Holdings, LLC (6475); AFG Latam, LLC (9545); AFG Mexico Corp. (1402); AFG Orlando, LLC (8409); AFG Sanford, LLC (6661); AFG Sim Holding Corp. (3325); Avenger Flight Group Europe, Corp. (5908); Avenger Flight Group Topco, LLC (5643); Avenger Flight Training, LLC (5640); Avenger Flight Group Mexico II, S. de R.L. de C.V, (N/A); and Papi Flight Training, LLC (6206). The location of the Debtors' corporate headquarters and the Debtors' service address is Avenger Flight Group LLC, 1450 Lee Wagener Blvd., Fort Lauderdale, FL  33315.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Stalking Horse APA, or to the extent not defined therein, the Bid Procedures Order (each, as defined below).

approving the Asset Purchase Agreement, dated as of February 11, 2026, entered into by and between the Debtors, as sellers (the "Sellers," and each a "Seller") and AFG Topco, LP, as buyer (together with its designees and assignees, the "Buyer"), a copy of which is filed at Docket No. 13, Exhibit B (as amended, modified, or supplemented from time to time, the "Stalking Horse APA"), (b) authorizing and approving the sale of substantially all of the Debtors' assets (the "Assets") to the Buyer pursuant to the Stalking Horse APA (the "Sale") free and clear of all claims, liens, interests, and encumbrances (other than the Assumed Liabilities or Permitted Liens), (c) authorizing and approving the assumption and assignment of the Assigned Contracts (as defined below) to the Buyer, and (d) granting related relief; and the Court having conducted a hearing on March 11, 2026 and having entered that certain *Order (A) Approving Bid Procedures for the Sale of the Debtors' Assets; (B) Approving Certain Bid Protections in Connection with the Debtors' Entry Into Stalking Horse APA; (C) Scheduling the Auction and Sale Hearing; (D) Approving the Form and Manner of Notice Thereof; and (E) Granting Related Relief* [Docket No. 161] (the "Bid Procedures Order"); and the Debtors having determined that the highest and otherwise best offer for the Assets was made by the Buyer pursuant to the Stalking Horse APA; and the Court having conducted a hearing on April 7, 2026 (the "Sale Hearing"), at which time all parties in interest were offered an opportunity to be heard with respect to the Sale and to consider the approval of the Sale pursuant to the terms and conditions of the Stalking Horse APA, and the Court having considered: (i) the Motion and any responses thereto; (ii) the Sale; (iii) the arguments of counsel made, and evidence adduced, related thereto; and (iv) the record of the Sale Hearing held before the Court; and all parties in interest having been heard, or having had the opportunity to be heard, regarding the approval of the Stalking Horse APA and the Sale and other transactions contemplated by the Stalking Horse APA; and it appearing that the relief requested in the Motion

is a sound exercise of the Debtors' business judgment and is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and after due deliberation and sufficient cause appearing therefor; it is hereby **FOUND, CONCLUDED, AND ORDERED THAT**:[3]

A.      The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to these Chapter 11 Cases pursuant to Bankruptcy Rule 9014.

B.      To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.      This Court has jurisdiction over the Motion and over the property of the Debtors, including the Assets to be sold, transferred, and conveyed pursuant to the Stalking Horse APA, pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of these Chapter 11 Cases and the Motion in this District and Court is proper under 28 U.S.C. §§ 1408 and 1409.

D.      This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court finds that there is no just reason for delay in the implementation of this Sale Order, and directs immediate entry of judgment as set forth herein.

---

[3]    All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Motion are hereby incorporated herein to the extent not otherwise inconsistent with the express terms of this Sale Order.

E.      The Debtors' rights, title, and interest in the Assets constitute property of the Sellers' bankruptcy estates and title thereto is vested in the Sellers' bankruptcy estates within the meaning of section 541(a) of the Bankruptcy Code.

F.      The statutory bases for the relief requested in the Motion and provided for herein are sections 105, 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006.

G.      On February 11, 2026 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code, commencing these Chapter 11 Cases.  Since the Petition Date, the Debtors have continued to operate their businesses and manage their property as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

H.      This Court previously entered the Bid Procedures Order: (i) establishing bidding and auction procedures in connection with one or more sales or dispositions of all or substantially all of the Debtors' assets; (ii) authorizing and approving the Debtors' entry into and performance under the Stalking Horse APA, subject to better offers submitted in accordance with the Bid Procedures, naming the Buyer as the Stalking Horse Bidder; (iii) scheduling the Auction (if necessary) and the Sale Hearing to consider the sale of all or substantially all of the Debtors' assets; (iv) establishing procedures for noticing and determining cure amounts related to and the assumption and assignment of Sellers' executory contracts and unexpired leases; (v) approving the form and manner of notice of all procedures, protections, schedules, and agreements; and (vi) granting certain related relief.

I.      As evidenced by the affidavits or certificates of service and publication previously filed with the Court,[4] demonstrated by the evidence presented at the Sale Hearing, and based on

---

[4]    Docket Nos. 96, 162, 163, 167, 173, 188, 274, and 281.

the representations of counsel at the Sale Hearing, due, proper, timely, adequate, and sufficient notice of the Motion, the Sale Hearing, the Auction, the Sale, and the assumption and assignment pursuant to this Sale Order and the Stalking Horse APA of the executory contracts and unexpired leases to be assumed and assigned to the Buyer at Closing (collectively, and whether or not deemed to be executory contracts or unexpired leases under the Stalking Horse APA, and only as so designated in the Buyer's sole discretion, the "Assigned Contracts") has been provided in accordance with sections 102(1), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014 and in compliance with the Bid Procedures Order, to each party entitled to such notice, including, as applicable: (1) the U.S. Trustee; (2) counsel to the Buyer; (3) all persons known or reasonably believed, after reasonable inquiry, to have asserted a lien, encumbrance, claim, or any other interest in any of the Assets; (4) all persons known or reasonably believed to have expressed an interest in acquiring all or a substantial portion of the assets of the Debtors in connection with implementation of the Bid Procedures; (5) the Office of the United States Attorney for the District of Delaware; (6) the Office of the Attorney General in each state in which the Debtors operate; (7) the Office of the Secretary of State in each state in which the Debtors operate or are organized; (8) all taxing and regulatory authorities having jurisdiction over any of the Assets, including the Internal Revenue Service; (9) the Debtors' other known creditors and equity security holders; (10) all counterparties to the Assigned Contracts; (11) all parties set forth in the Debtors' master service list and creditor matrix in these Chapter 11 Cases; and (12) all other parties that had filed a notice of appearance and demand for service of papers in these Chapter 11 Cases as of the service date of the Bid Procedures Order. With respect to entities whose identities are not reasonably ascertained by the Debtors, posting of the Bid Procedures Notice on the Debtor's restructuring website, www.veritaglobal.net/AvengerFG and publication once in the

national edition of *The New York Times* on March 14, 2026, as evidenced by the affidavit of publication filed by the Debtors at Docket No. 188 in these Chapter 11 Cases, was, and is deemed, sufficient and reasonably calculated under the circumstances to reach such entities.  The notices described above and in the Motion and Bid Procedures Order were good, sufficient, and appropriate under the circumstances and reasonably calculated to reach and apprise all known and unknown holders of liens, claims, and encumbrances, and no other or further notice of the Motion, the Auction, the Sale, the Sale Hearing, the potential assumption and assignment of the Assigned Contracts or the related Cure Amounts (as defined below) is, or shall be, required.

