**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AVENGER FLIGHT GROUP, LLC, *et al.*, | Case No. 26-10183 (MFW) |
| Debtors.[1] | (Jointly Administered) |
| | **Ref. Dkt. Nos. 301 & 376** |

**NOTICE OF FILING OF BLACKLINE OF COMBINED DISCLOSURE
STATEMENT AND FIRST AMENDED PLAN OF LIQUIDATION OF
AVENGER FLIGHT GROUP, LLC AND ITS AFFILIATED DEBTORS
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.     On April 10, 2026, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed the *Combined Disclosure Statement and Plan of Liquidation of Avenger Flight Group, LLC and its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 301] (the "Combined Plan and Disclosure Statement") with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

2.     On May 1, 2026, the Debtors filed the *Combined Disclosure Statement and First Amended Plan of Liquidation of Avenger Flight Group, LLC and its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 376] (the "Amended Combined Plan and Disclosure Statement").

---

[1] The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are:  Avenger Flight Group, LLC (1216); AFG Dallas III, LLC (5615); AFG Dallas IV, LLC (5558); AFG Dallas, LLC (3418); AFG EU Operations Corp. (9406); AFG FLL, LLC (6470); AFG Latam Holding Corp. (6475); AFG Latam Sim Holdings II, LLC (0473); AFG Latam Sim Holdings III, LLC (2592); AFG Latam Sim Holdings IV, LLC (0093); AFG Latam Sim Holdings, LLC (6475); AFG Latam, LLC (9545); AFG Mexico Corp. (1402); AFG Orlando, LLC (8409); AFG Sanford, LLC (6661); AFG Sim Holding Corp. (3325); Avenger Flight Group Europe, Corp. (5908); Avenger Flight Group Topco, LLC (5643); Avenger Flight Training, LLC (5640); Avenger Flight Group Mexico II, S. de R.L. de C.V, (N/A); and Papi Flight Training, LLC (6206). The location of the Debtors' corporate headquarters and the Debtors' service address is Avenger Flight Group LLC, 1450 Lee Wagener Blvd., Fort Lauderdale, FL  33315.

3.	For the convenience of the Court and all parties in interest, a blackline comparison of the Amended Combined Plan and Disclosure Statement with the Combined Plan and Disclosure Statement is attached hereto as **Exhibit A**.

4.	The Amended Combined Plan and Disclosure Statement, as well as further information regarding the Debtors' chapter 11 cases, is available for review free of charge on the Debtors' case website at https://www.veritaglobal.net/avengerfg, or by calling (877) 725-7534 (U.S. and Canada) or +1 (424) 236-7243 (International).

Dated:   May 1, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Mary F. Caloway*

Richard M. Pachulski, Esq. (admitted *pro hac vice*)
Mary F. Caloway, Esq. (DE Bar No. 3059)
919 North Market Street, 17th Floor
Wilmington, DE 19801
Telephone:	(302) 652-4100
Facsimile:	(302) 652 4400
Email:	rpachulski@pszjlaw.com
	mcaloway@pszjlaw.com

- and -

Gregory V. Demo, Esq. (admitted *pro hac vice*)
Cia H. Mackle, Esq. (admitted *pro hac vice*)
1700 Broadway, 36th Floor
New York, NY 10019
Telephone:	(212) 561-7700
Facsimile:	(212) 561-7777
Email:	gdemo@pszjlaw.com
	cmackle@pszjlaw.com

*Counsel to the Debtors and Debtors in Possession*

**Exhibit A**

**Blackline of Combined Amended Plan and Disclosure Statement**

4902-9549-6359.2 05863.00002

> **THE BANKRUPTCY COURT HAS NOT APPROVED SOLICITATION OF THIS PLAN. THIS PLAN HAS NOT YET BEEN CONFIRMED BY THE BANKRUPTCY COURT. THIS PLAN IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY ANY SECURITIES.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AVENGER FLIGHT GROUP, LLC, *et al*., | Case No. 26-10183 (MFW) |
| Debtors.[1] | (Jointly Administered) |

## COMBINED DISCLOSURE STATEMENT AND FIRST AMENDED PLAN OF LIQUIDATION OF AVENGER FLIGHT GROUP, LLC AND ITS AFFILIATED DEBTORS UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

PACHULSKI STANG ZIEHL & JONES LLP
Richard M. Pachulski, Esq. (admitted *pro hac vice*)
Steven W. Golden, Esq. (DE Bar No. 6807)
Mary F. Caloway, Esq. (DE Bar No. 3059)
919 North Market Street, 17th Floor
Wilmington, DE 19801
Telephone: (302) 652-4100
Facsimile: (302) 652 4400
Email:      rpachulski@pszjlaw.com
            sgolden@pszjlaw.com

Gregory V. Demo, Esq. (admitted *pro hac vice*)
Cia H. Mackle, Esq. (admitted *pro hac vice*)
1700 Broadway, 36th Floor
New York, NY 10019
Telephone:  (212) 561-7700
Facsimile:  (212) 561-7777
Email:      gdemo@pszjlaw.com
            cmackle@pszjlaw.com

---

[1] The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are: Avenger Flight Group, LLC (1216); AFG Dallas III, LLC (5615); AFG Dallas IV, LLC (5558); AFG Dallas, LLC (3418); AFG EU Operations Corp. (9406); AFG FLL, LLC (6470); AFG Latam Holding Corp. (6475); AFG Latam Sim Holdings II, LLC (0473); AFG Latam Sim Holdings III, LLC (2592); AFG Latam Sim Holdings IV, LLC (0093); AFG Latam Sim Holdings, LLC (6475); AFG Latam, LLC (9545); AFG Mexico Corp. (1402); AFG Orlando, LLC (8409); AFG Sanford, LLC (6661); AFG Sim Holding Corp. (3325); Avenger Flight Group Europe, Corp. (5908); Avenger Flight Group Topco, LLC (5643); Avenger Flight Training, LLC (5640); Avenger Flight Group Mexico II, S. de R.L. de C.V, (N/A); and Papi Flight Training, LLC (6206). The location of the Debtors' corporate headquarters and the Debtors' service address is Avenger Flight Group LLC, 1450 Lee Wagener Blvd., Fort Lauderdale, FL 33315.

mcaloway@pszjlaw.com

*Counsel to the Debtors and Debtors in Possession*

**TABLE OF CONTENTS**

SECTION 1 INTRODUCTION .................................................................................................... 3

SECTION 2 SUMMARY OF CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER PLAN AND IMPORTANT SOLICITATION AND CONFIRMATION DATES AND DEADLINES ........................................ 5

SECTION 3 DEFINED TERMS ................................................................................................... 9

SECTION 4 BACKGROUND ................................................................................................... ~~24~~23

    4.1    General Background. .............................................................................. ~~24~~23
    4.2    Debtors' Organizational Structure. ....................................................... ~~25~~24
    4.3    Debtors' Debt Structure. ........................................................................ ~~25~~24
    4.4    Events and Circumstances Leading to the Bankruptcy Cases. ............. ~~28~~27

SECTION 5 THE CHAPTER 11 CASES ................................................................................... ~~32~~31

    5.1    First Day and Other Early Relief. ......................................................... ~~32~~31
    5.2    DIP Financing / Cash Collateral and Committee Resolution. ............. 32
    5.3    Sale Procedures / Sale of Assets .......................................................... 33
    5.4    Retention of Professionals. ................................................................... 33
    5.5    Appointment of Creditors' Committee. ................................................ 33
    5.6    SIM International Settlement. ................................................................ ~~34~~33
    5.7    Debtors' Schedules and Statements of Financial Affairs. .................... 34

SECTION 6 CONFIRMATION AND VOTING PROCEDURES ............................................. 34

    6.1    Confirmation Hearing. ........................................................................... 34
    6.2    Procedures for Objections. .................................................................... 34
    6.3    Requirements for Confirmation. ............................................................ ~~35~~34
    6.4    Classification of Claims and Interests. ................................................. 35
    6.5    Impaired Claims or Interests. ................................................................ ~~37~~36
    6.6    Confirmation without Necessary Acceptances; Cramdown. ................ 37
    6.7    Feasibility. ............................................................................................. 38
    6.8    Best Interests Test and Liquidation Analysis. ...................................... ~~39~~38
    6.9    Eligibility to Vote on the Combined Plan and Disclosure Statement. ... ~~40~~39
    6.10    Solicitation Package / Release Opt-In. ................................................. 40
    6.11    Voting Procedures, Voting Deadline, and Applicable Deadlines. ....... 40
    6.12    Acceptance of the Combined Plan and Disclosure Statement. ............ 41

SECTION 7 CERTAIN RISK FACTORS, TAX CONSEQUENCES, AND OTHER DISCLOSURES ............................................................................................. 41

    7.1    Certain Risk Factors to be Considered. ................................................ 41
    7.2    The Combined Plan and Disclosure Statement May Not Be Accepted. ... ~~42~~41
    7.3    The Combined Plan and Disclosure Statement May Not Be Confirmed. ... 42
    7.4    Distributions to Holders of Allowed Claims Under the Combined Plan and Disclosure Statement May be Inconsistent with Projections. ....... ~~43~~42
    7.5    Objections to Classification of Claims. ................................................ ~~43~~42
    7.6    Failure to Consummate the Combined Plan and Disclosure Statement. ... ~~44~~43

| | | |
|---|---|---|
| 7.7 | The Releases May Not Be Approved. | ~~44~~43 |
| 7.8 | Reductions to Estimated Creditor Recoveries. | 44 |
| 7.9 | Certain U.S. Federal Income Tax Consequences. | 44 |
| 7.10 | Tax Consequences for U.S. Holders of Certain Claims. | 45 |
| 7.11 | Tax Consequences in Relation to Litigation Trust. | 46 |
| 7.12 | Information Reporting and Withholding. | ~~49~~48 |
| 7.13 | Releases, Exculpations, and Injunctions. | 49 |
| 7.14 | Alternatives to the Combined Plan and Disclosure Statement. | ~~50~~49 |

SECTION 8 UNCLASSIFIED CLAIMS ........ ~~51~~50

| | | |
|---|---|---|
| 8.1 | Unclassified Claims. | ~~51~~50 |
| 8.2 | Administrative Claims. | 51 |
| 8.3 | DIP Facility Claims. | 52 |
| 8.4 | Priority Tax Claims. | 52 |

SECTION 9 CLASSIFICATION OF CLAIMS AND INTERESTS ........ ~~53~~52

| | | |
|---|---|---|
| 9.1 | Summary of Classification. | ~~53~~52 |
| 9.2 | Special Provision Governing Unimpaired Claims. | 53 |
| 9.3 | Vacant and Abstaining Classes. | 53 |
| 9.4 | Subordinated Claims. | ~~54~~53 |

SECTION 10 TREATMENT OF CLAIMS AND INTERESTS ........ ~~54~~53

| | | |
|---|---|---|
| 10.1 | Class 1—Priority Non-Tax Claims. | ~~54~~53 |
| 10.2 | Class 2—Prepetition Lenders Claims. | 54 |
| 10.3 | Class 3—Secured EDC Claims. | ~~55~~54 |
| 10.4 | Class 4—Other Secured Claims. | 55 |
| 10.5 | Class 5— SIM International Claims. | 55 |
| 10.6 | Class 6—Unsecured Claims. | ~~56~~55 |
| 10.7 | Class 7—Intercompany Claims. | 56 |
| 10.8 | Class 8—Interests. | ~~57~~56 |

SECTION 11 DISTRIBUTIONS TO HOLDERS OF ALLOWED CLAIMS ........ ~~57~~56

| | | |
|---|---|---|
| 11.1 | Distribution Dates. | ~~57~~56 |
| 11.2 | Subsequent Distributions. | 57 |
| 11.3 | Distribution Record Date. | 57 |
| 11.4 | Manner of Cash Payments Under the Plan or Litigation Trust Agreement. | 57 |
| 11.5 | Time Bar to Cash Payments by Check. | ~~58~~57 |
| 11.6 | Tax Identification Numbers. | 58 |

SECTION 12 PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND REDISTRIBUTIONS ........ ~~59~~58

| | | |
|---|---|---|
| 12.1 | No Distributions Pending Allowance. | ~~59~~58 |
| 12.2 | Resolution of Disputed Claims. | ~~59~~58 |
| 12.3 | Authority to Object to, Settle, and Resolve Claims. | 59 |
| 12.4 | Objection Deadline. | 59 |
| 12.5 | Estimation of Claims. | 59 |

12.6    Disallowance of Claims. ................................................................ 6059
12.7    Claims Register ............................................................................... 60
12.8    Reserve Provisions for Disputed Claims. ...................................... 6160
12.9    *De minimis* Distributions, Rounding. ............................................ 61
12.10   Unclaimed and Undeliverable Distributions. ................................ 61
12.11   Books and Records and Vesting of Privileges. ............................. 6261

SECTION 13 TREATMENT OF EXECUTORY CONTRACTS  AND UNEXPIRED LEASES 6362

13.1    Rejection. ........................................................................................ 6362
13.2    Rejection Claims. ........................................................................... 63
13.3    Insurance Policies. ......................................................................... 63

SECTION 14 MEANS FOR IMPLEMENTATION OF THE PLAN ........................... 6463

14.1    Global Settlement of Claims. ......................................................... 6463
14.2    Establishment and Administration of Litigation Trust Account. ... 64
14.3    Dissolution of Debtors; Corporate Action by Debtors. ................ 64
14.4    Limited Substantive Consolidation. .............................................. 65
14.5    Appointment of the Litigation Trustee and Litigation Trust Oversight
        Board. .............................................................................................. 6665
14.6    The Litigation Trust. ....................................................................... 66
14.7    Rights and Powers of the Litigation Trustee. ............................... 67
14.8    Fees and Expenses of the Litigation Trust. ................................... 6867
14.9    Transfer of Beneficial Interests in the Litigation Trust. ............... 6867
14.10   Litigation ........................................................................................ 6867
14.11   Dissolution of the Committee. ....................................................... 6968
14.12   Termination After Five Years and Extension. ............................... 6968

SECTION 15 EFFECT OF CONFIRMATION ......................................................... 69

15.1    Binding Effect of the Plan. ............................................................ 69
15.2    Vesting of Litigation Trust Assets in the Litigation Trust. ........... 7069
15.3    Property Free and Clear. ................................................................ 7069

SECTION 16 EXCULPATIONS, INJUNCTIONS, AND RELEASES ....................... 7069

16.1    Exculpation. .................................................................................... 7069
16.2    Releases. ......................................................................................... 7170
16.3    Injunction. ...................................................................................... 7372
16.4    Post-Confirmation Liability of Litigation Trustee. ....................... 7372
16.5    Preservation of Rights of Action. .................................................. 73
16.6    No Discharge. ................................................................................. 7574

SECTION 17 CONDITIONS PRECEDENT TO CONFIRMATION  AND
CONSUMMATION OF THE PLAN ...................................................... 7574

17.1    Conditions to Confirmation of the Plan. ....................................... 7574
17.2    Conditions to the Effective Date. .................................................. 7574
17.3    Waiver of Conditions Precedent. ................................................... 75

SECTION 18 RETENTION OF JURISDICTION ..................................................... 75

SECTION 19 MISCELLANEOUS PROVISIONS ........................................................ 7776

    19.1    Payment of Statutory Fees / Closing of Chapter 11 Cases. .................... 7776
    19.2    Revocation of the Combined Plan and Disclosure Statement. ................ 7776
    19.3    Severability of Plan Provisions. ........................................................... 7776
    19.4    Exhibits. ............................................................................................... 7877
    19.5    Notices. ................................................................................................ 7877
    19.6    Reservation of Rights. ......................................................................... 7877
    19.7    Defects, Omissions and Amendments. .................................................. 7978
    19.8    Successors and Assigns. ....................................................................... 7978
    19.9    Setoffs and Recoupments. .................................................................... 7978
    19.10  Tax Exemption. .................................................................................... 7978
    19.11  Securities Exemption. ........................................................................... 8079
    19.12  Implementation. ................................................................................... 8079
    19.13  Record Date. ........................................................................................ 8079
    19.14  Certain Actions. ................................................................................... 8079
    19.15  Substantial Consummation. .................................................................. 80
    19.16  Waiver of Fourteen-Day Stay. .............................................................. 8180
    19.17  Governing Law. ................................................................................... 8180
    19.18  Entire Agreement. ................................................................................ 8180
    19.19  Conflicts. ............................................................................................. 8180

SECTION 20 RECOMMENDATION ........................................................................... 8180

EXHIBIT A:  CORPORATE CHART

**DISCLAIMERS**

EACH HOLDER OF A CLAIM AGAINST THE DEBTORS ENTITLED TO VOTE TO ACCEPT OR REJECT THE COMBINED PLAN AND DISCLOSURE STATEMENT SHOULD READ THE COMBINED PLAN AND DISCLOSURE STATEMENT IN ITS ENTIRETY BEFORE VOTING. NO SOLICITATION OF VOTES TO ACCEPT OR REJECT THE COMBINED PLAN AND DISCLOSURE STATEMENT MAY BE MADE EXCEPT PURSUANT TO THE TERMS HEREOF AND SECTIONS 1121 AND 1125 OF THE BANKRUPTCY CODE.  IF YOU ARE ENTITLED TO VOTE TO ACCEPT THE COMBINED PLAN AND DISCLOSURE STATEMENT, YOU ARE RECEIVING A BALLOT WITH YOUR NOTICE OF THE COMBINED PLAN AND DISCLOSURE STATEMENT.

*THE DEBTORS, AS THE PROPONENTS OF THE PLAN, AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS APPOINTED IN THESE CHAPTER 11 CASES, EACH URGE YOU TO VOTE TO ACCEPT THE COMBINED PLAN AND DISCLOSURE STATEMENT.*

THE COMBINED PLAN AND DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTIONS 1121 AND 1125 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 3016 AND 3017, AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW.  PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING, OR TRANSFERRING CLAIMS AGAINST OR INTERESTS IN THE DEBTORS SHOULD EVALUATE THE COMBINED PLAN AND DISCLOSURE STATEMENT IN LIGHT OF THE PURPOSE FOR WHICH IT WAS PREPARED.  THE COMBINED PLAN AND DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED TO BE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE COMBINED PLAN AND DISCLOSURE STATEMENT AS TO HOLDERS OF CLAIMS AGAINST OR INTERESTS IN THE DEBTORS.  YOU SHOULD CONSULT YOUR PERSONAL COUNSEL OR TAX ADVISOR ON ANY QUESTIONS OR CONCERNS RESPECTING TAX, SECURITIES, OR OTHER LEGAL CONSEQUENCES OF THE COMBINED PLAN AND DISCLOSURE STATEMENT.

THE COMBINED PLAN AND DISCLOSURE STATEMENT CONTAINS SUMMARIES OF CERTAIN STATUTORY PROVISIONS, DOCUMENTS RELATED TO THE COMBINED PLAN AND DISCLOSURE STATEMENT, ANTICIPATED EVENTS IN THE CHAPTER 11 CASES, AND FINANCIAL INFORMATION. ALTHOUGH THE DEBTORS BELIEVE THAT THE STATEMENTS AND DESCRIPTIONS CONTAINED IN THE COMBINED PLAN AND DISCLOSURE STATEMENT ARE TRUE AND ACCURATE, THEY ARE QUALIFIED TO THE EXTENT THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF THE DOCUMENTS RELATED TO THE COMBINED PLAN AND DISCLOSURE STATEMENT AND APPLICABLE STATUTORY PROVISIONS.  THE TERMS OF THE DOCUMENTS RELATED TO THE COMBINED PLAN AND DISCLOSURE STATEMENT AND APPLICABLE STATUTES GOVERN IN THE EVENT OF ANY

DISCREPANCY WITH THE COMBINED PLAN AND DISCLOSURE STATEMENT. CREDITORS AND OTHER INTERESTED PARTIES SHOULD READ THE COMBINED PLAN AND DISCLOSURE STATEMENT, THE DOCUMENTS RELATED TO THE COMBINED PLAN AND DISCLOSURE STATEMENT, AND THE APPLICABLE STATUTES THEMSELVES FOR THE FULL AND COMPLETE STATEMENTS OF SUCH TERMS AND PROVISIONS.

THE FACTUAL STATEMENTS AND REPRESENTATIONS CONTAINED IN THE COMBINED PLAN AND DISCLOSURE STATEMENT ARE MADE BY THE DEBTORS AS OF THE DATE HEREOF, UNLESS OTHERWISE SPECIFIED, AND THE DEBTORS DISCLAIM ANY OBLIGATION TO UPDATE ANY SUCH STATEMENTS AFTER THE SOLICITATION OF VOTES TO ACCEPT OR REJECT THE COMBINED PLAN AND DISCLOSURE STATEMENT. THE DELIVERY OF THE COMBINED PLAN AND DISCLOSURE STATEMENT SHALL NOT BE DEEMED OR CONSTRUED TO CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME AFTER THE DATE HEREOF.

THE FINANCIAL INFORMATION CONTAINED HEREIN HAS NOT BEEN AUDITED BY A CERTIFIED PUBLIC ACCOUNTANT AND HAS NOT NECESSARILY BEEN PREPARED IN ACCORDANCE WITH GENERALLY ACCEPTED ACCOUNTING PRINCIPLES.

ALL FORWARD-LOOKING STATEMENTS CONTAINED HEREIN OR OTHERWISE MADE BY THE DEBTORS INVOLVE MATERIAL RISKS AND UNCERTAINTIES AND ARE SUBJECT TO CHANGE BASED ON NUMEROUS FACTORS, INCLUDING FACTORS THAT ARE BEYOND THE DEBTORS' CONTROL. ACCORDINGLY, THE DEBTORS' FUTURE PERFORMANCE AND FINANCIAL RESULTS MAY DIFFER MATERIALLY FROM THOSE EXPRESSED OR IMPLIED IN ANY SUCH FORWARD-LOOKING STATEMENTS. SUCH FACTORS INCLUDE, BUT ARE NOT LIMITED TO, THOSE DESCRIBED IN THE COMBINED PLAN AND DISCLOSURE STATEMENT. THE DEBTORS DO NOT INTEND TO UPDATE OR REVISE THEIR FORWARD-LOOKING STATEMENTS EVEN IF EXPERIENCE OR FUTURE CHANGES MAKE IT CLEAR THAT ANY PROJECTED RESULTS EXPRESSED OR IMPLIED THEREIN WILL NOT BE REALIZED.

ANY PROJECTED RECOVERIES TO CREDITORS SET FORTH IN THIS DISCLOSURE STATEMENT ARE BASED UPON THE ANALYSES PERFORMED BY THE DEBTORS AND THEIR ADVISORS. ALTHOUGH THE DEBTORS AND THEIR ADVISORS HAVE MADE EVERY EFFORT TO VERIFY THE ACCURACY OF THE INFORMATION PRESENTED HEREIN, THE DEBTORS AND THEIR ADVISORS CANNOT MAKE ANY REPRESENTATIONS OR WARRANTIES REGARDING THE ACCURACY OF THIS INFORMATION.

**IN CONNECTION WITH THE DEBTORS' SOLICITATION OF ACCEPTANCES OF THE COMBINED PLAN AND DISCLOSURE STATEMENT PURSUANT TO SECTION 1126(b) OF THE BANKRUPTCY CODE, THE DEBTORS ARE FURNISHING A SOLICITATION PACKAGE, CONSISTING OF THE COMBINED PLAN AND DISCLOSURE STATEMENT, THE EXHIBITS HERETO, CONFIRMATION NOTICE, AND A BALLOT, AS APPLICABLE, TO EACH RECORD HOLDER OF CLAIMS ELIGIBLE TO VOTE OR ITS COUNSEL.  THE COMBINED PLAN AND DISCLOSURE STATEMENT IS TO BE USED BY EACH SUCH ELIGIBLE HOLDER SOLELY IN CONNECTION WITH ITS EVALUATION OF THE COMBINED PLAN AND DISCLOSURE STATEMENT; USE OF THE COMBINED PLAN AND DISCLOSURE STATEMENT FOR ANY OTHER PURPOSE IS NOT AUTHORIZED.  NOTHING STATED IN THE COMBINED PLAN AND DISCLOSURE STATEMENT SHALL BE DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTORS OR ANY OTHER PARTY.**

## SECTION 1
## INTRODUCTION

Avenger Flight Group, LLC ("AFG") and its debtor affiliates (collectively, the "Debtors") hereby propose the following combined disclosure statement and first amended plan of liquidation pursuant to sections 1121(a) and 1125(b) of title 11 of the United States Code (the disclosure statement portion hereof, the "Disclosure Statement" and the chapter 11 plan portion hereof, the "Plan," as may be modified and/or amended from time to time, and collectively, the "Combined Plan and Disclosure Statement"). Capitalized terms used in the Combined Plan and Disclosure Statement and not otherwise defined have the meanings ascribed to such terms in Section 3.  **The Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases supports confirmation of the Plan.**

The Debtors commenced these bankruptcy cases to sell substantially all of their assets as a going concern (the "Sale"), liquidate their remaining assets and wind-down their businesses, in an orderly manner to preserve and maximize the value of the estates' assets for the benefit of all stakeholders. In connection with the Debtors' reorganization process, the Debtors, the Committee, the Prepetition Lenders, and the DIP Lenders negotiated and entered into a global settlement (the "Committee Resolution") as set forth in that certain Global Resolution Term Sheet filed with the Court on March 11, 2026 (Exhibit C to the Final DIP Order). Pursuant to the proposed Plan which is consistent with and will further implement the Committee Resolution, on and after the Effective Date, the Litigation Trustee will complete the orderly liquidation and wind-down of the Debtors' business, address pending claims, including litigation claims, and make distributions to Creditors as efficiently as possible through the liquidating Plan.

The Plan provides for, as of the Effective Date, the funding of the Plan and a Litigation Trust and the post-Effective-Date implementation thereof, with certain contributed Cash (held as Available Cash as of the Effective Date) in which the DIP Lenders and/or Prepetition Lenders would otherwise hold Liens and would otherwise be entitled to receive. Under the Plan, a Litigation Trust will be formed to liquidate, collect, sell, or otherwise dispose of the remaining assets of the Estates (including, without limitation, certain causes of action of the Estates), if and

4902-5966-5296.164902-5966-5296.19 05863.00002          7

to the extent such assets were not previously monetized to Cash or otherwise transferred or disposed of by the Debtors prior to the Effective Date. The Litigation Trust will satisfy priority claims from the Administrative / Priority / Other Distributions Reserve and distribute all other net proceeds of Litigation Trust Assets to the Beneficiaries of the Litigation Trust (including Holders of Allowed Unsecured Claims and the Prepetition Lenders on account of their unsecured deficiency claims) generally in accordance with the priority scheme under the Bankruptcy Code, the Plan and the Litigation Trust Agreement, subject to a certain distribution waterfall (a 40% (Holders of Allowed Unsecured Claims) / 60% (Prepetition Lenders) split of net proceeds subject to certain conditions and potential adjustments described herein). There will be no distributions to Holders of Interests. In a Chapter 7 proceeding, absent such concessions by the Prepetition Lenders and the DIP Lenders, general unsecured creditors would likely receive no distribution on account of their claims. The Plan further provides for the limited substantive consolidation of the Debtors' Estates for the purposes of voting on the Plan by the Holders of Claims and making Distributions to Holders of Claims.

