**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AVENGER FLIGHT GROUP, LLC, *et al.*, | Case No. 26-10183 (MFW) |
| Debtors.[1] | (Jointly Administered ) |

**DECLARATION OF RICHARD T. JOHNSON IN SUPPORT OF MOTION FOR AN ORDER APPROVING THE SALE OF THE MEDELLIN SIMULATORS FREE AND CLEAR OF ALL ENCUMBRANCES**

I, Richard T. Johnson, pursuant to section 1726 of title 28 of the United States Code, hereby declare that the following is true and correct to the best of my knowledge, information, and belief:

1.      I am the Managing Member of Simulator Equipment Financing, LLC ("SEF"), the pre-petition broker to the above-captioned debtors and debtors in possession (the "Debtors") and current broker for Export Development Canada ("EDC") with respect to the sale of the Medellin Simulators.  I submit this declaration (this "Declaration") in support of the *Motion for an Order Approving the Sale of the Medellin Simulators Free and Clear of All Encumbrances* (the "Motion"), filed contemporaneously herewith.[2]

---

[1]      The Debtors in these chapter 11 cases and the last four digits of their respective federal tax identification numbers are:  Avenger Flight Group, LLC (1216); AFG Dallas III, LLC (5615); AFG Dallas IV, LLC (5558); AFG Dallas, LLC (3418); AFG EU Operations Corp. (9406); AFG FLL, LLC (6470); AFG Latam Holding Corp. (6475); AFG Latam Sim Holdings II, LLC (0473); AFG Latam Sim Holdings III, LLC (2592); AFG Latam Sim Holdings IV, LLC (0093); AFG Latam Sim Holdings, LLC (6475); AFG Latam, LLC (9545); AFG Mexico Corp. (1402); AFG Orlando, LLC (8409); AFG Sanford, LLC (6661); AFG Sim Holding Corp. (3325); Avenger Flight Group Europe, Corp. (5908); Avenger Flight Group Topco, LLC (5643); Avenger Flight Training, LLC (5640); Avenger Flight Group Mexico II, S. de R.L. de C.V, (N/A); and Papi Flight Training, LLC (6206). The location of the Debtors' corporate headquarters and the Debtors' service address is Avenger Flight Group LLC, 1450 Lee Wagener Blvd., Fort Lauderdale, FL  33315.

[2]      Capitalized terms used but not defined herein are intended to have the meanings ascribed to them in the Motion.

2.      Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, information learned from my review of the relevant documents, and information I have received from EDC and members of the Debtors' management and the Debtors' advisors.  I am over the age of 18 and, if I were called to testify, I could and would testify competently to the facts set forth herein.

### Professional Qualifications

3.      SEF was originally engaged by the Debtors on or around December 2024 to act as their broker and sales agent in connection with the exploration of potential sales of certain of the Debtors' simulators' assets, including the Medellin Simulators.  In the time prior to the Petition Date, SEF acquired significant knowledge of the Debtors' business, their assets and the Medellin Simulators.  Following the Petition Date, with the consent of the Debtors and in light of the fact that the Medellin Simulators were not included in the all-asset sale to AFG Topco, LP, SEF was retained by EDC to continue marketing the Medellin Simulators.  Following the Petition Date, SEF continued to run an extensive marketing process focused on the sale of the Medellin Simulators.

4.      SEF is recognized for its expertise in the brokerage and financing of aviation training assets and has extensive experience in the financing, purchase, sale, and management of flight simulators since 1998. I have served as both a principal and a broker in such transactions. I am also the managing member of SGA Worldwide, LLC ("SGA"), which provides services to the simulation and training industries for more than thirty-six years, including simulator brokerage, simulator appraisals, simulator modifications (software and hardware), market research and analysis, and specialized consulting. Some of SGA appraisal customers have included Loft, Avenger Flight Group, Pegasus Aviation (Turkey), Centennial College, RVI, Prince Sultan

