**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AF LIQUIDATING, LLC, *et al*., | Case No. 26-10183 (MFW) |
| Debtors.[1] | (Jointly Administered) |

**DEBTORS' MEMORANDUM OF LAW IN SUPPORT OF
CONFIRMATION OF COMBINED DISCLOSURE STATEMENT AND FIRST
AMENDED PLAN OF LIQUIDATION OF AVENGER FLIGHT GROUP, LLC
AND ITS AFFILIATED DEBTORS UNDER CHAPTER 11
OF THE BANKRUPTCY CODE**

PACHULSKI STANG ZIEHL & JONES LLP
Richard M. Pachulski, Esq. (admitted *pro hac vice*)
Steven W. Golden, Esq. (DE Bar No. 6807)
Mary F. Caloway, Esq. (DE Bar No. 3059)
919 North Market Street, 17th Floor
Wilmington, DE 19801
Telephone: (302) 652-4100
Facsimile: (302) 652 4400
Email:        rpachulski@pszjlaw.com
                  sgolden@pszjlaw.com
                  mcaloway@pszjlaw.com

Gregory V. Demo, Esq. (admitted *pro hac vice*)
Cia H. Mackle, Esq. (admitted *pro hac vice*)
1700 Broadway, 36th Floor
New York, NY 10019
Telephone:  (212) 561-7700
Facsimile:   (212) 561-7777
Email:        gdemo@pszjlaw.com
                  cmackle@pszjlaw.com

*Counsel to the Debtors and Debtors in Possession*

---

[1]    The Debtors in these Chapter 11 Cases and the last four digits of their respective federal tax identification numbers are: AF Liquidating, LLC (1216); AF Dallas III Liquidating, LLC (5615); AF Dallas IV Liquidating, LLC (5558); AF Dallas Liquidating, LLC (3418); AF EU Operations Liquidating Corp. (9406); AF FLL Liquidating, LLC (6470); AF Latam Holding Liquidating Corp. (6475); AF Latam Sim Holdings II Liquidating, LLC (0473); AF Latam Sim Holdings III Liquidating, LLC (2592); AF Latam Sim Holdings IV Liquidating, LLC (0093); AF Latam Sim Holdings Liquidating, LLC (6475); AF Latam Liquidating, LLC (9545); AF Mexico Liquidating Corp. (1402); AF Orlando Liquidating, LLC (8409); AF Sanford Liquidating, LLC (6661); AF Sim Holding Liquidating Corp. (3325); AF Group Europe Liquidating, Corp. (5908); AF Group Topco Liquidating, LLC (5643); and AF Training Liquidating, LLC (6206). The Debtors' service address is 2800 Valley View Lane, Suite 180, Irving, Texas 75062. Debtor AF Liquidating, LLC was formerly known as Avenger Flight Group, LLC.

**TABLE OF CONTENTS**

**Page**

I. PRELIMINARY STATEMENT ......................................................................................2

II. BACKGROUND .........................................................................................................5

III. SUMMARY OF THE PLAN........................................................................................6

IV. THE PLAN SATISFIES EACH OF THE REQUIREMENTS FOR CONFIRMATION
UNDER THE BANKRUPTCY CODE ........................................................................8

   A.  The Plan Satisfies Section 1129(a)(1) of the Bankruptcy Code .........................................8

      i.  The Plan Meets the Requirements of Section 1122 of the Bankruptcy Code...............9

      ii.  The Plan Meets the Requirements of Section 1123(a) of the Bankruptcy Code ........10

   B.  The Plan Complies With the Discretionary Provisions of Section 1123(b) of the
Bankruptcy Code ........................................................................................................12

      i.  Rule 9019 Settlements ...............................................................................13

      ii.  The Exculpation, Third-Party Release, Plan Injunction and Related Provisions Are
Appropriate and Justified. ..........................................................................16

   C.  The Debtor Has Satisfied Section 1129(a)(2) of the Bankruptcy Code...........................22

      i.  The Debtors Have Complied With the Requirements of Section 1125 of the
Bankruptcy Code, and the Disclosure Statement Should Be Approved on a Final
Basis under Section 1125 ...........................................................................23

      ii.  The Debtors Have Complied With the Requirements of Bankruptcy Rules 3017(d)
and 3018(c) ............................................................................................24

      iii.  The Vote Tabulation Satisfied Section 1126(c) and Bankruptcy Rule 3018(a) .........26

   D.  The Plan Has Been Proposed in Good Faith (Section 1129(a)(3))...................................27

   E.  Payments for Services and Expenses (Section 1129(a)(4)) ............................................28

   F.  Directors and Officers (Section 1129(a)(5)) .................................................................29

   G.  Rate Changes (Section 1129(a)(6))..............................................................................29

   H.  The Plan Satisfies the "Best Interests" Test (Section 1129(a)(7))...................................30

   I.  Acceptance by Impaired Classes (Section 1129(a)(8))...................................................32

J.  Treatment of Priority Claims (Section 1129(a)(9)) ...........................................................32

K.  Acceptance by at Least One Impaired Class (Section 1129(a)(10)) ..................................33

L.  The Plan Is Feasible (Section 1129 (a)(11)) ....................................................................34

M. Payment of Certain Fees (Section 1129(a)(12)) ...............................................................35

N.  Continuation of the Debtors' Obligations to Pay Retiree Benefits (Section 1129 (a)(13)) ..................................................................................................................................35

O.  The Plan Satisfies the "Cramdown" Requirements of Section 1129(b)(1) ........................35

    i.   The Plan Does Not Unfairly Discriminate Against the Deemed Rejecting Classes... 36

    ii.  The Plan Is Fair and Equitable as to the Deemed Rejecting Classes ........................ 37

P.  The Plan's Purpose is Consistent with  the Bankruptcy Code (Section 1129(d)) .............38

**V. WAIVER OF THE STAY OF THE CONFIRMATION ORDER ....................................38**

**VI. CONCLUSION ..................................................................................................................39**

## TABLE OF AUTHORITIES

**Pages**

**Cases**

3017 ............................................................................................................................. 4, 24

*Aetna Cas. & Sur. Co. v. Clerk of the U.S. Bankr. Ct. (In re Chateaugay Corp.)*
    89 F.3d 942 (2d Cir. 1996) ..................................................................................... 9

*Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*
    526 U.S. 434 (1999) ......................................................................................... 30, 37

*Clarkson v. Cooke Sale & Serv. Co. (In re Clarkson)*
    767 F.2d 417 (8th Cir. 1985) ................................................................................ 34

*Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.)*
    10 F.3d 944 (2d Cir. 1993) ..................................................................................... 9

*In re 203 N. LaSalle St. P'ship*
    190 B.R. 567 (Bankr. N.D. Ill. 1995) .................................................................... 36

*In re 222 Liberty Assoc.*
    108 B.R. 971 (Bankr. E.D. Pa. 1990) .................................................................... 36

*In re Abbotts Dairies*,
    788 F.2d 143 (3d Cir. 1986) .................................................................................. 28

*In re Adelphia Commc'n Corp.*
    368 B.R. 140 (Bankr. S.D.N.Y. 2007) ..................................................................... 9

*In re Adelphia Commc'ns Corp.*
    368 B.R. 140 (Bankr. S.D.N.Y. 2007) ................................................................... 30

*In re Aztec Co.*
    107 B.R. 585 (Bankr. M.D. Tenn. 1989) ............................................................... 36

*In re Freymiller Trucking, Inc.*
    190 B.R. 913 (Bankr. W.D. Okla. 1996) ............................................................... 36

*In re Idearc Inc.*
    423 B.R. 138 (Bankr. N.D. Tex. 2009) .................................................................. 37

*In re J T Thorpe Co.*
    308 B.R. 782 (Bankr. S.D. Tex. 2003) .................................................................... 8

*In re Jersey City Med. Ctr.*,
    817 F.2d 1055 (3d Cir. 1987) .................................................................................. 9

*In re Lakeside Glob. II, Ltd.*
    116 B.R. 499 (Bankr. S.D. Tex. 1989) .................................................................. 34

*In re Landing Assocs.*
    157 B.R. 791 (Bankr. W.D. Tex. 1993) ................................................................. 29

*In re Lapworth*
  No. 97-34529, 1998 Bankr. LEXIS 1383 (Bankr. E.D. Pa. Nov. 2, 1998) .............................. 22

*In re Lason, Inc.*
  300 B.R. 227 (Bankr. D. Del. 2003) ................................................................................. 30

*In re Lernout & Hauspie Speech Prods.*,
  301 B.R. 651 (Bankr. D. Del. 2003) ................................................................................. 37

*In re NH Holdings, Inc.*,
  288 B.R. 356 (Bankr. D. Del. 2002) ................................................................................. 28

*In re Orlando Investors, L.P.*
  103 B.R. 593 (Bankr. E.D. Pa. 1989) ............................................................................... 34

*In re Prussia Assocs.*
  322 B.R. 572 (Bankr. E.D. Pa. 2005) ............................................................................... 34

*In re Resorts Int'l, Inc.*, 145 B.R. 412 (Bankr. D.N.J. 1990) ........................................................ 28

*In re Sea Garden Motel & Apartments*,
  195 B.R. 294 (D.N.J. 1996) ............................................................................................. 34

*In re Sound Radio, Inc.*
  93 B.R. 849 (Bankr. D.N.J. 1988) .................................................................................... 28

*In re Texaco Inc.*
  84 B.R. 893 (Bankr. S.D.N.Y. 1988)................................................................................. 22

*In re W.R. Grace & Co.*
  729 F.3d 311 (3d Cir. 2013) ............................................................................................. 11

*In re Washington Mutual Inc.*
  442 B.R. 314 (Bankr. D. Del. 2011) ................................................................................. 11

*Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*
  843 F.2d 636 (2d Cir. 1988) ........................................................................................ 8, 34

*Official Comm. v. Michelson (In re Michelson)*
  141 B.R. 715 (Bankr. E.D. Cal. 1992)............................................................................... 22

*Teamsters Nat'l Freight Indus. Negotiating Comm. v. U.S. Truck Co. (In re U.S. Truck Co.)*,
  800 F.2d 581 (6th Cir. 1986) ............................................................................................. 9

**State Cases**

H.R. Rep. No. 595, 95th Cong. 1st Sess. 412 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5962, 6368
  (1977).............................................................................................................................. 8

S. Rep. No. 989, 95th Cong. 2d Sess. 126 (1978),
  *reprinted in* 1978 U.S.C.C.A.N. 5787, 5913 (1978)......................................................... 8, 22

**Statutes**

11 U.S.C. § 1107(a) ................................................................................................................. 5

11 U.S.C. § 1108...................................................................................................................... 5

11 U.S.C. § 1114................................................................................................................... 35

11 U.S.C. § 1123(a)(1)......................................................................................................... 10

11 U.S.C. § 1123(a)(4)......................................................................................................... 11

11 U.S.C. § 1125(b)............................................................................................................. 23

11 U.S.C. § 1126(d)............................................................................................................. 32

11 U.S.C. § 1126(f)........................................................................................................ 26, 32