J.      The Bid Procedures Notice, the Auction Notice, and the Notice of Successful Bidder provided all interested parties with timely and proper notice of the Sale, Bid Deadline, Auction, and the Sale Hearing in compliance with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  Further, a reasonable opportunity to object to and to be heard regarding the relief granted by this Sale Order has been afforded to parties entitled to notice pursuant to Bankruptcy Rule 6004(a).

K.      In accordance with the Bid Procedures Order, the Debtors have served upon each non-Debtor counterparty to a contract or lease a notice [Docket No. 163] (as amended, modified, or otherwise supplemented from time to time, the "Cure Notice") of the potential assumption and assignment of the contract or lease and of the amounts necessary to cure any defaults under the proposed Assigned Contracts (the "Cure Amounts") pursuant to section 365(b) of the Bankruptcy Code.

L.      The Debtors have articulated good and sufficient reasons for this Court to grant the relief requested in the Motion and provided for herein.

M.      The disclosures made by the Debtors at (i) the Sale Hearing and the hearing on the Bid Procedures and (ii) in the Motion, the Sale Notice, and related documents filed with the Court concerning the Stalking Horse APA, the Auction, the Sale and the Sale Hearing were good, complete and adequate.

N.      The Bid Procedures set forth in the Bid Procedures Order were non-collusive, were proposed and executed in good faith as a result of arms'-length negotiations, and were substantively and procedurally fair to all parties.

O.      The Debtors conducted the sale process in accordance with, and have otherwise complied in all respects with, the Bid Procedures Order.  The sale process set forth in the Bid Procedures Order afforded a full, fair, and reasonable opportunity for any entity to make a higher or otherwise better offer to purchase the Assets.

P.      The terms contained in the Stalking Horse APA constitute the highest and best offer for the Assets and will provide a greater recovery for the Assets than would be provided by any other available alternative.  The Debtors' determination that the Stalking Horse APA constitutes the highest and best offer for the Assets constitutes a valid and sound exercise of Debtors' business judgment.

Q.      The Stalking Horse APA and the Sale contemplated thereby represent a fair and reasonable agreement to purchase the Assets under the circumstances of these Chapter 11 Cases. No other entity or group of entities has presented a higher or otherwise better offer to the Debtors to purchase the Assets for greater economic value to the Debtors' estates than the Buyer.

R.      Approval of the Motion and the Stalking Horse APA and the consummation of the Sale contemplated thereby is in the best interests of the Debtors, their creditors and estates and other parties in interest in these Chapter 11 Cases.

S.      The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sale of the Assets and the assumption and assignment of the Assigned Contracts because, among other reasons: (i) the Stalking Horse APA constitutes the highest and best offer for the Assets after a robust and extensive marketing process; (ii) the Stalking Horse APA and Closing of the Sale is the best opportunity to realize the value of the Assets; and (iii) any other transaction would not have yielded as favorable an economic result.

T.      The Buyer is purchasing the Assets in good faith and is a good-faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, therefore, is entitled to the full protections of that provision, including in the event that this Sale Order or any portion hereof is reversed or modified on appeal, and otherwise has proceeded in good faith in all respects in connection with the sale of the Assets in that (i) the Buyer recognized that the Debtors were free to deal with any other party interested in acquiring the Assets; (ii) the Buyer complied with the provisions in the Bid Procedures Order in all respects; (iii) the Buyer agreed to subject its bid to the competitive Bid Procedures set forth in the Bid Procedures Order, including through the Auction (if any); (iv) all payments to be made by the Buyer and other agreements or arrangements entered into by the Buyer in connection with the Sale have been disclosed; (v) the Buyer has not violated section 363(n) of the Bankruptcy Code by any action or inaction; and (vi) the negotiation and execution of the Stalking Horse APA, including the Sale contemplated thereby, were at arms'-length and in good faith.

U.      The Stalking Horse APA and the transactions contemplated thereby cannot be avoided under section 363(n) of the Bankruptcy Code.  The Debtors, the Buyer, and their respective agents, representatives, and affiliates have not engaged in any conduct that would cause or permit the Stalking Horse APA or the consummation of the transactions contemplated thereby

8

to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code. The Debtors and their professionals marketed the Assets and conducted the marketing and sale process in compliance with the Bid Procedures Order.

V.    The Buyer participated in the sale process in good faith and has not acted in a collusive manner with any of the other bidders, potential bidders, or any other parties interested in the Assets.

W.    Pursuant to the Stalking Horse APA and as more fully set forth therein, the Buyer has offered to purchase the Assets in exchange for, without duplication: (i) a credit bid, on a dollar-for-dollar basis, pursuant to section 363(k) of the Bankruptcy Code, comprised of the full amount of the DIP Obligations[5] outstanding as of the Closing Date *plus* such amount of the Pre-Petition Obligations that the aggregate credit bid amount equals $125,000,000 (the "Credit Bid Amount"); (ii) assumption of the Assumed Liabilities (subject to the limitations set forth in the Stalking Horse APA); and (iii) the Excluded Cash.  The Debtors selected the Buyer to serve as "Stalking Horse Bidder" under their proposed bidding procedures, which were approved by the Court pursuant to the Bid Procedures Order.  The Buyer is an acquisition entity that upon Closing will be owned by the DIP Lenders and the Prepetition Term Loan Lenders (as defined in the Final DIP Order) or affiliates thereof.

X.    The Buyer had submitted its bid, and no Qualified Bids other than the Buyer's bid were received by the Bid Deadline of March 27, 2026 at 5:00 p.m. (prevailing Eastern Time).  The Debtors determined, in a valid and sound exercise of their business judgment, that the transactions

---

[5]    As defined in the *Final Order (I) Authorizing the Debtors to Obtain Senior Secured Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related* Relief [Docket No. 160] (the "Final DIP Order").

contemplated by the Stalking Horse APA represented the highest or otherwise best bid after a robust and extensive marketing process and, therefore, the Buyer's bid was designated as the Successful Bid. As established by the record of the Sale Hearing, the Bid Procedures Order has been complied with in all respects by the Debtors and the Buyer. The Bid Procedures afforded a full, fair, and reasonable opportunity for any entity or person to make a higher or otherwise better offer to purchase the Assets.