The Debtors submit that the Combined Plan and Disclosure Statement and/or notice thereof will be distributed to all Holders of Claims and Interests in accordance with section 1125(b) of the Bankruptcy Code; Rules 2002, 3016, and 3017 of the Federal Rules of Bankruptcy Procedure; and the Court's order conditionally approving the Combined Plan and Disclosure Statement. The Combined Plan and Disclosure Statement and the exhibits hereto include a discussion of: (i) the nature and history of the Debtors' business and liabilities; (ii) events during the Chapter 11 Cases; (iii) the requirements for confirmation of the Plan and procedures for voting to accept or reject the Plan; (iv) additional factors and disclosures to be considered, including risk factors and certain U.S. federal income tax consequences of the Plan; and (v) the terms of the Plan, including the treatment of Holders of Claims and Interests under the Plan. The Disclosure Statement was prepared with the intent to provide "adequate information" (as defined in the Bankruptcy Code) to enable Holders of Claims against and Interests in the Debtors to make informed judgments about the Plan.

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in Section 19.3 of the Combined Plan and Disclosure Statement, if any, the Debtors expressly reserve the right to, with the consent of the Committee and the Required Lenders, alter, amend, or modify the Combined Plan and Disclosure Statement, including the Plan Supplement, one or more times, before substantial consummation thereof.

**PLEASE READ THE COMBINED PLAN AND DISCLOSURE STATEMENT, THE EXHIBIT(S), OTHER SUPPORTING MATERIALS, AND ANY APPROPRIATE BALLOT CAREFULLY AND FOLLOW THE INSTRUCTIONS SET FORTH BELOW AND ON THE APPROPRIATE BALLOT TO VOTE ON THE COMBINED PLAN AND DISCLOSURE STATEMENT. THE DEBTORS BELIEVE THAT THE COMBINED PLAN AND DISCLOSURE STATEMENT PROVIDES THE BEST METHOD OF MAXIMIZING THE RECOVERIES FOR THE HOLDERS OF CLAIMS AGAINST THE DEBTORS. THEREFORE, THE DEBTORS RECOMMEND THAT ALL CREDITORS WHO ARE ENTITLED TO VOTE SHOULD VOTE IN FAVOR OF THE COMBINED PLAN AND DISCLOSURE STATEMENT.**

Unless otherwise specified, all section or exhibit references in the Combined Plan and Disclosure Statement are to the respective section in, or exhibit to, the Combined Plan and Disclosure Statement, as the same may be amended, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Combined Plan and Disclosure Statement as a whole and not to any particular section, subsection, or clause contained herein. The headings in the Combined Plan and Disclosure Statement are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; and (c) unless otherwise noted above, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply.

**SECTION 2**
**SUMMARY OF CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER PLAN AND IMPORTANT SOLICITATION AND CONFIRMATION DATES AND DEADLINES**

2.1     <u>Summary of Classification and Treatment of Claims and Interests.</u>

All Claims against or Interests in the Debtors, other than Administrative Claims and Priority Tax Claims, are classified for purposes of voting and distributions under the Combined Plan and Disclosure Statement. A summary of the classification of these Claims and Interests, the proposed treatment of each Class of Claims or Interests, and the voting status of each Class of Claims or Interests follows.

| Class | Treatment | Status | Entitled to Vote? |
|---|---|---|---|
| Unclassified: Administrative Claims (excluding DIP Facility Claims),[2] estimated to total approx. $100,000 <br><br> **Estimated Recovery: 100%** | Except to the extent that a Holder of an Allowed Administrative Claim agrees to a less favorable treatment, each Holder of an Allowed Administrative Claim, other than a Professional Fee Claim, shall receive from the Administrative / Priority / Other Distributions Reserve, without interest, Cash equal to the Allowed amount of such Claim: (a) on or as soon as practicable after the later of (i) the Effective Date, or (ii) the date upon which the Bankruptcy Court enters a Final Order Allowing such Claim; (b) in accordance with the terms and conditions of agreements between the Holder of such Claim and the Debtors or the Litigation Trust, as the case may be; (c) with respect to any Administrative Claims representing obligations incurred in the ordinary course of the Debtors' business, upon such regular and customary payment or performance terms as may exist in the ordinary course of the Debtors' business or as otherwise provided in the Plan; or (d) with respect to statutory fees due pursuant to 28 U.S.C. § 1930(a)(6), as and when due under applicable law. | Unimpaired | No |
| Unclassified: Priority Tax Claims, estimated to total approx. $300,000 to $500,000 <br><br> **Estimated Recovery: 100%** | Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in exchange for full and final satisfaction of each Allowed Priority Tax Claim, the Litigation Trust shall pay each holder of an Allowed Priority Tax Claim, from the Administrative / Priority / Other Distributions Reserve, the full unpaid amount of such Allowed Priority Tax Claim on or as soon as practicable after the Effective Date or, if later, the date such Allowed Priority Tax Claim becomes an Allowed Claim; *provided that*, after becoming an Allowed Claim, such Allowed Priority Tax Claim may be paid at a later date pursuant to applicable non-bankruptcy law. | Unimpaired | No |

---

[2] The DIP Facility Claims will be credit bid in full upon the closing of the transactions approved by the Sale Order.

| Class | Treatment | Status | Entitled to Vote? |
|---|---|---|---|
| Class 1: Priority Non-Tax Claims, estimated to total approx. $0<br><br>**Estimated Recovery: 100%** | The Litigation Trust shall pay from the Administrative / Priority / Other Distributions Reserve, the Allowed amount of each Priority Non-Tax Claim to each Entity holding a Priority Non-Tax Claim as soon as practicable following the later of: (a) the Effective Date and (b) the date such Priority Non-Tax Claim becomes an Allowed Claim (or as otherwise permitted by law). The Litigation Trust shall pay each Entity holding a Priority Non-Tax Claim in Cash in full in respect of such Allowed Claim without interest from the Petition Date; *provided however*, that such Entity may be treated on such less favorable terms as may be agreed to in writing by such Entity. | Unimpaired | No |
| Class 2: Prepetition Lenders Claims, estimated amount $273,051,488 (principal) plus interest and fees[3]<br><br>**Estimated Recovery: Credit bid value plus unsecured recovery TBD** | Except to the extent that a Holder of a Class 2 Claim agrees to other treatment, in exchange for full and final satisfaction, settlement, and release of each Class 2 Claim, Holders of the Class 2 Claims will receive no Distributions or further payments under the Plan on account of the Prepetition Lenders Secured Claim, and shall receive, on account of the Prepetition Lenders Deficiency Claims, a Pro Rata share of their respective Litigation Trust Interests, which entitle the Beneficiaries thereof to net proceeds of the Litigation Trust Assets in accordance with the LT Distribution Waterfall. | Impaired | Yes |
| Class 3: Secured EDC Claims, estimated amount $7,822,289<br><br>**Estimated Recovery: Depends on value of collateral plus unsecured recovery TBD** | Except to the extent previously paid in full, the Holders of Class 3 Claims shall receive the treatment provided in the Final DIP Order and any remaining Allowed Unsecured Claims of such Holders shall be placed in Class 6 and treated as set forth therein. | Impaired | Yes |

---

[3] The Prepetition Lenders Secured Claims will be reduced by $125,000,000, minus the amount of the DIP Facility Claim, upon the closing of the transactions approved by the Sale Order.

| Class | Treatment | Status | Entitled to Vote? |
|---|---|---|---|
| Class 4: Other Secured Claims, estimated amount $0<br><br>**Estimated Recovery: 100%** | Except to the extent previously paid in full, at the option of the Debtors or the Litigation Trust, one of the following treatments shall be provided: (i) the Holder of such Claim shall retain its Lien on its Collateral until such Collateral is sold, and the proceeds of such sale, less costs and expenses of disposing of such Collateral, shall be paid to such Holder in full satisfaction and release of such Allowed Other Secured Claim; (ii) on or as soon as practicable after the later of (a) the Effective Date, or (b) the date upon which the Bankruptcy Court enters a Final Order determining or allowing such Claim, or as otherwise agreed between the Holder of such Claim and the Debtors or Litigation Trustee, the Holder of such Other Secured Claim will receive a Cash payment equal to the amount of its Allowed Other Secured Claim in full satisfaction and release of such Other Secured Claim; or (iii) the Collateral securing the Creditor's Other Secured Claim shall be abandoned to such Creditor, in full satisfaction and release of such Other Secured Claim. | Unimpaired | No |
| Class 5: SIM International Claims | The Holders of the SIM International Claims will receive, subject to the terms of the Plan and the SIM International Settlement, the treatment expressly provided for in the SIM International Settlement.  To the extent of any inconsistency or conflict between the terms of the Plan and the SIM International Settlement, the SIM International Settlement will control.  Pursuant to the SIM International Settlement, the Holders of the SIM International Claims will vote in favor of the Plan. | Impaired | Yes[4] |
| Class 6: Unsecured Claims, estimated amount $25,000,000 to | Except to the extent that a Holder of an Allowed Unsecured Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release and discharge of each Allowed Unsecured Claim, the Holders of Class 6 Claims shall receive, in exchange for their Allowed Claims, a Pro Rata | Impaired | Yes |

---

[4] SIM International will not be voting on the Plan in the event that the SIM International Settlement is consummated before the Voting Deadline (SIM International would no longer have any remaining Claim against the Estates to be able to vote on the Plan).

| Class | Treatment | Status | Entitled to Vote? |
|---|---|---|---|
| $45,000,000[5]<br><br>**Estimated Recovery: Depends on the outcome of potential litigation** | share of their respective Litigation Trust Interests, which entitle the Beneficiaries thereof to the net proceeds of the Litigation Trust Assets in accordance with the LT Distribution Waterfall. | | |
| Class 7: Intercompany Claims<br><br>**Estimated Recovery: 0%** | All Intercompany Claims shall be deemed canceled, extinguished, and of no further force or effect.  Holders of Intercompany Claims shall not be entitled to receive or retain any property on account of such Claims. | Impaired | No |
| Class 8: Interests<br><br>**Estimated Recovery: 0%** | All Interests shall be deemed canceled, extinguished, and of no further force or effect. Holders of Interests shall not be entitled to receive or retain any property on account of such Interests. | Impaired | No |

## 2.2    Important Dates and Deadlines

| Event | Date[6] |
|---|---|
| Voting Record Date | May ~~11~~4, 2026 at 5:01 p.m. |
| Solicitation Commences | ~~May 18, 2026~~Later of four (4) business days after the (a) Voting Record Date, and (b) entry of the Conditional Approval and Procedures Order |
| Deadline for Creditors to File Rule 3018 Motions | May 27, 2026 at 5:00 p.m. |
| Deadline to file Plan Supplement | June 2, 2026 |
| Deadline for Debtor to Respond to Rule 3018 Motions | June 8, 2026 |
| Voting Deadline | June 15, 2026 at 5:00 p.m. |
| Combined Plan and Disclosure Statement Objection Deadline | June 15, 2026 at 5:00 p.m. |
| Deadline to file: (1) Voting Tabulation Affidavit; (2) Confirmation Brief; (3) reply to any objection to Confirmation; or (4) reply to any objection to Rule 3018 Motion | June 19, 2026 at 5:00 p.m. |
| Confirmation Hearing | June 23, 2026 at 10:30 a.m. |

---

[5] Estimates exclude any Prepetition Lenders Deficiency Claim, which is estimated to total approximately $162.5 million in principal amount.

[6] All times noted are in prevailing Eastern Time.

**SECTION 3**
**DEFINED TERMS**

As used in the Combined Plan and Disclosure Statement, capitalized terms not otherwise defined have the meanings set forth below.  Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

3.1      "Administrative Claim" means a Claim for an expense of administration of the Chapter 11 Cases arising under Sections 503(b), 507(b), 503(b)(9) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates; (b) the value of any goods received by the Debtors within 20 days before the Petition Date to the extent that goods were sold to the Debtors in the ordinary course of the Debtors' business; (c) Professional Fee Claims; (d) all fees and charges assessed against the Estates under 28 U.S.C. §§ 1911-1930; (e) all obligations designated as Allowed Administrative Claims pursuant to an order of the Bankruptcy Court; (f) administrative claims that were timely filed prior to the Administrative Expense Bar Date; and (g) any Tax Claims incurred by the Debtor after the Petition Date or relating to a tax year or period which occurs after the Petition Date.

3.2      "Administrative Expense Bar Date" means the applicable last date, at 5:00 p.m. Eastern time, set by the Bankruptcy Court for a Claimant to file a request for payment of any Administrative Claim (excluding Professional Fee Claims) arising on or after the Petition Date, through and including the Effective Date. **The Administrative Expense Bar Date as to Administrative Claims arising or deemed to be arisen after April 14, 2026 shall be thirty (30) days after the Effective Date.**  The Administrative Expense Bar Date as to Administrative Claims arising or deemed to be arisen on or prior to April 14, 2026 is subject to prior Court order [Docket No. 182].

3.3      "Administrative / Priority / Other Distributions Reserve" means a reserve fund established and administered by the Litigation Trustee on or as soon as reasonably practicable after the Effective Date, funded from Available Cash of the Debtors immediately prior to the Effective Date, in an amount determined by the Debtors, subject to the reasonable consent of the Required Lenders and the Litigation Trustee, to be needed to pay all Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims, and any other amounts required to be funded under the Plan (excluding amounts in the Professional Fee Reserve), including any U.S. Trustee fees accrued or anticipated to be owed in the future until the Chapter 11 Cases are closed.

3.4      "AFG" means Avenger Flight Group, LLC, a Debtor in the Chapter 11 Cases.

3.5      "Allowed" means, with respect to any Claim, except as otherwise provided herein: (a) a Claim that has been scheduled by the Debtors on the Schedules as other than disputed, contingent, or unliquidated and, as to which, the Debtors, the Litigation Trustee or other party in interest has not filed an objection on or before the Claims Objection Deadline; (b) a Claim that is set forth in a timely filed Proof of Claim as to which no objection has been filed and which is not otherwise a Disputed Claim; (c) a Claim that has been allowed by a Final Order; (d) a Claim that is allowed: (i) in any stipulation of amount and nature of Claim executed

by the Debtors prior to the Effective Date and approved by the Bankruptcy Court; (ii) in any stipulation of amount and nature of Claim executed by the Litigation Trustee on or after the Effective Date; (iii) in any stipulation of amount and nature of any Administrative Claim, Priority Non-Tax Claim, or Priority Tax Claim executed by (y) the Debtors and approved by the Bankruptcy Court, or (z) the Litigation Trustee; or (iv) in any contract, instrument, indenture or other agreement entered into or assumed by Debtors in connection with and in accordance with the Plan; (e) a Claim relating to a rejected executory contract or unexpired lease that either (i) is not a Disputed or Disallowed Claim or (ii) has been allowed by a Final Order, in either case only if a Proof of Claim has been timely filed by the Claimant before the applicable rejection Bar Date for such claim or has otherwise been deemed timely filed under applicable law; or (f) a Claim that is allowed pursuant to the terms of the Plan.  For the purpose of determining distributions pursuant to the Plan, allowance under subsections (a) and (b) only is applicable once any of the following occur (1) before the Claims Objection Deadline, the Debtors or the Litigation Trustee, as applicable, determine not to object to the Claim, (2) the Claims Objection Deadline passes without an objection being filed, or (3) after the Debtor or the Litigation Trustee timely objects to the Claim, the Claim is allowed as provided in subparagraphs (c), (d) or (e) above.

3.6    "Allowed Claim" or "Allowed … Claim" means a Claim that has been Allowed.

3.7    "Available Cash" means the aggregate amount of all Cash held by the Debtors on the Effective Date in accordance with the Sale Order and Committee Resolution, including without limitation, the remaining Base Wind-Down Amount ($500,000) (as defined in the Committee Resolution), if any, and $500,000 for the funding of the Litigation Trust.

3.8    "Avoidance Actions" means any and all avoidance, recovery, subordination, or other claims, actions, or remedies which any of the Debtors, the Estates, the Litigation Trustee or other appropriate party in interest has asserted or may assert under sections 502, 510, 542, 544, 545, or 547 through 553, or 724(a) of the Bankruptcy Code or under similar or related state or federal statutes and common law.

3.9    "Ballots" means the ballots upon which the Holders of Impaired Claims shall indicate their acceptance or rejection of the Plan in accordance with the Plan and the Voting Instructions.

3.10    "Bankruptcy Code" means title I of the Bankruptcy Reform Act of 1978, as amended from time to time, as set forth in Sections 101 *et seq*. of title 11 of the United States Code, and applicable portions of titles 18 and 28 of the United States Code.

3.11    "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases.

3.12    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Cases, promulgated under 28 U.S.C. § 2075 and the General and Local Rules of the Bankruptcy Court.

3.13 "Bar Date" means, as applicable, the General Claims Bar Date, the Administrative Expense Bar Date, or any other applicable deadline to file Claims referenced in the Plan.

3.14 "Bar Date Order" means the *Order (I) Setting Bar Dates for Filing Proofs of Claim, Including Requests for Payment Under Section 503(b)(9) of the Bankruptcy Code; (II) Setting a Bar Date for the Filing of Proofs of Claim By Governmental Units; (III) Setting a Bar Date for the Filing of Requests for Allowance of Administrative Expense Claims; (IV) Establishing an Amended Schedules Bar Date and a Rejection Damages Bar Date; (V) Approving the Form of and Manner for Filing Proofs of Claim, (VI) Approving a Notice of Bar Dates, and (VII) Granting Related Relief* [Docket No. 182], which established the General Claims Bar Date and certain other deadlines and procedures.

3.15 "Beneficiaries" means holders of Allowed Unsecured Claims and the Prepetition Lenders Deficiency Claims entitled to receive Litigation Trust Interests under the Plan, whether or not such Claims were Allowed on the Effective Date.

3.16 "Business Day" means any day, other than a Saturday, Sunday or legal holiday as defined in Bankruptcy Rule 9006(a).

3.17 "Buyer" means AFG Topco, LP, together with its designees and assignees, the purchaser of substantially all of the Debtors' assets as set forth in and pursuant to the Sale Order.

3.18 "Cash" means cash and cash equivalents, including, but not limited to, bank deposits, wire transfers, checks, and readily marketable securities, instruments, and legal tender of the United States of America or instrumentalities thereof.

3.19 "Causes of Action" means all claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of setoff, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and crossclaims, including, without limitation, all claims and any avoidance, preference, recovery, subordination or other actions of the Debtors and/or the Estates (unless the context expressly states that such Causes of Action belong to another Entity) against Creditors, insiders, and/or any other Persons or Entities, based in law or equity, including, without limitation, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted as of the Effective Date.

3.20 "Chapter 11 Cases" means the Chapter 11 cases commenced when the Debtors filed their respective voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on the Petition Date, being jointly administered under Case No. 26-10183 (MFW).

3.21 "Claim" means a claim (as defined in Section 101(5) of the Bankruptcy Code) against the Debtors, including, but not limited to: (a) any right to payment from the Debtors whether or not such right is reduced to judgment, liquidated, unliquidated, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) any right to an equitable remedy for breach of performance if such performance gives rise to a right of payment

from the Debtors, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

3.22    "Claimant" means the Holder of a Claim.

3.23    "Claims Agent" means Kurtzman Carson Consultants, LLC dba Verita Global, which was appointed as the Debtors' claims, noticing, and balloting agent.

3.24    "Claims Objection Deadline" means, with respect to all Claims other than Professional Fee Claims, (a) **180 days after the Effective Date**, or (b) such other period as may be fixed by an order of the Bankruptcy Court for objecting to Claims upon request of the Litigation Trustee for cause shown.

3.25    "Class" means a category of Holders of Claims or Interests, as set forth in Section 9 of the Plan.

3.26    "Collateral" means any property or interest in property of the Debtors' Estates that is subject to a valid and enforceable Lien to secure a Claim.

3.27    "Combined Plan and Disclosure Statement" means this Plan and Disclosure Statement, as modified and/or amended from time to time.

3.28    "Committee" means the Official Committee of Unsecured Creditors appointed by the U.S. Trustee in the Chapter 11 Cases.

3.29    "Committee Resolution" has the meaning set forth in Section I hereof.

3.30    "Confirmation" means the entry of the Confirmation Order, subject to all conditions specified in Section 17 hereof having been (a) satisfied or (b) waived pursuant to Section 17.

3.31    "Confirmation Date" means the date upon which the Confirmation Order is entered by the Bankruptcy Court on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

3.32    "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code, in form and substance reasonably acceptable to the Prepetition Lenders.

3.33    "Consummation" or "Consummate" means the occurrence of the Effective Date.

3.34    "Creditor" means any Holder of a Claim against the Debtors as specified in Section 101(10) of the Bankruptcy Code.

3.35    "Debtors" means Avenger Flight Group, LLC and its affiliated debtors and debtors-in-possession in the Chapter 11 Cases.

3.36    "Debtor/Estate Release" has the meaning set forth in Section 16.2(a)(i) hereof.

3.37    "Debtor/Estate Releasors" has the meaning set forth in Section 16.2(a)(i) hereof.

3.38    "DIP Agent" means Wilmington Trust, National Association, as administrative and collateral agent under the DIP Documentation and any successor(s) thereto.

3.39    "DIP Documentation" means the DIP Term Sheet (as defined in and attached to the DIP Orders) by and among AFG, the Guarantors (as defined in the DIP Documentation), the DIP Agent, and the DIP Lenders, and, as applicable, all other related agreements, documents, security agreements, pledge agreements, or other collateral documents in connection with the DIP Facility, as may be amended, restated, amended and restated, waived, supplemented or otherwise modified from time to time.

3.40    "DIP Facility" means that certain senior secured superpriority post-petition credit facility made available to the Debtors by the DIP Lenders pursuant to the DIP Documentation and the DIP Orders.

3.41    "DIP Facility Claim" means any Claim of the DIP Lenders arising from, under or in connection with the DIP Facility.

3.42    "DIP Lenders" means the lenders from time to time party to the DIP Documentation and any successor(s) thereto, in their capacity as postpetition lenders under the DIP Facility.

3.43    "DIP Orders" means, collectively, the Interim DIP Order and Final DIP Order.

3.44    "Disallowed Claim" means a Claim, or any portion thereof, that has been disallowed by a Final Order or by other agreement of a Claimant, any Claim that is listed by the Debtors in the Schedules as zero or as disputed and as to which no Proof of Claim has been timely filed, or any Claim that is deemed disallowed pursuant to the terms of the Plan.

3.45    "Disclosure Statement" means the portion of this Combined Plan and Disclosure Statement that satisfies the disclosure requirements of section 1125 of the Bankruptcy Code.

3.46    "Disputed" means, with respect to any Claim or Interest, any Claim or Interest: (a) listed on the Schedules as unliquidated, disputed, or contingent and as to which no Proof of Claim has been filed; or (b) as to which the Debtors, the Litigation Trustee, or any other party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules or is otherwise disputed by the Debtors or the Litigation Trustee in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order.

3.47    "Disputed Claim" means: (i) any Claim or portion of a Claim as to which an objection to the allowance thereof has been interposed as of any deadline fixed under the Plan or by order of the Bankruptcy Court, which objection has not been withdrawn or determined by Final Order; (ii) any Claim that is not a Disallowed Claim that is scheduled by the Debtors in the

Schedules as disputed, contingent, or unliquidated and as to which no Proof of Claim has been timely filed; or (iii) any Claim that is not a Disallowed Claim that is not listed in the Schedules and as to which no Proof of Claim has been timely filed. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Disputed Claim only to the extent of the objection.

3.48 "Disputed Claim Reserve" has the meaning set forth in Section 12.8 hereof.

3.49 "Distributable Assets" means any and all assets of the Debtors of any nature following and remaining after the closing of the transactions approved by the Sale Order, including, without limitation, (i) Available Cash as of the Effective Date (after funding of the Administrative / Priority / Other Distributions Reserve), (ii) the Estate-Retained Causes of Action, (iii) all books and records of the Debtors as of the Effective Date (subject to the Sale Order), (iv) any excess amounts remaining in the Professional Fee Reserve or the Administrative / Priority/ Other Distributions Reserve after payment in full of all claims and amounts for which such funds were reserved, and (v) all proceeds of any of the foregoing Distributable Assets. Pursuant to the Sale Agreement, any Distributable Assets after funding of the Professional Fee Reserve and the Administrative / Priority / Other Distributions Reserve that do not constitute Litigation Trust Assets shall be transferred to the Buyer from and after the Effective Date.

3.50 "Distribution Dates" means collectively the Initial Distribution Date, any Subsequent Distribution(s) Date, and the date of the Final Distribution.

3.51 "Distribution Record Date" means the close of business on the Business Day immediately preceding the Effective Date.

3.52 "Distribution(s)" means the distribution(s) of Cash to be made in accordance with the Plan and the Litigation Trust Agreement.

3.53 "EDC" means Export Development Canada and its affiliates that are party to the EDC Loan Documents.

3.54 "EDC Loan Documents" means (i) that certain Loan Agreement, dated as of November 1, 2018, as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, among LATAM Sim Holdings and Export Development Canada as loan agent, a lender, and security trustee; (ii) that certain Loan Agreement, dated as of July 11, 2019, as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, among LATAM Sim Holdings IV and Export Development Canada as loan agent, a lender, and security trustee; and (iii) all other agreements, instruments and documents executed or delivered in connection with the Loan Agreements in the foregoing clauses (i) and (ii), each as may be amended, restated, amended and restated, supplemented, otherwise modified from time to time.

3.55 "Effective Date" means the date selected by the Debtors which is a Business Day after the Confirmation Date on which: (a) no stay of the Confirmation Order is in effect, and (b) all conditions specified in Section 17 hereof have been satisfied, unless waived by the

Debtors.  Within five (5) business days after the occurrence of the Effective Date, notice of the Effective Date shall be filed with the Bankruptcy Court by the Litigation Trustee.

3.56    "Entity" means an entity as defined in Section 101(15) of the Bankruptcy Code and, where applicable, the Committee.

3.57    "Estate-Retained Causes of Action" means all Causes of Action of the Debtors and Estates as of the Effective Date, including Avoidance Actions, that are not released pursuant to the Plan or any order of the Court or sold pursuant to the Sale Order.

3.58    "Estates" means the estates of the Debtors in the Chapter 11 Cases created pursuant to Section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

3.59    "Exculpated Parties" has the meaning set forth in Section 16.1 hereof.

3.60    "Final Decree(s)" means the decree contemplated under Bankruptcy Rule 3022.

3.61    "Final DIP Order" means the *Final Order: (I) Authorizing the Debtors to Obtain Senior Secured Postpetition Financing, (II) Authorizing the Debtors to Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief* [Docket No. 160], entered by the Court in the Chapter 11 Cases.

3.62    "Final Distribution" means the last payment to Holders of Allowed Claims in accordance with the provisions of the Plan and/or the Litigation Trust Agreement.

3.63    "Final Order" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction: (i) that has not been reversed, stayed, modified, or amended; (ii) as to which the time to or the right to appeal or seek reconsideration, review, rehearing, or certiorari has expired or been waived (without regard to whether the time to seek relief from a judgment under Bankruptcy Rule 9024 has expired); and (iii) as to which no appeal or petition for reconsideration, review, rehearing, or certiorari is pending.

3.64    "General Claims Bar Date" means May 4, 2026, at 5:00 p.m. prevailing Eastern Time, which was the general deadline set pursuant to the Bar Date Order for filing proofs of claim for any Claims against the Debtors (excluding Claims of Governmental Units) that arose prior to the Petition Date.

3.65    "Governmental Unit" means the United States; State; Commonwealth, District, Territory, municipality, foreign state, department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under Chapter 11), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

3.66    "Holder" means the holder of a Claim or Interest.

3.67　　　"Impaired" means with respect to a Claim or Class of Claims, a Claim or Class of Claims that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

3.68　　　"Indemnified Parties" has the meaning set forth in Section 16.4 hereof.

3.69　　　"Initial Distribution Date" means the Effective Date, or as soon as practicable thereafter when the initial Distribution shall be made to the Holders of Allowed Claims, as determined by the Litigation Trustee.