Aviation Academy, CAE, Marathon Asset Management, City National Bank of Florida, Macquarie Corporate and Asset Finance (NYC), Collateral Verifications, LLC, CCG Leasing LLC, TRU Simulation + Training, GE Capital Aviation Services (GECAS), RVI Group, Wells Fargo Equipment Finance, Pan Am International Flight Academy / ANA Trading, Dougherty Equipment Finance LLC, Barings LLC, Paragon Bank, Baker One Investments, Alaska Airlines, CityJet, Ltd., Element Financial Capital, Omega Air, Inc., GE Capital, Emigrant Business Credit Corp., FlyRight, SimSub2, Alpha Aviation Group, Ltd., Flight Training Finance LLC, Airport Services Auxiliaries (Mexico), The CIT Group, Singapore International Airlines, JetBlue/Thomson Reuters, FlightSafety International, Airbus, American Airlines, Lufthansa Flight Training, The Boeing Co., and Military Aircraft & Missile Systems Group. SGA is internationally known for its valuation of used simulation equipment and has appraised more than 700 full flight simulators with assigned values of more than $5 billion.

5.    I have formed various entities and special purpose vehicles for the purchase, sale, leasing, financing, and management of flight simulation assets. I have over thirty-five years of aircraft simulation and training asset management, financing, and board of director fiduciary experience.  My experience includes advising numerous clients in the aviation training and simulation industry on a variety of projects, including international merger valuation experience.  Additionally, I have experience in commercial bankruptcy proceedings and advised the creditors committee in the chapter 11 proceedings for St. Louis Leasing Corporation in the United States Bankruptcy Court for the Eastern District of Missouri, Eastern Division (Case No. 96-40001-293).

6.    I received a Bachelor of Science degree in Managerial Law from Syracuse University. I attended Rockhurst College for MBA studies in taxation.  I am certified in Cyber Risk

Oversight (Carnegie Mellon University), attended Credit Union Executive Studies at the London School of Business, certified Credit Union Director (Credit Union Executive Society) and am a Director-Certified NACD Governance Fellow.

### Sale and Marketing Efforts

7.      SEF was engaged pursuant to a brokerage agreement with EDC to identify a qualified buyer under a forced-liquidation sale process (AS IS, WHERE IS, with a targeted closing within 30 days) for the two A320 full flight simulators located at MDE (the "Medellin Simulators"). SEF has over 4000 simulation training and banking contacts in our CRM, including roughly 320 airlines and regulated flight training companies worldwide, of which about 90 currently train A320 aircraft. Additionally, we advertised the devices in AFM.AERO Marketplace, located in Dubai, a worldwide flight training information source.

8.      SEF distributes worldwide a list of flight training devices available for sale to airlines and regulated flight training companies. Historically, the list would include ten or less flight simulation devices available for sale. The list circulated on February 3, 2026 included 35 devices, including the two Medellin Simulators located at MDE. Ten of the devices on the list simulated A320 model aircraft. The abundance of A320s available confirmed the existence of a buyer's market for equipment of this type.

9.      Due to the condensed sale timing, in consultation with EDC and the Debtors, SEF implemented a two-stage auction process to maximize the sales price. In the first stage, SEF marketed the Medellin Simulators to potential purchasers and distributed offer packages to interested parties, soliciting indicative bids. In the second stage, SEF conducted a final bidding round for qualified bidders, with the highest bidder from the initial round receiving the right to

"top" the highest bid received in the second round, therefore encouraging higher initial bids in round one.

10.     As a result of SEF's solicitations, 31 offer packages were presented to interested parties, that resulted in five (5) written offers/bids. The offer packages consisted of a description of the sales process, sales type (AS IS WHERE IS), a technical description of the simulators, photographs, and the spares information. A summary report of bidders who received offer packages and bid was presented to EDC and the Debtors after the initial bid response.  Know Your Customer (KYC) information on the successful bidder was then presented to the EDC upon completion of the second round of the bid process.  The highest bidder in the initial round of bidding received the right to "top" the highest bid in the second round, which in fact, resulted in a higher sales price than the second round of bidding.

11.     Based on the foregoing, the facts and circumstances of these Chapter 11 Cases, and the events both before and following the Petition Date, I believe that approval of the sale of the Medellin Simulators, as further detailed in the Motion, is in the best interest of, and provides a benefit to, the Debtors' estates, and that there is a strong business justification for the Debtors' decision to seek such approval.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Dated: May 4, 2026

/s/ Richard T. Johnson
Richard T. Johnson