11 U.S.C. § 1126(g)............................................................................................................. 26

11 U.S.C. § 1129(a)............................................................................................................. 35

11 U.S.C. § 1129(a)(10)....................................................................................................... 33

11 U.S.C. § 1129(a)(12)....................................................................................................... 35

11 U.S.C. § 1129(a)(13)....................................................................................................... 35

11 U.S.C. § 1129(a)(14)....................................................................................................... 35

11 U.S.C. § 1129(a)(15)....................................................................................................... 35

11 U.S.C. § 1129(a)(16)....................................................................................................... 35

11 U.S.C. § 1129(a)(9).............................................................................................. 10, 32, 33

11 U.S.C. § 1129(a)(9)(A).................................................................................................... 32

11 U.S.C. § 1129(a)(9)(B).................................................................................................... 33

11 U.S.C. § 1129(a)(9)(C).................................................................................................... 33

11 U.S.C. § 1129(b)(1)......................................................................................................... 35

11 U.S.C. § 507(a)............................................................................................................... 10

11 U.S.C. § 507(a)(1)........................................................................................................... 32

11 U.S.C. § 507(a)(3)........................................................................................................... 33

11 U.S.C. § 507(a)(7)........................................................................................................... 33

11 U.S.C. § 507(a)(8)........................................................................................................... 33

28 U.S.C. § 1334................................................................................................................... 8

28 U.S.C. § 1408................................................................................................................... 8

28 U.S.C. § 1409................................................................................................................... 8

28 U.S.C. § 157(b)................................................................................................................ 8

28 U.S.C. § 1930................................................................................................................. 35

**Rules**

(f)23

3017(d)....................................................................................................... 23, 24, 25, 27

3017(d)–............................................................................................................................. 23

3018 ............................................................................................................................ 4, 24

3018(c) ........................................................................................................................ 25, 27

3018(e) ............................................................................................................................. 27

3020 ................................................................................................................................ 38

3020(e) ............................................................................................................................. 38

6004 ................................................................................................................................ 38

6004(h) ............................................................................................................................. 38

6006 ................................................................................................................................ 38

6006(d) ............................................................................................................................. 38

Fed. R. Bankr. P. 2002(b) ............................................................................................... 23

Fed. R. Bankr. P. 3018(a) ............................................................................................... 27

AF Liquidating, LLC ("AFG") and its affiliated debtors and debtors in possession (the "Debtors" or "Avenger"), submit this memorandum of law (the "Memorandum") in support of final approval of the Disclosure Statement and confirmation of the Plan (as defined below).[2]  The Debtors will file a proposed form of order confirming the Plan (the "Proposed Confirmation Order").

This Memorandum, Confirmation of the Plan, and entry of the Proposed Confirmation Order are supported by, *inter alia*:

1)      the *Combined Disclosure Statement and First Amended Plan of Liquidation of Avenger Flight Group, LLC and Its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* [D.I. 376] (including all exhibits thereto and as amended, supplemented, or otherwise modified from time to time, the disclosure statement portion hereof, the "Disclosure Statement" and the chapter 11 plan portion thereof, the "Plan"; and collectively, the "Combined Plan and Disclosure Statement");

*2)      Order (I) Granting Conditional Approval of the Adequacy of Disclosures in the Combined Disclosure Statement and Plan; (II) Scheduling a Combined Confirmation Hearing and Setting Deadlines Related Thereto; (III) Approving Solicitation Packages and Procedures; (IV) Approving the Forms of Ballots; and (V) Granting Related Relief* [D.I. 380] (the "Solicitation Procedures Order"), entered on May 4, 2026;

*3)      Notice of Filing of Blackline of Combined Disclosure Statement and First Amended Plan of Liquidation of Avenger Flight Group, LLC and Its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* [D.I. 377] (the "Notice of Blackline Plan") and

4)      The following documents that have been filed or are being filed substantially contemporaneously herewith:

a.   *Notice of Filing Plan Supplement for Debtors' Chapter 11 Plan of Liquidation* [D.I. 456] (the "Plan Supplement");

b.   *Declaration of P. Joseph Morrow IV With Respect to the Tabulation of Votes on the Combined Disclosure Statement and First Amended Plan of Liquidation of Avenger Flight Group, LLC and Its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* [D.I. 478] (the "Voting Declaration");

---

[2]   Capitalized terms not defined herein shall have the meanings ascribed in the Combined Plan and Disclosure Statement.

c.  *Declaration of Marc Sullivan, Debtors' Chief Financial Officer, in Support of Confirmation of Debtors' Chapter 11 Plan of Liquidation* [D.I. 479] (the "Sullivan Declaration" and together with the Voting Declaration, the "Plan Declarations"); and

d.  the affidavits or other proofs of service of notices with respect to the Plan, Confirmation Hearing and solicitation of voting on the Plan (including, without limitation, all of the docket numbers referenced in the Voting Declaration) (the "Solicitation Service Filings").

**I.**

**PRELIMINARY STATEMENT**

The Debtors commenced these bankruptcy cases to sell substantially all of their assets as a going concern (the "Sale"), liquidate their remaining assets and wind-down their businesses in an orderly manner to preserve and maximize the value of the estates' assets for the benefit of all stakeholders. In connection with the Debtors' reorganization process, the Debtors, the Committee, the Prepetition Lenders, and the DIP Lenders negotiated and entered into a global settlement (the "Committee Resolution") as set forth in that certain Global Resolution Term Sheet (filed with the Court on March 11, 2026 as Exhibit C to the Final DIP Order). Pursuant to the proposed Plan, which is consistent with and will further implement the Committee Resolution, on and after the Effective Date, a Litigation Trustee (selected by the Committee, and acceptable to the Debtors and lenders) will complete the orderly liquidation and wind-down of the Debtors' business, address pending claims, including litigation claims, and make distributions to creditors as efficiently as possible through the liquidating Plan.

The Plan provides for, as of the Effective Date, the funding of the Plan and a Litigation Trust and the post-Effective-Date implementation thereof, with certain contributed Cash (held as Available Cash as of the Effective Date) in which the DIP Lenders and/or Prepetition Lenders would otherwise hold Liens and would otherwise be entitled to receive. Under the Plan, a Litigation Trust will be formed to liquidate, collect, sell, or otherwise dispose of the remaining

`4932-7839-3762.5 05863.00002                    2

assets of the Estates (including, without limitation, certain causes of action of the Estates), if and to the extent such assets were not previously monetized to Cash or otherwise transferred or disposed of by the Debtors prior to the Effective Date. The Litigation Trust will satisfy priority claims from the Administrative / Priority / Other Distributions Reserve and distribute all other net proceeds of Litigation Trust Assets to the Beneficiaries of the Litigation Trust (including Holders of Allowed Unsecured Claims and the Prepetition Lenders on account of their unsecured deficiency claims) generally in accordance with the priority scheme under the Bankruptcy Code, the Plan and the Litigation Trust Agreement, subject to a certain distribution waterfall (a 40% (Holders of Allowed Unsecured Claims) / 60% (Prepetition Lenders) split of net proceeds subject to certain conditions and potential adjustments described in the Plan). There will be no distributions to Holders of Interests. In a Chapter 7 proceeding, absent such concessions by the Prepetition Lenders and the DIP Lenders, general unsecured creditors would likely receive no distribution on account of their claims.

The Debtors' proposed Plan presents a viable, efficient, and advantageous resolution of the Chapter 11 Cases, while ensuring that all allowed administrative and priority claims are paid or otherwise satisfied as required under the Bankruptcy Code and general unsecured creditors receive recoveries beyond what would be distributed in a liquidation, notwithstanding that the senior lenders will not recover in full on their senior claims. As discussed below, the Plan enjoys broad and extensive support among key constituencies based on the Plan voting results, with only a single creditor voting to reject the Plan. And critically, **the Committee, protecting the interests of all general unsecured creditors, supports the confirmation of the Plan**.

In short, the Plan should be confirmed for the following reasons:

***First***, the Plan provides creditors with the best return that can be achieved under the circumstances of the Chapter 11 Cases.  Absent the concessions and benefits provided by the Prepetition Lenders and DIP Lenders, general unsecured creditors would likely receive no or smaller recovery in a chapter 7 proceeding.

***Second***, the Plan implements the Committee Resolution that was reached after arms' length, good faith negotiations among the Debtors, the Committee, the Prepetition Lenders and the DIP Lenders.  The Plan, together with the Committee Resolution, will resolve the parties' disputes and will lead to the prompt successful resolution of the Chapter 11 Cases for the benefit of the Estates and all stakeholders.  Extensive creditor support for this settlement Plan is evidenced by the voting results set forth in the Voting Declaration, indicating broad support for the Plan.  In fact, only one creditor voted to reject the Plan.

***Finally***, the Plan complies with all applicable provisions of Bankruptcy Code and the Bankruptcy Rules.  As discussed below, the Plan satisfies all of the requirements of sections 1122, 1123, 1125 and 1129 of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018.

Only one creditor, Spirit Airlines, LLC f/k/a Spirit Airlines, Inc. ("Spirit"), filed a response, the *Spirit Airlines, LLC's Reservation of Rights and Limited Objection to the AFG Debtors' Plan* [Docket No. 470] (the "Spirit Reservation"), to the Plan.  In the Spirit Reservation, Spirit seeks to reserve its rights with respect to (i) its asserted administrative expense claim [Docket No 457] and its proof of claim (collectively, the "Spirit Claims") in the event that ongoing negotiations between the Debtors, Spirit, and the buyer of the Debtors' assets under the Sale are unsuccessful, and (ii) set off and recoupment rights with respect to the Spirit Claims.  **The Spirit Reservation has been resolved through the additions of certain language in the Proposed Confirmation Order.**  *See* Proposed Confirmation Order, ¶ 36.

Together, this Memorandum, the Disclosure Statement and Plan, the Plan Declarations, the Plan Supplement, and the Solicitation Service Filings, along with the files and records in the Chapter 11 Cases, reflect that the Plan complies with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, and provide the legal and evidentiary bases necessary for this Court to confirm the Plan.

## II.

## BACKGROUND

1. On February 11 or February 12, 2026 (as applicable for the Debtor, the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases.

2. On February 25, 2026, the Office of the United States Trustee (the "UST") appointed the Committee consisting of Allegiant Air LLC, Bow Systems (Private) Limited, and Multi-Pilot Simulations [D.I. 95].

3. The factual background regarding the Debtors is set forth in detail in the *Declaration of Lawrence Perkins in Support of Debtors' Chapter 11 Petitions and First Day Relief* [D.I. 33] and is fully incorporated herein by reference.

4. On May 1, 2026, the Debtors filed the Combined Plan and Disclosure Statement.

5. On May 4, 2026, the Court entered the Solicitation Procedures Order [D.I. 380]. The Debtors solicited the Combined Plan and Disclosure Statement in accordance with the Solicitation Procedures Order. *See* Voting Decl.