Y.      As set forth more fully in the Final DIP Order, the Debtors have acknowledged that the Prepetition Term Loan Obligations (as defined in the Final DIP Order): (a) constitute legal, valid, binding, enforceable, and unavoidable obligations of the Debtors, which are not subject to any Challenge (as defined in the Final DIP Order); (b) are secured by valid, binding, enforceable, unavoidable and properly perfected Prepetition Term Loan Liens on the Prepetition Term Loan Collateral (each, as defined in the Final DIP Order), which are not subject to any Challenge (as defined in the Final DIP Order); (c) constitute allowed secured claims under section 502(a) of the Bankruptcy Code; and (d) are authorized to be credit bid up to the full amount thereof pursuant to section 363(k) of the Bankruptcy Code. For purposes of consummating the Credit Bid, the Prepetition Term Loan Obligations (as defined in the Final DIP Order) in an amount equal to the Credit Bid Amount less the outstanding DIP Obligations as of the Closing Date shall be contributed by the Prepetition Term Loan Lenders (as defined in the Final DIP Order) to the Buyer (or one of its direct or indirect affiliates) in connection with the sale transaction contemplated under the Stalking Horse APA and deemed satisfied upon consummation of the Sale.

Z.      As set forth more fully in the Final DIP Order, the DIP Obligations (as defined in the Final DIP Order): (a) constitute legal, valid, binding, enforceable, and unavoidable obligations of the Debtors; (b) are secured by valid, binding, enforceable, unavoidable and properly perfected

DIP Liens on the DIP Collateral (each, as defined in the Final DIP Order); and (c) are authorized to be credit bid up to the full amount of the DIP Obligations pursuant to section 363(k) of the Bankruptcy Code. For the purposes of consummating the Credit Bid, the DIP Obligations shall be contributed by the DIP Lenders to the Buyer (or one of its direct or indirect affiliates) in connection with the Sale contemplated in the Stalking Horse APA and deemed satisfied upon consummation of the Sale.

AA.    Pursuant to applicable law, including section 363(k) of the Bankruptcy Code and in accordance with the Final DIP Order, the Buyer is authorized to credit bid the Credit Bid Amount as contemplated under the Stalking Horse APA. The Credit Bid Amount is valid and proper consideration pursuant to sections 363(b) and 363(k) of the Bankruptcy Code and the Final DIP Order.

BB.    The consideration provided by the Buyer pursuant to the Stalking Horse APA: (i) is fair and adequate; (ii) constitutes reasonably equivalent value and fair consideration under the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, the Bankruptcy Code, the laws of the United States, any state, territory, or possession thereof, and the District of Columbia, and any other applicable laws; and (iii) will provide a greater recovery for the Debtors' estates and their creditors than would be provided by any other reasonably practicable available alternative. The Stalking Horse APA was not entered into, and the Sale is not being consummated, for the purpose of hindering, delaying, or defrauding creditors of the Debtors under the Bankruptcy Code or under any other applicable law. Neither the Debtors nor the Buyer have entered into the Stalking Horse APA or are consummating the Sale with any fraudulent intent or otherwise improper purpose. The Court's approval of the Motion as set forth herein, the Sale, and the Stalking Horse

APA is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest.

CC.    By consummating the Sale, the Buyer is not a mere continuation of any or all of the Debtors or their estates and there is no continuity, no common identity, and no continuity of enterprise between the Buyer and the Debtors.  The Buyer is not holding itself out to the public as a continuation of any or all of the Debtors or their estates.  The Buyer is not a successor to the Debtors or the Debtors' estates by reason of any theory of law or equity, and the Sale does not amount to a consolidation, merger, or *de facto* merger of the Buyer and the Debtors.  The Buyer will not assume or in any way be responsible for any obligation or liability of the Debtors and/or the Debtors' estates, except as expressly provided in this Sale Order or the Stalking Horse APA.

DD.    The Sale does not impermissibly restructure the rights of the Debtors' creditors, impermissibly dictate the terms of a plan of reorganization or liquidation of the Debtors, impair or circumvent voting rights with respect to any future plan proposed by the Debtors, circumvent chapter 11 plan safeguards (such as those set forth in sections 1125 and 1129 of the Bankruptcy Code), classify claims or equity interests, or extend debt maturities.  This Sale Order does not constitute a *sub rosa* plan, nor does the Stalking Horse APA.

EE.    The Debtors, acting by and through their existing agents, representatives, and officers, have full corporate power and authority to execute and deliver the Stalking Horse APA and all other documents contemplated thereby, and the Debtors require no further consents or approvals to consummate the Sale contemplated by the Stalking Horse APA, except as otherwise set forth in the Stalking Horse APA.

FF.    The transfer of each of the Assets to the Buyer will be as of the Closing Date a legal, valid, and effective transfer of such assets, and vests or will vest the Buyer with all right,

12

title, and interest of Sellers to the Assets free and clear of all Interests or Claims (as defined below) (other than Assumed Liabilities or Permitted Liens) accruing, arising, or relating thereto any time prior to the Closing Date, unless otherwise expressly assumed in, or transferred by, the Stalking Horse APA.

GG.     The Debtors may sell the Assets free and clear of all Interests or Claims against the Debtors, their bankruptcy estates, or any of the Assets (unless otherwise expressly assumed in, or transferred by, the Stalking Horse APA) because, in each case, one or more of the standards set forth in section 363(f)(1)–(5) of the Bankruptcy Code has been satisfied.  Each of the Interests or Claims (other than the Assumed Liabilities or Permitted Liens) that is attached to the Assets to be transferred on the Closing Date: (i) is subject to release or discharge under applicable non-bankruptcy law, (ii) is held by an entity that has consented to the Sale or is deemed to have consented to the Sale, (iii) constitutes a lien against some or all of the Assets and the price at which such property is to be sold under the Stalking Horse APA is greater than the aggregate value of all liens on such property, (iv) is the subject of a bona fide dispute, and/or (v) is held by an entity that could be compelled in a legal or equitable proceeding to accept money satisfaction of such Interests or Claims.

HH.     Those holders of Interests or Claims against the Debtors, their bankruptcy estates, or any of the Assets who did not object, or who withdrew their objections, to the Sale or the Motion are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of Interests or Claims (other than the Assumed Liabilities or Permitted Liens) who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code.