3.70　　　"Insider" means an insider of the Debtors, as defined in Section 101(31) of the Bankruptcy Code.

3.71　　　"Insurance Policies" means all insurance policies maintained by the Debtors as of the Petition Date, specifically including, but not limited to, director and officer insurance and malpractice insurance policies.

3.72　　　"Intercompany Claim" means any Claim held by a Debtor or Affiliate of a Debtor against another Debtor or Affiliate of a Debtor.

3.73　　　"Interest" means any equity interest in the Debtors, including, but not limited to, all issued, unissued, authorized, or outstanding shares or stock, whether vested or non-vested, together with any warrants, options, or contract rights to purchase or acquire such interests at any time.

3.74　　　"Interim DIP Order" means the *Interim Order: (I) Authorizing the Debtors to Obtain Senior Secured Postpetition Financing, (II) Authorizing the Debtors to Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing and (VII) Granting Related Relief* [Docket No. 59], entered by the Court in the Chapter 11 Cases.

3.75　　　"Interim Fee Order" means the Order of the Court [Docket No. 129] establishing certain procedures for the interim compensation and reimbursement of expenses of Professionals in the Chapter 11 Cases.

3.76　　　"Lien" means any charge against or interest in property (including, but not limited to, any mortgage, lien, pledge, charge, security interest, encumbrance, or other security device of any kind) to secure payment of a debt or performance of an obligation.

3.77　　　"Litigation Trust" means the grantor trust to be created upon the Effective Date for the benefit of the Beneficiaries.

3.78　　　"Litigation Trust Agreement" means the agreement, substantially in the form included in the Plan Supplement governing the Litigation Trust, in form and substance reasonably acceptable to the Committee and the Prepetition Lenders, as it may be subsequently modified from time to time.

3.79     "Litigation Trust Asset Proceeds" means any Cash or other consideration or proceeds paid to or realized by the Litigation Trustee upon the collection, sale, transfer, assignment, litigation, settlement, compromise, or other disposition of the Litigation Trust Assets, as applicable, together with any other funds that may be obtained by the Litigation Trust after the Effective Date pursuant to the Plan (including, without limitation, any surplus funds in any reserves and any unclaimed property pursuant to Section 12.10 hereof).

3.80     "Litigation Trust Assets" means the following assets, which the Debtors shall transfer to the Litigation Trust on the Effective Date and which shall be held in the Litigation Trust in accordance with this Plan and the Litigation Trust Agreement:  (i) $500,000 in Cash to be funded from Available Cash; (ii) any remaining Cash from the Base Wind-Down Amount (as defined in the Committee Resolution); (iii) any excess, unused Cash that was otherwise previously reserved for the payment of the Allowed Professional Fee Claims of the Committee's Professionals in accordance with the Committee Resolution; (iv) any Estate-Retained Causes of Action, including any and all claims and Causes of Action of the Debtors against any former officer, director, employee, partner, member, equity holder, professional services firm, or representative of any Debtor, whether arising by way of counterclaim or otherwise; (v) any and all remaining Avoidance Actions of the Debtors against any party; (vi) any and all of the Debtors' rights under any director and officer insurance policies, fiduciary policies or employment practices policies (in each case of the foregoing, including any tail policies or coverage thereon) and any proceeds thereof, to the extent that any such policies provide coverage on account of any of the foregoing claims and causes of action and to the extent permitted without impairing such policy or estate rights thereunder; (vii) all books and records of the Debtors as of the Effective Date (subject to the Sale Order); and (viii) any proceeds realized from the foregoing claims, causes of action, and rights.  The Litigation Trustee also shall have access to the Administrative / Priority / Other Distributions Reserve to make distributions consistent with the terms of this Plan.

Notwithstanding anything herein to the contrary, the Litigation Trust Assets and Estate-Retained Causes of Action shall not include any claims or causes of action against (i) any director, officer, or employee of any Debtor or Target Company (or any of their respective subsidiaries) that is a director, officer, or employee of such entity on or following the Petition Date, (ii) any current or former customer, (iii) any supplier, vendor, or contract counterparty of the Buyer's post-closing business, (iv) any employee hired by the Buyer, (v) the Buyer, (vi) any Prepetition Lender and its appointed designees to the board of managers of any Debtor, (vii) any DIP Lender, (viii) Wilmington Trust, National Association, as the DIP Agent and the Prepetition Term Loan Agent (each as defined in the Final DIP Order), (ix) any of the Released Parties (as defined in the Final DIP Order), (x) any of the Released Parties (as defined herein), or (xi) the Related Persons of each of the foregoing.

3.81     "Litigation Trust Expenses" means any reasonable fees, costs, and expenses incurred by the Litigation Trustee or the Litigation Trust from and after the Effective Date.

3.82     "Litigation Trust Interests" means the non-transferable interests in the Litigation Trust to be provided to the Holders of Unsecured Claims and the Holders of Prepetition Lenders Deficiency Claims, as Beneficiaries pursuant to the Plan.

4902-5966-5296.16 4902-5966-5296.19 05863.00002                    22

3.83    "Litigation Trustee" means the Person selected by the Committee that is reasonably acceptable to the Debtors, the Required Lenders, and the Required DIP Lenders (as defined in the Final DIP Order), to act as trustee of the Litigation Trust in accordance with the terms of the Plan, the Confirmation Order, and the Litigation Trust Agreement, or such successor appointed as the trustee in accordance with the Litigation Trust Agreement.

3.84    "Litigation" means the interest of the Estates, the Debtors, or the Litigation Trust, as applicable, in any and all claims, rights, and Causes of Action that have been or may be commenced by the Debtors or the Litigation Trust, as applicable, except to the extent concerning any Released Parties.  Litigation includes, without limitation not otherwise stated herein, any action: (i) to avoid and recover any transfers of property determined to be preferential, fraudulent, or avoidable pursuant to Sections 544, 545, 547, 548, 549(a), and 550 of the Bankruptcy Code; (ii) for the turnover of property to the Debtors or the Litigation Trust, as applicable; (iii) for the recovery of property or payment of money that belongs to or can be asserted by the Debtors or the Litigation Trust, as applicable; (iv) for compensation for damages incurred by the Debtors or the Litigation Trust; and (iv) equitable subordination actions against Creditors.

3.85    "LT Distribution Waterfall" means the following priority of distributions of the proceeds of the Litigation Trust Assets to the Litigation Trust and the Beneficiaries of the Litigation Trust:

i.   *First*, to the Litigation Trust to pay any Litigation Trust Expenses;

ii.  S*econd*, after any Litigation Trust Expenses are paid in full: 40% of such proceeds to the holders of Litigation Trust Interests on account of Allowed Unsecured Claims, and 60% to the holders of Litigation Trust Interests on account of Prepetition Lenders Deficiency Claims, up until the Prepetition Lenders Deficiency Claims have been paid in full in cash; provided, however, that if the Prepetition Lenders Deficiency Claims comprise less than 60% of the total aggregate amount of Prepetition Lenders Deficiency Claims and Allowed Unsecured Claims, then the percentage of proceeds allocated to holders of Litigation Trust Interests on account of Prepetition Lenders Deficiency Claims shall be reduced from 60% to such lesser percentage (and the percentage of Litigation Trust proceeds allocated to holders of Litigation Trust Interests on account of Allowed Unsecured Claims shall be increased proportionally); and

iii. *Third*, after the Prepetition Lenders Deficiency Claims have been paid in full in cash, 100% of all subsequent proceeds of the Litigation Trust Assets shall be distributed to the holders of the Litigation Trust Interests on account of Allowed Unsecured Claims, up to the Allowed amount of the Allowed Unsecured Claim of each applicable holder.

For the avoidance of doubt, no holder of a Litigation Trust Interest shall receive any distribution from the Litigation Trust in excess of such holder's Prepetition Lenders Deficiency Claim or Allowed Unsecured Claim, as applicable.

3.86    "Other Secured Claim" means a Secured Claim that is not a Prepetition Lenders Secured Claim, a Secured EDC Claim, or a SIM International Claim.

3.87    "Person" means any individual, corporation, limited liability company, general partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, Governmental Unit, or other Entity.

3.88    "Petition Date" means February 11, 2026 or February 12, 2026, as applicable, the date on which the Debtors filed their respective voluntary petitions for relief commencing the respective Chapter 11 Cases.

3.89    "Plan" means the portion of this Combined Plan and Disclosure Statement that constitutes the chapter 11 plan for the Debtors.

3.90    "Plan Objection Deadline" means the deadline established by the Bankruptcy Court for filing and serving objections to Confirmation of the Plan.

3.91    "Plan Supplement" means the pleading or pleadings identified in the Plan or Disclosure Statement for filing with the Bankruptcy Court by the deadline established by the Bankruptcy Court, as modified and/or amended from time to time, which shall include certain exhibits and schedules to the Plan, as well as documents, agreements, and instruments evidencing and effectuating the Plan, including, without limitation, identification of the Litigation Trustee, form of Litigation Trust Agreement, and non-exclusive lists and descriptions of Causes of Action to be preserved and retained after the Effective Date. The Plan Supplement shall be in form and substance acceptable to the Committee and the Required Lenders.

3.92    "Prepetition Agent" means Wilmington Trust, National Association, as administrative and collateral agent under the Prepetition Credit Agreement or any successor thereto or assignee thereof.

3.93    "Prepetition Credit Agreement" means that certain Credit Agreement dated as of June 25, 2021, as the same has been amended, restated, supplemented or modified from time to time, by and between the Debtors, the Prepetition Agent and the Prepetition Lenders.

3.94    "Prepetition Lenders" means the lenders party to the Prepetition Credit Agreement from time to time.

3.95    "Prepetition Lenders Claims" means any and all Claims of the Prepetition Lenders against the Debtors arising under the Prepetition Term Loan Documents.  For the avoidance of doubt, the Prepetition Lenders Claims include the Prepetition Lenders Secured Claims and Prepetition Lenders Deficiency Claims.

3.96    "Prepetition Lenders Deficiency Claim" means any unsecured deficiency Claims of the Prepetition Lenders arising under the Prepetition Term Loan Documents.

3.97    "Prepetition Lenders Managers" means all individuals that were appointed by the Prepetition Lenders as members of the board of managers of Avenger Flight Group Topco, LLC.

3.98    "Prepetition Lenders Secured Claims" means any and all Secured Claims of the Prepetition Lenders against the Debtors arising under the Prepetition Term Loan Documents.

3.99    "Prepetition Term Loan Documents" means the Prepetition Credit Agreement and all other agreements, instruments, and documents executed or delivered in connection therewith, each as may be amended, amended and restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof.

3.100    "Priority Non-Tax Claim" means any Claim, other than an Administrative Claim or a Priority Tax Claim, to the extent entitled to priority under Section 507(a) of the Bankruptcy Code.

3.101    "Priority Tax Claim" means a Claim of a Governmental Unit of the kind specified in Sections 502(i) and 507(a)(8) of the Bankruptcy Code.

3.102    "Pro Rata" means proportionately so that, with respect to a Claim, the ratio of: (a) (i) the amount of property distributed on account of a particular Claim to (ii) the Allowed amount of such Claim, and is the same as the ratio of (b) (i) the amount of property distributed on account of all Allowed Claims in the Class or Classes entitled to share in the applicable distribution to (ii) the amount of all Allowed Claims in such Class or Classes.

3.103    "Professional" means an Entity: (a) employed pursuant to a Final Order in accordance with Sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to Sections 327, 328, 329, 330, and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Section 503(b)(4) of the Bankruptcy Code.

3.104    "Professional Fee Claim" means those fees and expenses claimed by Professionals pursuant to Sections 330, 331, or 503 of the Bankruptcy Code, and accrued and unpaid as of the Effective Date.

3.105    "Professional Fee Reserve" means an account held by counsel to the Debtors that was or will be funded on the Effective Date by the Debtors (and used for the payment of Professional Fee Claims as further provided for in Section 8.2 hereof) in an amount equal to the amount of any professional fees through the Effective Date included in a wind-down budget approved by the Required Lenders (the "Budgeted Professional Fees").

3.106    "Proof of Claim" means a proof of claim filed pursuant to Section 501 of the Bankruptcy Code or any order of the Bankruptcy Court, together with supporting documents.

3.107    "Record Date" has the meaning set forth in Section 19.14 hereof.

3.108    "Rejection Bar Date" means the last date for any Entity whose claims arise out of the Bankruptcy Court approved rejection of an executory contract or unexpired lease to file a

proof of claim for damages related to such rejection. The Rejection Bar Date for such Claims will be, (i) with respect to executory contracts and unexpired leases rejected pursuant to a Court order other than the Confirmation Order, the date provided by an order approving the rejection, and, (ii) with respect to executory contracts and unexpired leases rejected pursuant to the Confirmation Order, the date that is thirty (30) days after the Effective Date.

3.109    "Related Persons" means, subject to any exclusions expressly set forth in the Plan, with respect to a specific Person, said Person's successors and assigns, and as applicable, said Person's current and former shareholders, affiliates, subsidiaries, employees, agents, officers, directors, managers, trustees, partners, members, professionals, representatives, advisors, attorneys, financial advisors, accountants, and consultants, solely in their respective capacities as such.

3.110    "Released Parties" means, collectively, (a) the Debtors' Independent Manager and postpetition officers and directors, all of whom are employed by the Debtors or the Buyer as of the Petition Date; (b) the Prepetition Lenders Managers; (c) the Debtors' outside professionals and advisors, in their respective capacities as such, who provided services to the Debtors postpetition, including without limitation Pachulski Stang Ziehl & Jones LLP and SierraConstellation Partners; (d) the Committee and the individual members thereof in their capacity as such, and their professionals in their respective capacities as such; (e) the Prepetition Agent in its capacity as such; (f) the Prepetition Lenders in their respective capacity as such; (g) the DIP Agent in its capacity as such; (h) the DIP Lenders in their respective capacity as such; (i) SIM International; (j) the Buyer and (k) the Related Persons of the preceding parties, solely in their respective capacities as such. For the avoidance of doubt, notwithstanding any of the foregoing or any other provision of the Plan, the Buyer shall not be released by the Plan from any of the Buyer's obligations under the Sale Order and any related agreements and documents, including, without limitation, the Sale Agreement.

3.111    "Releasing Parties" has the meaning set forth in Section 16.2(a).2 hereof.

3.112    "Required Lenders" has the meaning for such term in the Prepetition Credit Agreement.

3.113    "Sale Agreement" means the Asset Purchase Agreement, dated as of February 11, 2026, as amended, modified, or supplemented, entered into by and between the Debtors, as sellers, and the Buyer, as buyer.

3.114    "Sale Order" means the Order of the Court approving the Sale Agreement and the sale of substantially all of the Debtors' assets to the Buyer [Docket No. 292].

3.115    "Schedules" means the respective schedules of assets and liabilities and statements of financial affairs filed by the Debtors pursuant to Section 521 of the Bankruptcy Code, the Official Bankruptcy Forms, and the Bankruptcy Rules, as they may be amended and supplemented from time to time.

3.116    "Secured Claim" means any Claim that is secured in whole or part, as of the Petition Date, by a Lien which is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, or

subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value of such Lien or right of setoff as determined under Sections 506(a) or 1129(b) of the Bankruptcy Code, as applicable.

3.117   "Secured EDC Claims" means the Secured Claims of EDC arising under or relating to the EDC Loan Documents.

3.118   "Shareholder Note Claims" means all unsecured Claims arising under the Shareholder Notes.

3.119   "Shareholder Notes" means the respective unsecured promissory notes issued by AFG as borrower to: (i) Pedro Sors, notes dated June 4, 2020, December 1, 2020, and July 15, 2024; (ii) John Pincavage, notes dated May 31, 2019, June 11, 2019, and July 15, 2024; (iii) Elsa Gagnon, note dated May 31, 2019; (iv) Angela Andrea Restrepo P.A., note dated December 29, 2020; (v) Alison Sors, note dated December 1, 2020; (vi) Vida Mar Enterprises, LLC, note dated July 15, 2024; and (vii) Bardoli Holdings Corp., note dated April 9, 2021.

3.120   "SIM International" means SIM International B.V. and its affiliates that are party to the SIM International Settlement, and any successors or assigns thereof.

3.121   "SIM International Claims" means any Claims that are asserted by SIM International against any of the Debtors.

3.122   "SIM International Settlement" means the *Settlement Agreement and Release* entered into as of February 12, 2026, by and among AFG and its Debtor and non-Debtor affiliates that are signatory parties, SIM International, and the Prepetition Lenders, subject to and as approved by the Court's Order entered on March 11, 2026 [Docket No. 158].

3.123   "Subsequent Distribution Date" means any date(s) after the Initial Distribution Date, as determined by the Litigation Trustee, upon which the Litigation Trust makes a distribution to any Holders of Allowed Administrative, Secured, Priority, or Unsecured Claims.

3.124   "Target Company" has the meaning for such term in the Sale Agreement.

3.125   "Tax" means any tax, charge, fee, levy, impost, or other assessment by any federal, state, local, or foreign taxing authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, *ad valorem*, estimated, severance, stamp, occupation, and withholding tax. "Tax" shall include any interest or additions attributable to, imposed on, or with respect to such assessments.

3.126   "Tax Claim" means all or that portion of an Allowed Claim held by a Governmental Unit for a Tax assessed or assessable against the Debtors.

3.127   "Third Party Release" has the meaning set forth in Section 16.2(a)2 hereof.

3.128   "Unimpaired Claim" means an unimpaired Claim within the meaning of Section 1124 of the Bankruptcy Code.

3.129    "Unsecured Claim" means any Claim against the Debtors or Estates that is not a Secured Claim, an Administrative Claim, a DIP Facility Claim, a Priority Tax Claim, a Priority Non-Tax Claim, an Other Secured Claim, a SIM International Claim, a Prepetition Lenders Claim, a Secured EDC Claim, or an Intercompany Claim. For the avoidance of doubt, Shareholder Note Claims (unless otherwise determined by an order of the Bankruptcy Court) and the unsecured deficiency Claim of any Person other than the Prepetition Lenders are Unsecured Claims, but any and all intercompany claims among the Debtors or among the Debtors and any of their non-Debtor affiliates are not Unsecured Claims.

3.130    "U. S. Trustee" means the Office of the United States Trustee for the District of Delaware.

3.131    "Voting Instructions" means the instructions for voting on the Plan contained on the Ballots.

3.132    "Voting Record Date" means the date as of which the identity of Holders of Claims is set for purposes of determining the Entities entitled to receive and vote on the Plan.

## SECTION 4
## BACKGROUND

4.1    General Background.[7]

As of the Petition Date, AFG and its Debtor and non-Debtor affiliates ("Avenger" or the "Company") operated as a global leader in commercial aviation simulation and flight training. Avenger provided a full suite of advanced flight simulator training solutions to their customers, which included blue-chip passenger airlines, low cost carriers ("LCCs"), regional airlines, charter operators, and training operators.

As of the Petition Date, the Company operated across 11 training centers in four (4) countries, specifically (a) 50 full-flight simulators ("FFS"), of which 23 are owned by the Company, 12 are leased, 11 are housed and maintained, and four (4) are subject to servicing agreements; and (b) 15 flight training devices ("FTD"), of which six (6) are owned and nine (9) are serviced by the Company. The Debtors employed approximately 97 employees across the United States as of the bankruptcy filing.

Avenger was founded in 2012 with the aim of delivering cost-effective training solutions to rapidly expanding airlines like Spirit Airlines. Avenger began with a single location and two FFSes in Fort Lauderdale, expanding in subsequent years to additional locations and FFSes including in Las Vegas, Fort Worth, Irving, Orlando, and Minneapolis, and overseas facilities in Monterrey, Madrid, Cancun (closed in 2024), Mexico City, Medellin, Rome (closed in 2022), Warsaw (sold in 2025), Frankfurt, and Tel Aviv (sold in 2025).

---

[7] Additional information regarding the Debtors' corporate history, business and operations is set forth in the *Declaration of Lawrence Perkins in Support of Debtors' Chapter 11 Petitions and First Day Relief* [Docket No. 33].

Avenger holds a critical and strategic position in the "pilot pipeline." After pilots reach their required minimum flight hours to join an airline, nearly all subsequent training is conducted in advanced simulators. Because it can cost as much as 25 times more to train in physical aircraft, commercial airlines use regulatory-approved advanced simulators to provide their crews with mandated initial courses, recurrent training, and upgrade training. Commercial airlines have increasingly used third-party simulator providers like Avenger to avoid the capital outlay associated with purchasing from a limited supply of simulators and to quickly add or reduce training capacity based on need.

### 4.2 Debtors' Organizational Structure.

Debtor Avenger Flight Group Topco, LLC ("Topco") is the direct or indirect parent of each of the Debtors and Foreign Non-Debtor Subsidiaries,[8] as shown on the diagram of the Company's organizational structure attached as **Exhibit A**. The Company's principal operating entity is AFG, although certain of the Company's domestic and foreign operations, assets, and liabilities lie with other Debtors and Foreign Non-Debtor Subsidiaries.

### 4.3 Debtors' Debt Structure.

(a) Secured Debt.

1. Prepetition Term Loan Facility.

Pursuant to that certain Credit Agreement, dated as of June 25, 2021, as amended, amended and restated, supplemented, or otherwise modified from time to time (the Prepetition Credit Agreement) among (a) AFG as borrower, (b) Topco, (c) the other guarantors party thereto from time to time, (d) Wilmington Trust, National Association, as administrative and collateral agent (the Prepetition Agent), and (e) the Prepetition Lenders, the Prepetition Lenders provided a secured term loan facility to certain of the Debtors (the "Prepetition Term Loan Facility").

As of the Petition Date, the Credit Parties (as defined in the Prepetition Credit Agreement) were indebted and jointly and severally liable to the Prepetition Lenders in the aggregate principal amount outstanding of no less than $273,051,488.11, together with accrued and unpaid interest, any fees, expenses and disbursements, indemnification obligations, and other charges, amounts and costs (the "Prepetition Term Loan Obligations"). The Prepetition Term Loan Obligations include rescue financing advanced to the Debtors by the Prepetition Lenders in September and December 2025 (the "Rescue Financing"). The Rescue Financing provided critical liquidity to support the Debtors' operations, meet the Debtors' payroll and vendor obligations, and provide the Company with the necessary runway to negotiate with their key stakeholders in the months leading up to the filing of the Chapter 11 Cases. As a result of the

---

[8] The "Foreign Non-Debtor Subsidiaries" are Avenger Flight Group España, S.L. ("Avenger Spain"); Avenger Flight Group Germany GmbH ("Avenger Germany"); AFG FTD Germany GmbH ("FTD Germany"); FTD Asset Espana, S.L. ("FTD Spain"); Avenger Flight Group India Pvt. Ltd. ("Avenger India"); Avenger Flight Group Italia, S.r.L. ("Avenger Italy"); Avenger Flight Group Israel Holdings Ltd. ("Avenger Israel"); Avenger Flight Group 737 Ltd. ("Avenger Israel 737"); Avenger Flight Group Colombia S.A.S. ("Avenger Colombia"); Avenger México Management, S. de R.L. de C.V. ("Mexico Management"); and Avenger Flight Group México, S. de R.L. de C.V. ("Avenger Mexico").

Rescue Financing, the Debtors were afforded a more orderly transition into bankruptcy, including negotiated resolutions with key stakeholders including SIM International.

In connection with the Prepetition Term Loan Facility, the Credit Parties (as defined in the Prepetition Credit Agreement) granted to the Prepetition Agent for the benefit of the Prepetition Lenders, a security interest in and continuing lien on all Collateral (as defined in the Prepetition Term Loan Documents) (including Cash Collateral) and all proceeds, products, accessions, rents, and profits thereof.

2.     SIM International Agreements.

Certain of the Debtors are party to agreements (collectively, the "SIM International Agreements") with SIM International B.V. and its affiliates (collectively, "SIM International") related to the construction (by SIM International) and lease (from SIM International to the Debtors) of FFSes. As of the Petition Date, the Lessees under the SIM International Agreements are Avenger Spain, Avenger Germany, AFG Dallas IV, AFG Orlando, AFG Sanford, and AFG FLL.  The Debtors' obligations under each of the SIM International Agreements are guaranteed by AFG  and secured by, among other things, each Lessee's rights in the applicable FFSes.

The Debtors are party to SIM International Agreements related to eleven (11) FFSes. As described further below, the Company, SIM International, and the Prepetition Lenders entered into the SIM International Settlement, which provides for a comprehensive settlement of the Company's obligations under the SIM International Agreements and provides for a clear path forward for the critical ongoing relationship between SIM International and the Company and the purchaser of the Company's assets in the Chapter 11 Cases.

3.      EDC Financing.

The Debtors make reference to (i) that certain Loan Agreement, dated as of November 1, 2018 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time prior to the Petition Date, the "EDC LATAM Loan Agreement" and collectively with all other agreements, instruments, and documents executed or delivered in connection therewith, each as may be amended, restated, amended and restated, supplemented, or otherwise modified from time to time prior to the Petition Date, the "EDC LATAM Loan Documents"), among AFG LATAM Sim Holdings, LLC, a Florida limited liability company ("LATAM"), Export Development Canada, a corporation established by an Act of Parliament of Canada ("EDC"), as loan agent for the lenders (in such capacity, the "EDC Loan Agent"), as a lender (in such capacity, a "EDC Lender"), and as security trustee (in such capacity, the "EDC Security Trustee" and together with the EDC Loan Agent and EDC Lender, the "EDC Secured Parties"), and (ii) that certain Loan Agreement, dated as of July 11, 2019 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time prior to the Petition Date, the "EDC LATAM IV Loan Agreement" and collectively with all other agreements, instruments, and documents executed or delivered in connection therewith, each as may be amended, restated, amended and restated, supplemented, or otherwise modified from time to time prior to the Petition Date, the "EDC LATAM IV Loan Documents"), among AFG LATAM Sim Holdings IV, LLC, a Florida limited liability company ("LATAM IV") and the EDC Secured Parties.

Pursuant to the EDC LATAM Loan Documents, the EDC Secured Parties provided loans to certain of the Debtors for the purchase of one TRU Simulation + Training Canada Inc. A320 flight simulator unit bearing manufacturer's serial number SN-00002635 and certain related assets (the "EDC LATAM Facility"). The EDC LATAM Facility is secured by such assets and certain other related assets, including the equity interests of LATAM, substantially all assets of LATAM, and the rights and interests of LATAM and certain of its subsidiaries in certain leases and subleases related to such assets (collectively, the "EDC LATAM Collateral"). Pursuant to the EDC LATAM IV Loan Documents, the EDC Secured Parties provided loans to the Debtors for the purchase of one TRU Simulation + Training Canada Inc. A320 flight simulator unit bearing manufacturer's serial number SN-00002659 and certain related assets (the "EDC LATAM IV Facility"). The EDC LATAM IV Facility is secured by such assets and certain other related assets, including the equity interests of LATAM IV, substantially all assets of LATAM IV, and the rights and interests of LATAM IV and certain of its subsidiaries in certain leases and subleases related to such assets (collectively, the "EDC LATAM IV Collateral" and together with EDC LATAM Collateral, the "EDC Collateral" and the liens and security interests granted thereon in favor of the EDC Secured Parties, the "EDC Liens"). As of the Petition Date, the EDC Liens on the EDC Collateral were valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, the EDC Secured Parties for fair consideration and reasonably equivalent value.

The Debtors, the Prepetition Lenders, EDC, and certain other parties reached a settlement as to certain EDC related matters as set forth in the Final DIP Order [Docket No. 160].

(b)    Unsecured Debt.