## III.

## SUMMARY OF THE PLAN[3]

6.      Under the Plan, certain Claims are not classified and are entitled under the Bankruptcy Code (and the Plan) to a full recovery (*i.e.*, Administrative Claims, DIP Facility Claims and Priority Tax Claims). The Plan provides for the satisfaction of administrative and priority claims (except as otherwise may be agreed) in accordance with the Bankruptcy Code.

7.      As discussed further below, the Plan designates seven classes of Claims and one class of Interests:

| Class | Designation | Treatment | Entitled to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Unimpaired | Deemed to Accept |
| 2 | Prepetition Lenders Claims | Impaired | Entitled to Vote |
| 3 | Secured EDC Claims | Impaired | Entitled to Vote |
| 4 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 5 | SIM International Claims | Impaired | Entitled to Vote |
| 6 | Unsecured Claims | Impaired | Entitled to Vote |
| 7 | Intercompany Claims | Impaired | Deemed to Reject |
| 8 | Interests | Impaired | Deemed to Reject |

8.      Pursuant to the Plan which is consistent with and will further implement the Committee Resolution, on and after the Effective Date, the Litigation Trustee will complete the orderly liquidation and wind-down of the Debtors' business, address pending claims, including litigation claims, and make distributions to creditors as efficiently as possible through the liquidating Plan.  Under the Plan, the holders of the Prepetition Lenders Claims in Class 2 will receive no Distributions or further payments under the Plan on account of their secured claims; the Prepetition Lenders will receive a Pro Rata share of the Litigation Trust Interests on account of

---

[3] To the extent that there is any inconsistency between this Summary and the Plan itself, the Plan controls.

their unsecured deficiency claims. Holders of the Secured EDC Claims in Class 3 will receive the treatment provided for in the Final DIP Order, and any remaining unsecured claims of such holders will be placed in Class 6 (Unsecured Claims). Other Secured Claims in Class 4 will be Unimpaired by the Plan, receiving one of several specified optional treatments. Although the Plan indicates that the holders of the Class 5 (SIM International Claims) will receive the treatment provided for under the SIM International Settlement, the SIM International Settlement was consummated, resulting in the release of all of the SIM International Claims. As such, Class 5 should be treated as a vacant class under section 9.3 of the Plan for purposes of the hearing on confirmation of the Plan.

9.     The Litigation Trust will satisfy priority claims from the Administrative / Priority / Other Distributions Reserve and distribute all other net proceeds of Litigation Trust Assets to the Beneficiaries of the Litigation Trust, including holders of Allowed Unsecured Claims in Class 6 and the Prepetition Lenders on account of their unsecured deficiency claims, generally in accordance with the priority scheme under the Bankruptcy Code, the Plan and the Litigation Trust Agreement, subject to a certain distribution waterfall (a 40% (Holders of Allowed Unsecured Claims) / 60% (Prepetition Lenders) split of net proceeds subject to certain conditions and potential adjustments described in the Plan). There will be no distributions to Holders of Intercompany Claims or Interests. The Plan also contains an exculpation provision (Section 16.1), a release by the Debtors and Estates of the Released Parties (the "Debtor/Estate Release") (Section 16.2(a).1), a consensual Third Party Release requiring consenting creditors to opt-out or submit an opt-in election, as applicable (Section 16.2(a).2), and a Plan injunction (Section 16.3).

10.     As discussed herein, all relevant Plan provisions are appropriate and consistent with applicable provisions of chapter 11 and Third Circuit law and are the product of good-faith, arm's-

length negotiations among the Debtors, the Prepetition Lenders, the DIP Lenders and the Committee.

**IV.**
**THE PLAN SATISFIES EACH OF THE REQUIREMENTS**
**FOR CONFIRMATION UNDER THE BANKRUPTCY CODE**

11.     Jurisdiction over this matter is proper pursuant to 28 U.S.C. § 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b) and the Bankruptcy Court may enter a final order consistent with Article III of the United States Constitution.

12.     The Plan complies with all relevant sections of the Bankruptcy Code and the Bankruptcy Rules relating to confirmation.  The Debtors must show by a preponderance of the evidence that the Plan satisfies section 1129 of the Bankruptcy Code in order to confirm the Plan.[4] In particular, the Plan complies with the requirements of sections 1123 and 1129 of the Bankruptcy Code.  This Memorandum addresses each requirement below.

**A.      The Plan Satisfies Section 1129(a)(1) of the Bankruptcy Code**

13.     Section 1129(a)(1) of the Bankruptcy Code provides that a plan may be confirmed only if "[t]he plan complies with the applicable provisions of this title."  11 U.S.C. § 1129(a)(1). The legislative history of section 1129(a)(1) indicates that the primary focus of this requirement is to ensure that the plan complies with sections 1122 and 1123 of the Bankruptcy Code, which govern classification of claims and interests and the contents of a plan, respectively.[5]  The Plan

---

[4]     *See, e.g., Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters. (In re Briscoe Enters.)*, 994 F.2d 1160, 1165 (5th Cir.1993) ("The . . . preponderance of the evidence is the debtor's appropriate standard of proof both under § 1129(a) and in a cramdown.").

[5]     *See* S. Rep. No. 989, 95th Cong. 2d Sess. 126 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5913 (1978) ("Senate Report"); H.R. Rep. No. 595, 95th Cong. 1st Sess. 412 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5962, 6368 (1977) ("House Report"); *see also Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 648–49 (2d Cir. 1988).

`4932-7839-3762.5 05863.00002                                    8

complies with these provisions in all respects.

> **i.    The Plan Meets the Requirements of Section 1122 of the Bankruptcy Code**

14.    The classification requirements of section 1122(a) of the Bankruptcy Code provide, in pertinent part, as follows:

> Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.[6]

15.    Section 1122(a) does not require that similar claims be classified together, only that claims grouped together in a class should be similar. *Teamsters Nat'l Freight Indus. Negotiating Comm. v. U.S. Truck Co. (In re U.S. Truck Co.)*, 800 F.2d 581, 585 (6th Cir. 1986). The Third Circuit has recognized that debtors have significant flexibility in placing similar claims into different classes under section 1122, provided there is a rational basis to do so and it is not done to gerrymander a consenting impaired class.[7]

16.    The classification of Claims and Equity Interests under the Plan is proper under the Bankruptcy Code. There are seven classes of Claims and one class of Equity Interests: (1) Priority Non-Tax Claims, (2) Prepetition Lenders Claims, (3) Secured EDC Claims, (4) Other Secured Claims, (5) SIM International Claims, (6) Unsecured Claims, (7) Intercompany Claims and (8) Interests in the Debtors. As the foregoing descriptions of the classes reflect, valid reasons exist

---

6    11 U.S.C. § 1122(a).

7    *See In re Jersey City Med. Ctr.*, 817 F.2d 1055, 1060–61 (3d Cir. 1987) (observing that separate classes of claims must be reasonable, and allowing a debtor to group similar claims in different classes); *Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.)*, 10 F.3d 944, 956–57 (2d Cir. 1993) (finding separate classification appropriate because a classification scheme had a rational basis where separate classification was based on a bankruptcy court-approved settlement); *Aetna Cas. & Sur. Co. v. Clerk of the U.S. Bankr. Ct. (In re Chateaugay Corp.)*, 89 F.3d 942, 950 (2d Cir. 1996) (finding that classification was proper since the plan did not classify similar claims separately to gerrymander an impaired assenting class); *In re Adelphia Commc'n Corp.*, 368 B.R. 140, 246–47 (Bankr. S.D.N.Y. 2007) ("When considering assertions of gerrymandering, courts in the Second Circuit have inquired whether a debtor has classified substantially similar claims in separate classes for the sole purpose of obtaining at least one impaired assenting class.").

for separately classifying the various Classes of Claims and Interests created under the Plan and, accordingly, the classification of Claims and Interests under the Plan satisfies the requirements of section 1122 of the Bankruptcy Code.

**ii.      The Plan Meets the Requirements of Section 1123(a) of the Bankruptcy Code**

17.      Section 1123(a) of the Bankruptcy Code sets forth seven requirements with which every chapter 11 plan must comply.  The Plan complies fully with each requirement.

18.      First, paragraph (1) of section 1123(a) requires that a plan designate classes of claims, other than claims with the priority specified in subparagraphs 1, 2, and 8 of section 507(a) of the Bankruptcy Code.  Section 9 of the Plan designates Classes of Claims and Interests and does not classify Administrative Claims or Priority Tax Claims because they must receive the treatment specified in the Bankruptcy Code and cannot otherwise be Impaired.  *See* 11 U.S.C. §§ 1123(a)(1) and 1129(a)(9).

19.      Second, paragraph (2) of section 1123(a) of the Bankruptcy Code requires that a plan specify those classes or interests that are not Impaired.  Section 9 of the Plan specifies that Class 1 (Priority Non-Tax Claims) and Class 4 (Other Secured Claims) are Unimpaired.

20.      Third, paragraph (3) of section 1123(a) of the Bankruptcy Code requires that a plan specify those classes of claims or interests that are impaired.  Section 9 of the Plan specifies that Class 2 (Prepetition Lenders Claims), Class 3 (Secured EDC Claims), Class 5 (SIM International Claims), Class 6 (Unsecured Claims), Class 7 (Intercompany Claims) (deemed to reject) and Class 8 (Interests) (deemed to reject) are Impaired.

21.      Fourth, paragraph (4) of section 1123(a) of the Bankruptcy Code requires that a plan provide the same treatment for each claim in a particular class unless the holder of a claim in that class agrees to less favorable treatment for such claim.  All of the Holders of Claims or

Interests as set forth in Section 10 of the Plan are treated the same within each respective Class under the Plan as required by section 1123(a)(4) of the Bankruptcy Code.[8]

22.     Fifth, paragraph (5) of section 1123(a) of the Bankruptcy Code requires that a plan provide adequate means for its implementation.  Here, Section 14 (Means for Implementation of the Plan), Section 11 (Distributions to Holders of Allowed Claims), Section 12 (Procedures for Resolving Disputed Claims and Redistributions), Section 13 (Treatment of Executory Contracts and Unexpired Leases), and Section 17 (Conditions Precedent to Confirmation and Consummation of the Plan), among other provisions of the Plan, set forth the means for the Plan's implementation.

23.     Sixth, paragraph (6) of section 1123(a) of the Bankruptcy Code requires that a plan impose certain restrictions on a corporate debtor's equity securities.  Consistent with section 1123(a)(6), the Debtors' governing documents shall include provisions prohibiting the issuance of non-voting equity interests in the Debtors.  Thus, section 1123(a)(6) is satisfied.

24.     Finally, paragraph (7) of section 1123(a) of the Bankruptcy Code requires that a plan contain only provisions that are consistent with the interests of creditors, equity security holders, and public policy with respect to the manner of selection of any officer, director, or trustee under a plan and any successor thereto.  The Plan satisfies this requirement.