II.     If, except as otherwise expressly assumed in or permitted by the Stalking Horse APA, the Sale were not free and clear of all Interests or Claims (other than the Assumed Liabilities

13

or Permitted Liens), or if the Buyer would, or in the future could, be liable for any of the Interests or Claims (other than the Assumed Liabilities or Permitted Liens), the Buyer would not have entered into the Stalking Horse APA and would not consummate the Sale, thus adversely affecting the Debtors and their bankruptcy estates and creditors.

JJ.    The Debtors have demonstrated that it is an exercise of their sound business judgment for the Debtors to assume and assign the Assigned Contracts to the Buyer pursuant to the terms of this Sale Order and the Stalking Horse APA, in each case in connection with the consummation of the Sale, and the assumption and assignment of the Assigned Contracts is in the best interests of the Debtors, their bankruptcy estates and creditors, and other parties in interest. The Assigned Contracts being assigned to the Buyer under the Stalking Horse APA are an integral part of the Stalking Horse APA and the Sale and, accordingly, such assumptions and assignments are reasonable and enhance the value of the Debtors' bankruptcy estates.  Any non-Debtor counterparty to any Assigned Contract that has not filed with the Court an objection to such assumption as of the date hereof is deemed to have consented to such assumption and assignment.

KK.    The Debtors and the Buyer have, to the extent necessary, satisfied the requirements of section 365 of the Bankruptcy Code, including sections 365(b)(1)(A), 365(b)(1)(B), 365(b)(1)(C), and 365(f) of the Bankruptcy Code, in connection with the Sale and the assumption and assignment of the Assigned Contracts to the extent provided under this Sale Order and the Stalking Horse APA and have: (i) cured any default existing prior to the date hereof under each of the applicable Assigned Contracts, within the meaning of section 365(b)(l)(A) of the Bankruptcy Code, or will cure any such default as of the Closing or as soon as reasonably practicable thereafter; and (ii) provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under each of the

14

applicable Assigned Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code, and the Buyer has provided adequate assurance of future performance with respect to the Assigned Contracts, within the meaning of sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code. The Assigned Contracts are assignable notwithstanding any provisions contained therein to the contrary.

LL.    The Sale Releases (as defined herein) constitute essential and critical provisions of the Stalking Horse APA and form an integral part of the Sale. The Sale Releases are appropriately tailored under the facts and circumstances of the Chapter 11 Cases. The Seller Release is a sound exercise of the Debtors' business judgment, in light of the consideration received through the Sale and the facts and circumstances of these Chapter 11 Cases.

MM.    The Stalking Horse APA and Sale must be approved and the Closing must occur promptly to preserve the value of the Assets and the Debtors' bankruptcy estates.

NN.    Given all of the circumstances of these Chapter 11 Cases and the adequacy and fair value of the consideration provided by the Buyer under the Stalking Horse APA, the Sale constitutes a reasonable and sound exercise of the Debtors' business judgment, is in the best interests of the Debtors, their bankruptcy estates, their creditors, and other parties in interest in these Chapter 11 Cases, and should be approved.

OO.    The consummation of the Sale is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b), and 365(f) of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Sale.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. The relief requested in the Motion, and the transactions contemplated thereby and by the Stalking Horse APA, are **APPROVED** as set forth in this Sale Order and on the record of the Sale Hearing, which is incorporated herein as if fully set forth in this Sale Order, and the Sale contemplated by the Stalking Horse APA is **APPROVED**.

2. Any and all objections and responses to the Motion that have not been withdrawn, waived, settled, or resolved, and all reservations of rights included therein, are hereby overruled and denied on the merits. Notice of the Motion, the Auction, the Sale Hearing, and the Sale was fair and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006.

**Approval of the Sale of the Assets**

3. The Stalking Horse APA, including all other ancillary documents, and all of the terms and conditions thereof, and the Sale contemplated thereby, including the Purchase Price and the Credit Bid Amount, are hereby approved in all respects.

4. Pursuant to section 363(b) of the Bankruptcy Code, the Debtors, acting by and through their existing agents, representatives, and officers, are authorized and empowered to take any and all actions necessary or appropriate to: (a) consummate and close the Sale pursuant to and in accordance with the terms and conditions of this Sale Order and the Stalking Horse APA; (b) transfer and assign all rights, title, and interest to all property, licenses, and rights to be conveyed in accordance with the terms and conditions of this Sale Order and the Stalking Horse APA; and (c) execute and deliver, perform under, consummate, and implement this Sale Order, the Stalking Horse APA, and all additional instruments and documents that may be reasonably necessary or desirable to implement this Sale Order, the Stalking Horse APA, and the Sale, including any other ancillary documents, or as may be reasonably necessary or appropriate to the

16

performance of the obligations as contemplated by this Sale Order, the Stalking Horse APA, and any such other ancillary documents.

5.    This Sale Order shall be binding in all respects upon (a) the Debtors, (b) their bankruptcy estates, (c) all creditors, (d) all holders of equity interests in the Debtors, (e) all holders of any Interests or Claims (whether known or unknown) against the Debtors, (f) any and all alleged holders of Interests or Claims against or on all or any portion of the Assets, (g) all counterparties to any executory contract or unexpired lease of the Debtors, (h) the Buyer and all agents, representatives, affiliates, and permitted successors and assigns of the Buyer, and (i) any trustee, examiner, or other fiduciary under any section of the Bankruptcy Code subsequently appointed in the Debtors' Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code of any or all of the Debtors' cases.  The terms and provisions of the Stalking Horse APA and this Sale Order shall inure to the benefit of the Debtors, their bankruptcy estates, and their creditors, the Buyer and all agents, representatives, affiliates, and permitted successors and assigns of the Buyer, and any other affected third parties, including all persons asserting any Interests or Claims in the Assets to be sold to the Buyer pursuant to the Stalking Horse APA, notwithstanding any subsequent appointment of any trustee(s), party, entity, or other fiduciary under any section of any chapter of the Bankruptcy Code, as to which trustee, party, entity, or other fiduciary such terms and provisions likewise will be binding.