1.    Shareholder Notes.

AFG is the borrower under a series of interest-bearing unsecured promissory notes (the Shareholder Notes) issued to certain parties (the "Unsecured Noteholders"):

| Unsecured Noteholder | Date of Shareholder Note | Principal | Amount Outstanding |
|---|---|---|---|
| Pedro Sors | 6/4/2020 | $300,000 | $303,000 |
| Pedro Sors | 12/1/2020 | $150,000 | $159,000 |
| Pedro Sors | 7/15/2024 | $1,850,000 | $1,961,000 |
| John Pincavage | 5/31/2019 | $200,000 | $212,000 |
| John Pincavage | 6/11/2019 | $100,000 | $106,000 |
| John Pincavage | 7/15/2024 | $500,000 | $530,000 |
| Elsa Gagnon | 5/31/2019 | $150,000 | $159,000 |
| Angela Andrea Restrepo P.A. | 12/29/2020 | $200,000 | $212,000 |
| Alison Sors | 12/1/2020 | $750,000 | $795,000 |
| Vida Mar Enterprises, LLC | 7/15/2024 | $200,000 | $212,000 |
| Bardoli Holdings Corp. | 4/9/2021 | $3,120,000 | $474,000 |

Pursuant to that certain Subordination Agreement dated as of June 25, 2021, as amended and restated on July 15, 2024 (the "Note Subordination Agreement"), each of the Unsecured Noteholders (except for Bardoli Holdings Corp.) subordinated the debt payable to them under the Shareholder Notes to the Prepetition Lenders.

2.    Other Unsecured Claims.

The Debtors estimate that there may be approximately $25 to $45 million in potential allowed general unsecured claims (including lease/contract rejection, trade, vendor and other claims), inclusive of the Shareholder Note Claims.

4.4    Events and Circumstances Leading to the Bankruptcy Cases.

(a)    Challenges Facing the Company.

From its formation, Avenger sought to capitalize on an underserved opportunity in the aviation industry—providing outsourced aviation simulation to commercial airlines, in particular the growing "low cost carrier" market, and flight training schools, becoming the sole provider for the largest flight training school in the United States. Indeed, Avenger's rapid growth largely tracked the explosive growth of Spirit Airlines though, at the same time, the Company established strong relationships with other domestic LCCs like Allegiant, Avelo, and Sun

Country. As Avenger began to grow, it also established relationships with international LCCs like Viva Aerobus, Wizz Air, Iberia Express, and Condor, necessitating the Company to establish foreign footprints.

Avenger's rapid growth, however, was accompanied by a burgeoning debt load. With a limited supply of new FFSes (by some estimates, only approximately 50 new FFSes are made yearly) and high initial capital costs—potentially in excess of $10 million for a new FFS— the Company's debt load associated with its growth has become unsustainable.

The Company also faced some unexpected industry headwinds, creating further pressure on its balance sheet. Avenger focused on operating FFSes for the Airbus A320, the most popular aircraft type ever and the one used most commonly by the Company's LCC customer base; indeed, as of the Petition Date, over 55% of the Company's owned and operated FFSes are A320s. Unfortunately, on July 25, 2023, RTX Corporation, the parent company of Pratt & Whitney, announced that it had determined that a condition in the manufacturing of certain engine parts used in the PW1100G-JM geared turbofan engines—the engines used to power A320neo aircraft—required accelerated inspection and repair. As a result, hundreds of A320neo aircraft were grounded for inspection and repair. And, in turn, the airline industry temporarily decreased hiring new crews to fly the A320, causing decreased demand for commercial aviation training for that make and model of aircraft.

In addition, headwinds in the LCC airline industry put strain on the Debtors' operations. Of particular importance were the two chapter 11 filings of Avenger's once-largest customer, Spirit Airlines, in 2024 and 2025.  The Company also exited Cancun in 2024, as its main customer at that location, Interjet, was adjudicated bankrupt in Mexico in 2022. Further, in early 2023, Viva Air Colombia, the Company's partner in Colombia, suddenly commenced bankruptcy proceedings and liquidated. As a result, Avenger has had no operations in Medellin for nearly three years, although it continued to accrue liabilities related to the Leased Premises and two FFSes subject to the EDC Secured Facilities.

(b) <u>Termination of the Prepetition Revolving Facility</u>.

In January 2025, pursuant to that certain Loan Agreement (collectively with all other agreements executed or delivered in connection therewith, the "<u>Revolving Loan Agreement</u>") between AFG as Borrower, and Oxford Commercial Finance (the "<u>Revolving Lender</u>"), as Lender, AFG obtained access to a revolving credit facility of up to $5 million in principal (the "<u>Revolving Facility</u>"), secured by the Collateral (as defined in the Revolving Loan Agreement). However, on December 29, 2025, the Revolving Lender terminated the Revolving Loan Agreement pursuant to its terms, and, as of the Petition Date, the Debtors do not owe any amounts on the Revolving Facility.

(c) <u>Defaults Related to German Operations</u>.

When Avenger Germany entered into the applicable SIM International Agreements for the operational lease of FFSes to be located in Frankfurt, the Company lacked the liquidity to pay large down payments to SIM International for the three (3) new FFSes. To facilitate the transactions, the Company and SIM International entered into agreements (the "<u>SIM</u>

International Germany Agreements") pursuant to which the Company assigned its revenues generated from its Frankfurt operations to SIM International to secure the repayment of those down payments, among other things. Avenger defaulted under the SIM International Germany Agreements, both as a result of a payment default to SIM International and due to the Company's failure to pay rent to its third-party landlord (which, under German law, gave such landlord the right to cancel the lease).

As a result, on or about August 12, 2025, SIM International notified Avenger that it was exercising its rights under the SIM International Germany Agreements to, among other things, take over the Company's German customer agreements and assets. As of the Petition Date, the Company effectively has no German operations.

  (d)  Prepetition Restructuring Efforts and Filing of Chapter 11 Cases.

    1.  Prepetition Financial, Operational and Organizational Restructuring.

Beginning in 2023, Avenger began exploring opportunities to streamline its balance sheet through a recapitalization or other financing transaction. Through 2023 and 2024, the Company received interest in such a transaction from new financing sources, though none of the proposals were actionable, as none of the proposals were close to providing sufficient financing to address the Company's existing Prepetition Term Loan Obligations. Through this process, however, Avenger reached agreement with its existing stakeholders on the terms of restructuring transactions, which were consummated in July 2024 (the "2024 Restructuring"). Through the 2024 Restructuring, among other things, Avenger refinanced its secured term loan facility with its existing lenders (i.e. the Prepetition Lenders) and obtained equity financing from funds associated with Seacoast Capital Partners ("Seacoast") and Patriot Capital ("Patriot"), who previously owned approximately 45% of the equity in the Company and, after the 2024 Restructuring, owned 96.69% of the Company's equity. Following the 2024 Restructuring, Topco's board of managers (the "Board") consisted of six (6) individuals—two appointed by Seacoast (the "Seacoast Managers"), two appointed by Patriot (the "Patriot Managers"), and two appointed by the Prepetition Lenders (the "Creditor Managers").

Following the 2024 Restructuring, several members of senior management were relieved of their positions by the Company, including its former CEO, CFO, and Vice President of Finance. In March 2025, Marc Sullivan, an experienced financial professional with a substantial background in turnaround situations, was appointed as the Company's Chief Financial Officer. In April 2025, Hooman Yazhari was retained by the Company as an advisor to the Board and Board observer, and was given the title of Chairman. And in May 2025, the Company retained SierraConstellation Partners, LLC ("SCP") as a consultant to assist with the preparation of cash flow models. Lawrence Perkins of SCP served as an independent manager of AFG from August 26, 2025 until January 12, 2026.

Additionally, Avenger worked to right-size its operations. Between 2022 and the Petition Date, the Company's nascent and planned operations in Italy, Saudi Arabia, India, and Portugal were wound down. And in 2025, the Company sold its operations in Warsaw, Poland and Tel Aviv, Israel to its partners in each country. Shortly after their appointment, the Company's new

management team discovered significant accounting irregularities that affected all financial statements, insufficient financial controls, and inadequate processes. Since making these discoveries, the Company's management has been working to accurately restate the Company's financials and to put proper processes and controls in place. As of the Petition Date, the Company's new management team successfully implemented strong and proper processes and controls at all of the Debtors and continue to implement such processes and controls at certain Foreign Non-Debtor Subsidiaries. None of the finance or accounting personnel who were responsible for the prior irregularities and lack of controls remain employed by the Company.

2.       Discussions with Key Stakeholders and Prepetition Governance Changes.

In August 2025, after the occurrence of certain undisputed events of default, the Prepetition Agent exercised post-default rights under the Pledge and Security Agreement, dated as of June 25, 2021 (as amended, restated, replaced, refinanced, supplemented, or otherwise modified from time to time) and appointed Lawrence Perkins as independent manager of AFG and each of its subsidiaries. After his appointment, Mr. Perkins member-managed AFG and each of its subsidiaries, while the Board continued to manage Topco.

Starting around mid-October 2025, as its liquidity situation became more acute, the Company began to engage with the Prepetition Lenders to discuss a comprehensive restructuring of Avenger. To ensure the Company's operations continued without interruption, in connection with the fifteenth and sixteenth amendments to the Prepetition Credit Agreement, the Prepetition Lenders provided the Debtors with $11 million in new liquidity in the form of bridge financing— $5 million in September 2025 and $6 million in December 2025. Absent this bridge financing, the Debtors would have been required to seek a larger DIP facility and commence chapter 11 cases earlier, without the benefit of consensual resolutions with key stakeholders and in a rushed and less organized fashion. The Debtors and the Prepetition Lenders also engaged in a series of negotiations over the course of several months regarding the contours of a comprehensive restructuring of the Company involving the commencement of the Chapter 11 Cases to execute a value-maximizing sale of the Debtors' assets.

Concurrently, the Company engaged in arms'-length discussions with SIM International, which had noticed alleged defaults under the SIM International Agreements in February 2024 and August 2025 and, as noted above, had taken action with respect to the Company's German operations. As a result of the Company's discussions with SIM International, the Company, SIM International, and the Prepetition Lenders entered into the SIM International Settlement, which includes significant concessions from SIM International and secures an ongoing relationship with improved equipment to support Avenger's turnaround and growth plan.

Concurrent with the Company's discussions with its key stakeholders, Avenger experienced additional changes in its governance in the months leading to the Petition Date. On November 14, 2025, Seacoast and Patriot abruptly informed the Company that they were exercising their put options and abandoning the equity they had received in the 2024 Restructuring and that the four Seacoast Managers and Patriot Managers were resigning from the Board.

Thereafter, on November 21, 2025, the two Creditor Managers resigned and the Prepetition Lenders appointed Lawrence Perkins as the sole independent manager of the Board. On January 12, 2026, Lawrence Perkins resigned as the manager of the Board and was named Chief Restructuring Officer (CRO) of the Company as of January 20, 2026. As of January 13, 2026, Mr. Yazhari (the "Independent Manager") was named the sole independent manager of the Board and, in connection therewith, Mr. Yazhari resigned from all existing positions he held with the Company, including his role as Chairman, and waived all rights and claims he may have had against the Company arising prior to his appointment as Independent Manager.

3.      Filing of the Chapter 11 Cases.

Facing internal and external challenges, including a high debt load, general industry headwinds, and the bankruptcies of some of its major customers, the Company engaged with many of their major stakeholders --including the Prepetition Lenders, SIM International, and key equipment lessors-- regarding a holistic restructuring to be effectuated through the chapter 11 process

To that end, as of the Petition Date, the Debtors secured a commitment for a $43.5 million senior secured DIP financing facility (which includes $14.5 million in new money) (the "DIP Facility") to be provided by the Prepetition Lenders and secured by liens on substantially all of the Debtors' assets. The DIP Facility is designed to bridge the Debtors to the closing of a value-maximizing sale. In addition, the Debtors filed a sale/bidding procedures motion (discussed below) seeking, among other things, approval of procedures for the marketing and ultimate sale of their assets and for a designee(s) of the Prepetition Lenders (the "Stalking Horse Bidder") to serve as stalking horse bidder, pursuant to a credit bid, for the purchase of substantially all of the Debtors' assets, subject to a court-approved overbidding process designed to maximize the realizable value for the Debtors' assets for the benefit of all stakeholders.

In sum, the Debtors' decision to file the Chapter 11 Cases was informed by the prepetition challenges they faced and several months of exploration and deliberation by the Company's board of directors and management. The Debtors commenced these bankruptcy cases to implement the orderly sale of their assets and wind-down their remaining operations and assets, to preserve and maximize the value of the estates' assets for the benefit of all stakeholders.

## SECTION 5
## THE CHAPTER 11 CASES

The following is a brief description of certain material events that have occurred during the Chapter 11 Cases.

5.1      First Day and Other Early Relief.

In order to facilitate the Chapter 11 Cases, minimize disruption to the Debtors' affairs, and preserve the value of the Estates, the Debtors filed motions with the Bankruptcy Court on or shortly after the Petition Date seeking certain relief, including, without limitation:

(a)    authority to honor and pay certain prepetition workforce compensation and expenses and other related obligations, subject to certain caps (interim order, Docket No. 69; final order, Docket No. 141);

(b)    authority to pay certain prepetition claims of critical and foreign vendors, lien claimants, and section 503(b)(9) claimants and approval of other related relief (interim order, Docket No. 70; final order, Docket No. 128);

(c)    authority to pay (or use tax credits to offset) sales, use, property, franchise, and other governmental fees and assessments, in the ordinary course of business (interim order, Docket No. 67; final order, Docket No. 127);

(d)    authority to continue using the Debtors' existing cash management system and the provision of other related relief (interim orders, Docket Nos. 86 & 143);

(e)    approval of adequate assurance procedures for utility providers (interim order, Docket No. 66; final order, Docket No. 140);

(f)    authority to continue to maintain their insurance policies and programs, honor all insurance obligations, and renew, extend, supplement, or purchase and finance their insurance policies (interim order, Docket No. 68; final order, Docket No. 142); and

(g)    the appointment of Kurtzman Carson Consultants, LLC dba Verita Global as the claims and noticing agent in the Chapter 11 Cases [Docket No. 65] and as Administrative Advisor [Docket No. 178].

5.2    DIP Financing / Cash Collateral and Committee Resolution.

On February 12, 2026, the Debtors filed their first day motion for approval of the DIP financing facility and the use of cash collateral of the Prepetition Lenders [Docket No. 12]. The DIP Facility is a $43.5 million senior secured DIP facility which includes $14.5 million in new money to be provided by certain Prepetition Lenders and a roll-up of the $6 million bridge financing (discussed above) and an additional $23 million of prepetition term loan obligations. The DIP Facility is designed to bridge the Debtors to the closing of a value-maximizing sale.

The Court entered an order granting the Debtors' motion on an interim basis on February 13, 2026 [Docket No. 59], and an order granting the motion on a final basis on March 11, 2026 [Docket No. 160].   In connection with the Debtors' reorganization process, the Debtors, the Committee, the Prepetition Lenders, and the DIP Lenders negotiated and entered into the Committee Resolution as set forth in that certain Global Resolution Term Sheet filed with the Court on March 11, 2026 (Exhibit C to the Final DIP Order). Pursuant to the proposed Plan which is consistent with and will further implement the Committee Resolution, on and after the Effective Date, the Litigation Trustee will complete the orderly liquidation and wind-down of the Debtors' business, address pending claims, including litigation claims, and make distributions to

Creditors. Consistent with the Committee Resolution, the Plan provides for, as of the Effective Date, the funding of the Plan and the Litigation Trust and the post-Effective-Date implementation thereof, with certain contributed Cash (held as Available Cash as of the Effective Date) in which the DIP Lenders and/or Prepetition Lenders would otherwise hold Liens and would otherwise be entitled to receive.

### 5.3    Sale Procedures / Sale of Assets

The Debtors filed a sale/bidding procedures motion [Docket No. 13], seeking, among other things, approval of procedures for the marketing and ultimate sale of substantially all of their assets and for a designee(s) of the Prepetition Lenders to serve as stalking horse bidder, pursuant to a credit bid, subject to an overbidding process. Managed by the Debtors' advisor Seabury Securities LLC, the marketing process has been and will continue to be implemented. The stalking horse bid is a credit bid in the amount of $125 million, together with the assumption of certain liabilities and the termination of the liens on certain excluded cash. The Court entered an order approving the procedures as provided therein on March 11, 2026 [Docket No. 161].

Ultimately, no overbids were received and the Debtors canceled the auction.  The Court subsequently entered the Sale Order on April 8, 2026 [Docket No. 292].

### 5.4    Retention of Professionals.

The Debtors filed applications to employ Pachulski Stang Ziehl & Jones LLP as bankruptcy counsel (approved pursuant to an order entered on March 19, 2026 [Docket No. 175]), Seabury Aviation Partners, LLC and Seabury Securities LLC as their investment bankers (approved pursuant to an order entered on March 19, 2026) [Docket No. 177]), and Holland & Knight LLP as special aviation counsel (approved pursuant to an order entered on March 19, 2026) [Docket No. 176]).

### 5.5    Appointment of Creditors' Committee.

On February 25, 2026, the United States Trustee appointed the Committee [Docket No. 95], comprised of the members Allegiant Air LLC, Bow Systems (Private) Limited, and Multi Pilot Simulations.  The Committee retained Willkie Farr & Gallagher LLP and Womble Bond Dickinson (US) LLP as its co-counsel and FTI Consulting, Inc. as its financial advisor (all subject to Court approval).

### 5.6    SIM International Settlement.

On the Petition Date, the Debtors filed a motion for approval of the Debtors' critical settlement with SIM International. The Debtors are party to SIM International Agreements related to eleven (11) FFSes. Prior to the Petition Date, the Company, SIM International, and the Prepetition Lenders entered into the SIM International Settlement, which provides for a global compromise of the Company's obligations under the SIM International Agreements. As discussed above, the SIM International Settlement includes significant concessions from SIM International and promotes an ongoing relationship with the Buyer of the Debtors' business and assets. The Court approved the SIM International Settlement pursuant to an order entered on

March 11, 2026 [Docket No. 158].

     5.7    Debtors' Schedules and Statements of Financial Affairs.

The Debtors filed with the Court their respective Schedules and Statements of Financial Affairs [Docket Nos. 202 through 243].

**SECTION 6**
**CONFIRMATION AND VOTING PROCEDURES**

     6.1    Confirmation Hearing.

The Court has entered an order conditionally approving the Combined Plan and Disclosure Statement (the "Conditional Approval and Procedures Order") for solicitation purposes only and authorizing the Debtors to solicit the Combined Plan and Disclosure Statement. The Confirmation Hearing has been scheduled for **June 23, 2026, at 10:30 a.m. (prevailing Eastern Time)** to consider (a) final approval of the Combined Plan and Disclosure Statement as providing adequate information pursuant to section 1125 of the Bankruptcy Code and (b) confirmation of the Combined Plan and Disclosure Statement pursuant to section 1129 of the Bankruptcy Code. The Confirmation Hearing may be adjourned from time to time by the Debtors without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing or by filing a notice with the Court.

     6.2    Procedures for Objections.

Any objection to final approval of the Combined Plan and Disclosure Statement as providing adequate information pursuant to section 1125 of the Bankruptcy Code and/or confirmation of the Combined Plan and Disclosure Statement must be made in writing and filed with the Court by no later than **June 15, 2026, at 5:00 p.m. (prevailing Eastern Time)**. **Unless an objection is timely filed and served, it may not be considered by the Court at the Confirmation Hearing.**

     6.3    Requirements for Confirmation.

The Court will confirm the Combined Plan and Disclosure Statement only if it meets all the applicable requirements of section 1129 of the Bankruptcy Code. Among the requirements for confirmation in the Chapter 11 Cases is that the Combined Plan and Disclosure Statement be: (i) accepted by all Impaired Classes of Claims and Interests or, if rejected by an Impaired Class, that the Combined Plan and Disclosure Statement "does not discriminate unfairly" against, and is "fair and equitable" with respect to, such Class; and (ii) feasible. The Court must also find that:

     (a)    the Combined Plan and Disclosure Statement has classified Claims and Interests in a permissible manner;

     (b)    the Combined Plan and Disclosure Statement complies with the technical requirements of Chapter 11 of the Bankruptcy Code; and

(c)      the Combined Plan and Disclosure Statement has been proposed in good faith.

The Debtors believe that the Combined Plan and Disclosure Statement complies, or will comply, with all such requirements.

6.4      Classification of Claims and Interests.

Section 1123 of the Bankruptcy Code provides that a plan must classify the claims and interests of a debtor's creditors and equity interest holders.  In accordance with section 1123 of the Bankruptcy Code, the Combined Plan and Disclosure Statement divides Claims and Interests into Classes and sets forth the treatment for each Class (other than those claims which pursuant to section 1123(a)(1) of the Bankruptcy Code need not be and have not been classified).

Section 1122 of the Bankruptcy Code requires the Combined Plan and Disclosure Statement to place a Claim or Interest in a particular Class only if such Claim or Interest is substantially similar to the other Claims or Interests in such class.  The Combined Plan and Disclosure Statement creates separate Classes to deal respectively with Priority Non-Tax Claims, various Secured Claims, Unsecured Claims, and Interests.  The Debtors believe that the Combined Plan and Disclosure Statement's classifications place substantially similar Claims or Interests in the same Class and, thus, meet the requirements of section 1122 of the Bankruptcy Code.

The Bankruptcy Code also requires that a plan provide the same treatment for each claim or interest of a particular class unless the claim holder or interest holder agrees to a less favorable treatment of its claim or interest.  The Debtors believe that the Combined Plan and Disclosure Statement complies with such standard.  If the Court finds otherwise, however, it could deny confirmation of the Combined Plan and Disclosure Statement if the holders of Claims or Interests affected do not consent to the treatment afforded them under the Combined Plan and Disclosure Statement.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.  A Claim also is placed in a particular Class for the purpose of receiving distributions pursuant to the Combined Plan and Disclosure Statement only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

The Debtors believe that the Combined Plan and Disclosure Statement has classified all Claims and Interests in compliance with the provisions of section 1122 of the Bankruptcy Code and applicable case law.  It is possible that a holder of a Claim or Interest may challenge the Debtors' classification of Claims or Interests and that the Court may find that a different classification is required for the Combined Plan and Disclosure Statement to be confirmed.  If such a situation develops, the Debtors intend, in accordance with the terms of the Combined Plan and Disclosure Statement, to make such permissible modifications to the Combined Plan and Disclosure Statement as may be necessary to permit its confirmation.  Any such reclassification

could adversely affect holders of Claims by changing the composition of one or more Classes and the vote required of such Class or Classes for approval of the Combined Plan and Disclosure Statement.

**EXCEPT AS SET FORTH IN THE COMBINED PLAN AND DISCLOSURE STATEMENT, UNLESS SUCH MODIFICATION OF CLASSIFICATION MATERIALLY ADVERSELY AFFECTS THE TREATMENT OF A HOLDER OF A CLAIM AND REQUIRES RE-SOLICITATION, ACCEPTANCE OF THE COMBINED PLAN AND DISCLOSURE STATEMENT BY ANY HOLDER OF A CLAIM PURSUANT TO THIS SOLICITATION WILL BE DEEMED TO BE A CONSENT TO THE COMBINED PLAN AND DISCLOSURE STATEMENT'S TREATMENT OF SUCH HOLDER OF A CLAIM REGARDLESS OF THE CLASS AS TO WHICH SUCH HOLDER ULTIMATELY IS DEEMED TO BE A MEMBER.**

The amount of any Impaired Claim that ultimately is Allowed by the Court may vary from any estimated Allowed amount of such Claim and, accordingly, the total Claims that are ultimately Allowed by the Court with respect to each Impaired Class of Claims may also vary from any estimates contained herein with respect to the aggregate Claims in any Impaired Class. Thus, the actual recovery ultimately received by a particular holder of an Allowed Claim may be adversely or favorably affected by the aggregate amount of Claims Allowed in the applicable Class. Additionally, any changes to any of the assumptions underlying the estimated Allowed amounts could result in material adjustments to recovery estimates provided herein or the actual Distribution received by creditors. The projected recoveries are based on information available to the Debtors as of the date hereof and reflect the Debtors' views as of the date hereof only.

The classification of Claims and Interests and the nature of distributions to members of each Class are summarized herein. The Debtors believe that the consideration, if any, provided under the Combined Plan and Disclosure Statement to holders of Allowed Claims reflects an appropriate resolution of their Allowed Claims taking into account the differing nature and priority of such Claims and Interests. The Court must find, however, that a number of statutory tests are met before it may confirm the Combined Plan and Disclosure Statement. Many of these tests are designed to protect the interests of holders of Claims or Interests who are not entitled to vote on the Combined Plan and Disclosure Statement, or do not vote to accept the Combined Plan and Disclosure Statement, but who will be bound by the provisions of the Combined Plan and Disclosure Statement if it is confirmed by the Court.

### 6.5   Impaired Claims or Interests.

Pursuant to section 1126 of the Bankruptcy Code, only the holders of Claims in Classes Impaired by the Combined Plan and Disclosure Statement and receiving a payment or Distribution under the Combined Plan and Disclosure Statement may vote to accept or reject the Combined Plan and Disclosure Statement. Pursuant to section 1124 of the Bankruptcy Code, a Class of Claims may be Impaired if the Combined Plan and Disclosure Statement alters the legal, equitable, or contractual rights of the holders of such Claims or Interests treated in such Class. The holders of Claims not Impaired by the Combined Plan and Disclosure Statement are deemed to accept the Combined Plan and Disclosure Statement and do not have the right to vote on the Combined Plan and Disclosure Statement. The holders of Claims or Interests in any Class which

will not receive any payment or Distribution or retain any property pursuant to the Combined Plan and Disclosure Statement are deemed to reject the Combined Plan and Disclosure Statement and do not have the right to vote.  Finally, the holders of Claims or Interests whose Claims or Interests are not classified under the Combined Plan and Disclosure Statement are not entitled to vote on the Combined Plan and Disclosure Statement.

Under the Combined Plan and Disclosure Statement, Holders of Claims in Class 1 (Priority Non-Tax Claims), and Class 4 (Other Secured Claims) are Unimpaired and, therefore, not entitled to vote on the Combined Plan and Disclosure Statement and are deemed to accept the Combined Plan and Disclosure Statement.  Holders of Claims in Class 2 (Prepetition Lenders Claims), Class 3 Secured EDC Claims, Class 5 (SIM International Claims), and Class 6 (Unsecured Claims) are Impaired and entitled to vote on the Plan.  Holders of Claims in Class 7 (Intercompany Claims) and Holders of Interests in Class 8 (Interests) will not receive any payment or Distribution or retain any property pursuant to the Combined Plan and Disclosure Statement and, therefore, are deemed to reject the Combined Plan and Disclosure Statement and do not have the right to vote.

**ACCORDINGLY, BALLOTS FOR ACCEPTANCE OR REJECTION OF THE COMBINED PLAN AND DISCLOSURE STATEMENT ARE BEING PROVIDED TO HOLDERS OF CLAIMS IN CLASSES 2, 5 AND 6.**

6.6     Confirmation without Necessary Acceptances; Cramdown.

In the event that any impaired class of claims or interests does not accept a plan, a debtor nevertheless may move for confirmation of the plan.  A plan may be confirmed, even if it is not accepted by all impaired classes, if the plan has been accepted by at least one impaired class of claims, determined without including any acceptance of the plan by any insider holding a claim in that class, and the plan meets the "cramdown" requirements set forth in section 1129(b) of the Bankruptcy Code.  Section 1129(b) of the Bankruptcy Code requires that a court find that a plan (a) "does not discriminate unfairly" and (b) is "fair and equitable," with respect to each non-accepting impaired class of claims or interests.  Here, because holders of Claims in Classes 7 and 8, and of Interests in Class 9 are deemed to reject the Combined Plan and Disclosure Statement, the Debtors will seek confirmation of the Combined Plan and Disclosure Statement from the Court by satisfying the "cramdown" requirements set forth in section 1129(b) of the Bankruptcy Code.  The Debtors believe that such requirements are satisfied, as no holder of a Claim or Interest junior to those in Classes 7, 8, and 9 is entitled to receive any property under the Combined Plan and Disclosure Statement.