25.     The Plan Supplement discloses that Peter Hurwitz, as a managing member of Burton Hastings Advisors LLC will be appointed as the Litigation Trustee, as well as the identities of each of the members of the Litigation Trust Oversight Board.  Mr. Hurwitz is well qualified to act as the Litigation Trustee.  Mr. Hurwitz is a Principal of Dundon Advisors, LLC, where he is the Head of its unsecured creditors practice.  Mr. Hurwitz has significant experience serving as a

---

[8]   Provided that each claimant within a class has the "same opportunity to receive equal treatment," there is no violation of section 1123(a)(4). *See In re W.R. Grace & Co.*, 729 F.3d 311, 327 (3d Cir. 2013); *In re Washington Mutual Inc.*, 442 B.R. 314, 356 (Bankr. D. Del. 2011).

trustee, such as in the matters of Itella Tattooed Chef, XFL/Alpha Entertainment, Nogin Inc., and the GBG Litigation Trusts. Mr. Hurwitz holds a juris doctorate from Georgetown Law Center and a bachelor of arts degree from Middlebury College. This appointment is consistent with the interests of Holders of Claims and Interests and with public policy and so satisfy section 1123(a)(7) of the Bankruptcy Code.

**B.    The Plan Complies With the Discretionary
Provisions of Section 1123(b) of the Bankruptcy Code**

26.    Section 1123(b) of the Bankruptcy Code sets forth various discretionary provisions that may be incorporated into a chapter 11 plan. Among other things, section 1123(b) of the Bankruptcy Code provides that a plan may: (a) impair or leave unimpaired any class of claims or interests, (b) provide for the assumption or rejection of executory contracts and unexpired leases, (c) provide for the settlement or adjustment of any claim or interest belonging to the debtor or the estate, and (d) include any other appropriate provision not inconsistent with the applicable provisions of chapter 11. 11 U.S.C. § 1123(b)(1).

27.    The Plan is consistent with section 1123(b) of the Bankruptcy Code. Specifically, under Sections 9 and 10 of the Plan, Classes 1 and 4 are Unimpaired because the Plan provides the Holders of such Claims with the treatment required under the Bankruptcy Code or otherwise does not alter the Holders' rights. On the other hand, Classes 2, 3, 5, 6, 7, and 8 are Impaired because the Plan modifies the rights of the Holders of Claims or Interests within such Classes.

28.    In addition, pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, Section 13.1 of the Plan provides for, except with respect to (i) executory contracts or unexpired leases that were previously assumed, assumed and assigned, or rejected by order of the Bankruptcy Court, and (ii) executory contracts or unexpired leases that are the subject of a pending motion to assume or reject, pursuant to section 365, on the Effective Date, each executory contract and

`4932-7839-3762.5 05863.00002                      12

unexpired lease entered into by the Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms will be deemed rejected pursuant to section 365; provided however, nothing in the Plan will cause the rejection, breach, or termination of any contract of insurance benefiting the Debtors and the Estates, the Debtors' officers, managers and directors, and/or the Litigation Trust.

29.     The Plan's discretionary provisions also include a Debtors' release provision, a voluntary third-party release provision, an exculpation provision, and Plan injunction provision. As discussed further below, these provisions are appropriate and consistent with the applicable provisions of chapter 11 because, among other things, they are the product of good-faith, arm's-length negotiations and are necessary to be able to confirm the Plan.

### i.     Rule 9019 Settlements

30.     Section 14.1 of the Plan provides:

> Pursuant to section 1123 of the Bankruptcy Code, and in consideration for the classification, distributions, releases and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan will constitute a good-faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan, and in particular, a compromise and settlement among the Debtors, the Prepetition Agent, the Prepetition Lenders, and the Committee. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, within the range of reasonableness and in the best interests of the Debtors, their Estates, and Holders of Claims and Interests.

31.     All of the settlements embodied in the Plan (collectively, the "Plan Settlements")[9] – which are supported by the Committee, DIP Lenders and Prepetition Lenders – are reasonable compromises satisfying the standards of Bankruptcy Rule 9019.

32.     Section 105(a) of the Bankruptcy Code provides in relevant part that "[t]he court

---

[9]     The Plan Settlements include, without limitation, the Debtor Release.

may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Section 105(a) has been interpreted to expressly empower bankruptcy courts with broad equitable powers to "craft flexible remedies that, while not expressly authorized by the Code, effect the result the Code was designed to obtain."  *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 568 (3d Cir. 2003) (*en banc*).

33.     Settlements in bankruptcy are favored as a means of minimizing litigation, expediting the administration of the bankruptcy estate, and providing for the efficient resolution of bankruptcy cases.  *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996).  In deciding whether to approve a settlement pursuant to Bankruptcy Rule 9019, the court should determine whether the compromise is fair, reasonable, and in the interests of the estates.  *In re Marvel Entertainment Group, Inc*., 222 B.R. 243, 249 (D. Del. 1998).  The decision whether to accept or reject a compromise lies within the sound discretion of the court.  *In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986).

34.     In making this determination, the United States Court of Appeals for the Third Circuit has provided four criteria that a bankruptcy court should consider: (a) the probability of success in litigation; (b) the likely difficulties in collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interest of the creditors.  *Martin*, 91 F.3d at 393.  Courts generally defer to a trustee's business judgment when there is a legitimate business justification for the trustee's decision.  *Id*. at 395.

35.     When applying the *Martin* factors to a particular settlement, "the court is not supposed to have a 'mini-trial' on the merits, but should canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness."  *Aetna Casualty & Surety*

*Co. v. Jasmine, Ltd (In re Jasmine, Ltd)*, 258 B.R. 119, 123 (D.N.J. 2000) (internal quotations omitted); *see also In re TSIC, Inc.*, 393 B.R. 71, 79 (Bankr. D. Del. 2008); *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006).  Although approval of a compromise is within the "sound discretion" of the bankruptcy court (*World Health*, 344 B.R. at 296), the court should not substitute its judgment for that of a trustee or debtor in possession.  *In re Parkview Hosp.-Osteopathic Med. Ctr.*, 211 B.R. 603, 610 (Bankr. N.D. Ohio 1996).  The ultimate inquiry is whether the compromise is "fair, reasonable, and in the interests of the estate."  *TSIC*, 393 B.R. at 78.  A court need not be convinced that a proposed settlement is the best possible settlement, but "must conclude that it is within the reasonable range of litigation possibilities."  *World Health*, 344 B.R. at 296 (internal citations omitted).

36.    Aside from the standards under Bankruptcy Rule 9019, a settlement of an estate's claims and causes of action against third parties constitutes a use of property of the estate.  *See e.g. Northview Motors, Inc. v. Chrysler Motors Corp.*, 186 F.3d 346, 350-51 (3d Cir. 1999).  If a settlement is outside of the ordinary course of business of the debtor, it requires approval of the bankruptcy court pursuant to section 363(b) of the Bankruptcy Code.  *See id.; see also Martin*, 91 F.3d at 395 n.2 ("Section 363 of the Code is the substantive provision requiring a hearing and court approval; Bankruptcy Rule 9019 sets forth the procedure for approving an agreement to settle or compromise a controversy.").  Courts normally defer to the trustee's business judgment so long as there is a legitimate business justification.  *See id.; see also Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (Bankr. D. Del. 1999) (trustee need only have a "sound business purpose" to justify use of estate property pursuant to section 363(b)).

37.    Here, the Plan Settlements are within the range of reasonableness and are an

exercise of sound business judgment.  The Plan Settlements, which drive the Plan resulting in creditors junior to the Prepetition Lenders receiving recoveries (in contrast to likely receiving no or smaller recoveries in a chapter 7 proceeding), have been negotiated extensively at arm's-length between counsel for each of the primary creditor constituencies, based on their views of any potential claims against Released Parties and potential challenges to the liens and claims of the Prepetition Lenders.

### ii. The Exculpation, Third-Party Release, Plan Injunction and Related Provisions Are Appropriate and Justified.

38.    Section 16.1 (Exculpation), Section 16.2(a).1 (a release by the Debtors and Estates of the Released Parties (the "Debtor/Estate Release")), Section 16.2(a).2 (Third Party Releases), and Section 16.3 (Injunction) of the Plan are appropriate and justified under the exceptional circumstances at hand.

39.    Section 1123(b)(3)(A) of the Bankruptcy Code provides that a plan may provide for "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate." A debtor may release claims under section 1123(b)(3)(A) "if the release is a valid exercise of the debtor's business judgment, is fair, reasonable, and in the best interests of the estate." *U.S. Bank Nat'l Ass'n v. Wilmington Trust Co.* (*In re Spansion, Inc.*), 426 B.R. 114, 143 (Bankr. D. Del. 2010); *see also In re Washington Mut., Inc.*, 442 B.R. 314, 327 (Bankr. D. Del. 2011) ("In making its evaluation [whether to approve a settlement], the court must determine whether 'the compromise is fair, reasonable, and in the best interest of the estate.'"). A court's evaluation of the propriety of a debtor's release "is often dictated by the specific facts of the case." *In re Washington Mut.*, 442 B.R. at 345; *In re Tribune Co.*, 464 B.R. 126, 186 (Bankr. D. Del. 2011), *modified*, 464 B.R. 208 (Bankr. D. Del. 2011) (same); *In re Indianapolis Downs, LLC*, 486 B.R. 286, 303 (Bankr. D. Del. 2013) (courts evaluating a debtor's releases weigh "the equities of the particular case after

a fact-specific review"). As demonstrated below, the Plan's release, exculpation, and injunction provisions are fair, reasonable, and in the best interests of the Debtors and Estates, and appropriate under the circumstances of the Chapter 11 Cases.

40.     Courts in this district consider the following factors to determine whether releases in a chapter 11 plan are appropriate: (a) whether there is an identity of interest between the debtor and the third party, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete assets of the estate; (b) whether the non-debtor has made a substantial contribution; (c) the essential nature of the release to the extent that, without the release, there is little likelihood of success; (d) an agreement by a substantial majority of creditors to support the release, specifically if the impacted class or classes "overwhelmingly" vote to accept the plan; and (e) whether there is a provision in the plan for payment of all or substantially all of the claims of the class or classes affected by the release. *See In re Indianapolis Downs*, 486 B.R. at 303 (*citing In re Zenith Elecs. Corp.*, 241 B.R. 92, 110 (Bankr. D. Del. 1999)); *see also In re Spansion*, 426 B.R. at 143 n.47. Importantly, a court need not find that all of these factors apply to approve a debtor's release of claims against non-debtors. *See, e.g., In re Washington Mut.*, 442 B.R. at 346. Rather, such factors are "helpful in weighing the equities of the particular case after a fact-specific review." *In re Indianapolis Downs*, 486 B.R. at 303.

41.     Further, courts in the Third Circuit have held that, "[w]here such releases are an active part of the plan negotiation and formulation process, it is a valid exercise of the debtor's business judgment to include a settlement of any claims a debtor might own against third parties as a discretionary provision of a plan." *In re Aleris Int'l, Inc.*, 2010 WL 3492664, at *20; *see also In re PWS Holding Corp.*, 228 F.3d 224, 242 (3d Cir. 2000) (affirming debtor's release of claims against equity sponsor in connection with leverage privatization transaction where the claims had

"negative value" to the estate because they were not likely to produce recoveries and were costly to the estate).