### Sale and Transfer of Assets

6.    Pursuant to sections 105(a), 363(b), 363(f), 365(b), and 365(f) of the Bankruptcy Code, upon the Closing Date and pursuant to and except as otherwise set forth in the Stalking Horse APA, the Debtors' rights, title and interests in and to the Assets will be transferred to the Buyer free and clear of all liens (including as defined in section 101(37) of the Bankruptcy Code, and whether consensual, statutory, possessory, judicial, or otherwise), claims (as defined in

section 101(5) of the Bankruptcy Code) ("Claims"), debts (as defined in section 101(12) of the Bankruptcy Code), encumbrances, obligations, liabilities, demands, guarantees, actions, suits, defenses, deposits, credits, allowances, options, rights, restrictions, limitations, contractual commitments, or interests of any kind or nature whatsoever, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to, on, or subsequent to, the commencement of these Chapter 11 Cases, and in each case, whether imposed by agreement, understanding, law, equity, or otherwise, including, but not limited to: (i) mortgages, security deeds, deeds of trust, pledges, charges, security interests, levies, hypothecations, encumbrances, easements, servitudes, leases, subleases, licenses, rights-of-way, encroachments, restrictive covenants, restrictions on transferability, voting, sale, transfer or other similar restrictions, rights of setoff (except for setoffs validly exercised before the Petition Date, or preserved in a timely filed proof of claim or motion filed with the Court), rights of use or possession, conditional sale arrangements, deferred purchase price obligations, profit sharing interest, or any similar rights; (ii) all Claims, including, without limitation, all rights or causes of action (whether in law or equity), proceedings, warranties, guarantees, indemnities, rights of recovery, setoff (except for setoffs validly exercised before the Petition Date, or preserved in a timely filed proof of claim or motion filed with the Court), indemnity or contribution, obligations, demands, restrictions, indemnification claims, or liabilities relating to any act or omission of a Debtor or any other Person, consent rights, options, contract rights, covenants, and interests of any kind or nature whatsoever (known or unknown, matured or unmatured, accrued, or contingent and regardless of whether currently exercisable), whether

18

arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity, or otherwise; (iii) all debts, liabilities, obligations, contractual rights and claims, including labor, employment, and pension claims; (iv) any rights that purport to give any party a right or option to effect any forfeiture, modification, right of first offer or first refusal, or consents, or termination of a Debtor's or the Buyer's interest in the Assets, or any similar rights; (v) any rights under labor or employment agreements; (vi) any rights under pension, multiemployer plan (as such term is defined in section 3(37) or section 4001(a)(3) of the Employment Retirement Income Security Act of 1974 (as amended, "ERISA")), health or welfare, compensation or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plans of a Debtor or any multiemployer plan to which a Debtor has at any time contributed to or had any liability or potential liability; (vii) any other employee claims related to worker's compensation, occupation disease, or unemployment or temporary disability, including, without limitation, claims that might otherwise arise under or pursuant to (a) ERISA, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employment Act of 1967 and the Age Discrimination in Employment Act, each as amended, (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including, without limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA and section 4980B of the Internal Revenue Code of any similar state law, (i) state discrimination laws, (j) state unemployment compensation laws or any other similar state laws, (k) any other state or federal benefits or claims relating to any employment with a Debtor or any of its predecessors, or (l) the WARN Act (29 U.S.C. §§ 2101, et seq.) or any state or other laws of similar effect; (viii) any bulk

sales or similar law; (ix) any tax statutes or ordinances or other laws of similar effect, including, without limitation, the Internal Revenue Code of 1986, as amended, and any taxes arising under or out of, in connection with, or in any way relating to the operation of the Assets before the closing of a Sale; (x) any unexpired and executory contract or unexpired lease to which a Debtor is a party that is not an Assigned Contract; (xi) any other excluded liabilities under the Stalking Horse APA; and (xii) encumbrances arising under or in connection with any acts, or failures to act, of a Debtor or any of its predecessors, affiliates, or subsidiaries, including, but not limited to, Interests or Claims arising under any doctrines of successor liability (to the greatest extent permitted by applicable law), or transferee or vicarious liability, violation of the Securities Act, the Exchange Act, or other applicable securities laws or regulations, breach of fiduciary duty, or aiding or abetting breach of fiduciary duty, or any similar theories under applicable law or otherwise (collectively, "Interests or Claims"), with all such Interests or Claims to attach to the net cash proceeds of the Sale in the order of their priority, with the same validity, force, and effect that they now have as against the Assets, subject to any claims and defenses that the Debtors and their bankruptcy estates may possess with respect thereto.

7.      On the Closing Date, this Sale Order will be construed and will constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of all of the Assets or a bill of sale transferring good and marketable title in such Assets to the Buyer pursuant to the terms and conditions set forth in this Sale Order and the Stalking Horse APA.  For the avoidance of doubt, the Excluded Assets (including, without limitation, the Excluded Cash and the Excluded Litigation Trust Assets) and Excluded Liabilities set forth in the Stalking Horse APA are not included in the Assets and such Excluded Assets (including, without limitation, the

20

Excluded Cash and the Excluded Litigation Trust Assets) and Excluded Liabilities shall remain property of the Debtors' estates.

8. Subject to the terms and conditions of this Sale Order, the transfer of the Assets to the Buyer pursuant to the Stalking Horse APA and the consummation of the Sale and any related actions contemplated thereby (a) do not require any consents other than as specifically provided for in this Sale Order and the Stalking Horse APA, (b) constitute a legal, valid, and effective transfer of the Assets, and (c) will vest the Buyer with all of the Debtors' rights, title, and interests in and to the Assets as set forth in this Sale Order and the Stalking Horse APA, as applicable, free and clear of all Interests or Claims of any kind or nature whatsoever (except as otherwise expressly assumed in, or transferred by, the Stalking Horse APA, such as the Assumed Liabilities or Permitted Liens).

9. The Buyer, to the extent provided by this Sale Order or the Stalking Horse APA, shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval ("Licenses") of Sellers constituting Assets, and all such Licenses are deemed to have been, and hereby are, directed to be transferred to the Buyer as of the Closing Date as provided by this Sale Order and the Stalking Horse APA. To the extent any Licenses are not an assumable and assignable executory contract, the Buyer shall make reasonable efforts to apply for and obtain any Licenses promptly as of the Closing Date, and the Debtors shall cooperate reasonably with the Buyer in those efforts. All existing Licenses shall remain in place for the Buyer's benefit until either new Licenses are obtained or existing Licenses are transferred in accordance with applicable administrative procedures. To the fullest extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any grant, permit, or license, including but not limited to any License, relating to the operation of the Assets sold,

21

transferred, assigned, or conveyed to the Buyer on account of the filing or pendency of these Chapter 11 Cases, the consummation of the Sale, or such other bases prohibited by section 525 of the Bankruptcy Code.  Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the Sale.