The concept of "unfair discrimination" is not defined in the Bankruptcy Code, but has been suggested in recent case law to arise when a difference in a plan's treatment of two classes of equal priority results in a materially lower percentage recovery for the non-accepting class.  Based upon their understanding of existing case law, the Debtors do not believe that the Plan unfairly discriminates against any Class of Claims.

The Bankruptcy Code provides a nonexclusive definition of the phrase "fair and equitable." To determine whether a plan is "fair and equitable," the Bankruptcy Code establishes "cramdown" tests for secured creditors, unsecured creditors, and equity holders, as follows:

a.  Secured Creditors.  Either (i) each impaired secured creditor retains its liens securing its secured claim and receives on account of its secured claim deferred Cash payments having a present value equal to the amount of its allowed secured claim, (ii) each impaired secured creditor realizes the "indubitable equivalent" of its allowed secured claim or (iii) the property securing the claim is sold free and clear of liens with such liens to attach to the proceeds of the sale and the treatment of such liens on proceeds to be as provided in clause (i) or (ii) above.

b.  Unsecured Creditors.  Either (i) each impaired unsecured creditor receives or retains under the plan property of a value equal to the amount of its allowed claim or (ii) the holders of claims and interests that are junior to the claims of the dissenting class will not receive any property under the plan.

c.  Interests.  Either (i) each holder of an equity interest will receive or retain under the plan property of a value equal to the greatest of the fixed liquidation preference to which such holder is entitled, the fixed redemption price to which such holder is entitled or the value of the interest or (ii) the holder of an interest that is junior to the nonaccepting class will not receive or retain any property under the plan.

As discussed above, the Debtors believe that the distributions provided under the Combined Plan and Disclosure Statement satisfy the absolute priority rule, where required.

### 6.7    Feasibility.

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a plan not be likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors (unless such liquidation or reorganization is proposed in the Combined Plan and Disclosure Statement).  Because the Combined Plan and Disclosure Statement proposes a liquidation of all of the Debtors' remaining assets, for purposes of this test, the Debtors have analyzed the ability of the Debtors and the Litigation Trust to meet their obligations under the Combined Plan and Disclosure Statement.  Based on the Debtors' analysis, the Debtors and the Litigation Trust will have sufficient assets to accomplish their tasks and satisfy their obligations under the Combined Plan and Disclosure Statement. Therefore, the Debtors believe that the Combined Plan and Disclosure Statement will meet the feasibility requirements of the Bankruptcy Code.

### 6.8    Best Interests Test and Liquidation Analysis.

Even if a plan is accepted by the holders of each class of claims and interests, the Bankruptcy Code requires the Court to determine that such plan is in the best interests of all holders of claims or interests that are impaired by that plan and that have not accepted the plan. The "best interests" test, as set forth in section 1129(a)(7) of the Bankruptcy Code, requires a court to find either that all members of an impaired class of claims or interests have accepted the plan or that the plan will provide a member who has not accepted the plan with a recovery of

property of a value, as of the effective date of the plan, that is not less than the amount that such holder would recover if the debtor were liquidated under chapter 7 of the Bankruptcy Code.

To calculate the probable distribution to holders of each impaired class of claims and interests if the debtor was liquidated under chapter 7, a court must first determine the aggregate dollar amount that would be generated from a debtor's assets if its chapter 11 cases were converted to cases under chapter 7 of the Bankruptcy Code. To determine if a plan is in the best interests of each impaired class, the present value of the distributions from the proceeds of a liquidation of the debtor's unencumbered assets and properties, after subtracting the amounts attributable to the costs, expenses, and administrative claims associated with a chapter 7 liquidation, must be compared with the value offered to such impaired classes under the plan. If the hypothetical liquidation distribution to holders of claims or interests in any impaired class is greater than the distributions to be received by such parties under the plan, then such plan is not in the best interests of the holders of claims or interests in such impaired class.

In this case, the DIP Lenders and the Prepetition Lenders have agreed to allow the funding of the Plan and the actions contemplated thereunder with Distributable Assets including Available Cash – property in which the DIP Lenders and the Prepetition Lenders could otherwise assert Liens and Claims. Such cash and other property would not be available for general unsecured creditors of the Debtors in a Chapter 7 proceeding. Based upon the Debtors' current projections, Holders of Allowed administrative, priority, and secured claims will be paid in full (or otherwise satisfied) under the Plan, while Holders of Prepetition Lenders Claims and Unsecured Claims will receive less than full payments.

If the Chapter 11 Cases were converted to a Chapter 7 proceeding, first and foremost, the Estates would not have the benefit of the aforementioned assets and funding to provide a recovery for general unsecured creditors under the Plan, and thus, general unsecured creditors would likely receive no recovery in a Chapter 7 proceeding. Further, the Debtors' estates would incur the costs of payment of a statutorily allowed commission to the Chapter 7 trustee, as well as the costs of counsel and other professionals retained by the trustee. The Debtors believe that such amounts would exceed the amount of expenses that will be incurred in implementing the Plan and winding up the affairs of the Debtors in the Chapter 11 Cases. The Debtors contemplate an orderly administration and winding down of the Estates by parties utilizing professionals that are already familiar with the Debtors, their remaining assets and affairs, and their creditors and liabilities. Such familiarity will facilitate the completion of the liquidation of the remaining assets (including prosecution of the applicable Causes of Action), and the distribution of the net proceeds to creditors more efficiently and expeditiously than a Chapter 7 trustee. Additionally, the Estates would suffer additional delays, as a Chapter 7 trustee and his/her counsel took time to develop a necessary learning curve in order to complete the administration of the Estates (including the prosecution of the applicable Causes of Action). Also, a new time period for the filing of claims would commence under Bankruptcy Rule 1019(2), possibly resulting in the filing of additional Claims against the Estates.

Based upon the foregoing, the Debtors believe that creditors will receive at least as much or more under the Plan than they would receive if the Chapter 11 Cases were converted to Chapter 7 cases.

6.9     Eligibility to Vote on the Combined Plan and Disclosure Statement.

Unless otherwise ordered by the Court, only holders of Allowed Claims in Classes 2, 5 and 6 may vote on the Combined Plan and Disclosure Statement.  Further, subject to the tabulation procedures that were approved by the Conditional Approval and Procedures Order, in order to vote on the Combined Plan and Disclosure Statement, you must hold an *Allowed* Claim in Classes 2, 5 and 6, or be the holder of a Claim that has been temporarily Allowed for voting purposes only pursuant to the approved tabulation procedures or under Bankruptcy Rule 3018(a).

6.10    Solicitation Package / Release Opt-In.

All holders of Allowed Claims in Classes 2, 5 and 6 will receive a Solicitation Package. The Solicitation Packages will contain:  (i) the Combined Plan and Disclosure Statement; (ii) the Conditional Approval Order and Procedures Order; (iii) notice of the Confirmation Hearing; (iv) applicable forms of Ballots, including voting instructions and a box to check for Holders of Class 6 Claims to opt in and elect to be a Releasing Party in connection with the Debtors' release and the third-party releases contained in Section 16.2(a).2; and (v) such other materials as the Court may direct or approve or that the Debtors deem appropriate.

All other Creditors and parties in interest not entitled to vote on the Combined Plan and Disclosure Statement will receive a copy of the notice of Confirmation Hearing and, if applicable, a form to opt-in to granting the releases provided for under Section 16.2 of the Plan.

Copies of the Combined Plan and Disclosure Statement shall be available on the Claims and Balloting Agent's website at https://www.veritaglobal.net/avengerfg.  Any creditor or party-in-interest can request hard or electronic copies of the Combined Plan, free of charge, upon request to the Claims and Balloting Agent, by (a) writing to AFG Ballot Processing Center, c/o KCC dba Verita, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245, (b) contacting the Voting Agent by email via https://www.veritaglobal.net/avengerfg/inquiry; or (c) by phone at (877) 725-7534 (U.S./Canada) or +1 (424) 236-7243 (International).

6.11    Voting Procedures, Voting Deadline, and Applicable Deadlines.

In order for your Ballot to count, you must (1) complete, date, and properly execute the Ballot and (2) properly deliver the Ballot to the Claims and Balloting Agent by either (a) mailing, hand delivering, or sending via overnight mail the Ballot to the Claims and Balloting Agent at the following address: AFG Ballot Processing Center, c/o KCC dba Verita, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245; or (b) submitting the Ballot on the Claims and Balloting Agent's online balloting platform available at https://www.veritaglobal.net/avengerfg. Instructions for casting a Ballot will be available on the Claims and Balloting Agent's website.

Ballots must be submitted electronically, or the Claims and Balloting Agent must actually receive physical, original Ballots by mail or overnight delivery, on or before the Voting Deadline, which is **June 15, 2026 at 5:00 p.m. (prevailing Eastern Time)**.  Subject to the tabulation procedures approved by the Conditional Approval and Procedures Order, you may not change your vote once a Ballot is submitted electronically or the Claims and Balloting Agent receives your original paper Ballot.  Subject to the tabulation procedures approved by the Conditional Approval and Procedures Order, any Ballot that is timely and properly submitted

electronically or received physically will be counted and will be deemed to be cast as an acceptance, rejection or abstention, as the case may be, of the Combined Plan and Disclosure Statement.

**IF YOU ARE ENTITLED TO VOTE ON THE COMBINED PLAN AND DISCLOSURE STATEMENT, YOU ARE URGED TO COMPLETE, DATE, SIGN, AND PROMPTLY MAIL THE BALLOT YOU RECEIVE.  PLEASE BE SURE TO COMPLETE ALL BALLOT ITEMS PROPERLY AND LEGIBLY.  IF YOU ARE A HOLDER OF A CLAIM ENTITLED TO VOTE ON THE COMBINED PLAN AND DISCLOSURE STATEMENT AND YOU DID NOT RECEIVE A BALLOT, YOU RECEIVED A DAMAGED BALLOT, OR YOU LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THE COMBINED PLAN AND DISCLOSURE STATEMENT OR PROCEDURES FOR VOTING ON THE COMBINED PLAN AND DISCLOSURE STATEMENT, PLEASE CONTACT THE CLAIMS AND BALLOTING AGENT BY (I) TELEPHONE AT (877) 725-7534 (U.S./CANADA) OR +1 (424) 236-7243 (INTERNATIONAL) OR (II) EMAIL VIA HTTPS://WWW.VERITAGLOBAL.NET/AVENGERFG/INQUIRY. THE CLAIMS AND BALLOTING AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

6.12    Acceptance of the Combined Plan and Disclosure Statement.

If you are a holder of a Claim in Classes 2, 5 or 6, your acceptance of the Combined Plan and Disclosure Statement is important.  In order for the Combined Plan and Disclosure Statement to be accepted by an Impaired Class of Claims, a majority in number (*i.e.*, more than half) and two-thirds in dollar amount of the Claims voting (of each Impaired Class of Claims) must vote to accept the Combined Plan and Disclosure Statement.  At least one Impaired Class of Creditors, excluding the votes of insiders, must actually vote to accept the Combined Plan and Disclosure Statement.  The Debtors urge that you vote to accept the Combined Plan and Disclosure Statement.

**SECTION 7**
**CERTAIN RISK FACTORS, TAX CONSEQUENCES, AND OTHER DISCLOSURES**

7.1    Certain Risk Factors to be Considered.

THE COMBINED PLAN AND DISCLOSURE STATEMENT AND ITS IMPLEMENTATION ARE SUBJECT TO CERTAIN RISKS, INCLUDING, BUT NOT LIMITED TO, THE RISK FACTORS SET FORTH BELOW. HOLDERS OF CLAIMS WHO ARE ENTITLED TO VOTE ON THE COMBINED PLAN AND DISCLOSURE STATEMENT SHOULD READ AND CAREFULLY CONSIDER THE RISK FACTORS, AS WELL AS THE OTHER INFORMATION SET FORTH IN THE COMBINED PLAN AND DISCLOSURE STATEMENT AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH OR REFERRED TO OR INCORPORATED BY REFERENCE HEREIN, BEFORE DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE COMBINED PLAN AND DISCLOSURE STATEMENT.  THESE FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION

WITH THE COMBINED PLAN AND DISCLOSURE STATEMENT AND ITS IMPLEMENTATION.

        7.2     The Combined Plan and Disclosure Statement May Not Be Accepted.

The Debtors can make no assurances that the requisite acceptances of the Combined Plan and Disclosure Statement will be received, and the Debtors may need to obtain acceptances of an alternative plan of liquidation for the Debtors, or otherwise, that may not have the support of the creditors and/or may be required to liquidate the Estates under chapter 7 of the Bankruptcy Code. There can be no assurance that the terms of any such alternative restructuring arrangement or plan would be similar to or as favorable to creditors as those proposed in the Combined Plan and Disclosure Statement.

        7.3     The Combined Plan and Disclosure Statement May Not Be Confirmed.

Even if the Debtors receive the requisite acceptances, there is no assurance that the Court, which may exercise substantial discretion as a court of equity, will confirm the Combined Plan and Disclosure Statement. Even if the Court determined that the Combined Plan and Disclosure Statement and the balloting procedures and results were appropriate, the Court could still decline to confirm the Combined Plan and Disclosure Statement if it finds that any of the statutory requirements for confirmation had not been met. As is described in greater detail in Section 6.3, section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a chapter 11 plan. While, as more fully set forth Section 6, the Debtors believe that the Combined Plan and Disclosure Statement complies with or will comply with all such requirements, there can be no guarantee that the Court will agree.

Moreover, there can be no assurance that modifications to the Combined Plan and Disclosure Statement will not be required for Confirmation or that such modifications would not necessitate the re-solicitation of votes. If the Combined Plan and Disclosure Statement is not confirmed, it is unclear what distributions holders of Claims ultimately would receive with respect to their Claims in a subsequent plan of liquidation. If an alternative could not be agreed to, it is possible that the Debtors would have to liquidate their remaining assets in chapter 7, in which case it is likely that the holders of Allowed Claims would receive substantially less favorable treatment than they would receive under the Combined Plan and Disclosure Statement.

7.4    Distributions to Holders of Allowed Claims Under the Combined Plan and Disclosure Statement May be Inconsistent with Projections.

Projected Distributions are based upon good faith estimates of the total amount of Claims ultimately Allowed and the funds available for Distribution.  There can be no assurance that the estimated Claim amounts set forth in the Combined Plan and Disclosure Statement are correct. These estimated amounts are based on certain assumptions with respect to a variety of factors. Both the actual amount of Allowed Claims in a particular Class and the funds available for distribution to such Class may differ from the Debtors' estimates.  If the total amount of Allowed Claims in a Class is higher than the Debtors' estimates, or the funds available for distribution to such Class are lower than the Debtors' estimates, the percentage recovery to holders of Allowed Claims in such Class will be less than projected.

7.5    Objections to Classification of Claims.

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class.  As is described in greater detail in Section 6.4, the Debtors believe that the classification of Claims and Interests under the Combined Plan and Disclosure Statement complies with the requirements set forth in the Bankruptcy Code. Nevertheless, there can be no assurance the Court will reach the same conclusion.

To the extent that the Court finds that a different classification is required for the Combined Plan and Disclosure Statement to be confirmed, the Debtors would seek to (i) modify the Combined Plan and Disclosure Statement to provide for whatever classification might be required for Confirmation and (ii) use the acceptances received from any holder of Claims pursuant to this solicitation for the purpose of obtaining the approval of the Class or Classes of which such holder ultimately is deemed to be a member.  Any such reclassification of Claims, although subject to the notice and hearing requirements of the Bankruptcy Code, could adversely affect the Class in which such holder was initially a member, or any other Class under the Combined Plan and Disclosure Statement, by changing the composition of such Class and the vote required for approval of the Combined Plan and Disclosure Statement.  There can be no assurance that the Court, after finding that a classification was inappropriate and requiring a reclassification, would approve the Combined Plan and Disclosure Statement based upon such reclassification.  Except to the extent that modification of classification in the Combined Plan and Disclosure Statement requires re-solicitation, the Debtors will, in accordance with the Bankruptcy Code and the Bankruptcy Rules, seek a determination by the Court that acceptance of the Combined Plan and Disclosure Statement by any holder of Claims pursuant to this solicitation will constitute a consent to the Combined Plan and Disclosure Statement's treatment of such holder, regardless of the Class as to which such holder is ultimately deemed to be a member.  The Debtors believe that under the Bankruptcy Rules, they would be required to resolicit votes for or against the Combined Plan and Disclosure Statement only when a modification adversely affects the treatment of the Claim or Interest of any holder.

The Bankruptcy Code also requires that the Combined Plan and Disclosure Statement provide the same treatment for each Claim or Interest of a particular Class unless the holder of a particular Claim or Interest agrees to a less favorable treatment of its Claim or Interest.  The

Debtors believe that the Combined Plan and Disclosure Statement complies with the requirement of equal treatment.  To the extent that the Court finds that the Combined Plan and Disclosure Statement does not satisfy such requirement, the Court could deny confirmation of the Combined Plan and Disclosure Statement.  Issues or disputes relating to classification and/or treatment could result in a delay in the confirmation and consummation of the Combined Plan and Disclosure Statement and could increase the risk that the Combined Plan and Disclosure Statement will not be consummated.

### 7.6     Failure to Consummate the Combined Plan and Disclosure Statement.

Although the Debtors believe that the Effective Date will occur and may occur quickly after the Confirmation Date, there can be no assurance as to such timing, or as to whether the Effective Date will, in fact, occur.

### 7.7     The Releases May Not Be Approved.

There can be no assurance that the releases, as provided in Section 16.2, will be granted. Failure of the Court to grant such relief may result in a plan that differs from the Combined Plan and Disclosure Statement or the Plan not being confirmed.

### 7.8     Reductions to Estimated Creditor Recoveries.

The Allowed amount of Claims in any Class could be greater than projected, which, in turn, could cause the amount of distributions to creditors in such Class to be reduced substantially.  The amount of cash realized from the monetization of the Debtors' remaining assets could be less than anticipated, which could cause the amount of distributions to creditors to be reduced substantially.

### 7.9     Certain U.S. Federal Income Tax Consequences.

The following discussion is a summary of certain material U.S. federal income tax consequences of the Combined Plan and Disclosure Statement to the Debtors and to certain holders (which solely for purposes of this discussion means the beneficial owner for U.S. federal income tax purposes) of Claims.  The following summary does not address the U.S. federal income tax consequences to holders of Claims or Interests not entitled to vote on the Combined Plan and Disclosure Statement. This summary is based on the Internal Revenue Code, Treasury Regulations promulgated and proposed thereunder, judicial decisions, and published administrative rules and pronouncements of the IRS, all as in effect on the date hereof and all of which are subject to change or differing interpretations, possibly with retroactive effect.  No legal opinions have been requested or obtained from counsel with respect to any of the tax aspects of the Combined Plan and Disclosure Statement and no rulings have been or will be requested from the IRS with respect to any of the issues discussed below.  The discussion below is not binding upon the IRS or the courts.  No assurance can be given that the IRS would not assert, or that a court would not sustain, a different position than any position discussed herein.

This discussion does not purport to address all aspects of U.S. federal income taxation that may be relevant to the Debtors or to certain holders of Claims in light of their individual circumstances, nor does the discussion deal with tax issues with respect to holders of Claims or

Interests subject to special treatment under the U.S. federal income tax laws (including, for example, insurance companies; banks or other financial institutions; brokers, dealers, or traders in securities; real estate investment trusts; governmental authorities or agencies; tax-exempt organizations; retirement plans; individual retirement or other tax-deferred accounts; certain expatriates or former long-term residents of the United States; small business investment companies; regulated investment companies; S corporations, partnerships, or other pass-through entities for U.S. federal income tax purposes and their owners; persons whose functional currency is not the U.S. dollar; persons who use a mark-to-market method of accounting; persons required to report income on an applicable financial statement; persons holding Claims or Interests as part of a straddle, hedge, constructive sale, conversion transaction, or other integrated transaction; and persons who are not U.S. Holders (as defined below)).   Furthermore, this discussion assumes that a holder of a Claim holds such claim as a "capital asset" within the meaning of Section 1221 of the Internal Revenue Code (generally property held for investment). This discussion does not address any U.S. federal non-income (including estate or gift), state, local, or foreign taxation, alternative minimum tax, or the Medicare tax on certain net investment income.

If a partnership (or other entity or arrangement classified as a partnership for U.S. federal income tax purposes) is a holder of Claims or Interests, the U.S. federal income tax treatment of a partner in the partnership will generally depend on the status of the partner and the activities of the partnership.  A holder of a Claim or Interest that is a partnership and the partners in such partnership should consult their tax advisors with regard to the U.S. federal income tax consequences of the Combined Plan and Disclosure Statement.

**THE FOLLOWING SUMMARY IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE INDIVIDUAL CIRCUMSTANCES PERTAINING TO A HOLDER OF A CLAIM OR INTEREST.  EACH HOLDER OF A CLAIM OR INTEREST IS URGED TO CONSULT WITH SUCH HOLDER'S TAX ADVISORS CONCERNING THE U.S. FEDERAL, STATE, LOCAL, FOREIGN, AND OTHER TAX CONSEQUENCES OF THE COMBINED PLAN AND DISCLOSURE STATEMENT.**

7.10    Tax Consequences for U.S. Holders of Certain Claims.

Generally, a holder of a Claim should in most, but not all, circumstances recognize gain or loss equal to the difference between the "amount realized" by such holder in exchange for its Claim and such holder's adjusted tax basis in the Claim.  The "amount realized" is equal to the sum of the cash and the fair market value of any other consideration received under a plan of reorganization in respect of a holder's Claim.  The tax basis of a holder in a Claim will generally be equal to the holder's cost therefor. To the extent applicable, the character of any recognized gain or loss (*e.g.*, ordinary income, or short-term or long-term capital gain or loss) will depend upon the status of the holder, the nature of the Claim in the holder's hands, the purpose and circumstances of its acquisition, the holder's holding period of the Claim, and the extent to which the holder previously claimed a deduction for the worthlessness of all or a portion of the Claim.  Generally, if the Claim is a capital asset in the holder's hands, any gain or loss realized

will generally be characterized as capital gain or loss, and will constitute long-term capital gain or loss if the holder has held such Claim for more than one year.

A creditor who receives Cash in satisfaction of its Claims may recognize ordinary income or loss to the extent that any portion of such consideration is characterized as accrued interest. A creditor who did not previously include in income accrued but unpaid interest attributable to its Claim, and who receives a distribution on account of its Claim pursuant to the Plan, will be treated as having received interest income to the extent that any consideration received is characterized for U.S. federal income tax purposes as interest, regardless of whether such creditor realizes an overall gain or loss as a result of surrendering its Claim. A creditor who previously included in its income accrued but unpaid interest attributable to its Claim should recognize an ordinary loss to the extent that such accrued but unpaid interest is not satisfied, regardless of whether such creditor realizes an overall gain or loss as a result of the distribution it may receive under the Plan on account of its Claim.

Under the Plan, the holders of certain Claims, including Unsecured Claims in Class 6, will likely receive only a partial distribution of their Allowed Claims. Whether the applicable holder of such Claims will recognize a loss or any other tax treatment will depend upon facts and circumstances that are specific to the nature of the holder and its Claims. Creditors should consult their own tax advisors.

### 7.11    Tax Consequences in Relation to Litigation Trust.

As of the Effective Date, the Litigation Trust will be established for the benefit of the holders of Allowed Unsecured Claims and Prepetition Lenders Deficiency Claims. The tax consequences of the Plan in relation to the Litigation Trust and the Beneficiaries thereof are subject to uncertainties due to the complexity of the Plan and the lack of interpretative authority regarding certain changes in the tax law.

Allocations of taxable income of the Litigation Trust (other than taxable income allocable to the Litigation Trust's claims reserves) among holders of Unsecured Claims will be determined by reference to the manner in which an amount of cash equal to such taxable income would be distributed (were such cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Litigation Trust had distributed all of its assets (valued at their tax book value) to the holders of the beneficial interests in the Litigation Trust, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Litigation Trust. Similarly, taxable loss of the Litigation Trust will be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining trust assets.

The tax book value of the trust assets for this purpose will equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the Tax Code, applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements. Uncertainties with regard to federal income tax consequences of the Plan may arise due to the inherent nature of estimates of value that will impact tax liability determinations.

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt of an IRS private letter ruling if the Litigation Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Litigation Trustee), the Litigation Trustee may (a) elect to treat any trust assets allocable to, or retained on account of, Disputed Claims (the "Trust Claims Reserve") as a "disputed ownership fund" governed by Treasury Regulation Section 1.468B-9, and (b) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. Accordingly, any Trust Claims Reserve will be subject to tax annually on a separate entity basis on any net income earned with respect to the trust assets in such reserves, and all distributions from such reserves will be treated as received by holders in respect of their Claims as if distributed by the Debtors. All parties (including, without limitation, the Litigation Trustee and the holders of beneficial interests in the Litigation Trust) will be required to report for tax purposes consistently with the foregoing.

The Litigation Trust is intended to qualify as a liquidating trust for federal income tax purposes. In general, a liquidating trust is not a separate taxable entity but rather is treated for federal income tax purposes as a "grantor" trust (i.e., a pass-through entity). The IRS, in Revenue Procedure 94-45, 1994.28 I.R.B. 124, set forth the general criteria for obtaining an IRS ruling as to the grantor trust status of a liquidating trust under a chapter 11 plan. The Litigation Trust has been structured with the intention of complying with such general criteria. Pursuant to the Plan and Litigation Trust Agreement, and in conformity with Revenue Procedure 94-45, *supra*, all parties (including the Litigation Trustee and the holders of beneficial interests in the Litigation Trust) are required to treat for federal income tax purposes, the Litigation Trust as a grantor trust of which the holders of Allowed Unsecured Claims and Prepetition Lenders Deficiency Claims are the owners and grantors. While the following discussion assumes that the Litigation Trust would be so treated for federal income tax purposes, no ruling has been requested from the IRS concerning the tax status of the Litigation Trust as a grantor trust. Accordingly, there can be no assurance that the IRS would not take a contrary position to the classification of the Litigation Trust as a grantor trust. If the IRS were to challenge successfully such classification, the federal income tax consequences to the Litigation Trust and the Beneficiaries thereof could materially vary from those discussed herein.

In general, each creditor who is a Beneficiary of the Litigation Trust will recognize gain or loss in an amount equal to the difference between (i) the "amount realized" by such Beneficiary in satisfaction of its Allowed Unsecured Claim or Prepetition Lenders Deficiency Claim, as applicable, and (ii) such Beneficiary's adjusted tax basis in such Claim. The "amount realized" by a Beneficiary will equal the sum of cash and the aggregate fair market value of the property received by such party pursuant to the Plan (such as a Beneficiary's undivided beneficial interest in the assets transferred to the Litigation Trust). Where gain or loss is recognized by a Beneficiary in respect of its Allowed Unsecured Claim or Prepetition Lenders Deficiency Claim, as applicable, the character of such gain or loss (*i.e.*, long-term or short-term capital, or ordinary income) will be determined by a number of factors including the tax status of the party, whether the Claim constituted a capital asset in the hands of the party and how long it had been held, whether the Claim was originally issued at a discount or acquired at a market discount and whether and to what extent the party had previously claimed a bad debt deduction in respect of the Claim.