42.    *First*, there is an identity of interests between the Debtors and Released Parties. The Released Parties, as stakeholders and key participants in the Chapter 11 Cases, share a common goal with the Debtors in seeing the Plan succeed.[10] *See In re Tribune Co.*, 464 B.R. at 187 (noting the existence of an identity of interest between the debtors and the settling parties where such parties "share the common goal of confirming the DCL Plan and implementing the DCL Plan Settlement").

43.    *Second*, the Released Parties have made a substantial contribution to the Chapter 11 Cases, which include, among other things, negotiating, formulating, and executing the Committee Resolution and the terms of the Plan, as well as providing other material support and value to the Debtors. The DIP Lenders provided the Debtors with postpetition financing facilitating the Debtors' operations while in chapter 11 and the runway to execute the Sale and an efficient wind-down of the Debtors' affairs. Further, the Released Parties played an active role in the Chapter 11 Cases, including in negotiating the settlement embodied in the Committee Resolution and the Plan that has garnered support from the Debtors' key stakeholders. Additionally, as part of the Plan Settlements, the Prepetition Lenders have agreed to limit their recovery to the

---

[10]    Under Section 3.110 of the Plan, "Released Parties" means, collectively, "(a) the Debtors' Independent Manager and postpetition officers and directors, all of whom are employed by the Debtors or the Buyer as of the Petition Date; (b) the Prepetition Lenders Managers; (c) the Debtors' outside professionals and advisors, in their respective capacities as such, who provided services to the Debtors postpetition, including without limitation Pachulski Stang Ziehl & Jones LLP and SierraConstellation Partners; (d) the Committee and the individual members thereof in their capacity as such, and their professionals in their respective capacities as such; (e) the Prepetition Agent in its capacity as such; (f) the Prepetition Lenders in their respective capacity as such; (g) the DIP Agent in its capacity as such; (h) the DIP Lenders in their respective capacity as such; (i) SIM International; (j) the Buyer and (k) the Related Persons of the preceding parties, solely in their respective capacities as such. For the avoidance of doubt, notwithstanding any of the foregoing or any other provision of the Plan, the Buyer shall not be released by the Plan from any of the Buyer's obligations under the Sale Order and any related agreements and documents, including, without limitation, the Sale Agreement."

distributions and treatment set forth in the Plan.  With respect to SIM International, significant concessions were made by SIM International as set forth in the SIM International Settlement, which secured an ongoing relationship with improved equipment for the Buyer of the Debtors' assets and thus promoted the Sale redounding to the Estates' benefit.

44.     *Third*, the Third Party Release is essential to the disposition of the Chapter 11 Cases. Without such release, and the participation of the Released Parties in the Chapter 11 Cases, none of the value-maximizing transactions that have been consummated over the course of the case would have been possible. Certain stakeholders had to make considerable contributions and concessions in taking these steps toward formulating the Plan. The consideration for such support and efforts is the Third Party Release.

45.     *Fourth,* the holders of Claims in the Voting Classes have overwhelmingly voted in favor of the Plan, with only a single creditor voting to reject the Plan. *See* Voting Declaration.

46.     *Finally*, the Third Party Release, like all elements of the Plan, was negotiated by sophisticated parties represented by able counsel and are the result of arm's-length negotiations. The Third Party Release provides the Released Parties with a level of finality that is key to an orderly and value-maximizing disposition of the Estates, a result which would be impossible without the contributions and concessions of the Released Parties. Accordingly, the Third Party Release is fair and equitable, in the best interest of the Estates, and should be approved.

47.     Moreover, notwithstanding the Supreme Court's *Purdue* decision,[11] nothing has changed the longstanding precedent permitting consensual third party releases. Courts in the Third Circuit have long recognized that a chapter 11 plan may include a release of non-debtors by other

---

[11]   The Supreme Court expressly stated: "Nothing in what we have said should be construed to call into question *consensual* third-party releases offered in connection with a [chapter 11] plan . . . [n]or do we have occasion today to express a view on what qualifies as a consensual release. *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 144 S. Ct. 2071, 2087–88 (2024) (emphasis in original).

non-debtors when such release is consensual. *See In re Emerge Energy Servs. LP*, 2019 WL 7634308, * 17-18 (Bankr. D. Del. Dec. 5, 2019); *Indianapolis Downs*, 486 B.R. at 305; *In re Spansion*, 426 B.R. at144 (stating that "a third party release may be included in a plan if the release is consensual"); *In re Washington Mut.*, 442 B.R. at 351–52 (noting that consensual third-party releases are permissible); *In re Zenith Elecs. Corp.*, 241 B.R. at 111 (approving releases by creditors that voted in favor of the plan). The determination as to whether a third-party release is consensual depends on the particular circumstances of a particular case. *See Indianapolis Downs*, 486 B.R. at 306; *see also* 99 Cents Disclosure Statement Hr'g. Tr. 31:14–15 (Judge Stickles noting "[w]hether an opt-out is appropriate is analyzed on a case-by-case basis").

48.     In the Third Circuit, a third party release is consensual where the releasing parties have received sufficient notice (including an explanation of the consequences of granting the release), had the opportunity to consent to the release in a sufficient manner, and here, exercised such opportunity by affirmatively opting into the Third Party Release or by voting for the Plan and not affirmatively opting out of the release on the Ballot.

49.     Here, Ballots (for Classes entitled to vote on the Plan) or Notices of Non-Voting Status, with opt-in election forms (for Classes deemed to accept or reject the Plan), were distributed to the holders of Claims with timely, sufficient, appropriate, and adequate notice, including the explanation that such creditors would grant the Third Party Release if (i) they voted for the Plan and did not opt out of the Third Party Release on the Ballot or (ii) they affirmatively opted into and returned an opt-in election form. The text describing the Third Party Release was printed in bold type in the Ballots and Notices of Non-Voting Status, Plan, and Disclosure Statement. Thus, the Third Party Release is fully consensual and consistent with the law in this Circuit.

50.     As described above, the Released Parties have provided significant contribution

and support to the Chapter 11 Cases and the Plan. In addition, the Third Party Release is narrowly tailored as they do not provide a blanket immunity and provide a carve-out for acts or omissions that constitute gross negligence, fraud, or willful misconduct.  Accordingly, the Third-Party Release is consensual, appropriate, and narrowly tailored to the circumstances of the Chapter 11 Cases and should therefore be approved.

51.     With respect to the Exculpation provision in the Plan,[12] the Third Circuit assesses the appropriateness of exculpation provisions in light of the particular circumstances of each case. *See In re PWS Holding Corp.*, 228 F.3d at 247 (rejecting any "*per se* rule barring any provision in a [chapter 11] plan limiting the liability of third parties[,]" including exculpation, by virtue of section 524(e) of the Bankruptcy Code); *see also In re Indianapolis Downs*, 486 B.R. at 306 (concluding that exculpation provisions are appropriate for estate fiduciaries, committees and their members and a debtor's directors and officers).

52.     Unlike the Third Party Release, the Exculpation provision does not affect the liability of the Exculpated Parties *per se*, but rather establishes a standard of care in any hypothetical future litigation against the Exculpated Parties for acts arising out of the Chapter 11 Cases. *See, e.g.*, *In re PWS Holding Corp.*, 228 F.3d at 245–46 (holding that an exculpation provision "is apparently a commonplace provision in Chapter 11 plans, [and] does not affect the liability of these parties, but rather states the standard of liability under the Code.").

53.     *First*, the Exculpation provision is appropriate because the Exculpated Parties have participated in the Chapter 11 Cases in good faith, made substantial contributions to the Debtors'

---

[12]   Section 16.1 of the Plan was clarified and narrowed to define the "Exculpated Parties" as "the Debtors, the directors and officers of the Debtors who served during any portion of the cases, the Debtors' professionals retained in these cases, the Committee, the members of the Committee in their capacity as such, each individual who participated in the Committee on behalf of a member, each in its capacity as such, and the Committee's professionals retained in these cases."  The Exculpation provision was modified to remove the Debtors' Independent Manager.

efforts to maximize value of the Estates, and will participate in the successful implementation of the Plan. *Second*, the Exculpation provision is narrowly tailored to protect the Exculpated Parties only from inappropriate litigation related to acts or omissions in connection with the administration of the Chapter 11 Cases. For these reasons, the Exculpation Provision is appropriate and should be approved.

54.     The Injunction Provision in Section 16.3 is a key provision of the Plan because it enforces the Debtor/Estate Release, Third-Party Release, and Exculpation provision by enjoining entities from taking any actions against the Exculpated Parties or Released Parties. Therefore, to the extent the Court finds the releases and Exculpation provision are appropriate, the Injunction is also appropriate and should be approved.

## C.     The Debtor Has Satisfied Section 1129(a)(2) of the Bankruptcy Code

55.     Section 1129(a)(2) of the Bankruptcy Code requires the proponent of a plan to comply with "applicable provisions of the Bankruptcy Code."  11 U.S.C. § 1129(a)(2).  The principal purpose of section 1129(a)(2) of Bankruptcy Code is to ensure that a debtor has complied with the disclosure and solicitation requirements of sections 1125 and 1126 of the Bankruptcy Code.[13]

---

[13]  *See In re PWS Holding Corp.*, 228 F.3d 224, 248 (3d Cir. 2000) (stating that section 1129(a)(2) requires debtors to comply with the adequate disclosure requirements of section 1125); *see also In re Lapworth*, No. 97-34529, 1998 Bankr. LEXIS 1383, at *10 (Bankr. E.D. Pa. Nov. 2, 1998) ("The legislative history of § 1129(a)(2) specifically identifies compliance with the disclosure requirements of § 1125 as a requirement of § 1129(a)(2)."); *Official Comm. v. Michelson (In re Michelson)*, 141 B.R. 715, 719 (Bankr. E.D. Cal. 1992) ("Compliance with the disclosure and solicitation requirements is the paradigmatic example of what the Congress had in mind when it enacted section 1129(a)(2)."); *In re Texaco Inc.*, 84 B.R. 893, 906–07 (Bankr. S.D.N.Y. 1988) (stating that the "principal purpose of Section 1129(a)(2) is to assure that the proponents have complied with the requirements of section 1125 in the solicitation of acceptances to the plan"); Senate Report at 126 ("Paragraph (2) of [section 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure.").

      **i.**       **The Debtors Have Complied With the Requirements of Section 1125 of the Bankruptcy Code, and the Disclosure Statement Should Be Approved on a Final Basis under Section 1125**

56.     Section 1125 of the Bankruptcy Code prohibits the solicitation of acceptances or rejections of a chapter 11 plan from holders of claims or interests "unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved . . . by the court as containing adequate information." 11 U.S.C. § 1125(b). In this case, the Court entered the Solicitation Procedures Order, approving on an interim basis the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code.