10.  Upon consummation of the Sale, if any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or recorded real property interests, or filed any other documents or agreements evidencing Interests or Claims (other than the Assumed Liabilities or Permitted Liens) against or in the Assets has not delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Interests or Claims that the person or entity has with respect to the Assets (unless otherwise expressly assumed in, or transferred by, the Stalking Horse APA), or otherwise, then: (a) the Debtors are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Assets; and (b) the Buyer is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered, or otherwise recorded, will constitute conclusive evidence of the release of all Interests or Claims in the Assets of any kind or nature (except as otherwise expressly assumed in, or transferred by, the Stalking Horse APA); *provided that*, notwithstanding anything in this Sale Order or the Stalking Horse APA to the contrary, the provisions of this Sale Order will be self-executing, and neither the Debtors nor Buyer will be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Sale Order. For the avoidance of doubt, upon consummation of the Sale, the Buyer is authorized to file

22

termination statements, lien terminations, or other amendments in any required jurisdiction to remove notice filings, financing statements, or other documents recorded to attach, perfect, or otherwise notice any lien or encumbrance that is extinguished or otherwise released pursuant to this Sale Order under section 363 of the Bankruptcy Code and the related provisions of the Bankruptcy Code.

11.     Except to the extent included in Assumed Liabilities or Permitted Liens, or to enforce the Stalking Horse APA, all entities, including all lenders, debt security holders, equity security holders, governmental, tax, and regulatory authorities, parties to executory contracts and unexpired leases, customers, dealers, sale representatives, vendors, suppliers, trade creditors, current and former directors, officers and employees of the Debtors, and any other creditors holding or entitled to assert, directly or indirectly, Interests or Claims of any kind or nature whatsoever against or in the Debtors and their bankruptcy estates or the Assets arising under or out of, in connection with, or in any way relating to, the Debtors, the Assets or the transfer of the Assets to the Buyer, hereby are forever barred and estopped, from asserting any Interests or Claims of any kind or nature whatsoever arising prior to the Closing directly or indirectly against the Buyer and its permitted successors, designees, and assigns, or property, or the Assets conveyed in accordance with the Stalking Horse APA.

12.     As of and after the Closing, each of the Debtors' creditors is hereby authorized to execute such documents and take all other actions as may be necessary to release its Interests or Claims in the Assets (if any) as such Interests or Claims may have been recorded or may otherwise exist.

## Contracts to be Assumed and Assigned

13.     Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, and subject to and conditioned upon the occurrence of the Closing Date and payment of the applicable Cure

23

Amounts (if any), Sellers' assumption and assignment to the Buyer, on the terms set forth in this Sale Order and the Stalking Horse APA, of the Assigned Contracts is hereby approved in its entirety, and the requirements of section 365 of the Bankruptcy Code with respect thereto are hereby deemed satisfied.

14.     Subject to payment of the applicable Cure Amounts (if any), Sellers are hereby authorized in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code to assume and assign to the Buyer, effective upon the Closing Date, the Assigned Contracts free and clear of all Interests or Claims of any kind or nature whatsoever (except as otherwise expressly assumed in, or transferred by, the Stalking Horse APA) and to execute and deliver to the Buyer such documents or other instruments as may be necessary to assign and transfer the Assigned Contracts to the Buyer.

15.     Upon the Closing and payment of the applicable Cure Amounts (if any), in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested in all right, title, and interest of each Assigned Contract.

16.     The Assigned Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Buyer in accordance with their respective terms pursuant to the Stalking Horse APA, notwithstanding any provision in any such Assigned Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer.

17.     Pursuant to sections 365(b)(1)(A) and (B) of the Bankruptcy Code, at the Closing, or as soon as reasonably practicable thereafter, Buyer shall pay to the respective counterparty the

Cure Amounts (if any) relating to the Assigned Contracts in accordance with the Stalking Horse APA.

18.     The payment of the applicable Cure Amounts (if any) shall effect a cure of any and all defaults existing as of the date that such executory contracts or unexpired leases are assumed and compensate for any actual pecuniary loss to such non-Debtor party resulting from such default(s).

19.     Upon the Closing, Sellers shall assume the Assigned Contracts and assign them to the Buyer, and, pursuant to section 365(f) of the Bankruptcy Code, the assignment by Sellers of such Assigned Contracts will not be a default thereunder.  After the payment of the relevant Cure Amounts, neither the Debtors, their bankruptcy estates, nor the Buyer shall have any further liabilities to the non-Debtor counterparties to the Assigned Contracts, other than Buyer's obligations under the Assigned Contracts that accrue or become due and payable on or after the date that such Assigned Contracts are assigned to the Buyer.

20.     Except as otherwise agreed in writing between the Buyer, the Debtors and the non-Debtor parties to the Assigned Contracts or as determined by separate Court order, the Cure Amounts for the Assigned Contracts are hereby fixed at the amounts set forth in the *Notice of Potential Assumption, Assumption and Assignment, or Transfer of Executory Contracts and Unexpired Leases* [Docket No. 163] or the *Amended Notice of Potential Assumption, Assumption and Assignment, or Transfer of Executory Contracts and Unexpired Leases* [Docket No. 279], as applicable, and the non-Debtor parties to such Assigned Contracts are forever bound by such Cure Amounts and, upon payment of such Cure Amounts, if any, are hereby enjoined from taking any action against the Debtors, their bankruptcy estates, the Buyer, all agents, representatives, affiliates, or permitted successors or assigns of the Buyer, or the Assets with respect to any claim

25

for cure amounts under any Assigned Contract, any default arising from any failure to perform nonmonetary obligations prior to the Closing, or otherwise under the Assigned Contracts.

21.    Any provisions in any Assigned Contracts that prohibit or condition the assignment of such Assigned Contract or allow the party to such Assigned Contract to terminate, recapture, impose any penalty or condition on renewal or extension, or modify any term or condition upon the assignment of such Assigned Contract constitute unenforceable anti-assignment provisions that are void and of no force and effect pursuant to sections 365(b), 365(e), and 365(f) of the Bankruptcy Code.

22.    All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyer of the Assigned Contracts have been satisfied.

23.    Any party having the right to consent to the assumption or assignment of any Assigned Contract that failed to object to such assumption or assignment is deemed to have consented to such assumption and assignment as required by section 365(c) of the Bankruptcy Code.

24.    Upon the Closing, the Buyer shall be deemed to be substituted for the applicable Seller as a party to the applicable Assigned Contracts and the Debtors and their estates will be

relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Assigned Contracts.

25.    The Buyer has provided adequate assurance of future performance under the relevant Assigned Contracts within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

26.    Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, all counterparties to the Assigned Contracts are forever barred from raising or asserting against the Debtors and their estates or Buyer any assignment fee, default, breach, claim, pecuniary loss, or condition to assignment, arising under or related to the Assigned Contracts, existing as of the date that such Assigned Contracts are assigned or arising by reason of or in connection with the Closing.