After the Effective Date, any amount that a creditor receives as a distribution from the Litigation Trust in respect of its beneficial interest in the Litigation Trust should not be included, for federal income tax purposes, in the party's amount realized in respect of its Allowed Unsecured Claim or Prepetition Lenders Deficiency Claim, as applicable, but should be separately treated as a distribution received in respect of such party's beneficial interest in the Litigation Trust.

In general, a Beneficiary's aggregate tax basis in its undivided beneficial interest in the assets transferred to the Litigation Trust will equal the fair market value of such undivided beneficial interest as of the Effective Date and the Beneficiary's holding period in such assets will begin the day following the Effective Date.  Distributions to any Beneficiary will be allocated first to the original principal portion of the Beneficiary's Allowed Unsecured Claim or Prepetition Lenders Deficiency Claim, as applicable, as determined for federal tax purposes, and then, to the extent the consideration exceeds such amount, to the remainder of such Claim.  However, there is no assurance that the IRS will respect such allocation for federal income tax purposes.

For all federal income tax purposes, all parties (including the Litigation Trustee and the holders of beneficial interests in the Litigation Trust) will treat the transfer of assets to the Litigation Trust, in accordance with the terms of the Plan and Litigation Trust Agreement, as a transfer of those assets directly to the holders of the applicable Allowed Unsecured Claims or Prepetition Lenders Deficiency Claims followed by the transfer of such assets by such holders to the Litigation Trust.  Consistent therewith, all parties will treat the Litigation Trust as a grantor trust of which such holders are to be owners and grantors.  Thus, such holders (and any subsequent holders of interests in the Litigation Trust) will be treated as the direct owners of an undivided beneficial interest in the assets of the Litigation Trust for all federal income tax purposes.  Accordingly, each holder of a beneficial interest in the Litigation Trust will be required to report on its federal income tax return(s) the holder's allocable share of all income, gain, loss, deduction or credit recognized or incurred by the Litigation Trust.

The Litigation Trust's taxable income will be allocated to the Beneficiaries in accordance with each such Beneficiary's Pro Rata share.  The character of items of income, deduction and credit to any holder and the ability of such holder to benefit from any deductions or losses may depend on the particular situation of such holder.

The federal income tax reporting obligation of a holder of a beneficial interest in the Litigation Trust is not dependent upon the Litigation Trust distributing any cash or other proceeds.  Therefore, a holder of a beneficial interest in the Litigation Trust may incur a federal income tax liability regardless of the fact that the Litigation Trust has not made, or will not make, any concurrent or subsequent distributions to the holder.  If a holder incurs a federal tax liability but does not receive distributions commensurate with the taxable income allocated to it in respect of its beneficial interests in the Litigation Trust it holds, the holder may be allowed a subsequent or offsetting loss.

The Litigation Trustee will file with the IRS returns for the Litigation Trust as a grantor trust pursuant to Treasury Regulations section 1.671-4(a).  The Litigation Trust will also send to each holder of a beneficial interest in the Litigation Trust a separate statement setting forth the

holder's share of items of income, gain, loss, deduction or credit and will instruct the holder to report such items on its federal income tax return.

Events subsequent to the date of this Disclosure Statement, such as the enactment of additional tax legislation, could also change the federal income tax consequences of the Plan and the transactions contemplated thereunder.

### 7.12   Information Reporting and Withholding.

In connection with the Combined Plan and Disclosure Statement, the Debtors and, on and after the Effective Date, the Litigation Trustee will comply with all applicable withholding and information reporting requirements imposed by U.S. federal, state, local, and foreign taxing authorities, and all Distributions under the Combined Plan and Disclosure Statement will be subject to those withholding and information reporting requirements.  Holders of Claims may be required to provide certain tax information as a condition to receiving Distributions pursuant to the Combined Plan and Disclosure Statement.

In general, information reporting requirements may apply to Distributions pursuant to the Combined Plan and Disclosure Statement.  Additionally, under the backup withholding rules, a holder may be subject to backup withholding with respect to Distributions made pursuant to the Combined Plan and Disclosure Statement, unless a U.S. Holder provides the applicable withholding agent with a taxpayer identification number, certified under penalties of perjury, as well as certain other information, or otherwise establish an exemption from backup withholding.  Backup withholding is not an additional tax.  Any amounts withheld under the backup withholding rules will be allowed as a credit against a U.S. Holder's U.S. federal income tax liability, if any, and may entitle a U.S. Holder to a refund, provided the required information is timely furnished to the IRS.

In addition, from an information reporting perspective, Treasury Regulations generally require disclosure by a taxpayer on its U.S. federal income tax return of certain types of transactions in which the taxpayer participated, including, among other types of transactions, certain transactions that result in the taxpayer's claiming a loss in excess of specified thresholds.  Holders of Claims or Interests are urged to consult their tax advisors regarding these regulations and whether the transactions contemplated by the Combined Plan and Disclosure Statement would be subject to these regulations and require disclosure on the holder's tax returns.

**THE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE COMBINED PLAN AND DISCLOSURE STATEMENT ARE COMPLEX.  THE FOREGOING SUMMARY DOES NOT DISCUSS ALL ASPECTS OF U.S. FEDERAL INCOME TAXATION THAT MAY BE RELEVANT TO A PARTICULAR HOLDER OF A CLAIM OR INTEREST IN LIGHT OF SUCH HOLDER'S CIRCUMSTANCES. EACH HOLDER OF A CLAIM OR INTEREST IS URGED TO CONSULT WITH SUCH HOLDER'S TAX ADVISORS CONCERNING THE U.S. FEDERAL, STATE, LOCAL, FOREIGN, AND OTHER TAX CONSEQUENCES OF THE COMBINED PLAN AND DISCLOSURE STATEMENT**.

### 7.13   Releases, Exculpations, and Injunctions.

This Combined Plan and Disclosure Statement contains certain releases, exculpations, and injunction language.  In particular, generally the Released Parties have played an important role in furthering and facilitating the Debtors' efforts in the Chapter 11 Cases and as part of the Plan process, including the Prepetition Lenders providing for certain funds to fund the Plan and the Litigation Trust for the benefit of other creditors.  The Debtors are not presently aware of any potentially viable claims or Causes of Action held by the Debtors or their Estates against the Released Parties that would provide a material net benefit to creditor recoveries. The Debtors expect to present evidence to the extent necessary at the Confirmation Hearing to demonstrate the basis for and propriety of the release and exculpation provisions.

Parties are urged to read these provisions carefully to understand how Confirmation and consummation of the Plan will affect any Claim, interest, right, or action with regard to the Debtors and certain third parties.

**THE COMBINED PLAN AND DISCLOSURE STATEMENT SHALL BIND ALL HOLDERS OF CLAIMS AND INTERESTS AGAINST THE DEBTORS TO THE FULLEST EXTENT AUTHORIZED OR PROVIDED UNDER THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE AND ALL OTHER APPLICABLE LAW.**

7.14    Alternatives to the Combined Plan and Disclosure Statement.

If the requisite acceptances are not received or the Combined Plan and Disclosure Statement is not confirmed and consummated, the theoretical alternatives to the Combined Plan and Disclosure Statement would be (a) formulation of an alternative chapter 11 plan, (b) conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, or (c) dismissal of the Chapter 11 Cases.  The Debtors do not believe that any of these alternatives, even if viable, would afford holders of Claims or Interests a greater recovery than what is provided by the Combined Plan and Disclosure Statement.

If the Combined Plan and Disclosure Statement is not confirmed, then the Debtors or any other party in interest could attempt to formulate a different plan.  The additional costs, including, among other amounts, additional professional fees, all of which would constitute Administrative Claims (subject to allowance thereof), however, may be so significant that one or more parties in interest could request that the Chapter 11 Cases be converted to chapter 7.  At this time, the Debtors do not believe that there are viable alternative plans available to the Debtors.

If the Combined Plan and Disclosure Statement is not confirmed, the Chapter 11 Cases may be converted to cases under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be elected or appointed to liquidate and distribute the Debtors' remaining assets in accordance with the priorities established by the Bankruptcy Code.  As discussed above and indicated in the Liquidation Analysis, the Debtors believe that the Combined Plan and Disclosure Statement provides a better outcome for holders of Claims than a chapter 7 liquidation would provide.

If the Combined Plan and Disclosure Statement is not confirmed, the Chapter 11 Cases also could be dismissed.  Among other effects, dismissal would result in the termination of the

automatic stay, thus permitting creditors to assert state-law rights and remedies against the Debtors and their assets, likely to the detriment of other creditors.  While it is impossible to predict precisely what would happen in the event the Chapter 11 Cases are dismissed, it is unlikely that dismissal would result in a ratable distribution of the Debtors' assets among creditors as provided in the Combined Plan and Disclosure Statement.  Thus, the vast majority of creditors, including general unsecured creditors, could expect to receive less in the dismissal scenario than they would receive under the Combined Plan and Disclosure Statement.

## SECTION 8
## UNCLASSIFIED CLAIMS

8.1    Unclassified Claims.

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, DIP Facility Claims, and Priority Tax Claims have not been classified for purposes of voting or receiving Distributions.  Rather, all such Claims are treated separately as unclassified Claims as set forth in this Section, and the holders thereof are not entitled to vote on the Combined Plan and Disclosure Statement.

Pursuant to the Sale Agreement, any Distributable Assets after funding of the Professional Fee Reserve and the Administrative / Priority / Other Distributions Reserve that do not constitute Litigation Trust Assets shall be transferred to the Buyer from and after the Effective Date.

8.2    Administrative Claims.

(a)    Except to the extent that a Holder of an Allowed Administrative Claim agrees to a less favorable treatment, each Holder of an Allowed Administrative Claim, other than a Professional Fee Claim, shall receive from the Administrative / Priority / Other Distributions Reserve, payable by the Litigation Trust, without interest, Cash equal to the Allowed amount of such Claim: (a) on or as soon as practicable after the later of (i) the Effective Date, or (ii) the date upon which the Bankruptcy Court enters a Final Order Allowing such Claim; (b) in accordance with the terms and conditions of agreements between the Holder of such Claim and the Debtors or Litigation Trust, as the case may be; (c) with respect to any Administrative Claims representing obligations incurred in the ordinary course of the Debtors' business, upon such regular and customary payment or performance terms as may exist in the ordinary course of the Debtors' business or as otherwise provided in the Plan; or (d) with respect to statutory fees due pursuant to 28 U.S.C. § 1930(a)(6), as and when due under applicable law.

(i)    Holders of Administrative Claims (including, without limitation, Professionals requesting compensation or reimbursement of such expenses pursuant to Sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code, which filing requirements are set forth below) that do not file such requests by the applicable deadline provided for herein may be subject to objection for untimeliness and may be prohibited by order of the Bankruptcy Court from asserting such claims against the Debtors, the Estates, the Litigation Trust, or their successors or assigns, or their property.

(ii)     All fees due and payable under 28 U.S.C. § 1930 that have not been paid shall be paid on or before the Effective Date.

(b)     Professional Fees.

(i)     Professionals requesting compensation or reimbursement of expenses pursuant to Sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code or required to file fee applications by order of the Bankruptcy Court for services rendered prior to the Effective Date must file and serve pursuant to the notice provisions of the Interim Fee Order, an application for final allowance of compensation and reimbursement of expenses **no later than forty-five (45) days after the Effective Date**. All such applications for final allowance of compensation and reimbursement of expenses of Professionals will be subject to the authorization and approval of the Bankruptcy Court.  Any objection to Professional Fee Claims shall be filed on or before the objection deadline specified in the application for final compensation or order of the Bankruptcy Court.  For the avoidance of doubt, the Litigation Trustee is not authorized under the Plan to object to applications for final allowance of compensation and reimbursement of expenses.

(ii)     Upon approval of the fee applications by the Bankruptcy Court, the Professionals' respective accrued and Allowed fees and reimbursement of expenses arising prior to the Effective Date, plus reasonable fees for services rendered, and actual and necessary costs incurred, in connection with the preparation, filing, service and prosecution of any applications for allowance of Professional Fees pending on the Effective Date or filed and/or served after the Effective Date, shall be paid out of the Professional Fee Reserve to the applicable Professionals.

On or prior to the Effective Date, the Debtors shall appropriately fund the Professional Fee Reserve, which shall not be a Litigation Trust Asset, in an amount equal to the Budgeted Professional Fees.  The Professional Fee Reserve shall be held in trust by Debtors' counsel for the applicable professionals until all allowed fee and expense claims have been paid in full.  The amounts deposited into the Professional Fee Reserve shall be free and clear of all liens, claims and encumbrances of any Persons or Entities except to the extent that any excess amounts remain in the Professional Fee Reserve after payment in full of all Allowed Professional Fee Claims.  For the avoidance of doubt, the Professional Fee Reserve shall not constitute a cap or limitation upon the obligation to pay Professional Fee Claims pursuant to this Plan.

8.3     DIP Facility Claims.

The DIP Facility Claims will be satisfied in full through a credit bid upon the closing of the transactions approved by the Sale Order.  Holders of the DIP Facility Claims will receive no Distributions or further payments under the Plan on account of their DIP Facility Claims.

8.4     Priority Tax Claims.

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release and discharge of each Allowed Priority Tax Claim, the Litigation Trustee shall pay each holder of an Allowed Priority Tax Claim from the Administrative / Priority / Other Distributions Reserve the full unpaid amount of such Allowed Priority Tax Claim on or as soon as practicable after the

Effective Date or, if later, the date such Allowed Priority Tax Claim becomes an Allowed Claim; *provided that*, after becoming an Allowed Claim, such Allowed Priority Tax Claim may be paid at a later date pursuant to applicable non-bankruptcy law.

## SECTION 9
## CLASSIFICATION OF CLAIMS AND INTERESTS

9.1     Summary of Classification.

The provisions of this Section 9 govern Claims against and Interests in the Debtors.  Any Class that is vacant will be treated in accordance with Section 9.3.

The following table designates the Classes of Claims against, and Interests in, the Debtors and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept or reject the Combined Plan and Disclosure Statement in accordance with section 1126 of the Bankruptcy Code, and (iii) deemed to accept or reject the Combined Plan and Disclosure Statement.  A Claim or portion thereof is classified in a particular Class only to the extent that such Claim or portion thereof qualifies within the description of such Class and is classified in a different Class to the extent that the portion of such Claim qualifies within the description of such different Class.

| Class | Designation | Treatment | Entitled to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Unimpaired | No (presumed to accept) |
| 2 | Prepetition Lenders Claims | Impaired | Yes |
| 3 | Secured EDC Claims | Unimpaired | No (presumed to accept) |
| 4 | Other Secured Claims | Unimpaired | No (presumed to accept) |
| 5 | SIM International Claims | Impaired | Yes |
| 6 | Unsecured Claims | Impaired | Yes |
| 7 | Intercompany Claims | Impaired | No (presumed to reject) |
| 8 | Interests | Impaired | No (presumed to reject) |

9.2     Special Provision Governing Unimpaired Claims.

Except as otherwise provided in the Combined Plan and Disclosure Statement, nothing under the Combined Plan and Disclosure Statement shall affect the rights of the Debtors or the Litigation Trustee, as applicable, in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

9.3     Vacant and Abstaining Classes.

Any Class of Claims or Interests that is not occupied as of the commencement of the Confirmation Hearing by an Allowed Claim or Interest or a Claim or Interest temporarily

Allowed under Bankruptcy Rule 3018 shall be deemed eliminated from the Combined Plan and Disclosure Statement for purposes of voting to accept or reject the Combined Plan and Disclosure Statement and for purposes of determining acceptance or rejection of the Combined Plan and Disclosure Statement by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

9.4     Subordinated Claims.

The allowance, classification and treatment of all Allowed Claims, and the respective distributions and treatments under the Plan, shall take into account and conform to the relative priority and rights of the Claims in each Class in connection with any contractual, legal and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 509 or 510 of the Bankruptcy Code or otherwise.  Pursuant to section 510 of the Bankruptcy Code, except where otherwise provided herein, the Debtors and the Litigation Trustee reserve the right to reclassify any Allowed Claim in accordance with any contractual, legal or equitable subordination rights relating thereto.  The Debtors or the Litigation Trustee, as applicable, reserve the right to seek a ruling from the Bankruptcy Court determining whether any Claim should be subordinated pursuant to section 510(b) of the Bankruptcy Code.

## SECTION 10
## TREATMENT OF CLAIMS AND INTERESTS

10.1     Class 1—Priority Non-Tax Claims.

(a)     Classification.  Class 1 consists of all Priority Non-Tax Claims.

(b)     Treatment. The Litigation Trust shall pay from the Administrative / Priority / Other Distributions Reserve, the Allowed amount of each Priority Non-Tax Claim to each Entity holding a Priority Non-Tax Claim as soon as practicable following the later of: (a) the Effective Date and (b) the date such Priority Non-Tax Claim becomes an Allowed Claim (or as otherwise permitted by law). The Litigation Trust shall pay each Entity holding a Priority Non-Tax Claim in Cash in full in respect of such Allowed Claim without interest from the Petition Date; *provided however*, that such Entity may be treated on such less favorable terms as may be agreed to in writing by such Entity.

(c)     Impairment and Voting.  Class 1 is Unimpaired.  Holders of Priority Non-Tax Claims are conclusively presumed to have accepted the Combined Plan and Disclosure Statement pursuant to section 1126(f) of the Bankruptcy Code and, accordingly, are not entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

10.2     Class 2—Prepetition Lenders Claims.

(a)     Classification.  Class 2 consists of Prepetition Lenders Claims.

(b)     Allowance.  On the Effective Date, in accordance with the DIP Orders, the Prepetition Lenders Claims shall be Allowed, without setoff, subordination, defense, or counterclaim, in the aggregate principal amount equal to not less than $162,500,000, and any and

all accrued and unpaid interest, fees, expenses, and indemnification or other obligations of any kind payable under the Prepetition Term Loan Documents.

(c)     Treatment.  Except to the extent that a Holder of a Class 2 Claim agrees to other treatment, in exchange for full and final satisfaction, settlement, and release of each Class 2 Claim, Holders of the Class 2 Claims will receive no Distributions or further payments under the Plan on account of the Prepetition Lenders Secured Claim, and shall receive, on account of the Prepetition Lenders Deficiency Claims, a Pro Rata share of their respective Litigation Trust Interests, which entitle the Beneficiaries thereof to net proceeds of the Litigation Trust Assets in accordance with the LT Distribution Waterfall.

(d)     Impairment and Voting.  Class 2 is Impaired, and the Holders thereof are entitled to vote on the Plan.

10.3     Class 3—Secured EDC Claims.

(a)     Classification.  Class 3 consists of all Secured EDC Claims.

(b)     Treatment.  Except to the extent previously paid in full, the Holders of Class 3 Claims shall receive the treatment provided in the Final DIP Order and any remaining Allowed Unsecured Claims of such Holders shall be placed in Class 6 and treated as set forth therein.

(c)     Impairment and Voting.  Class 3 is Impaired, and the Holders thereof are entitled to vote on the Plan.

10.4     Class 4—Other Secured Claims.

(a)     Classification.  Class 4 consists of all Other Secured Claims.  For purposes of distributions under the Plan, each Holder of an Other Secured Claim in Class 4 is considered to be in its own separate subclass within Class 4 (*i.e.*, Class 4A, Class 4B, etc.), and each such subclass is deemed to be a separate Class for purposes of the Plan.

(b)     Treatment.  Except to the extent previously paid in full, at the option of the Debtors or the Litigation Trust, one of the following treatments shall be provided: (i) the Holder of such Claim shall retain its Lien on its Collateral until such Collateral is sold, and the proceeds of such sale, less costs and expenses of disposing of such Collateral, shall be paid to such Holder in full satisfaction and release of such Allowed Other Secured Claim; (ii) on or as soon as practicable after the later of (a) the Effective Date, or (b) the date upon which the Bankruptcy Court enters a Final Order determining or allowing such Claim, or as otherwise agreed between the Holder of such Claim and the Debtors or Litigation Trustee, the Holder of such Other Secured Claim will receive a Cash payment equal to the amount of its Allowed Other Secured Claim in full satisfaction and release of such Other Secured Claim; or (iii) the Collateral securing the Creditor's Other Secured Claim shall be abandoned to such Creditor, in full satisfaction and release of such Other Secured Claim.

(c)     Impairment and Voting.  Class 4 is Unimpaired.  Holders of Other Secured Claims are conclusively presumed to have accepted the Combined Plan and Disclosure

Statement pursuant to section 1126(f) of the Bankruptcy Code and, accordingly, are not entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

10.5    Class 5— SIM International Claims.

(a)    Classification.  Class 5 consists of the SIM International Claims.

(b)    Treatment. The Holders of the SIM International Claims will receive, subject to the terms of the Plan and the SIM International Settlement, the treatment expressly provided for in the SIM International Settlement.  To the extent of any inconsistency or conflict between the terms of the Plan and the SIM International Settlement, the SIM International Settlement will control.  Pursuant to the SIM International Settlement, the Holders of the SIM International Claims will vote in favor of the Plan.

(c)    Impairment and Voting.  Class 5 is Impaired, and the Holders of Class 5 Claims are entitled to vote on the Plan.  Pursuant to the SIM International Settlement, the Holders of the SIM International Claims will vote in favor of the Plan.[9]

10.6    Class 6—Unsecured Claims.

(a)    Classification.  Class 6 consists of all Unsecured Claims.

(b)    Treatment.  Except to the extent that a Holder of an Allowed Unsecured Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release and discharge of each Allowed Unsecured Claim, the Holders of Class 6 Claims shall receive, in exchange for their Allowed Claims, a Pro Rata share of their respective Litigation Trust Interests, which entitle the Beneficiaries thereof to the net proceeds of the Litigation Trust Assets in accordance with the LT Distribution Waterfall.  For the avoidance of doubt, for the purpose of allocating the Litigation Trust Interests to all Beneficiaries on a Pro Rata basis, Pro Rata means proportionately so that, with respect to a Claim, the ratio of: (a) (i) the amount of property distributed on account of a particular Claim to (ii) the Allowed amount of such Claim, and is the same as the ratio of (b) (i) the amount of property distributed on account of all Allowed Unsecured Claims and Prepetition Lenders Deficiency Claims to (ii) the amount of all Allowed Unsecured Claims and Prepetition Lenders Deficiency Claims, subject in all cases to the LT Distribution Waterfall.

(c)    Impairment and Voting.  Class 6 is Impaired, and the Holders thereof are entitled to vote on the Plan.

10.7    Class 7—Intercompany Claims.

(a)    Classification.  Class 7 consists of all Intercompany Claims.

---

[9] SIM International will not be voting on the Plan in the event that the SIM International Settlement is consummated before the Voting Deadline (SIM International would no longer have any remaining Claim against the Estates to be able to vote on the Plan).

(b)   Treatment.  On the Effective Date, all Intercompany Claims shall be deemed canceled, extinguished, and of no further force or effect.  Holders of Intercompany Claims shall not be entitled to receive or retain any property on account of such Claims.

(c)   Impairment and Voting.  Holders of Intercompany Claims are deemed to have rejected the Plan, and are not entitled to vote.

10.8   Class 8—Interests.

(a)   Classification.  Class 8 consists of all Interests.

(b)   Treatment.  On the Effective Date, all Interests shall be deemed canceled, extinguished, and of no further force or effect.  Holders of Interests shall not be entitled to receive or retain any property on account of such Interests.

(c)   Impairment and Voting.  Holders of Interests are deemed to have rejected the Plan, and are not entitled to vote.

## SECTION 11
## DISTRIBUTIONS TO HOLDERS OF ALLOWED CLAIMS

11.1   Distribution Dates.

The Litigation Trustee shall make Distributions to Holders of Claims.  Subject to the terms of the Plan and the Litigation Trust Agreement, the Litigation Trustee may, in the Litigation Trustee's sole discretion, make a full or partial Pro Rata Distribution (or as otherwise provided in the Plan) to the Holders of Claims on the Initial Distribution Date or Subsequent Distribution Date(s), which dates shall be determined by the Litigation Trustee.

11.2   Subsequent Distributions.

Any Distribution not made on the Initial Distribution Date or a Subsequent Distribution Date because the Claim relating to such Distribution had not been Allowed on that Distribution Date shall be held by the Litigation Trustee for Distribution on any Subsequent Distribution Date after such Claim is Allowed.  No interest shall accrue or be paid on the unpaid amount of any Distribution.

11.3   Distribution Record Date.

Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Distribution Record Date will be treated as the Holders of those Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer may not have expired by the Distribution Record Date.  The Litigation Trustee shall have no obligation to recognize any transfer of any Claim occurring after the Distribution Record Date.  In making any Distribution with respect to any Claim, the Litigation Trustee shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Entity that is listed on the proof of claim filed with respect thereto or on the Schedules as the Holder thereof as of the close of

business on the Distribution Record Date and upon such other evidence or record of transfer or assignment that is known to the Litigation Trustee as of the Distribution Record Date.

11.4    Manner of Cash Payments Under the Plan or Litigation Trust Agreement.

Cash payments made pursuant to the Plan or Litigation Trust Agreement shall be in United States dollars by checks drawn on a domestic bank selected by the Litigation Trustee or by wire transfer from a domestic bank, at the option of the Litigation Trustee. Any and all Distributions and/or written communications pertaining to Distributions shall be made to Creditors or Beneficiaries at each Creditor or Beneficiary's respective address listed in the Claims Register, as reported pursuant Section 12.7, unless the Litigation Trustee receives a written change of address form from a Creditor or Beneficiary consistent with the terms of the Plan or the Litigation Trust Agreement, as applicable.

11.5    Time Bar to Cash Payments by Check.

Distribution checks issued to Creditors or Beneficiaries shall be null and void if not negotiated within **ninety (90) days** after the date of issuance thereof.  The Litigation Trustee shall not reissue any check except upon directly receiving a request in writing from the Creditor or Beneficiary that was originally issued such check within **one-hundred and eighty (180) days** of the disbursement of the Distribution. If the 180-day period elapses without the Creditor requesting the check be reissued, the unresponsive holder's Distribution shall be deemed unclaimed property as provided in the Plan or the Litigation Trust Agreement, as applicable. The foregoing notwithstanding, **ninety (90) days** after the final Distribution under section 1194 of the Bankruptcy Code, the Litigation Trustee shall stop payment on any check remaining unpaid, the corresponding Distribution shall be deemed unclaimed property, and all unclaimed property shall be redistributed to Creditors or Beneficiaries or, as may be necessary, donated to a qualifying charity in accordance with the provisions of the Plan or the Litigation Trust Agreement.

11.6    Tax Identification Numbers.

The Litigation Trustee may require any Creditor or Beneficiary to furnish its taxpayer identification number as assigned by the Internal Revenue Service by submitting a Form W-8, Form W-9, or other form completed in writing to the Litigation Trustee, and may condition any Distribution to any Creditor or Beneficiary upon receipt of such completed form. If a Creditor or Beneficiary does not timely provide the Litigation Trustee with its taxpayer identification number in the manner and by the deadline established by the Litigation Trustee—to be not less than **forty-five (45) days** from the service of the request to the Creditor or Beneficiary for its tax identification information—then the Litigation Trustee may set aside the holder's Distribution for a period of **one-hundred-and-eighty (180) days** following service of the request. If the Creditor or Beneficiary of the Distribution set aside provides the information in the manner requested in the 180-day period, the Litigation Trustee shall disburse the set aside Distribution, without interest, to the Creditor or Beneficiary.  However, if the Creditor or Beneficiary fails to provide the requested information within the 180-day period, then the unresponsive Creditor's Distribution or Beneficiary's Distribution shall be irreversibly deemed "unclaimed property" and

redistributed to the other Creditors or Beneficiaries in accordance with the provisions of the Plan or the Litigation Trust Agreement, as applicable.