57.     Pursuant to the Solicitation Procedures Order, the Debtors—through the Voting Agent, Verita—transmitted the approved Solicitation Package notices in accordance with the instructions of the Court in the Solicitation Procedures Order. *See* Voting Decl. In addition, in compliance with the Solicitation Procedures Order, copies of the Solicitation Procedures Order, the Plan, and the Disclosure Statement have been available upon request from the Debtor's Voting Agent and free of charge at https://www.veritaglobal.net/avengerfg.

58.     The Solicitation Package was served in accordance with the requirements of Bankruptcy Rules 2002(b) and 3017(d)–(f) and the Solicitation Procedures Order, as set forth in the Voting Declaration.

59.     As set forth in the Proposed Confirmation Order, as further explained in the Solicitation Procedures Motion, the Debtors seek final approval of the Disclosure Statement under section 1125 of the Bankruptcy Code, as the Disclosure Statement contains "adequate information"

to enable voting creditors to make a well-informed judgment on the Plan.[14]

### ii.     The Debtors Have Complied With the Requirements of Bankruptcy Rules 3017(d) and 3018(c)

60.     Bankruptcy Rules 3017 and 3018 require, in relevant part, that a debtor transmit its plan and disclosure statement to all affected creditors and equity security holders, that it adopt effective procedures for the transmission of its plan and disclosure statement to beneficial owners of securities, and that it afford creditors and equity security holders a reasonable period of time in which to accept or reject the proposed plan.   Fed. R. Bankr. P. 3017, 3018.   The Debtors respectfully submits that they have met all such requirements.

61.     Bankruptcy Rule 3017(d) requires that, unless a court orders otherwise, a debtor must transmit to all creditors, equity security holders, and the United States Trustee:  the plan (or a court-approved summary of the plan), the disclosure statement approved by the court, notice of the time within which acceptances and rejections of such plan may be filed, and such other information as the court may direct, including any opinion of the court approving the disclosure statement or a court approved summary of the opinion.  *See* Fed. R. Bankr. P. 3017(d).

62.     Bankruptcy Rule 3017 also requires that the debtor give notice of the time fixed for filing objections to the proposed disclosure statement and for the hearing on Confirmation to all creditors and equity security holders, and that a debtor mail a ballot to each creditor and equity security holder entitled to vote on the plan.  *See* Fed. R. Bankr. P. 3017.

---

[14]   The Disclosure Statement contains detailed information with respect to, among other things: (a) the Debtors' business and prepetition capital structure; (b) the relevant events and circumstances preceding the chapter 11 cases; (c) the major events during the administration of the chapter 11 cases; (d) the key terms of the Plan; (e) estimates of the anticipated distributions to be received by holders of allowed claims; (f) the feasibility of the Plan; (g) a comparison to hypothetical liquidation under chapter 7 of the Bankruptcy Code; (h) risk factors that may affect the Plan; and (i) the existence of federal tax consequences of the Plan for which creditors should seek independent counsel. *See, e.g., In re U.S. Brass Corp.*, 194 B.R. 420, 424-25 (Bankr. E.D. Tex. 1996) (listing factors that courts may consider in determining the adequacy of information provided in a disclosure statement); *In re Metrocraft Pub. Serv., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984) (same).

63.     Bankruptcy Rule 3018(c) governs the form of ballot for accepting or rejecting a plan, providing in relevant part that an "acceptance or rejection shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent and conform to the appropriate Official Form." Fed. R. Bankr. P. 3018(c).

64.     Verita completed solicitation of the Plan by May 8, 2026, by causing the Solicitation Package (as defined and described in the Solicitation Procedures Order) to be transmitted to all known Holders of Claims in the applicable Voting Classes as of the Voting Record Date. *See* Docket No. 450. The nonvoting parties were served with the Confirmation Hearing Notice and the applicable Notice of Non-Voting Status and Opt-In Form.

65.     As required by Bankruptcy Rule 3017(d), the Solicitation Package included, *inter alia*, the Combined Plan and Disclosure Statement. In addition, each Solicitation Package included the appropriate Ballot with voting instructions, the Confirmation Hearing Notice, and a pre-addressed return envelope each in the form approved by the Court in the Solicitation Procedures Order. The Disclosure Statement, Ballots, and Confirmation Hearing Notice provided clear notice of the voting deadline to submit the Ballots, which the Court established as June 15, 2026, at 5:00 p.m. (Eastern Time).

66.     The Debtors and their professionals and agents followed the procedures set forth in the Solicitation Procedures Order for soliciting acceptances of the Plan as evidenced by the Voting Declaration and the certificates of service for the Solicitation Packages filed of record with the Court. In addition, the Debtors served the Confirmation Hearing Notice on the U.S. Trustee, counsel for the Committee, all creditors on the list of creditors maintained by the Voting Agent, and those parties that requested notice pursuant to Bankruptcy Rule 2002. The Debtors did not solicit acceptances or rejection of the Plan from any creditor or interest holder before the interim

conditional approval of the Disclosure Statement by this Court pursuant to the Solicitation Procedures Order.

### iii. The Vote Tabulation Satisfied Section 1126(c) and Bankruptcy Rule 3018(a)

67. The Debtors submit that the voting and tabulation procedures followed by Verita are in accordance with the Solicitation Procedures Order, Bankruptcy Code section 1126(c), and Bankruptcy Rule 3018(a). Bankruptcy Code section 1126(c) provides:

> A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

11 U.S.C. § 1126(c). Section 1126 of the Bankruptcy Code provides in part that only holders of allowed claims and interests in impaired classes that will receive or retain property under a plan on account of such claims or interests may vote to accept or reject a plan. 11 U.S.C. §§ 1126(f)–(g). Classes 1 and 4 are unimpaired under the Plan. Accordingly, Classes 1 and 4 are deemed to have accepted the Plan and are not entitled to vote on the Plan. Classes 2, 3, 5, and 6 are impaired and entitled to vote on the Plan (the "Voting Classes"); however, given the consummation of the SIM International Settlement on May 9, 2026, the Class 5 SIM International Claims were fully waived, and Class 5 should be treated as a vacant class pursuant to section 9.3 of the Plan. Classes 7 and 8 are deemed to have rejected the Plan and not entitled to vote on the Plan.

68. As set forth in the Voting Summary, in accordance with section 1126 of the Bankruptcy Code and the Solicitation Procedures Order, the Debtors solicited acceptances and rejections of the Plan from the holders of Claims in the Voting Classes. Every validly cast Ballot

was counted and considered when tabulating votes for the acceptance or rejection of the Plan.[15] The voting results are set forth in Exhibit "A" to the Voting Declaration and are as follows, with the exception of Class 5, which did not vote on the Plan and constitutes a vacant class pursuant to section 9.3 of the Plan, as discussed above:

**Class 2 (Prepetition Lenders Claims)**
Accepting:  8 ballots (100% in number) representing $179,917,878.88 (100% in amount)
Rejecting:   0 ballots (0% in number) representing $0 (0% in amount)

**Class 3 (Secured EDC Claims)**
Accepting:  1 ballot (100% in number) representing $1,472,450.00 (100% in amount)
Rejecting:   0 ballots (0% in number) representing $0 (0% in amount)

**Class 6 (Unsecured Claims)**
Accepting:  15 ballots (93.75% in number) representing $19,782,337.57 (95.34% in amount)
Rejecting:   1 ballot (6.25% in number) representing $966,487.00 (4.66% in amount)

69.     Based on the facts and arguments set forth above, the Debtors submit that the Plan-related solicitation efforts satisfied the requirements of Bankruptcy Code sections 1125 and 1126 and Bankruptcy Rules 3017(d), 3018(a), 3018(c), and 3018(e).

70.     Additionally, given the evidence of good faith on the part of the parties involved in the solicitation and the Debtors' compliance with Bankruptcy Code section 1125, the Debtors request that the Court grant the parties the protections provided under Bankruptcy Code section 1125(e).

**D.     The Plan Has Been Proposed in Good Faith (Section 1129(a)(3))**

71.     Section 1129(a)(3) of the Bankruptcy Code requires that a plan be proposed in good faith and not by any means forbidden by law.  11 U.S.C. § 1129(a)(3).  Although the term "good faith" is not defined in the Bankruptcy Code, courts have determined that "'[f]or purposes of determining good faith under section 1129(a)(3) . . . the important point of inquiry is the plan itself

---

[15]     *See* Voting Declaration and exhibits thereto.

and whether such a plan will fairly achieve a result consistent with the objectives of the Bankruptcy Code." *In re PWS Holding Corp.*, 228 F.3d at 242 (quoting *In re Abbotts Dairies*, 788 F.2d 143, 150 n.5 (3d Cir. 1986)).  The requirement of good faith must be viewed in light of the totality of the circumstances surrounding the proposal of a chapter 11 plan.  *In re W.R. Grace & Co.*, 475 B.R. 34, 87 (D. Del. 2012).  In determining whether the plan will succeed and accomplish goals consistent with the Bankruptcy Code, courts look to the terms of the plan itself.[16]

72.     The Plan has been proposed in good faith, achieves an effective, orderly liquidation of the Debtors' assets, and provides for distributions to creditors. The Plan contains only provisions that are consistent with the Bankruptcy Code. In light of the foregoing, the Plan complies with section 1129(a)(3) of the Bankruptcy Code.

**E.      Payments for Services and Expenses (Section 1129(a)(4))**

73.     Section 1129(a)(4) of the Bankruptcy Code requires that the Debtors not make any payment for services, costs, or expenses in connection with this case unless such payments are disclosed and subject to bankruptcy court approval as reasonable.  Courts have construed this section as requiring the bankruptcy court's review and approval of the reasonableness of all professional fee payments made from estate assets.  Courts have construed this section as requiring the bankruptcy court's review and approval of the reasonableness of all professional fee payments made from estate assets.  *See In re NH Holdings, Inc.*, 288 B.R. 356, 362–63 (Bankr. D. Del. 2002) (finding in a confirmation order that the plan complied with section 1129(a)(4) of the Bankruptcy Code where all final fees and expenses payable to professionals remained subject to final review by the court); *In re Resorts Int'l*, 145 B.R. 412, 475 (Bankr. D.N.J. 1990).

---

[16]   *See In re Sound Radio, Inc.*, 93 B.R. 849, 853 (Bankr. D.N.J. 1988) (concluding that the good-faith test provides courts with significant flexibility and is focused on examination of the plan itself, rather than external factors), *aff'd in part and remanded in part on other grounds*, 103 B.R. 521 (D.N.J. 1989), *aff'd*, 908 F.2d 964 (3d Cir. 1990).

74.     No payment for services or costs and expenses in connection with the Debtor's Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Case, has been or will be made, other than payments that have been authorized by an order of the Court.  The Court has previously authorized the interim payment of the fees and expenses incurred by estate professionals.  Pursuant to Section 8.2(b) of the Plan, professionals shall file and serve applications for allowance of final compensation and reimbursement of expenses no later than 45 days after the Effective Date.  Such applications will be subject to review and approval by the Court. Accordingly, the Plan complies with the requirements of section 1129(a)(4) of the Bankruptcy Code.