### Releases

27.    Effective as of the Closing, each Seller Releasing Person[6] shall forever release and discharge each Buyer Releasing Person[7] from all debts, demands, actions, covenants, torts and damages and all defenses, offsets, judgments and liabilities whatsoever, of every name and nature, both at law and in equity, known or unknown, accrued or unaccrued, which any Seller Releasing Person has or ever had, that arises out of or in any way relates to events, circumstances or actions

---

[6]    "Seller Releasing Person" means each of the following: (a) the Debtors, their estates, and each of their respective affiliates, and (b) with respect to each of the foregoing, their current and former (i) officers, (ii) directors, (iii) managers, (iv) principals, (v) members, (vi) employees, (vii) agents, (viii) advisory board members, (ix) financial advisors, (x) partners, (xi) attorneys, (xii) accountants, (xiii) investment bankers, (xiv) consultants and (xv) other professionals, each in their respective capacity as such.

[7]    "Buyer Releasing Person" means each of the following: (a) the Buyer, the DIP Secured Parties (as defined in the Final DIP Order), the Prepetition Term Loan Secured Parties (as defined in the Final DIP Order), and each of their affiliates, and (b) with respect to each of the foregoing, their current and former (i) officers, (ii) directors, (iii) managers, (iv) principals, (v) members, (vi) employees, (vii) agents, (viii) advisory board members, (ix) financial advisors, (x) partners, (xi) attorneys, (xii) accountants, (xiii) investment bankers, (xiv) consultants, and (xv) other professionals, each in their respective capacity as such.

occurring, existing or taken prior to the Closing Date in respect of the Released Claims[8] (the "Seller

Release").

28.    Effective as of the Closing, each Buyer Releasing Person shall forever release and

discharge each Seller Releasing Person from all debts, demands, actions, covenants, torts and

damages and all defenses, offsets, judgments and liabilities whatsoever, of every name and nature,

both at law and in equity, known or unknown, accrued or unaccrued, which any Buyer Releasing

Person has or ever had, that arises out of or in any way relates to events, circumstances or actions

occurring, existing or taken prior to the Closing Date in respect of the Released Claims (the "Buyer

Release" and, together with the Seller Release, the "Sale Releases").  For the avoidance of doubt,

the Sale Releases shall not apply to any claims, causes of action, or rights that constitute Excluded

Litigation Trust Assets.

29.    For the avoidance of doubt, the Buyer (or its designee) shall not pursue any claims

or causes of action to recover or avoid transfers under sections 547 and 550 of the Bankruptcy

Code (to the extent such claims arise solely in connection with claims under section 547 of the

Bankruptcy Code) against contractual counterparties whose agreements have been assumed and

assigned, go-forward vendors, or other go-forward commercial counterparties of the Buyer (or its

designee), except as agreed in writing by the Debtors, the Required DIP Lenders, the Required

---

[8]  "Released Claims" means all Liabilities, claims and causes of action related to or arising out of the (a) Assets, (b) Assumed Liabilities, (c) operation of the Debtors' business prior to the Closing Date, or (d) negotiation, formulation, preparation, or execution of the Stalking Horse APA and consummation of the transactions contemplated thereby; *provided*, for the avoidance of doubt, that "Released Claims" shall not include (i) any rights, claims or obligations arising under or pursuant to this Sale Order, the Stalking Horse APA, the other Transaction Documents, the Final DIP Order (including the Committee Resolution (as defined in the Final DIP Order)), or the *Order Approving Settlement Agreement* [Docket No. 158] (the "Sim Int'l Order") (including the Settlement Agreement (as defined in the Sim Int'l Order)), (ii) any rights or remedies of any Buyer Releasing Person related to the DIP Obligations or the Prepetition Term Loan Obligations (each as defined in the Final DIP Order), in each case, to the extent not part of the Credit Bid, or (iii) any claims or causes of action that constitute Litigation Trust Assets (as defined in the Committee Resolution (as defined in the Final DIP Order)).

Lenders (as defined in the Prepetition Credit Agreement (as defined in the Final DIP Order)), and the Committee.

**Additional Provisions**

30. The Debtors and the Buyer hereby waive, and shall be deemed to waive, any requirement of compliance with, and any claims related to non-compliance with, the provisions of any bulk sales, bulk transfer, or similar law of any jurisdiction that may be applicable. No bulk sale law or any similar law of any state or other jurisdiction shall apply in any way to the Sale and the transactions contemplated by the Stalking Horse APA.

31. Following the Closing, no holder of an Interests or Claims against the Debtors and their bankruptcy estates or the Assets may interfere with the Buyer's title to or use and enjoyment of the Assets based on or related to such Interests or Claims or any actions that the Debtors and their bankruptcy estates may take in these Chapter 11 Cases or any successor case.

32. The Debtors, including their officers and agents, are hereby authorized to execute such documents and do such acts as are necessary or desirable to carry out the transactions contemplated by the terms and conditions of the Stalking Horse APA and this Sale Order. The Debtors shall be, and hereby are, authorized to take all such actions as may be necessary to effectuate the terms of this Sale Order and the relief granted pursuant to this Sale Order. No consents or approvals, other than those expressly provided for in the Stalking Horse APA or this Sale Order, are required for the Debtors to consummate the Sale.

33. Absent the express written consent of the Buyer, the Debtors shall not settle or otherwise resolve any existing or future litigation with any third party or any Governmental Authority other than any settlement pursuant to which (i) any Liability thereunder will be an Excluded Liability, (ii) no payment from the Buyer is sought or required, and (iii) no restrictions

are placed on or affecting the Assets or the operation of the business from and after the Closing Date.

34. The consideration provided by the Buyer to the Debtors pursuant to the Stalking Horse APA constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and any other applicable law within the meaning of section 544(b) of the Bankruptcy Code, under the laws of the United States, any state, territory, or possession, and the District of Columbia.

35. Except for the Assumed Liabilities or Permitted Liens, the Buyer shall not have any liability whatsoever for any obligation of the Debtors arising under or related to (i) any of the Assets, (ii) any contracts assumed and assigned to the Buyer, including the Assigned Contracts, or (iii) the operation of the Debtors' businesses prior to closing the transactions contemplated by the Stalking Horse APA. Without limiting the generality of the foregoing, and except for the Assumed Liabilities and the Permitted Liens, the Buyer shall not be liable for any Interests or Claims against or in the Debtors, any of their predecessors or affiliates, or any of the Assets.