## SECTION 12
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND REDISTRIBUTIONS

12.1    No Distributions Pending Allowance.

Notwithstanding any other provision of the Plan, the Litigation Trustee shall not distribute any Cash or other property on account of any Disputed Claim unless and until such Claim becomes Allowed. Nothing contained herein, however, shall be construed to prohibit or require payment or Distribution on account of any undisputed portion of a Claim.

12.2    Resolution of Disputed Claims.

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, subject to the Plan and the Litigation Trust Agreement, the Litigation Trustee shall have the right to make, file, prosecute, settle, withdraw, or resolve objections to Claims.  The costs of pursuing the objections to Claims shall be borne by the Litigation Trust.  From and after the Confirmation Date, all objections with respect to Disputed Claims shall be litigated to a Final Order except to the extent, the Litigation Trustee elects to withdraw any such objection or the Litigation Trustee and the Claimant elect to compromise, settle, or otherwise resolve any such objection, in which event they may settle, compromise, or otherwise resolve any Disputed Claim or Disputed Interest without approval of the Bankruptcy Court.

12.3    Authority to Object to, Settle, and Resolve Claims.

The Litigation Trustee shall have sole authority to object to and compromise, settle, or otherwise resolve any Unsecured Claims, and may object to and compromise, settle, or otherwise resolve any Claims that are not Unsecured Claims.

12.4    Objection Deadline.

All objections to Claims shall be filed and served upon the Claimant not later than the Claims Objection Deadline, as such may be extended by order of the Bankruptcy Court.

12.5    Estimation of Claims.

At any time, (a) prior to the Effective Date, the Debtors, and (b) after the Effective Date, the Litigation Trustee may request that the Bankruptcy Court estimate any contingent or unliquidated Claim to the extent permitted by Section 502(c) of the Bankruptcy Code regardless of whether the Debtors or the Litigation Trust has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall have jurisdiction to estimate any Claim at any time during Litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection.  If the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on the Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation

on the Claim, the Debtors or the Litigation Trust, as applicable, may elect to pursue supplemental proceedings to object to the ultimate allowance of the Claim. All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism of the Bankruptcy Court.

12.6    Disallowance of Claims.

Except as otherwise agreed or ordered by the Bankruptcy Court, any and all proofs of claim filed after the Bar Date shall be treated as a Disputed Claim for purposes of Distribution without any further notice or action, and Holders of such Claims may not receive any Distributions on account of such Claims, unless on or before the Confirmation Date the Bankruptcy Court has entered an order deeming such Claim to be timely filed; *provided however*, that such Claims' status as disputed shall not prohibit payment of such Claims after complete payment and satisfaction of all timely Allowed Unsecured Claims and payment of Litigation Trust expenses.

On the Confirmation Date, any Claim that is scheduled by the Debtors in the Schedules as disputed or listed at zero and as to which no Proof of Claim has been timely filed (or deemed timely filed by Final Order entered by the Bankruptcy Court) shall be deemed a Disallowed Claim.

Any Claims held by Entities from which property is recoverable under Sections 542, 543, 550, or 553 of the Bankruptcy Code or Entities that are transferees of transfers avoidable under Section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, provided that such Cause of Action is retained by the Litigation Trust, shall be deemed disallowed pursuant to Section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any Distributions on account of such Claims until such time as such Causes of Action the Debtors hold or may hold against any Entity have been resolved or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Estates by that Entity have been turned over or paid to the Debtors or Litigation Trust.

12.7    Claims Register.

At the Effective Date or as soon after as practicable, the Debtors' Claims Agent shall file a complete copy of the Claims Register into the docket of the Chapter 11 Cases. After the Effective Date, the Litigation Trustee shall be responsible for maintaining a register of Beneficiaries' interests in the Litigation Trust which shall be commensurate with the Holders' Allowed Unsecured Claims as reported in the Claims Register. The Litigation Trustee shall be entitled to initially rely on the Claims Register as reported in the Claims Agent's filing on the Effective Date for all purposes as an accurate ledger of the status, amount, and class of all Unsecured Claims. The Litigation Trustee may engage a claims agent (including the Debtors' Claims Agent) to continue to maintain and update the Claims Register throughout the administration of the Litigation Trust, and such claims register may serve as the Litigation Trustee's register of beneficial interests held by Beneficiaries.

Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register at the direction of the Debtors or the Litigation Trustee, as applicable, without an objection filed and without further notice to or action, order, or approval of the Bankruptcy Court.

12.8 Reserve Provisions for Disputed Claims.

Before making any Distribution to Class 6 (Unsecured Claims), the Litigation Trustee shall reserve Cash required for distribution on Disputed Claims as if such Claims were Allowed as filed with any Disputed Claims that are unliquidated or contingent being reserved in an amount reasonably determined by the Litigation Trustee (each such reserve necessary to be established, a "Disputed Claim Reserve"). On each Distribution date after the Effective Date in which the Litigation Trustee makes Distributions to Holders of Allowed Claims in Class 6, the Litigation Trustee shall retain on account of Disputed Claims an amount the Litigation Trustee estimates is necessary to fund the Pro Rata Share of such Distributions to Holders of Disputed Claims if such Claims were Allowed, with any Disputed Claims that are unliquidated or contingent being reserved in an amount reasonably determined by the Litigation Trustee.

The Litigation Trustee shall hold property in the Disputed Claim Reserve in trust for the benefit of the Holders of Disputed Claims that are ultimately determined to be Allowed. Each Disputed Claim Reserve shall be closed and extinguished by the Litigation Trustee when all Distributions and other dispositions of Cash or other property required to be made hereunder will have been made in accordance with the terms of the Plan. Upon closure of a Disputed Claim Reserve, all Cash or other property held in that Disputed Claim Reserve shall revest in and become unrestricted property of the Litigation Trust.

Except as expressly set forth in the Plan, neither the Debtors nor the Litigation Trustee shall have any duty to fund any Disputed Claim Reserve except from the Litigation Trust Assets.

12.9 *De minimis* Distributions, Rounding.

Notwithstanding anything herein to the contrary, the Litigation Trustee shall not be required to make: (i) partial Distributions or payments of fractions of dollars or (ii) a Distribution if the amount to be distributed is or has an economic value of less than fifty dollars ($50.00). Any funds so withheld and not distributed shall be held in reserve and distributed in subsequent Distributions.

12.10 Unclaimed and Undeliverable Distributions.

If any Distribution to a Creditor or Beneficiary is returned to the Litigation Trustee as undeliverable or is unclaimed, no further Distributions to such Creditor or Beneficiary shall be made unless and until the Creditor or Beneficiary claims the missed Distribution by timely notifying the Litigation Trustee in writing of its current address along with any other information necessary to make the Distribution to the Creditor or Beneficiary in accordance with this Plan, the Litigation Trust Agreement, and applicable law. If the Creditor or Beneficiary provides the Litigation Trustee with its current address and such other information necessary to make the Distribution within **one-hundred and eighty (180) days** of the original disbursement, the missed Distribution shall be made to the Creditor or Beneficiary as soon as is practicable,

without interest. However, if any Distribution that is undeliverable or otherwise unclaimed is not claimed within **one-hundred-and-eighty (180) days** of the original disbursement, such Distribution shall be deemed "unclaimed property" under Bankruptcy Code section 347(b) and forfeited, and the forfeiter shall consequentially lose his status as a Creditor or Beneficiary of the Litigation Trust. After the 180-day period to claim property has elapsed, the unclaimed property or interests in property shall revert to the Litigation Trust for redistribution to Creditors or Beneficiaries or other disposition in accordance with the terms of the Plan and the Litigation Trust Agreement; the Claim to such unclaimed property or interest in property shall be forever barred, expunged, and deemed Disallowed; and the holder of said claim deemed Disallowed shall be enjoined from receiving any Distributions under this Agreement and from asserting such Disallowed Claim against the Litigation Trustee.

The Litigation Trustee may, in the Litigation Trustee's sole discretion, attempt to determine a Creditor's or Beneficiary's current address or otherwise locate a Creditor or Beneficiary, but nothing in this Plan or the Litigation Trust Agreement shall require the Litigation Trustee to do so.

For the avoidance of doubt, any unclaimed Distributions made by the Litigation Trust, which constitute unclaimed property as set forth above, shall be retained by or transferred to, as applicable, and become unrestricted property of, the Litigation Trust and distributed in accordance with the Plan and the Litigation Trust Agreement.

12.11   Books and Records and Vesting of Privileges.

The Debtors shall transfer their books and records (subject to the Sale Order), including, without limitation, those books and records relating to the Litigation Trust Assets, subject to appropriate restrictions on privileged matters, regardless of original form, manner or media, to the Litigation Trustee on the Effective Date, in a form accessible and viewable by the Litigation Trustee.  The Debtors shall provide any and all digital account information, including passwords, necessary for the Litigation Trustee to access the Debtors' books and records.

Upon and after such transfer, the Litigation Trustee acting on behalf of the Debtors may destroy and/or otherwise discard, delete, and dispose of any remaining records and/or copies of the books and records, including those maintained in electronic format, unless the Litigation Trustee has determined  to retain such records upon or as soon as reasonably practicable after the Effective Date. The Litigation Trustee shall preserve all such books and records until the earlier of (i) such time as the Litigation Trustee determines that such records are no longer required to be preserved or (ii) the termination of the Litigation Trust; *provided that* in the case of the preceding clause (i), the Litigation Trustee shall file a notice of his, her or its intention to destroy and discard the relevant records and serve said notice on the U.S. Trustee and any other parties requesting notice of filings in the Chapter 11 Cases under Bankruptcy Rule 2002; in the event that any party objects within 14 days of service, the objection shall be heard on an expedited basis and adjudicated by the Bankruptcy Court; in the event no objection is timely filed, the Litigation Trustee may proceed with the document disposal.  The collection and preservation of such records by the Litigation Trustee shall be at the expense of the Litigation Trust.

For the avoidance of doubt, as provided in Section 14.6, on the Effective Date, the

attorney-client privilege, the attorney work product doctrine and any similar privilege against disclosure, and all other similar immunities (all together, "Privileges") belonging to the Debtors or the Estates that concern or in any way relate to any of the Litigation Trust Assets, or that would apply to communications, documents, or records recorded in magnetic, optical, or other form of electronic medium concerning or in any way relating to any Litigation Trust Assets, shall vest in the Litigation Trust. The Litigation Trustee shall have the sole right to waive Privileges that concern or in any way relate to any of the Litigation Trust Assets or that would apply to communications, documents, or electronic records concerning or in any way relating to any Litigation Trust Assets.

## SECTION 13
## TREATMENT OF EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES

13.1    Rejection.

Except with respect to: (i) executory contracts or unexpired leases that were previously assumed, assumed and assigned, or rejected by order of the Bankruptcy Court, and (ii) executory contracts or unexpired leases that are the subject of a pending motion to assume or reject, pursuant to Section 365 of the Bankruptcy Code, on the Effective Date, each executory contract and unexpired lease entered into by the Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall be deemed rejected pursuant to Section 365 of the Bankruptcy Code; *provided however,* that nothing in this Section shall cause the rejection, breach, or termination of any contract of insurance benefiting the Debtors and the Estates, the Debtors' officers, managers and directors, and/or the Litigation Trust. Nothing in this Section shall be construed as an acknowledgement that a particular contract or agreement is executory or is properly characterized as a lease.  The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejections pursuant to Section 365 of the Bankruptcy Code, as of the Effective Date.

13.2    Rejection Claims.

All proofs of claim with respect to Claims arising from the rejection of executory contracts or unexpired leases pursuant to Confirmation of the Plan, if any, must be filed with the Claims Agent within thirty (30) days after the earlier of the Effective Date or an order of the Bankruptcy Court approving such rejection.  Any Claim arising from the rejection of an executory contract or unexpired lease pursuant to Confirmation of the Plan that is not filed within such times will be subject to objection.  All such Claims for which Proofs of Claim are timely and properly filed and ultimately Allowed will be treated as Unsecured Claims.

13.3    Insurance Policies.

Notwithstanding anything to the contrary contained herein, Confirmation of the Plan shall not discharge, impair or otherwise modify any obligations of the non-Debtor parties to the

Insurance Policies, owed to the Debtors or any other parties including any additional insureds.[10] For the avoidance of doubt, the Debtors reserve all of their rights, claims, offsets, setoffs, defenses, counterclaims and all other interests relating to any and all Insurance Policies.

To the extent one or more of the Insurance Policies provide potential coverage related to one or more Causes of Action the Debtors hold or may hold against any Entity, the Debtors shall, to the extent permissible under each Insurance Policy, assign all rights thereunder with respect to such Causes of Action to the Litigation Trustee. All net proceeds (including, for the avoidance of doubt, net of any deductibles or retentions) of Insurance Policies received by the Litigation Trustee shall be treated as proceeds of such Causes of Action for all purposes under the Plan.

Nothing herein shall diminish or impair the enforceability by the Debtors, the post-Effective Date Debtors or the Litigation Trust of the Insurance Policies and related agreements that may cover Claims and Causes of Action against the Debtors or any other Entity.

## SECTION 14
## MEANS FOR IMPLEMENTATION OF THE PLAN

14.1    Global Settlement of Claims.

Pursuant to section 1123 of the Bankruptcy Code, and in consideration for the classification, distributions, releases and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan will constitute a good-faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan, and in particular, a compromise and settlement among the Debtors, the Prepetition Agent, the Prepetition Lenders, and the Committee. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, within the range of reasonableness and in the best interests of the Debtors, their Estates, and Holders of Claims and Interests.

14.2    Establishment and Administration of Litigation Trust Account.

On or as soon as reasonably practicable after the Effective Date, the Litigation Trustee shall (i) open, or cause to be opened, one or more accounts to hold any Available Cash, the Administrative/Priority/Other Distributions Reserve and/or other Litigation Trust Assets and/or designate and use existing accounts of the Debtors for such purposes; and (ii) fund said accounts or reserves with Available Cash, in accordance with the Plan, all of which accounts and reserves shall constitute Litigation Trust Assets. The Professional Fee Reserve shall continue to be maintained and administered by Debtors' counsel. Notwithstanding any of the foregoing, the Litigation Trustee, in its discretion, may step in and use any of Debtors' current accounts for purposes of the Plan. The Litigation Trust Assets shall be used by the Litigation Trust to fund

---

[10] For the avoidance of doubt, nothing in the Plan shall be construed as an acknowledgement that a particular Insurance Policy is an executory contract under Section 365 of the Bankruptcy Code.

distributions to Creditors and other payments to be made pursuant to or otherwise consistent with the Plan.

### 14.3    Dissolution of Debtors; Corporate Action by Debtors.

On the Effective Date, all of the Debtors' directors, officers and/or managers shall be deemed to have resigned.  On the Effective Date, the matters under the Plan involving or requiring any corporate actions of the Debtors, including but not limited to actions requiring a vote or other approval of the board of directors, managers, members, or other equity holders of the Debtors or the execution of any documentation incident to or in furtherance of the Plan, shall be deemed to have been authorized by the Confirmation Order and to have occurred and be in effect from and after the Effective Date without any further action by the Bankruptcy Court or the managers, members, directors, or officers of the Debtors.

On the Effective Date, each of the Debtors' existing directors, officers, and managers shall be terminated automatically without the need for any corporate action and without the need for any corporate, limited liability company, or other filings. On the Effective Date, the Litigation  Trustee shall succeed to all such powers as would have been applicable to the Debtors' directors, officers and managers with respect to all Litigation Trust Assets.  As of the Effective Date, the Litigation Trustee will be the sole officer, director, member and/or manager (as applicable) of each of the Debtors after the Effective Date.

From and after the Effective Date, subject to the Sale Order, (i) the Debtors, for all purposes, shall be deemed to have withdrawn their business operations from any states in which they were previously conducting or are registered or licensed to conduct business operations, and the Debtors shall not be required to file any document, pay any sum or take any other action, in order to effectuate such withdrawal, and (ii) the Debtors shall not be liable in any manner to any taxing authority for franchise, business, license or similar taxes accruing on or after the Effective Date.

From and after the Effective Date, the Litigation Trustee may immediately or subsequently dissolve all or some of the Debtors, without any further action required on the part of the Debtors or the Debtors' officers, directors, managers, members, equity holders, and/or any other parties; *provided, however*, the Litigation Trustee in his or her discretion shall be authorized to take any and all actions necessary or desirable in relation to dissolution of the Debtors.

### 14.4    Limited Substantive Consolidation.

Under the Plan, there shall be limited substantive consolidation of the Debtors' Estates solely for the purposes of voting on the Plan by the Holders of Claims and making Distributions to Holders of Claims.  Specifically, on the Effective Date, (i) all assets and liabilities of the Debtors will, solely for voting and Distribution purposes, be treated as if they were merged, (ii) each Claim against the Debtors will be deemed a single Claim against and a single obligation of the Debtors, (iii) any Claims filed or to be filed in the Chapter 11 Cases will be deemed single Claims against all of the Debtors, (iv) all guarantees of any Debtor of the payment, performance, or collection of obligations of any other Debtor shall be eliminated and canceled, (v) all

transfers, disbursements and Distributions on account of Claims made by or on behalf of any of the Debtors' Estates hereunder will be deemed to be made by or on behalf of all of the Debtors' Estates, (vi) any obligation of the Debtors as to Claims will be deemed to be one obligation of all of the Debtors; and (vii) for purposes of section 548(a)(1)(B) of the Bankruptcy Code, any payment made by one Debtor shall be treated as if made by the Debtor obligated for such payment.  Holders of Allowed Claims entitled to Distributions under the Plan shall be entitled to their share of assets available for Distribution to such Claim without regard to which Debtor was originally liable for such Claim.   Except as set forth herein, such limited substantive consolidation shall not (other than for purposes related to this Combined Disclosure Statement and Plan) affect the legal and corporate structures of the Debtors.

The Plan shall serve as a motion seeking entry of an order substantively consolidating the Chapter 11 Cases for distribution and voting purposes as provided above.  Unless an objection to substantive consolidation is made in writing by any Creditor or Interest holder affected by the Plan on or before the applicable objection deadline set by the Court, an order substantively consolidating the Chapter 11 Cases for distribution and voting purposes (which order may be the Confirmation Order) may be entered by the Bankruptcy Court.

Notwithstanding the limited substantive consolidation herein, substantive consolidation shall not affect the obligation of each and every one of the Debtors under 28 U.S.C. § 1930(a)(6) until a particular case is closed, converted, or dismissed.

14.5     Appointment of the Litigation Trustee and Litigation Trust Oversight Board.

The identity of the Litigation Trustee, who shall be selected by the Committee, will be disclosed in the Plan Supplement or any amendment thereto. The Litigation Trustee shall be reasonably acceptable to the Debtors, the Required Lenders, and the Required DIP Lenders (as defined in the Final DIP Order). From and after the Effective Date, professionals may be retained by the Litigation Trustee (including, without limitation, at the Litigation Trustee's election, counsel and other professionals of the Debtors or Committee) as set forth in the Litigation Trust Agreement, without further need for documentation or Bankruptcy Court approval.  All fees and expenses incurred by the professionals retained by the Litigation Trustee following the Effective Date shall be paid by the Litigation Trust from the Litigation Trust Assets in accordance with the Litigation Trust Agreement.

The Litigation  Trust Agreement shall provide for the establishment of an oversight board (the "Litigation Trust Oversight Board"). The composition, duties, and powers of the Litigation Trust Oversight Board shall be set forth in the Litigation Trust Agreement; provided that the Required Lenders shall be entitled to appoint at least one (1) designee to the Litigation Trust Oversight Board.

14.6     The Litigation Trust.

On the Effective Date, the Litigation Trust shall be established pursuant to the Litigation Trust Agreement for the purpose of, *inter alia*, (a) administering the Litigation Trust Assets, (b) prosecuting and/or resolving all Disputed Unsecured Claims, (c) investigating and pursuing

any claims and Causes of Action that constitute Litigation Trust Assets, (d) making all Distributions to the Beneficiaries as provided for under the Plan and the Litigation Trust Agreement, and (e) any other purpose set forth in the Litigation Trust Agreement.  The Litigation Trust is intended to qualify as a liquidating trust pursuant to Treas. Reg. § 301.7701-4(d), with no objective to continue or engage in the conduct of the trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Litigation Trust. Accordingly, the Litigation Trustee shall, in an orderly manner, liquidate and convert to Cash the Litigation Trust Assets, and make timely Distributions to the Beneficiaries, and not unduly prolong the duration of the Litigation Trust. Neither the Litigation Trust nor the Litigation Trustee shall be or shall be deemed a successor-in-interest of the Debtors for any purpose other than as specifically set forth herein or in the Litigation Trust Agreement.

On the Effective Date, the Litigation Trust Assets shall vest automatically in the Litigation Trust.  The Plan shall be considered a motion pursuant to Sections 105, 363 and 365 of the Bankruptcy Code for such relief.  The transfer of the Litigation Trust Assets to the Litigation Trust shall be made for the benefit and on behalf of the Beneficiaries. The assets comprising the Litigation Trust Assets will be treated as being transferred by the Debtors to the Beneficiaries pursuant to the Plan in exchange for their Allowed Unsecured Claims or Prepetition Lenders Deficiency Claims, as applicable, and then by the Beneficiaries to the Litigation Trust in exchange for the beneficial interests in the Litigation Trust.  The Beneficiaries shall be treated as the grantors and owners of the Litigation Trust.  Upon the transfer of the Litigation Trust Assets, the Litigation Trust shall succeed to all rights, title and interest of the Debtors in the Litigation Trust Assets, and the Debtors will have no further interest in or with respect to the Litigation Trust Assets.  For the avoidance of doubt, after they vest in the Litigation Trust, the Debtors shall have no interest in or control over the Litigation Trust Assets or any distributions therefrom to Beneficiaries.

Except to the extent definitive guidance from the IRS or a court of competent jurisdiction (including the issuance of applicable Treasury Regulations or the receipt by the Litigation Trustee of a private letter ruling if the Litigation Trustee so requests one) indicates that such valuation is not necessary to maintain the treatment of the Litigation Trust as a liquidating trust for purposes of the Internal Revenue Code and applicable Treasury Regulations, as soon as possible after the Effective Date, the Litigation Trustee shall make a good-faith valuation of the Litigation Trust Assets. The valuation shall be used consistently by all parties (including, without limitation, the Debtors, the Litigation Trust, the Beneficiaries) for all federal income tax purposes.

14.7    Rights and Powers of the Litigation Trustee.

The Litigation Trustee shall be deemed the Estates' representative with respect to the Litigation Trust Assets in accordance with Section 1123 of the Bankruptcy Code and shall have all the rights and powers set forth in the Litigation Trust Agreement, including, without limitation, the powers of a trustee under Sections 704 and 1106 of the Bankruptcy Code and Rule 2004 of the Bankruptcy Rules to act on behalf of the Litigation Trust.  Without limiting the foregoing, the Litigation Trustee will have the rights and powers to, among other things, (1) effect all actions and execute all agreements, instruments and other documents necessary to implement the applicable provisions of the Plan and the Litigation Trust Agreement; (2) liquidate

the Litigation Trust Assets; (3) investigate, prosecute, settle, abandon or compromise any Estate-Retained Causes of Action against any Entity; (4) make all Distributions to Creditors in accordance with the Plan, including the Beneficiaries in accordance with the Plan and the Litigation Trust Agreement; (5) administer the Litigation Trust and pursue Estate-Retained Causes of Action in accordance with the Plan and the Litigation Trust Agreement; (6) object to Disputed Claims and prosecute, settle, compromise, withdraw or resolve such objections; (7) assert or waive any attorney-client privilege on behalf of the Debtors and Estates with regard to the Litigation Trust Assets; (8) employ and compensate professionals and other agents, including, without limitation, Professionals previously employed by the Debtors or the Committee, in accordance with the Litigation Trust Agreement or the Plan, *provided however*, that any such compensation shall be made only out of the Litigation Trust Assets, to the extent not inconsistent with the status of the Litigation Trust as a liquidating trust within the meaning of Treas. Reg. § 301.7701-4(d) for federal income tax purposes; and (9) any other rights and powers set forth in the Litigation Trust Agreement.

Any abatement, interruption, or tolling of the statutes of limitation pertaining to the Litigation Trust Assets in favor of the Debtors or the Estates shall also apply to the benefit of the Litigation Trustee; for the avoidance of doubt, the Litigation Trustee shall be construed to be a "trustee" for purposes of 11 U.S.C. § 108.

14.8    Fees and Expenses of the Litigation Trust.

Litigation Trust Expenses incurred on or after the Effective Date shall be paid in accordance with the Litigation Trust Agreement without further order of the Bankruptcy Court.

14.9    Transfer of Beneficial Interests in the Litigation Trust.

Litigation Trust Interests shall not be transferable except upon death of the interest holder or by operation of law. The Litigation Trust shall not have any obligation to recognize any transfer of Claims or Interests occurring after the Distribution Record Date.

14.10   Litigation.

Except as otherwise provided herein and except as to Causes of Action assigned to third parties prior to the Effective Date, all Litigation is retained, vested in the Litigation Trustee and preserved pursuant to Section 1123(b) of the Bankruptcy Code.  From and after the Effective Date, all Litigation will be prosecuted or settled by the Litigation Trustee in accordance with the terms of the Plan and the Litigation Trust Agreement, as applicable.  To the extent any Litigation is already pending on the Effective Date, the Litigation Trustee, as successor to the Debtors or the Committee (in any derivative capacity or as an intervening party), may in the Litigation Trustee's discretion continue the prosecution of such Litigation and shall be substituted as plaintiff, defendant, or in any other capacity for the Debtors or the Committee pursuant to the Plan and the Confirmation Order on the Effective Date, without need for any further motion practice or notice in any case, action, or matter.

Notwithstanding any other provision herein, the Litigation Trustee will be authorized to pursue, settle or otherwise dispose of only Litigation Trust Assets which shall **not include** any claims or Causes of Action against (i) any director, officer, or employee of any Debtor or Target

Company (or any of their respective subsidiaries) that is a director, officer, or employee of such entity on or following the Petition Date, (ii) any current or former customer, (iii) any supplier, vendor, or contract counterparty of the Buyer's post-closing business, (iv) any employee hired by the Buyer, (v) the Buyer, (vi) any Prepetition Lender and its appointed designees to the board of managers of any Debtor, (vii) any DIP Lender, (viii) Wilmington Trust, National Association, as the DIP Agent and the Prepetition Agent, (ix) any of the Released Parties (as defined in the Final DIP Order), (x) any of the Released Parties (as defined herein), or (xi) the Related Persons of each of the foregoing. Notwithstanding any other provision herein, all Litigation and Causes of Action pursued by the Litigation Trustee and the Litigation Trust shall be subject to the terms of the Committee Resolution in all respects.

Pursuant to the Sale Order and the Sale Agreement, the Buyer agreed not to pursue any preference actions and claims against contractual counterparties whose agreements have been assumed and assigned, go-forward vendors, or other go-forward commercial counterparties of the Buyer, except as agreed in writing by the Debtors, the Required DIP Lenders, the Required Lenders, and the Committee.

### 14.11   Dissolution of the Committee.

On the Effective Date, the Committee shall be dissolved and the members of the Committee shall be released and discharged from any further authority, duties, responsibilities, and obligations related to, or arising from, these Chapter 11 Cases, except with respect to the purpose of prosecuting requests for allowances of compensation and reimbursement of expenses incurred prior to the Effective Date.

### 14.12   Termination After Five Years and Extension.

If on the fifth anniversary of the Effective Date the Litigation Trust has not been previously terminated in accordance with the terms of the Litigation Trust Agreement because all Litigation Trust Expenses have not been paid and/or all Litigation Trust Assets have not been fully distributed, then the Litigation Trustee shall immediately distribute all Litigation Trust Assets in accordance with this Plan; immediately thereafter, the Litigation Trust shall terminate and the Litigation Trustee shall have no further responsibility in connection therewith except as otherwise set forth in the Litigation Trust Agreement.

Notwithstanding the foregoing, within 30 days of the expiration of the five-year period, the Litigation Trustee may file a motion with the Bankruptcy Court requesting an extension of the term of the Litigation Trust. An extension shall only be granted if the Bankruptcy Court determines that: (i) an extension is necessary to facilitate or complete the recovery on Litigation Trust Assets and (ii) further extension would not adversely affect the status of the Litigation Trust as a liquidating trust for federal income tax purposes. For purposes of this Section, a favorable letter ruling from the Internal Revenue Service shall be conclusive proof that further extension would not adversely affect the status of the Litigation Trust as a liquidating trust for federal income tax purposes.

**SECTION 15**
**EFFECT OF CONFIRMATION**

15.1    Binding Effect of the Plan.

The provisions of the confirmed Plan shall bind the Debtors, the Litigation Trust, the Litigation Trustee, any Entity acquiring property under the Plan, any Beneficiary, and any Creditor or Interest Holder, whether or not such Creditor or Interest Holder has filed a Proof of Claim or Interest in the Chapter 11 Cases, whether or not the Claim of such Creditor or the Interest of such Interest Holder is impaired under the Plan, and whether or not such Creditor or Interest Holder has accepted or rejected the Plan.  All Claims and Debts shall be fixed and adjusted pursuant to the Plan.  The Plan shall also bind any taxing authority, recorder of deeds, or similar official for any county, state, or Governmental Unit or parish in which any instrument related to under the Plan or related to any transaction contemplated under the Plan is to be recorded with respect to any taxes of the kind specified in Bankruptcy Code Section 1146(a).

15.2    Vesting of Litigation Trust Assets in the Litigation Trust.

Upon the Effective Date, title to all Litigation Trust Assets shall vest exclusively in the Litigation Trust and shall be retained by the Litigation Trust for the purposes contemplated under the Plan pursuant to the Litigation Trust Agreement.  Without limiting the generality of the foregoing, all Litigation Trust Assets shall vest exclusively in the Litigation Trust upon the Effective Date and shall no longer constitute property of the Estates.

15.3    Property Free and Clear.

Except as otherwise provided in the Plan or the Confirmation Order, all property that shall vest in the Litigation Trust shall be free and clear of all Claims, Interests, Liens, charges, or other encumbrances of Creditors or Interest Holders. Following the Effective Date, the Litigation Trustee may transfer and dispose of any such property free of any restrictions imposed by the Bankruptcy Code or the Bankruptcy Rules and without further approval of the Bankruptcy Court or notice to Creditors, except as may otherwise be required under the Plan or the Confirmation Order.

**SECTION 16**
**EXCULPATIONS, INJUNCTIONS, AND RELEASES**

16.1    Exculpation.

The Debtors' Independent Manager, the directors and officers and directors, each solely in their capacities as suchof the Debtors who served during any portion of the Chapter 11 Cases;cases, the Debtors' professionals and advisors, in their respective capacities as such, who provided services to the Debtors postpetition;retained in these cases, the Committee and, the individual members thereofof the Committee in their capacity as such, and their professionals in their respective capacities as such, and the Litigation Trustee, solelyeach individual who participated in the Committee on behalf of a member, each in its capacity as such, and the Committee's professionals retained in these cases (collectively, the "Exculpated Parties"), will neither have nor incur any liability to any entity for any action in good faith taken or omitted to

be taken between the Petition Date and Effective Date in connection with or related to the Chapter 11 Cases, the sale or other disposition of the Debtors' assets or the formulation, preparation, dissemination, implementation, Confirmation, or Consummation of the Plan, the Disclosure Statement, or any agreement created or entered into in connection with the Plan or the Chapter 11 Cases; *provided however*, that this limitation will not affect or modify the obligations created under the Plan, or the rights of any Holder of an Allowed Claim to enforce its rights under the Plan, and shall not exculpate any action (or inaction) constituting willful misconduct, fraud, or gross negligence (in each case subject to determination of such by final order of a court of competent jurisdiction); *provided however,* that any Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities (if any) under the Plan, and such reasonable reliance shall form a defense to any such claim, Cause of Action, or liability. Without limiting the generality of the foregoing, each Exculpated Party shall be entitled to and granted the protections of Section 1125(e) of the Bankruptcy Code.

16.2   Releases.

(a)   Debtor Related Releases.

1.   Debtor/Estate Release of Released Parties.

**Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, for good and valuable consideration, on and after and subject to the occurrence of the Effective Date, the Debtors and the Estates (collectively, the "Debtor/Estate Releasors") shall release (the "Debtor/Estate Release") each Released Party, and each Released Party is deemed released by the Debtor/Estate Releasors from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Debtor/Estate Releasors, as applicable, whether known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, matured or unmatured, determined or determinable, disputed or undisputed, liquidated or unliquidated, or due or to become due, existing or hereinafter arising, in law, equity, or otherwise, that the Debtor/Estate Releasors would have been legally entitled to assert in its own right, or on behalf of the Holder of any Claim or Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' businesses or assets, the Debtors' liquidation, sale, alternative transaction, transition, and operational efforts, the transition or termination of any contracts and related matters, the Chapter 11 Cases, the purchase, sale, transfer of any security, asset, right, or interest of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan or related agreements, instruments, or other documents, any other act or omission, transaction, agreement, event, or other occurrence taking place on and before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes fraud, willful misconduct, or gross negligence; *provided however*, the foregoing Debtor/Estate Release shall not operate to waive or release any obligations of any party under the Plan or any other document, instrument, or agreement executed to implement the Plan; and further provided that nothing herein shall act as a discharge of the Debtors.**

**Notwithstanding anything to the contrary herein, the foregoing releases shall not apply to any claim or Cause of Action that is a Litigation Trust Asset.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtor/Estate Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtor/Estate Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) in the best interests of the Debtors and all Holders of Claims and Interests; (c) fair, equitable, and reasonable; (d) given and made after due notice and opportunity for hearing; and (e) a bar to any of the Debtor/Estate**

**Releasors asserting any Claim or Cause of Action released pursuant to the Debtor/Estate Release.**

2.      Third Party Release.

**On and after and subject to the occurrence of the Effective Date, except as otherwise provided in the Plan, each Holder of a Claim against the Debtors who (i) votes to accept the Plan~~,~~ and does not affirmatively opt out of the releases provided hereunder; (ii) is deemed to accept the Plan and affirmatively opts in to the releases provided hereunder; and/or (iii) votes to reject and/or are deemed to reject the Plan and affirmatively opts in to the releases provided hereunder (collectively, the "<u>Releasing Parties</u>"), for (1) themselves and their respective successors, assigns, transferees, and (2) such Holders' officers and directors, managers, agents, members, financial and other advisors, attorneys, employees, partners, affiliates, and representatives (in each case in their capacity as such) ("<u>Additional Release Parties</u>"), shall release (the "<u>Third Party Release</u>") each Released Party, and each Released Party is deemed released from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of any of the Debtors or the Estates, as applicable, whether known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, matured or unmatured, determined or determinable, disputed or undisputed, liquidated or unliquidated, or due or to become due, existing or hereinafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' businesses or assets, the Debtors' liquidation, sale, alternative transaction, transition, and operational efforts, the transition or termination of any contracts and related matters, the Chapter 11 Cases, the purchase, sale, transfer of any security, asset, right, or interest of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan or related agreements, instruments, or other documents, any other act or omission, transaction, agreement, event, or other occurrence taking place on and before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes fraud, willful misconduct or gross negligence; *provided however*, the foregoing Third Party Release shall not release any obligations of any party under the Plan or any other document, instrument, or agreement executed to implement the Plan; and *provided further* that, notwithstanding any of the foregoing, strictly as to the scope of the Third Party Release by the Additional Release Parties in favor of the Released Parties, the Third Party Release will apply only to claims and causes of action of an Additional Release Party that (a) are derivative of the claims held by the Releasing Party to whom the Additional Release Party is related, or (b) solely to the extent such Additional Release Party would be obligated to grant a release under applicable non-bankruptcy law if they were so directed by the Releasing Party to whom they are related.**

**Notwithstanding anything to the contrary herein, the foregoing releases shall not apply to any claim or Cause of Action that is a Litigation Trust Asset.**

16.3    Injunction.

**In implementation of the Plan, except as otherwise expressly provided in the Confirmation Order or the Plan, and except in connection with the enforcement of the terms of the Plan or any documents provided for or contemplated in the Plan, all entities who have held, hold or may hold Claims against or Interests in the Debtors, the Litigation Trust, or the Estates that arose prior to the Effective Date are permanently enjoined from: (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against the assets or property of the Debtors, the Estates, the Litigation Trust, or any of the Litigation Trust Assets, with respect to any such Claim or Interest; (b) the enforcement, attachment, collection, or recovery by any manner or means, directly or indirectly, of any judgment, award, decree, or order against the assets or property of the Debtors, the Estates, the Litigation Trust, or any of the Litigation Trust Assets, with respect to any such Claim or Interest; (c) creating, perfecting, or enforcing, directly or indirectly, any Lien or encumbrance of any kind against the assets or property of the Debtors, the Estates, or the Litigation Trust, or any of the Litigation Trust Assets, with respect to any such Claim or Interest; and (d) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim or Interest.  Nothing contained in this Section shall prohibit the Holder of a timely filed Proof of Claim from litigating its right to seek to have such Claim declared an Allowed Claim and paid in accordance with the distribution provisions of the Plan, or enjoin or prohibit the interpretation or enforcement by the Claimant of any of the obligations of the Debtors or the Litigation Trust under the Plan.**

16.4    Post-Confirmation Liability of Litigation Trustee.

The Litigation Trustee, together with its consultants, agents, advisors, attorneys, accountants, financial advisors, other representatives and the professionals engaged by the foregoing, shall not be liable for any and all liabilities, losses, damages, claims, Causes of Action, costs and expenses, including but not limited to attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, to the Holders of Claims or Interests for any action or inaction taken in good faith in connection with the performance or discharge of their duties under the Plan, except such parties will be liable for actions or inactions that are grossly negligent, fraudulent, or which constitute willful misconduct (in each case, liability shall be subject to determination by final order of a court of competent jurisdiction). However, any act or omission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will be conclusively deemed not to constitute gross negligence, fraud, or willful misconduct.

16.5    Preservation of Rights of Action.

(a)    Vesting of Causes of Action.

Except as otherwise provided in the Plan or Confirmation Order, in accordance with Section 1123(b)(3) of the Bankruptcy Code, the Estate-Retained Causes of Action shall vest upon the Effective Date in the Litigation Trust.

Except as otherwise provided in the Confirmation Order, after the Effective Date, the Litigation Trustee shall have the exclusive right to institute, prosecute, abandon, settle, or compromise any Estate-Retained Causes of Action in accordance with the terms of the Plan and the Litigation Trust Agreement, as applicable, and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in the Chapter 11 Cases.

Litigation Trust Assets and recoveries therefrom shall remain the sole property of the Litigation Trust for the benefit of the Beneficiaries of the Litigation Trust, and such Beneficiaries shall have no direct right to or interest in any such Litigation Trust Assets or recovery therefrom.

(b)    Preservation of All Causes of Action Not Expressly Settled or Released.

Unless a Cause of Action against a holder of a Claim or other Entity is expressly waived, relinquished, released, compromised, or settled in the Plan (including, without limitation, pursuant to the Debtor/Estate Release) and/or any Final Order (including the Confirmation Order), the Debtors, the Estates, and the Litigation Trustee, as applicable, expressly reserve such retained Cause of Action for later adjudication by the Litigation Trustee (including, without limitation, Causes of Action not specifically identified or described in the Plan Supplement or elsewhere, or of which the Debtors may be presently unaware, or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time, or facts or circumstances that may change or be different from those the Debtors, now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise) or laches shall apply to such Causes of Action or Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Disclosure Statement, Plan, or Confirmation Order, except where such Causes of Action have been released or otherwise resolved by a Final Order (including the Confirmation Order).  In addition, the Debtors and the Litigation Trustee expressly reserve the right to pursue or adopt claims alleged in any lawsuit in which the Debtors are defendants or interested parties against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

Subject to the immediately preceding paragraph, any Entity to which the Debtors have incurred an obligation (whether on account of services, the purchase or sale of goods, or otherwise), or that has received services from the Debtors or a transfer or money or property of the Debtors, or that has transacted business with the Debtors, or that has leased property from the Debtors, should assume and is hereby advised that any such obligation, transfer, or transaction may be reviewed by the Litigation Trustee subsequent to the Effective Date and may be the subject of an action after the Effective Date, regardless of whether (i) such Entity has filed a proof of claim against the Debtors in the Chapter 11 Cases; (ii) the Debtors or Litigation Trustee have objected to any such Entity's proof of claim; (iii) any such Entity's Claim was included in the Schedules; (iv) the Debtors or Litigation Trustee have objected to any such Entity's scheduled Claim; (v) any such Entity's scheduled Claim has been identified by the Debtors or

Litigation Trustee as disputed, contingent, or unliquidated; or (vi) the Debtors have identified any potential claim or Cause of Action against such Entity herein or in the Disclosure Statement.

### 16.6    No Discharge.

Nothing contained in the Combined Plan and Disclosure Statement shall be deemed to constitute a discharge of the Debtors under Bankruptcy Code section 1141(d)(3).

## SECTION 17
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

### 17.1    Conditions to Confirmation of the Plan.

Confirmation of the Plan is conditioned upon the satisfaction of each of the following conditions precedent, any one or more of which may be waived by the Debtors with the consent of the Committee and the Required Lenders: (i) the Bankruptcy Court shall have approved this Combined Disclosure Statement and Plan in form and substance acceptable to the Debtors, the Required Lenders and the Committee; (ii) the Debtors shall have reasonably determined that there will be sufficient Cash on the Effective Date to pay (or with respect to Disputed Claims to reserve for as required pursuant to the Plan), as applicable, Allowed Administrative Claims, Non-Tax Priority Claims, and Priority Tax Claims; and (iii) the Confirmation Order to be presented to the Bankruptcy Court at the Confirmation Hearing shall be acceptable to the Debtors, the Required Lenders and the Committee.

### 17.2    Conditions to the Effective Date.

The occurrence of the Effective Date is conditioned upon the satisfaction of each of the following conditions precedent: (i) a Confirmation Order in form and substance acceptable to the Debtors, the Required Lenders and the Committee shall have been entered by the Bankruptcy Court and  not subject to any stay of effectiveness; (ii) the Litigation Trust shall have been created pursuant to the terms of the Plan, the Litigation Trustee shall have been appointed by order of the Bankruptcy Court (which may be the Confirmation Order), and the Litigation Trust Agreement shall have been executed by the Litigation Trustee; and (iii) the Administrative/Priority/Other Distributions Reserve and the Professional Fee Reserve shall have been fully funded as described herein.

### 17.3    Waiver of Conditions Precedent.

To the fullest extent permitted by law, the conditions to the Effective Date set forth in Section 17.2 may be waived or modified in whole or in part at any time in writing by the Debtors, with the consent of the Committee and the Required Lenders, without leave from or an order of the Court.

**SECTION 18**
**RETENTION OF JURISDICTION**

From and after the Confirmation Date, the Bankruptcy Court shall retain such jurisdiction as is legally permissible, including, but not limited to, for the following purposes:

(a)     To hear and determine any and all objections to the allowance of a Claim, proceedings to estimate a Claim for any purpose, actions to equitably subordinate a Claim, proceedings seeking approval of any necessary claims reconciliation protocols, or any controversy as to the classification of a Claim in a particular Class under the Plan;

(b)     To administer the Plan, the Litigation Trust, the Litigation Trust Assets and the proceeds thereof;

(c)     To estimate or liquidate any Disputed Claims;

(d)     To hear and determine any and all adversary proceedings, contested matters or applications pending on the Effective Date or otherwise relating to, arising from, or in connection with the Litigation; *provided however*, that the Litigation Trustee shall reserve the right to commence actions in all appropriate jurisdictions;

(e)     To hear and determine any and all motions and/or objections to fix, estimate, allow and/or disallow any Claims arising therefrom;

(f)     To hear and determine any and all applications by Professionals for an award of on account of any Professional Fee Claims;

(g)     To enable the Litigation Trustee, as applicable, to commence and prosecute any Litigation which may be brought after the Effective Date;

(h)     To interpret and/or enforce the provisions of the Plan and the injunction provided for in the Plan and to determine any and all disputes arising under or regarding interpretation of the Plan or any agreement, document, or instrument contemplated by the Plan;

(i)     To enter and implement such orders as may be appropriate in the event Confirmation is for any reason stayed, reversed, revoked, modified, or vacated;

(j)     To modify any provision of the Plan to the extent permitted by the Bankruptcy Code and to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

(k)     To enter such orders as may be necessary or appropriate in furtherance of Confirmation and the successful implementation of the Plan and to determine such other matters as may be provided for in the Confirmation Order or as may be authorized under the provisions of the Bankruptcy Code;

(l)     To enter any orders as required by Rule 23 of the Federal Rules of Civil Procedure, to the extent made applicable to any adversary proceeding pursuant or contested matter pursuant to Bankruptcy Rules 7023 and 9014(c), as applicable; and

(m)     To close the Chapter 11 Cases when the administration of the Chapter 11 Cases has been completed.

## SECTION 19
## MISCELLANEOUS PROVISIONS

19.1     Payment of Statutory Fees / Closing of Chapter 11 Cases.

All fees pursuant to section 1930 of Title 28 of the U.S. Code, together with the statutory rate of interest set forth in section 3717 of Title 31 of the U.S. Code to the extent applicable ("U.S. Trustee Fees") due and payable before the Effective Date shall be paid by the Debtors on the Effective Date.  On or after the Effective Date, all U.S. Trustee Fees shall be paid when due and payable.  The Debtors shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR. After the Effective Date, each of the Debtors (acting through the Litigation Trustee) and the Litigation Trust shall file with the Bankruptcy Court separate UST Form 11-PCR reports and, as applicable, any UST FORM 11-MOR reports due after the Effective Date, when they become due.  Each and every one of the Debtors and the Litigation Trust shall remain obligated to pay U.S. Trustee Fees to the Office of the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.  For the avoidance of doubt, in the Litigation Trustee's discretion, the Litigation Trustee may request the Court at any particular time to close one specific Chapter 11 Case, more than one at a time, or all of the Chapter 11 Cases other than one Debtor's Chapter 11 Case.  The Litigation Trustee may seek to close the Chapter 11 Cases, in his, her or its discretion, on motion to the Bankruptcy Court.

19.2     Revocation of the Combined Plan and Disclosure Statement.

The Debtors, with the consent of the Committee and the Required Lenders, reserve the right to revoke and withdraw the Combined Plan and Disclosure Statement at any time on or before the Confirmation Date.  If the Debtors revoke or withdraw the Combined Plan and Disclosure Statement, or if Confirmation or the Effective Date does not occur, then the Plan shall be deemed null and void and, in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other entity or to prejudice in any manner the rights of the Debtors or any Entity in any further proceedings involving the Debtors.

19.3     Severability of Plan Provisions.

In the event that, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall, with the consent of the Debtors, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall

then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions hereof shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision hereof, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

19.4    Exhibits.

All exhibits attached to the Combined Plan and Disclosure Statement and the Plan Supplement are, by this reference, hereby incorporated herein.  The Debtors reserve the right to make non-substantive changes and corrections to such Exhibits in advance of the Confirmation Hearing.  If any Exhibits are changed or corrected, the replacement Exhibits will be filed with the Bankruptcy Court prior to the commencement of the Confirmation Hearing.

19.5    Notices.

All notices required or permitted to be made in accordance with the Plan shall be in writing and shall be delivered personally or by nationally recognized overnight or next-day courier service, first-class mail, electronic mail, or via facsimile with electronic confirmation of receipt as follows:

Counsel for Debtors:

Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Tel. 302-652-4100, Fax 302-652-4400
Attn:  Richard M. Pachulski / Gregory V. Demo / Mary F. Caloway
Email: rpachulski@pszjlaw.com
        gdemo@pszjlaw.com
        mcaloway@pszjlaw.com

Litigation Trustee:

[To come]

19.6    Reservation of Rights.

Neither the filing of the Combined Plan and Disclosure Statement nor any statement or provision contained in the Combined Plan and Disclosure Statement, nor the taking by any party in interest of any action with respect to the Plan, shall: (a) be or be deemed to be an admission against interest and (b) until the Effective Date, be or be deemed to be a waiver of any rights any party in interest may have (i) against any other party in interest, or (ii) in or to any of the assets of any other party in interest, and, until the Effective Date, all such rights are specifically reserved. In the event that the Plan is not confirmed or fails to become effective, neither the Combined Plan and Disclosure Statement nor any statement contained in the Combined Plan and Disclosure

Statement may be used or relied upon in any manner in any suit, action, proceeding, or controversy within or without the Chapter 11 Cases involving the Debtors, except with respect to Confirmation of the Plan.

### 19.7    Defects, Omissions and Amendments.

The Debtors may, with the approval of the Bankruptcy Court and without notice to all Holders of Claims or Interests, insofar as it does not materially and adversely affect Holders of Claims, correct any defect, omission, or inconsistency in the Plan in such manner and to such extent as may be necessary or desirable to expedite the execution of the Plan.  The Plan may be altered or amended before or after Confirmation as provided in Section 1127 of the Bankruptcy Code if, in the opinion of the Bankruptcy Court, the modification does not materially and adversely affect the interests of Holders of Claims, so long as the Plan, as modified, complies with Sections 1122 and 1123 of the Bankruptcy Code and the Debtors have complied with Section 1125 of the Bankruptcy Code.  The Plan may be altered or amended before or after the Confirmation Date by the Debtors, subject to the consent of the Required Lenders and the Committee, but, prior to substantial Consummation, in a manner which, in the opinion of the Bankruptcy Court, materially and adversely affects Holders of Claims, so long as the Plan, as modified, complies with Bankruptcy Code Sections 1122 and 1123, the Debtors have complied with Bankruptcy Code Section 1125 and, after notice and a hearing, the Bankruptcy Court confirms such Plan, as modified, under Bankruptcy Code Section 1129.

### 19.8    Successors and Assigns.

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and/or assigns of such Entity.

### 19.9    Setoffs and Recoupments.

The Litigation Trust may, but shall not be required to, set off against or recoup from the payments to be made pursuant to the Plan in respect of a Claim, any claim of any nature whatsoever that the Debtors, the Litigation Trust, or the Estates, as applicable, may have against the Holder of such Claim, but neither the failure to do so or the allowance of any Claim hereunder shall constitute a waiver or release of any such claim by the Debtors, the Litigation Trust, or the Estates, against such Holder.

### 19.10   Tax Exemption.

Pursuant to Section 1146 of the Bankruptcy Code, the issuance, transfer, or exchange of any security under the Plan, or the execution, delivery, or recording of an  instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan, including, without limitation, any transfers to or by the Debtors, if on the Effective Date, and the Litigation Trustee, if after the Effective Date, of the Debtors' property in implementation of or as contemplated by the Plan (including, without limitation, any subsequent transfer of property by the Litigation Trust) shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or Governmental Unit in which any instrument hereunder is to be recorded shall, pursuant to the

Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax, or similar tax.

19.11   Securities Exemption.

To the extent the Litigation Trust Interests are deemed or asserted to constitute securities, the Litigation Trust Interests and the issuance and distribution thereof shall be exempt from Section 5 of the Securities Act of 1933, if applicable, and from any state or federal securities laws requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security, and shall otherwise enjoy all exemptions available for distributions of securities under a plan of reorganization in accordance with all applicable law, including without limitation, Section 1145 of the Bankruptcy Code.

19.12   Implementation.

Upon Confirmation, the Debtors shall be authorized to take all steps and execute all documents necessary to effectuate the provisions contained in the Plan.

19.13   Record Date.

To the extent a "Record Date" is required for implementation of the Plan, the record date shall be the voting record date established by the Bankruptcy Court in the order conditionally approving the Disclosure Statement or such other date as the Bankruptcy Court may set.

19.14   Certain Actions.

By reason of entry of the Confirmation Order, prior to, on, or after the Effective Date (as appropriate), all matters provided for under the Plan that would otherwise require approval of directors, members, managers or other Interest Holders of the Debtor under the Plan, including, without limitation, (i) the Distribution of Cash pursuant to the Plan, (ii) the adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements or documents related to the Plan, and (iii) the adoption, execution, and implementation of other matters provided for under the Plan involving the company or organizational structure of the Debtors, shall be deemed to have occurred and shall be in effect prior to, on or after the Effective Date (as appropriate), pursuant to applicable corporation/limited liability company laws, without any requirement of further action by the directors, members, managers or other Interest Holders of the Debtors, irrespective of whether the Confirmation Order specifically authorizes any such action.

Effective upon the Effective Date, the Debtors' formation documents shall be deemed amended to prohibit the issuance by the Debtors of nonvoting securities to the extent required under Section 1123(a)(6) of the Bankruptcy Code.

On or as soon as reasonably practicable following the Effective Date, the Debtors and the Litigation Trust shall be authorized to cancel, annul, and extinguish all Interests.

19.15    Substantial Consummation.

On the Effective Date, the Plan shall be deemed substantially consummated under Bankruptcy Code Sections 1101 and 1127(b).

19.16    Waiver of Fourteen-Day Stay.

The Debtors request as part of the Confirmation Order a waiver from the Bankruptcy Court of the 14-day stay of Bankruptcy Rule 3020(e) and, to the extent applicable, a waiver of the 14-day stay of Bankruptcy Rule 6004(g).

19.17    Governing Law.

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a schedule in the Plan Supplement provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof.

19.18    Entire Agreement.

On the Effective Date, the Plan and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

19.19    Conflicts.

To the extent of any conflict between or among (a) the express terms or provisions of any of the Sale Order, on the one hand, and (b) the terms and provisions of this Plan, on the other hand, the terms and provisions of the Sale Order shall govern.

## SECTION 20
## RECOMMENDATION

The Debtors strongly recommend that all creditors receiving a Ballot vote in favor of the Plan.  The Debtors believe that the Plan is in the best interests of creditors.  The Plan as structured, among other things, allows creditors with Allowed Claims to participate in distributions believed to be in excess of those that would otherwise be available were the Chapter 11 Cases dismissed or converted under Chapter 7 of the Bankruptcy Code and minimizes delays in recoveries to creditors.

**FOR ALL THE REASONS SET FORTH IN THIS DISCLOSURE STATEMENT, THE DEBTORS BELIEVE THAT THE CONFIRMATION AND CONSUMMATION OF THE PLAN IS PREFERABLE TO ALL OTHER ALTERNATIVES.**

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS APPOINTED IN THE CHAPTER 11 CASES SUPPORTS THE PLAN AND URGES ALL VOTERS TO VOTE TO ACCEPT THE PLAN.**

Dated: ~~April 10~~May 1, 2026

Respectfully submitted,

AVENGER FLIGHT GROUP, LLC AND ITS DEBTOR AFFILIATES

*/s/ Marc Sullivan*_____

Marc Sullivan
Chief Financial Officer

## **EXHIBIT A**

## **Corporate Chart**