## F.      Directors and Officers (Section 1129(a)(5))

75.     Section 1129(a)(5) of the Bankruptcy Code requires that the identity and affiliations of the individuals proposed to serve after confirmation as a director or officer, and the identity and nature of any insider compensation, be disclosed.[17]  The Debtors have complied with section 1129(a)(5) by providing in the Plan Supplement the identities of the Litigation Trustee, who is qualified for its role under the Plan and not an insider of the Debtors, as well as the members of the Litigation Trust Oversight Board.  The Debtors believes that these appointments are "consistent with the interests of creditors and equity security holders and with public policy," and no party in interest has objected to the Plan on these grounds.  Therefore, the requirements of section 1129(a)(5) are satisfied.

## G.      Rate Changes (Section 1129(a)(6))

76.     Section 1129(a)(6) of the Bankruptcy Code permits confirmation only if any

---

[17]     *See In re Landing Assocs.,* 157 B.R. 791, 817 (Bankr. W.D. Tex. 1993) ("In order to lodge a valid objection under § 1129(a)(5), a creditor must show that a debtor's management is unfit or that the continuance of this management post-confirmation will prejudice the creditors.").

regulatory commission that has or will have jurisdiction over a debtor after confirmation has approved any rate change provided for in the plan.  Section 1129(a)(6) of the Bankruptcy Code is inapplicable in this case.

### H.       The Plan Satisfies the "Best Interests" Test (Section 1129(a)(7))

77.     The "best interests of creditors" test of section 1129(a)(7) of the Bankruptcy Code requires that, with respect to each impaired class of claims or interests, each individual holder of a claim or interest has either accepted the plan or will receive or retain under the plan property having a present value, as of the effective date of the plan, of not less than what such holder would receive if the debtor were liquidated under chapter 7 of the Bankruptcy Code at that time.  The best-interests-of-creditors test is generally satisfied through a comparison of the estimated recoveries for a debtor's stakeholders in a hypothetical chapter 7 liquidation of that debtor's estate against the estimated recoveries under that debtor's plan.[18]  Under section 1129(a)(7), the best-interests-of-creditors test applies only to non-accepting holders of impaired claims or interests.[19]

78.     In this case, the DIP Lenders and the Prepetition Lenders have agreed to allow the funding of the Plan and the actions contemplated thereunder with Distributable Assets including Available Cash – property in which the DIP Lenders and the Prepetition Lenders could otherwise assert Liens and Claims. Such cash and other property would not be available for general unsecured creditors of the Debtors in a Chapter 7 proceeding. Based upon the Debtors' current projections, Holders of Allowed administrative, priority, and secured claims will be paid in full or otherwise

---

[18]   *See In re Lason, Inc.*, 300 B.R. 227, 232 (Bankr. D. Del. 2003) (citations omitted) ("Section 1129(a)(7)(A) requires a determination whether 'a prompt chapter 7 liquidation would provide a better return to particular creditors or interest holders than a chapter 11 reorganization.'"); *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 251 (Bankr. S.D.N.Y. 2007) (stating that section 1129(a)(7) is satisfied when an impaired holder of claims would receive "no less than such holder would receive in a hypothetical chapter 7 liquidation").

[19]   *Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 441 n.13 (1999) ("The 'best interests' test applies to individual creditors holding impaired claims, even if the class as a whole votes to accept the plan.").

satisfied under the Plan, while Holders of Prepetition Lenders Claims and Unsecured Claims will receive less than full payments.  If the Chapter 11 Cases were converted to a Chapter 7 proceeding, first and foremost, the Estates would not have the benefit of the aforementioned assets and funding to provide a recovery for general unsecured creditors under the Plan, and thus, general unsecured creditors would likely receive no recovery in a Chapter 7 proceeding.

79.     In addition, the Debtors' estates would incur the costs of payment of a statutorily allowed commission to the Chapter 7 trustee, as well as the costs of counsel and other professionals retained by the trustee. The Debtors believe that such amounts would exceed the amount of expenses that will be incurred in implementing the Plan and winding up the affairs of the Debtors in the Chapter 11 Cases. The Debtors contemplate an orderly administration and winding down of the Estates by parties utilizing professionals that are already familiar with the Debtors, their remaining assets and affairs, and their creditors and liabilities. Such familiarity will facilitate the completion of the liquidation of the remaining assets (including prosecution of the applicable Causes of Action), and the distribution of the net proceeds to creditors more efficiently and expeditiously than a Chapter 7 trustee. Moreover, the Estates would suffer additional delays, as a Chapter 7 trustee and his/her counsel took time to develop a necessary learning curve in order to complete the administration of the Estates (including the prosecution of the applicable Causes of Action). Also, a new time period for the filing of claims would commence under Bankruptcy Rule 1019(2), possibly resulting in the filing of additional Claims against the Estates.

80.     Accordingly, as supported by the Plan Declarations, the Plan provides an equal or better potential recovery for creditors as compared to a liquidation under chapter 7 of the Bankruptcy Code.  Therefore, the Plan satisfies the "best interests" of creditors test under section 1129(a)(7) of the Bankruptcy Code.

**I.      Acceptance by Impaired Classes (Section 1129(a)(8))**

81.     A plan is accepted by the holders of the allowed claims of each class that voted if (i) at least two-thirds in dollar amount (the "Amount Requirement") and (ii) more than one-half in number (the "Creditor-Numerosity Requirement") have voted to accept the plan.  *See* 11 U.S.C. § 1126(c).  A class of interests accepts the plan if the plan is accepted by holders of interests that hold at least two-thirds in amount of the allowed interests in the class that actually vote on a plan (together with the Creditor-Numerosity Requirement, the "Numerosity Requirement").  *See* 11 U.S.C. § 1126(d).

82.     As discussed above, whether a class has accepted the plan is determined by reference to section 1126 of the Bankruptcy Code.  Under section 1126(f), any unimpaired class is conclusively presumed to have accepted the plan.

83.     Classes 1 and 4 are Unimpaired under the Plan and are deemed to have accepted the Plan.  Classes 2, 3, 5, and 6 are Impaired and entitled to vote on the Plan.  Classes 2, 3, and 6 have accepted the Plan.  As discussed above, the Claims in Class 5, the SIM International Claims, have been released upon the consummation of the SIM International Settlement on May 9, 2026.  As such, no Claims were voted in Class 5, which constitutes a vacant class pursuant to section 9.3 of the Plan. Classes 7 and 8 are deemed to have rejected the Plan and not entitled to vote on the Plan.  As discussed herein, the Debtors seek Confirmation of the Plan under the cramdown provisions of section 1129(b).

**J.      Treatment of Priority Claims (Section 1129(a)(9))**

84.     Section 1129(a)(9) of the Bankruptcy Code contains a number of requirements concerning the payment of priority claims.  11 U.S.C. § 1129(a)(9).  First, section 1129(a)(9)(A) requires that claims of a kind specified in section  507(a)(1), which gives first priority to certain

administrative expenses, be paid in full in cash on the effective date of a plan. Second, section 1129(a)(9)(B) requires that claims of a kind specified in subsections 507(a)(3) through 507(a)(7) receive deferred cash payments equal to the allowed amount of such claims on the effective date. Finally, section 1129(a)(9)(C) requires that the holder of a claim of a kind specified in section 507(a)(8) of the Bankruptcy Code—priority tax claims—must receive regular installment payments in cash of the total value equal to the allowed amount of such claim over a period ending not later than five years after the petition date.

85. The Plan satisfies these requirements. Under Section 8.2 of the Plan, Holders of Allowed Administrative Claims will receive payment in full. Under Section 8.4 of the Plan, each Holder of an Allowed Priority Tax Claim will receive payment in full or receive such other treatment consistent with section 1129(a)(9).[20]

86. Thus, the treatment of priority claims under the Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

## K.     Acceptance by at Least One Impaired Class (Section 1129(a)(10))

87. Section 1129(a)(10) of the Bankruptcy Code requires as a condition of confirmation that if a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider. *See* 11 U.S.C. § 1129(a)(10). The voting members of Classes 2, 3, and 6 are Impaired and have accepted the Plan. As discussed above, given the consummation of the SIM International Settlement and the release of the SIM International Claims, no clams remain in Class 5, which constitutes a vacant class under the Plan. Therefore, the requirement of section 1129(a)(10) is

---

[20] The DIP Facility Claims will be satisfied in full through a credit bid upon the closing of the transactions approved by the Sale Order; the DIP Lenders will not receive any Distributions or further payments under the Plan.

satisfied.

**L.     The Plan Is Feasible (Section 1129 (a)(11))**

88.     Section 1129(a)(11) of the Bankruptcy Code provides that a plan may be confirmed only if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtors or any successor to the debtors under the plan, unless such liquidation or reorganization is proposed in the plan."  11 U.S.C. § 1129(a)(11).

89.     Courts generally have held that the determination of the feasibility requirement contemplates "'the probability of actual performance of the provisions of the plan.'"[21]  Only a reasonable assurance of success is required.[22]  Further, "a relatively low threshold of proof will satisfy § 1129(a)(11) so long as adequate evidence supports a finding of feasibility."[23]

90.     Because the Combined Plan and Disclosure Statement proposes a liquidation of all of the Debtors' remaining assets, for purposes of this test, the Debtors have analyzed the ability of the Debtors and the Litigation Trust to meet their obligations under the Combined Plan and Disclosure Statement. Based on the Debtors' analysis, and as supported by the Plan Declarations, the Debtors and the Litigation Trust will have sufficient assets to accomplish their tasks and satisfy their obligations under the Combined Plan and Disclosure Statement.

---

[21] *Clarkson v. Cooke Sale & Serv. Co. (In re Clarkson)*, 767 F.2d 417, 420 (8th Cir. 1985) (quoting *Chase Manhattan Mortg. & Realty Tr. v. Bergman (In re Bergman)*, 585 F.2d 1171, 1179 (2d Cir. 1978)).  "The test is whether the things which are to be done after confirmation can be done as a practical matter under the facts."  *Id.*; *see also In re Orlando Investors, L.P.*, 103 B.R. 593, 600 (Bankr. E.D. Pa. 1989) ("Feasibility does not require that substantial consummation of the plan be guaranteed; rather the plan proponent must demonstrate that there be a reasonable assurance of compliance with plan terms.").

[22] *In re T-H New Orleans Ltd P'ship,* 116 F.3d 790, 801 (5th Cir. 1997) (citations omitted) ("[T]he [bankruptcy] court need not require a guarantee of success . . . , [o]nly a reasonable assurance of commercial viability is required.");  *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 649 (2d Cir. 1988) ("[T]he feasibility standard is whether the plan offers a reasonable assurance of success. Success need not be guaranteed."); *In re Lakeside Glob. II, Ltd.*, 116 B.R. 499, 506 (Bankr. S.D. Tex. 1989) (noting that the feasibility standard "has been slightly broadened and contemplates whether the debtor can realistically carry out its plan").

[23] *In re Prussia Assocs.*, 322 B.R. 572, 584 (Bankr. E.D. Pa. 2005); *Tribune*, 464 B.R. at 185.

91.     Accordingly, the Plan is feasible and has a reasonable likelihood of success, and so satisfies the feasibility requirements of section 1129(a)(11) of the Bankruptcy Code.

**M.     Payment of Certain Fees (Section 1129(a)(12))**

92.     Section 1129(a)(12) of the Bankruptcy Code requires that certain fees listed in 28 U.S.C. § 1930, determined by the Court at the hearing on confirmation of a plan, be paid or that provision be made for their payment.  *See* 11 U.S.C. § 1129(a)(12).  All fees due and payable pursuant to Section 1930(a) of Title 28 of the United States Code shall be paid for each quarter (including any fraction thereof) until the respective Chapter 11 Case is converted, dismissed or closed, whichever occurs first, responsibility for which shall belong to the Litigation Trustee and Debtors, as applicable (or when otherwise due in the ordinary course).  *See* Plan Section 8.2. Consequently, section 1129(a)(12) of the Bankruptcy Code is satisfied.

**N.     Continuation of the Debtors' Obligations to Pay Retiree Benefits (Section 1129 (a)(13))[24]**

93.     Section 1129(a)(13) of the Bankruptcy Code requires that a plan provide for the continuation of retiree benefits at levels established by agreement or by court order pursuant to section 1114 of the Bankruptcy Code, for the duration of the period that the debtor has obligated itself to provide such benefits.  *See* 11 U.S.C. § 1129(a)(13).  The Debtors have no retiree benefit plans within the meaning of section 1129(a)(13) of the Bankruptcy Code.

**O.     The Plan Satisfies the "Cramdown" Requirements of Section 1129(b)(1)**

94.     Section 1129(b)(1) of the Bankruptcy Code provides that, if all applicable requirements of section 1129(a) are met other than section 1129(a)(8), a plan may be confirmed so long as the requirements set forth in section 1129(b) are satisfied.  To confirm a plan that has

---

[24]     The remaining elements of section 1129(a)—namely, subsections (a)(14) (domestic obligations), (15) (individual debtors), and (16) (nonprofit entities)—are inapplicable to the Debtors and will not be discussed.  *See* 11 U.S.C. § 1129(a)(14), (a)(15), and (a)(16).

not been accepted by all impaired classes (thereby failing to satisfy section 1129(a)(8) of the Bankruptcy Code), the debtor must show that the plan does not "discriminate unfairly" and is "fair and equitable" with respect to the nonaccepting impaired classes (the "Rejecting Classes").[25]

95.     As discussed herein, Class 7 (Intercompany Claims) and Class 8 (Interests) are not entitled to any recovery and thus are deemed to have rejected the Plan.  To confirm the Plan, the Debtors must satisfy the Bankruptcy Code's "cramdown" requirements as to Classes 7 and 8 (the "Deemed Rejecting Classes").[26]

### i.     The Plan Does Not Unfairly Discriminate Against the Deemed Rejecting Classes

96.     The Bankruptcy Code does not provide a standard for determining when "unfair discrimination" exists.[27]   Rather, courts typically examine the facts and circumstances of the particular case to determine whether unfair discrimination exists.[28]   In general, courts have held that a plan unfairly discriminates in violation of section 1129(b)(1) of the Bankruptcy Code only if it provides materially different treatment for creditors and interest holders with similar legal

---

[25]   11 U.S.C. § 1129(b); *see also John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*, 987 F.2d 154, 157 n.5 (3d Cir. 1993); *Zenith*, 241 B.R. at 105 (explaining that "[w]here a class of creditors or shareholders has not accepted a plan of reorganization, the court shall nonetheless confirm the plan if it 'does not discriminate unfairly and is fair and equitable.'").

[26]   Given the consummation of the SIM International Settlement, and the release of the SIM International Claims in connection therewith, no claims remain in Class 5.  As such, Class 5 should be treated as a vacant class pursuant to Section 9.3 of the Plan and not counted for purposes of accepting or rejecting the Plan.

[27]   *See In re 203 N. LaSalle St. P'ship*, 190 B.R. 567, 585 (Bankr. N.D. Ill. 1995) (noting "the lack of any clear standard for determining the fairness of a discrimination in the treatment of classes under a Chapter 11 plan" and that "the limits of fairness in this context have not been established"), *rev'd on other grounds*, 526 U.S. 434 (1999).

[28]   *See Genesis Health Ventures,.*266 B.R. at 611 ("The hallmarks of the various tests have been whether there is a reasonable basis for the discrimination, and whether the debtor can confirm and consummate a plan without the proposed discrimination."); *see also In re 222 Liberty Assoc.*, 108 B.R. 971, 990-991 (Bankr. E.D. Pa. 1990); *In re Johns-Manville Corp.*, 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986) ("The language and legislative history of the statute provides little guidance in applying the 'unfair discrimination' standard . . . ."), *aff'd*, 843 F.2d 636 (2d Cir. 1988); *In re Freymiller Trucking, Inc.*, 190 B.R. 913, 916 (Bankr. W.D. Okla. 1996) (holding that a determination of unfair discrimination requires a court to "consider all aspects of the case and the totality of all the circumstances"); *In re Aztec Co.*, 107 B.R. 585, 589 (Bankr. M.D. Tenn. 1989) (noting that courts "have recognized the need to consider the facts and circumstances of each case to give meaning to the proscription against unfair discrimination").

rights without compelling justifications for doing so.[29]  A threshold inquiry to assessing whether a proposed plan of reorganization unfairly discriminates against a dissenting class is whether the dissenting class is equally situated to a class allegedly receiving more favorable treatment.[30]

97.    The Court should find that the Plan does not unfairly discriminate against the Rejecting Classes. There are no equally situated classes that are receiving more favorable treatment under the Plan, and consequently there is no discrimination against the Deemed Rejecting Classes.

### ii.    The Plan Is Fair and Equitable as to the Deemed Rejecting Classes

98.    A plan is "fair and equitable" with respect to an impaired class of claims or interests that rejects a plan (or is deemed to reject a plan) if it follows the "absolute priority" rule.[31]  This requires that an impaired rejecting class of claims or interests either be paid in full or that a class junior to the impaired rejecting class not receive any distribution under a plan on account of its junior claim or interest.[32]

99.    Further, as noted above, there is no other class equally situated to the Deemed Rejecting Classes that will receive more favorable treatment under the Plan and no class junior to the Deemed Rejecting Classes will receive any distribution under the Plan.   The foregoing

---

[29]    *See In re Lernout & Hauspie Speech Prods., N.V.*, 301 B.R. 651, 661–62 (Bankr. D. Del. 2003) (permitting different treatment of two classes of similarly situated creditors upon a determination that the debtors showed a legitimate basis for such discrimination), *aff'd*, 308 B.R. 672 (D. Del. 2004); *In re Idearc Inc.*, 423 B.R. 138, 171 (Bankr. N.D. Tex. 2009) ("[T]he unfair discrimination standard prevents creditors and equity interest holders with similar legal rights from receiving materially different treatment under a proposed plan without compelling justifications for doing so.").

[30]    *See In re Aleris Int'l*, No. 09-10478 (BLS), 2010 Bankr. LEXIS 2997, at *94–96 (Bankr. D. Del. May 13, 2010) (citing *In re Armstrong World Indus., Inc.*, 348 B.R. 111, 121 (D. Del. 2006)).

[31]    *Bank of Am. v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 441–42 (1999) ("As to a dissenting class of impaired unsecured creditors, such a plan may be found to be 'fair and equitable' only if the allowed value of the claim is to be paid in full, or, in the alternative,  if 'the holder of any claim or interest that is junior to the claims of such [impaired unsecured] class will not receive or retain under the plan on account of such junior claim or interest any property.'  That latter condition is the core of what is known as the 'absolute priority rule.'" (quoting 11 U.S.C. § 1129(b)(1), (b)(2)(B)).

[32]    *Id.*

treatment conforms to the absolute priority rule and is therefore fair and equitable within the meaning of section 1129(b).

100.    Accordingly, the Plan satisfies the cramdown requirements of section 1129(b) of the Bankruptcy Code and may be confirmed notwithstanding the rejection of the Plan by the Deemed Rejecting Classes.

**P.      The Plan's Purpose is Consistent with
          the Bankruptcy Code (Section 1129(d))**

101.    Section 1129(d) of the Bankruptcy Code provides that a court may not confirm a plan if the principal purpose of the plan is to avoid taxes or the application of section 5 of the Securities Act of 1933.   11 U.S.C. § 1129(d).   The Plan is a plan of liquidation intended to administer, liquidate and wind down the Estates' remaining assets for the benefit of creditors, and its purpose is not avoidance of taxes or avoidance of the requirements of section 5 of the Securities Act of 1933.  There has been no filing by any governmental agency asserting such avoidance.

**V.**

**WAIVER OF THE STAY OF THE CONFIRMATION ORDER**

102.    Bankruptcy Rule 3020(e) provides that "[a]n order confirming a plan is stayed until the expiration of 14 days after the entry of the order, unless the Court orders otherwise."  Fed. R. Bankr. P. 3020(e).   Bankruptcy Rules 6004(h) and 6006(d) provide similar stays to orders authorizing the use, sale, or lease of property (other than cash collateral) and orders authorizing a debtor to assign an executory contract or unexpired lease under section 365(f) of the Bankruptcy Code.  Each rule also permits modification of the imposed stay upon court order.

103.    The Debtors submit that good cause exists for waiving and eliminating any stay of the Confirmation Order pursuant to Bankruptcy Rules 3020, 6004, and 6006 so that the Confirmation Order will be effective immediately upon its entry.  The Debtors submit that, based

on the circumstances of this case discussed above (including the critical settlement among the key constituencies reflected therein), it is reasonable and amply justified for the Debtors and interested parties to proceed with implementing the Plan, to minimize the significant ongoing chapter 11 administrative costs, and to provide, as promptly as possible, distributions to the Debtors' creditors.

**VI.**

**<u>CONCLUSION</u>**

**WHEREFORE**, for the reasons set forth in this Memorandum, the Debtors respectfully submit that the Plan fully satisfies all applicable requirements of the Bankruptcy Code and requests that the Court enter the Proposed Confirmation Order.

Dated:    June 19, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/   Mary F. Caloway*

Richard M. Pachulski, Esq. (admitted *pro hac vice*)
Steven W. Golden, Esq. (DE Bar No. 6807)
Mary F. Caloway, Esq. (DE Bar No. 3059)
919 North Market Street, 17th Floor
Wilmington, DE 19801
Telephone:      (302) 652-4100
Facsimile:       (302) 652 4400
Email:            rpachulski@pszjlaw.com
                      sgolden@pszjlaw.com
                      mcaloway@pszjlaw.com

- and -

Gregory V. Demo, Esq. (admitted *pro hac vice*)
Cia H. Mackle, Esq. (admitted *pro hac vice*)
1700 Broadway, 36th Floor
New York, NY 10019
Telephone:      (212) 561-7700
Facsimile:       (212) 561-7777
Email:            gdemo@pszjlaw.com
                      cmackle@pszjlaw.com

*Counsel to the Debtors and Debtors-in-Possession*