36. The Buyer and its affiliates, designees, successors, and assigns shall not be deemed or considered to (a) be a successor (or other such similarly situated party) to the Debtors, including a "successor employer" for purposes of the Internal Revenue Code of 1986, ERISA, or other applicable laws; (b) have any responsibility or liability for any obligations of the Debtors, or any affiliate thereof, based on any theory of successor or similar theories of liability; (c) have, *de facto* or otherwise, merged with or into any of the Debtors; (d) be an alter ego or a mere continuation or substantial continuation of any of the Debtors (and there is no continuity of enterprise between the Buyer and any Debtor), including within the meaning of any foreign, federal, state, or local revenue, pension, ERISA, tax, labor, employment, environmental, or other law, rule, or regulation

(including filing requirements under any such laws, rules, or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule, or regulation or doctrine; or (e) be holding itself out to the public as a continuation of any of the Debtors or their respective estates.

37.     The Sale is undertaken by the Buyer without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale will not affect the validity of the Sale (including the assumption and assignment of the Assigned Contracts by the Buyer, if any, and the sale free and clear of all Interests or Claims (unless otherwise expressly assumed in, or transferred by, the Stalking Horse APA)), unless such authorization and consummation of such Sale are duly stayed pending such appeal.  The Buyer is a good-faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

38.     As a good-faith purchaser of the Assets, the Buyer has not colluded with any of the other bidders, potential bidders, or any other parties interested in the Assets, and therefore the sale of the Assets may not be avoided pursuant to section 363(n) of the Bankruptcy Code.

39.     Upon the Closing of the Sale, (a) the full amount of the DIP Obligations outstanding as of the Closing Date, and (b) the Prepetition Term Loan Obligations (as defined in the Final DIP Order) in an amount equal to the Credit Bid Amount less the outstanding DIP Obligations as of the Closing Date shall be deemed fully and finally satisfied.

40.     Nothing in the Stalking Horse APA or this Sale Order shall be deemed to limit, abridge, or otherwise modify the Final DIP Order or the rights, liens, or claims of the Prepetition Term Loan Secured Parties (as defined in the Final DIP Order), including any adequate protection

31

liens or claims afforded to the Prepetition Term Loan Secured Parties (as defined in the Final DIP Order), in or against any of the Excluded Assets remaining in the Debtors' estates following consummation of the Sale; *provided*, *however*, that such liens and claims shall be subject to payments to be made by the Debtors from Excluded Cash pursuant to section 1.1 of the Stalking Horse APA and the Committee Resolution (as defined in the Final DIP Order), including the Wind-Down Amount.  For the avoidance of doubt, as provided in sections 1.1 and 9.3(c) of the Stalking Horse APA, to the extent that there exists any residual Excluded Cash remaining in the Debtors' estates following payment of the items identified to be paid by Excluded Cash in section 1.1 of the Stalking Horse APA and the Committee Resolution, such residual amounts shall be paid to the Buyer.

41.     Notwithstanding anything to the contrary in the Stalking Horse APA, the Buyer shall not be entitled to payment of the Expense Reimbursement.

42.     Regarding the *Objection of Starr Indemnity & Liability Company and Starr Surplus Lines Insurance Company to Debtor's Notice of Potential Assumption and Assignment of Executory Contracts* [Docket No. 245] (the "Starr Objection"), this Sale Order does not approve the assumption or assignment of the Insurance Policy (as defined therein), and the Debtors are not seeking such approval pursuant to the Motion.  Accordingly, the Starr Objection shall be deemed withdrawn with prejudice.

43.     For the avoidance of doubt, nothing in this Sale Order authorizes the sale or other disposition of any property owned by Spirit Airlines, LLC or its affiliates.

44.     With respect to *Spirit Airlines, LLC's Limited Objection and Reservation of Rights to (I) the Notice of Potential Assumption, Assumption and Assignment, or Transfer of Executory Contracts and Unexpired Leases (D.I. 163) and (II) the Debtors' Sale Motion (D.I. 13)* [Docket

32

No. 246], the *Limited Objection and Reservation of Rights of Exeter 920 Apollo, LLC in Response to Notice of Potential Assumption, Assumption and Assignment, or Transfer of Executory Contracts and Unexpired Lease* [Docket No. 248], and *Nation Fund I, LLC's Limited Objection to Notice of Potential Assumption, Assumption and Assignment, or Transfer of Executory Contracts and Unexpired Leases* [Docket No. 247] (collectively, the "Specified Contract Objections"), to the extent any such Specified Contract Objection is not consensually revolved without judicial intervention in a timely manner with the consent of the Buyer, at the Debtors' option and with the consent of the Buyer, (i) such Specific Contract Objection may be adjourned to a subsequent hearing as may be agreed upon by the parties (including the Buyer) or fixed by the Court or (ii) the Buyer may determine and provide written notice to the Debtors and non-Debtor contract counterparty (email being sufficient) that such proposed Assigned Contract will not be assigned to Buyer, in which case the Buyer shall not be responsible for any Cure Amounts or other obligations in respect of such contract.

45. Nothing in this Sale Order or the Stalking Horse APA (i) releases, nullifies, precludes, or enjoins the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as the post-sale owner or operator of property after the date of entry of this Sale Order; (ii) authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the discontinuation of any obligation thereunder, absent compliance with applicable non-bankruptcy law; or (iii) divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Sale Order or to adjudicate any defense asserted under this Sale Order.

46. Nothing contained in any plan of liquidation or reorganization, or order of any type or kind entered in these Chapter 11 Cases, any subsequent chapter 7 or chapter 11 case of the

33

Debtors, or any related proceeding subsequent to entry of this Sale Order, will conflict with or derogate from the terms of this Sale Order or the Stalking Horse APA.

47. The mere failure to specifically include any particular provisions of the Stalking Horse APA, including any of the documents, agreements, or instruments executed in connection therewith in this Sale Order shall not diminish or impair the efficacy of such provision, document, agreement, or instrument, it being the intent of this Court that the Stalking Horse APA and each document, agreement or instrument be authorized and approved in its entirety, provided, however, to the extent there are any inconsistencies between the terms of this Sale Order and the Stalking Horse APA (including all ancillary documents executed in connection therewith), the terms of this Sale Order will govern.

48. All time periods set forth in this Sale Order will be calculated in accordance with Bankruptcy Rule 9006(a).

49. To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Motion in these Chapter 11 Cases, the terms of this Sale Order will govern.

50. The Stalking Horse APA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of this Court.

51. The provisions of this Sale Order are nonseverable and mutually dependent.

52. Notwithstanding the provisions of Bankruptcy Rules 6004(h), 6006(d) or 7062 or any applicable provisions of the Local Rules, this Sale Order shall not be stayed after the entry hereof, but will be effective and enforceable immediately upon entry, and the fourteen (14) day

stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply.

53.     This Court will retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the Stalking Horse APA, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to the Buyer, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale.